**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC,<br><br>        Plaintiff,<br><br>v.<br><br>TP-LINK TECHNOLOGIES CO., LTD.,<br>TP-LINK CORPORATION LTD, and<br>TP LINK INTERNATIONAL LTD.,<br><br>        Defendants. | Civil Action No. 2:21-cv-430-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSED MOTION UNDER 28 U.S.C. 1404(a) TO TRANSFER THE
<u>ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND...................................................................................3

     A.    Defendant TP-Link China Has No Connection to the EDTX...............................3

     B.    Defendant TP-Link Hong Kong Has No Connection to the EDTX .....................3

     C.    Non-Party TP-Link USA Is Located in the CDCA .............................................4

     D.    Atlas's Ultimate Parent Acacia Has Witnesses and Evidence in the CDCA ..................................................................................................................4

     E.    Atlas Itself Has Important Connections to the CDCA..........................................6

     F.    Third Party Newracom, the Original Owner of the Asserted Patents, and Several Named Inventors Are Located in the CDCA ...................................6

III.    LEGAL STANDARDS ..........................................................................................7

IV.    THIS CASE SHOULD BE TRANSFERRED TO THE CDCA .......................................8

     A.    This Action Could Have Been Brought in the CDCA...........................................8

     B.    The CDCA Is Clearly More Convenient Than the EDTX....................................9

           1.    The Cost of Attendance of Willing Witnesses Favors Transfer ...............9

           2.    The Relative Ease of Access to Source of Proof Favors Transfer ..........10

           3.    The Availability of Compulsory Process Favors Transfer ......................12

           4.    The Local Interest Favors Transfer..........................................................14

           5.    Court Congestion Is Neutral ....................................................................14

           6.    The "Other Practical Problems" Factor Favors Transfer ........................15

           7.    All Remaining Factors Are Neutral .........................................................15

V.    CONCLUSION......................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
No. 6:20-cv-00180-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ....... 9, 10, 11, 12, 14

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) .................................................................................. 8

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ........................................................................... 8, 11

*In re Apple, Inc.*,
581 Fed. App'x 886 (Fed. Cir. 2014) ....................................................................... 12

*Data-Scape, Ltd. v. Dell Techs., Inc.*,
No. 6:19-CV-00129-ADA, 2019 WL 4254069 (W.D. Tex. June 7, 2019) ............ 11

*Fintiv, Inc. v. Apple Inc.*,
No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ............ 12

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .............................................................. 8, 10, 11, 15

*Haliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) ..................................................................................... 1

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ........................................................................... 2, 14

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ............................................................................... 14

*In re Netflix, Inc.*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) .................................... 15

*In re Samsung Elecs. Co., Ltd.*,
2 F.4th 1371 (Fed. Cir. 2021) ............................................................... 2, 3, 4, 14, 15

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017) ............................................................................................... 2

*Uniloc USA, Inc. v. Apple Inc.*,
No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ............. 8, 9, 10, 14

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................7, 8, 10

**Statutes**

28 U.S.C. §1400(b) ...............................................................................................2

28 U.S.C. § 1404(a) ......................................................................................1, 7, 10

## I.      INTRODUCTION

Defendants TP-Link Technologies Co., Ltd. ("TP-Link China") and TP-Link Corporation Limited f/k/a TP-Link International Ltd. ("TP-Link Hong Kong") (collectively, "TP-Link Defendants") have moved to dismiss this action for lack of personal jurisdiction and insufficient service of process.  Dkts. 28, 29.[1]   Those motions are pending.  Without waiving their jurisdictional and any other defenses, the TP-Link Defendants hereby also respectfully move under 28 U.S.C. § 1404(a) to transfer this action to the Central District of California ("CDCA").[2]

The true dispute in this case is between two companies based in the CDCA.  Plaintiff Atlas Global Technologies ("Atlas") is an ephemeral Texas entity controlled by a CDCA parent. And the non-party company that actually sells, offers to sell, and imports the accused products— TP-Link USA Corporation ("TP-Link USA")—also is located in the CDCA.  Atlas's filing of this case in the Eastern District of Texas ("EDTX") is a textbook case of attempted venue manipulation. The Court should send this case to the CDCA where it clearly belongs.

Specifically, neither of the named TP-Link Defendants has any connection to the EDTX. Atlas effectively recognizes this, as it alleges jurisdiction based on the purported activities of unidentified *non-party* "related entities, distributors, [and] importers" that purportedly import the accused products and sell them in the United States while allegedly "acting in concert" with the named TP-Link Defendants.  But non-party TP-Link USA is *solely* responsible for importing, marketing, advertising, offering to sell, and selling "TP-Link branded" products in the United

---

[1] Defendants TP-Link International Ltd. and TP-Link Corporation Limited are the same entity, as TP-Link International Ltd. changed its name to TP-Link Corporation Limited in 2020.  *See* Declaration of Jianmei Sun ("Sun Decl.") at ¶ 2.

[2] A "non-resident defendant may participate in litigation without submitting to the court's jurisdiction so long as it maintains its objection to personal jurisdiction." *Haliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540 (5th Cir. 2019).

States.  TP-Link USA is headquartered in the CDCA and has no place of business here. Atlas did not sue TP-Link USA because venue in the EDTX would be manifestly improper.  *See* 28 U.S.C. §1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). This Court should not endorse such "efforts to manipulate venue," and should either grant the pending motions to dismiss or transfer the case to the CDCA.  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1377 (Fed. Cir. 2021) ("[W]e are not bound by a plaintiff's efforts to manipulate venue.").

Like the TP-Link Defendants, Plaintiff Atlas itself has no material connection to the EDTX.  Atlas was formed as an entity shortly before filing suit and is an indirect subsidiary of longstanding patent assertion entity Acacia Research Corporation ("Acacia").  Acacia's largest office is in the CDCA (Irvine, CA).  Atlas' CEO is also the Chief IP Officer of Acacia, and he is located in the CDCA.  By all indications, the recent formation of Atlas in the EDTX is merely "a fiction which appears to have been created to manipulate the propriety of venue." *In re Hoffmann-La Roche Inc*., 587 F.3d 1333, 1337 (Fed. Cir. 2009) (directing transfer on mandamus).  When, as here, a plaintiff's incorporation, office, and documents in Texas "were recent, ephemeral, and a construct for litigation," they are entitled to no weight in the venue analysis.  *In re Samsung Elecs. Co., Ltd*., 2 F.4th at 1378 (directing transfer on mandamus).

What is more, Atlas's own Complaint identifies likely trial witnesses and evidence located in the CDCA.  In particular, the "Asserted Patents were all invented and developed by engineers at Newracom."  Dkt. 1 ¶44.  Newracom, Inc. ("Newracom"), the original owner of all Asserted Patents, is headquartered outside of Irvine, CA—close to the headquarters of TP-Link USA and Atlas's parent Acacia.  Atlas makes much of Newracom's purported "major" contributions to the 802.11ax wireless standard and alleges that the TP-Link Defendants became aware of the Asserted Patents through the actions of Newracom.  Moreover, several of the named

inventors are located in the CDCA (or elsewhere in California), as are Newracom's other corporate witnesses. These third parties can testify to, among other things: the prosecution of the Asserted Patents; the sale of the Asserted Patents; licensing of the Asserted Patents; products covered by the Asserted Patents and compliance (or lack thereof) with the patent marking statute; Newracom's purported role in developing the 802.11ax wireless standard; and TP-Link's alleged pre-suit knowledge of the Asserted Patents (if any). This weighs strongly in favor of transfer.

In short, the EDTX has no legitimate interest in this case. With *none* of the parties having any material connection to the EDTX; with non-party TP-Link USA of the CDCA being the central figure in Atlas's jurisdictional and infringement theories; with Atlas's own CEO and its ultimate parent Acacia being located in the CDCA; and with several named inventors and Newracom's other important witnesses being subject to the CDCA's subpoena power, it clearly would be more convenient to litigate in the CDCA. The Court should therefore transfer venue.

## II.     FACTUAL BACKGROUND

### A.     Defendant TP-Link China Has No Connection to the EDTX

TP-Link China is a privately held corporation organized under the laws of China, with its headquarters and principal place of business in Shenzhen, China. Declaration of Yanmei Zhang ("Zhang Decl.") at ¶ 2. TP-Link China does not have any employees or agents in Texas. *Id*. at ¶ 3. Nor does it own, lease, or operate any offices or other facilities in Texas. *Id*. TP-Link China does not design, manufacture, sell, or offer to sell any products in Texas. *Id*. TP-Link China does not ship products to Texas, and it does not conduct any marketing or advertising in, or directed toward, Texas. *Id*.

### B.     Defendant TP-Link Hong Kong Has No Connection to the EDTX

TP-Link Hong Kong is a privately held corporation organized under the laws of Hong Kong, with its headquarters and principal place of business in Hong Kong. Declaration of

Jianmei Sun ("Sun Decl.") at ¶ 3.  TP-Link Hong Kong does not have any employees or agents in Texas.  *Id*.  Nor does it own, lease, or operate any offices or other facilities in Texas.  *Id*.  TP-Link Hong Kong does not design, manufacture, sell, or offer to sell any products in Texas.  *Id*.  TP-Link Hong Kong does not ship products to Texas, and it does not conduct any marketing or advertising in, or directed toward, Texas.  *Id*.

      **C.**    **Non-Party TP-Link USA Is Located in the CDCA**

Atlas repeatedly accuses non-parties of importing and selling the accused products in the United States as alleged "related" entities and "distributors" of the accused infringing products, supposedly "acting in concert" with the TP-Link Defendants.  *See* Dkt. 1 at ¶¶ 15, 16, 20, 21, 24, 25, 29, 32, 33, 35.  But TP-Link USA, a California corporation with its headquarters and principal place of business in the CDCA at Irvine, CA, is solely responsible for importing, marketing, advertising, offering to sell, and selling "TP-Link branded" products in the United States, including the accused products in this case.  Zhang Decl. at ¶ 4.  TP-Link USA is a wholly owned subsidiary of non-party TP-Link UK, Ltd., and not a subsidiary (either directly or indirectly) of either of the TP-Link Defendants.  *Id*.; Sun Decl. at ¶ 3.  Neither of TP-Link China or TP-Link Hong Kong directs or controls the activities of TP-Link USA in importing, marketing, advertising, offering to sell, or selling TP-Link branded products in the United States.  *Id*.  As such, per Atlas's own jurisdictional and infringement allegations in the Complaint, TP-Link USA has the most relevant witnesses to this case.  There is nothing to suggest that there is any physical, geographical location from which TP-Link USA carries out business other than the CDCA.

      **D.**    **Atlas's Ultimate Parent Acacia Has Witnesses and Evidence in the CDCA**

Atlas is a recently formed shell company run by its ultimate parent, Acacia.  Acacia's largest office is located in the CDCA, close to TP-Link USA's headquarters in Irvine, CA (and

also close to third-party Newracom's Irvine-area headquarters).  Mayle Decl. Ex. 1 (Acacia's Sept. 30, 2021 SEC Form 10-Q) at 27 ("On June 7, 2019, we entered into a building lease agreement … we have leased approximately 8,293 square feet of office space in Irvine, California.").[3]  Many of the leadership positions of Atlas (including its CEO, CFO, Sr. VP and Director, and Organizer) are staffed by Acacia's employees:

- **Atlas' CEO is Mark W. Booth** of Newport Beach, CA, which is in the CDCA.  Ex. 2. Mr. Booth presents himself as "Chief IP Officer at Acacia Research."  Ex. 3.  He has been "[t]asked by Acacia's new Board of Directors with managing and growing Acacia's patent licensing business" and is "[r]esponsible for all aspects of the business, including portfolio analysis, acquisition and licensing."  *Id*.  Further, Acacia's "Management Team" webpage identifies Mr. Booth as "the Chief IP Officer at Acacia Research Corporation."  Ex. 4.

- **Atlas's CFO, Kirsten Hoover**, also resides or works in Newport Beach, CA in the CDCA.  Ex. 6.  Acacia recently named Ms. Hoover as its PAO (principal accounting officer).  Ex. 5 (April 29, 2022 SEC Form 8-K).

- **Atlas's Sr. Vice President and Director Eric Lucas** also resides or works in Irvine, CA. Ex. 2.  Mr. Lucas holds himself out as the Senior Vice President, Licensing and Litigation at Acacia.  Ex. 7.

- **The "organizer" that signed Atlas's Certificate of Formation, Jennifer Graff**, lists her address as being in the CDCA in Irvine, CA.  Ex. 9 at 6.  She is also Acacia's "Director of Compliance & Corporate Secretary."  Ex. 8.

---

[3] Exhibits to this motion are attached to the Declaration or Edward J. Mayle ("Mayle Decl.").

For all these reasons, Acacia and its witnesses in the CDCA are indisputably highly relevant third-party witnesses and are located in the CDCA.

### E.    Atlas Itself Has Important Connections to the CDCA

Atlas was formed on August 6, 2020, shortly before it filed suit in this case.  Ex. 2; Ex. 9. And as mentioned previously, Atlas's executives, including its CEO Mark W. Booth, its CFO Kirsten Hoover, its Senior Vice President and Director Eric Lucas, and its Organizer Jennifer Graff, are located in the CDCA.  *See* Section II.D, *supra*.  Atlas's CDCA-based executives run Acacia's (and hence, Atlas's) patent licensing and litigation operations.  *Id*.  Thus, Atlas itself indisputably has highly relevant witnesses and evidence in the CDCA.

### F.    Third Party Newracom, the Original Owner of the Asserted Patents, and Several Named Inventors Are Located in the CDCA

Newracom, the original owner of all Asserted Patents, is headquartered in the CDCA outside of Irvine in Lake Forest, CA.  Ex. 10.  Newracom is thus located very close to (i) the headquarters of non-party TP-Link USA; (ii) the Irvine location of Atlas's ultimate parent Acacia; and (iii) to the known locations of many of Atlas's executives, including its CEO.

Further, Atlas's own Complaint establishes that Newracom is an important third-party witness.  Atlas alleges that the "Asserted Patents were all invented and developed by engineers at Newracom."  Dkt. 1 at ¶44.  Moreover, Atlas makes much of Newracom's purported "major" contributions to the 802.11ax wireless standard, and it speculates that the TP-Link Defendants became aware of the Asserted Patents through certain actions of Newracom.  *Id*. at ¶¶ 44-46, 62, 102.  Newracom thus likely has many relevant witnesses and important sources of proof in the CDCA.  These witnesses likely can testify regarding: Newracom's patent prosecution files; Newracom's patent licensing files; Newracom's patent assignment files; Newracom's inventor notebooks and related files; Newracom's patent marking files; Newracom's prototype products;

Newracom's conception and reduction to practice documents and physical evidence;

Newracom's product development files; Newracom's marketing and financial documents;

Newracom's files relating to its participation with the 802.11ax standard; and Newracom's

communications with TP-Link regarding the Asserted Patents, if any.

Moreover, several of the Newracom engineers named as inventors on the Asserted Patents

are located in the CDCA or elsewhere in California.  These important witnesses—many of which

are no longer at Newracom and are unlikely to voluntarily travel to the EDTX—include:

- **<u>Jong Ee Oh</u>** of Irvine, a current employee of Newracom (Ex. 11);

- **<u>Young Hoon Kwon</u>** of Laguna Niguel, now at third-party NXP (Ex. 12);

- **<u>Yongho Seok</u>** of San Jose, now at third-party MediaTek  (Ex. 13);

- **<u>Yujin Noh</u>** of Irvine, now at third-party Senscomm (Ex. 14);

- **<u>Sungho Moon</u>** of Santa Clara, now at Intel (Ex. 15); and

- **<u>Ahmad Reza Hedayat</u>** of San Diego, now at Charter Communications (Ex. 16)

## III.    LEGAL STANDARDS

A district court may transfer a case to "any other district or division where it might have

been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of

justice."  28 U.S.C. §1404(a).  A transfer of venue analysis has two steps.  First, courts decide

"whether a civil action 'might have been brought' in the destination venue."  *In re Volkswagen of*

*Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (quoting 28 U.S.C. §1404(a)).  Second, courts

consider eight factors to decide whether transfer would promote the convenience of the parties

and witnesses and/or the interest of justice.  *Id.* at 314-15.[4]

---

[4] *Id.* at 314-15 (the transfer factors include "(1) the relative ease of access of sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

As one particularly relevant factor in patent cases, "the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech, Inc*., 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

If the proposed transferee forum is "clearly more convenient" than the current forum, the case should be transferred. *Volkswagen*, 545 F.3d at 315; *see also In re Acer Am. Corp*., 626 F.3d 1252, 1256 (Fed. Cir. 2010); *Uniloc USA, Inc. v. Apple Inc*., No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *10 (E.D. Tex. Dec. 22, 2017) ("[T]he Court finds that the significant number of both party and non-party witnesses in California have shown that the convenience of the witnesses weighs strongly in favor of transfer.").

## IV.    THIS CASE SHOULD BE TRANSFERRED TO THE CDCA

This case should be transferred to the CDCA because (i) no party has any material connection to the EDTX; (ii) Atlas and the relevant third parties and their evidence, including TP-Link USA, Acacia, Newracom, and several named inventors, are located in the CDCA; and (iii) this Court should not condone Atlas's attempt to manipulate venue by deliberately omitting from this lawsuit the undisputed importer and seller of the accused products in the United States, TP-Link USA, which is located in the CDCA near Acacia and Newracom.

### A.    This Action Could Have Been Brought in the CDCA

In the Complaint, Atlas alleges that the EDTX has personal jurisdiction over the TP-Link Defendants under the "stream of commerce" theory because TP-Link China and TP-Link Hong

---

attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law").

Kong deliver the accused products to "distributors" (*i.e.*, TP-Link USA) in the United States. The TP-Link Defendants dispute that allegation and have moved to dismiss for lack of personal jurisdiction in this District.  Moreover, in their motion to dismiss, the TP-Link Defendants have already stated that they agree to submit to jurisdiction in the CDCA.  Accordingly, the "threshold requirement" is met, and the Court should decide whether the CDCA is a clearly more convenient forum.  *Uniloc USA, Inc*., 2017 WL 11553227, at *5.[5]

### B.      The CDCA Is Clearly More Convenient Than the EDTX

The CDCA is clearly more convenient.  Several factors strongly favor transfer, including the convenience of the witnesses; the relative ease of obtaining evidence; the availability of compulsory process for third-party witnesses (including several third parties that Atlas itself touts as critical to numerous issues in this case); the local interest; and the public policy that plaintiffs like Atlas should not be allowed to manipulate venue by omitting the key party.  At most, the other factors are neutral.  And no factor favors keeping this action in the EDTX.

### 1.      The Cost of Attendance of Willing Witnesses Favors Transfer

First, absent transfer to the CDCA, Atlas's likely party witnesses (including its CEO Marc Booth, its CFO Kirsten Hoover, its Senior Vice President and Director Eric Lucas, and its Organizer Jennifer Graff—all of whom are also Acacia executives) would have to travel from the CDCA where they live and work to testify at trial in the EDTX.  *See* Section II.D-E, *supra*.  The extra travel time and expense associated with testifying makes the EDTX clearly less convenient for these witnesses, as it would disrupt their family and business lives, which are centered in the CDCA.  *10Tales, Inc. v. TikTok Inc*., No. 6:20-cv-00180-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021) ("Rather than time-consuming and costly travel being inevitable regardless

---

[5] If the CDCA lacks personal jurisdiction, then so too does this Court.

of venue, most witnesses here are faced with either extreme—the NDCA as arguably the most convenient federal forum for such witnesses, or this District located over 1,300 miles further."); *Uniloc USA, Inc.*, 2017 WL 11553227, at *9 (ordering transfer where "Apple has named multiple party and non-party witnesses residing within the Northern District of California, while Uniloc has named only one employee who resides part-time in the Eastern District of Texas."). This is the "single most important factor," and it strongly favors transfer of this action to the CDCA. *Genentech*, 566 F.3d at 1343 (citation omitted).

Second, neither of TP-Link China or TP-Link Hong Kong has *any* witnesses or evidence in the United States.  If TP-Link Defendant witnesses are forced to travel to the United States for trial, trial in the CDCA would be more convenient because the Los Angeles International Airport is closer to Asia than any airport in Texas.  *In re Volkswagen of Am., Inc.*, 545 F.3d at 317 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").

Third, to the extent any third-party witnesses are "willing" to travel to the EDTX—the known third-party witnesses from TP-Link USA, Acacia, Newracom, as well as the third-party inventors that no longer work for Newracom, would have to travel from California where they live and work to testify at trial in the EDTX.  *See* Section II.C-F, *supra*.  This strongly supports transfer.  *10Tales*, No. 6:20-cv-00180-ADA, 2021 WL 2043978, at *4; *Uniloc USA*, 2017 WL 11553227, at *9 (ordering transfer).  And as discussed further below, if these third parties are not willing to travel to the EDTX to testify in this case (and many of them likely are not), they cannot be compelled to do so by this Court.  *See* Section IV.B.3, *infra*.

      **2.**      **The Relative Ease of Access to Source of Proof Favors Transfer**

The relative ease of access to sources of proof is another important factor that favors transfer here.  *In re Apple Inc*., 979 F.3d at 1340 ("[T]he bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (quoting *In re Genentech, Inc*., 566 F.3d at 1345).  Under this factor, "the question is relative ease of access, not absolute ease of access." *Data-Scape, Ltd. v. Dell Techs., Inc*., No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *2 (W.D. Tex. June 7, 2019) (citation omitted); *see also Genentech*, 566 F.3d at 1345.  There is significant evidence located in the CDCA, and *zero* evidence identified as residing in the EDTX. So this factor also strongly favors transfer. *10Tales, Inc*., 2021 WL 2043978, at *2.

First, neither of the TP-Link Defendants has any evidence in the EDTX.  *See* Section II.A-C, *supra*.  TP-Link USA located in the CDCA is solely responsible for importing, offering to sell, and selling TP-Link branded products in the United States, including the accused products.  *Id*.  The evidence relating to sales, damages, and Atlas's alleged jurisdictional and infringement theories thus resides in the possession, custody, and control of a non-party located in the CDCA.  *Id*.

Second, important parts of Atlas's own evidence and many of its own witnesses are likely located in the CDCA.  As mentioned previously, Atlas is a recently formed shell company that is ultimately owned and controlled by Acacia.  Sections II.D-E, *supra*.  Atlas and Acacia have many overlapping executives based in the CDCA, including Atlas's CEO Mark W. Booth (who is also Chief IP Officer at Acacia), Atlas's CFO Kirsten Hoover (who is also Acacia's PAO), Atlas's Senior Vice President and Director Eric Lucas (who is also Acacia's Senior Vice President, Licensing and Litigation), and Atlas's Organizer Jennifer Graff (who is also Acacia's

11

Director of Compliance and Corporate Secretary). *See id.* These executives likely have sources of proof in the CDCA where they reside and work.

Third, several of third-party Newracom's former and current California-based employees are named as inventors on the Asserted Patents, and Newracom itself has other corporate witnesses with relevant evidence in the CDCA. *See* Section II.F, *supra*.[6]

For all of these reasons, access to proof also strongly favors transfer to the CDCA. *10Tales, Inc.*, 2021 WL 2043978, at *2 ("While TikTok may generate or store physical documentation at locations in other districts, the physical documentation relating to the substantive focus of the complaint is likely to come from TikTok's operations in California.").

### 3. The Availability of Compulsory Process Favors Transfer

This factor also strongly favors transfer. This factor "considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 13, 2019). "This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 Fed. App'x 886, 889 (Fed. Cir. 2014).

---

[6] Such witnesses and evidence likely includes Newracom's patent prosecution files and associated witnesses; Newracom's licensing files and associated witnesses; Newracom's patent assignment files and associated witnesses; Newracom's inventor notebooks and associated witnesses; Newracom's patent marking files and associated witnesses; Newracom's prototype products and associated witnesses; Newracom's conception and reduction to practice products and associated witnesses; Newracom's product development files and associated witnesses; Newracom's marketing and financial documents and associated witnesses; Newracom's files relating to its alleged participation with the 802.11ax wireless standard and associated witnesses; and Newracom's communications with TP-Link regarding the Asserted patents, if any, and associated witnesses. *See* Section II.F, *supra*.

That is the case here because far more non-party witnesses are located in the CDCA (or elsewhere in California) than in the EDTX. *See* Sections II.C-F, *supra*. These include:

- **Corporate representatives from TP-Link USA**: including people that can testify about importation of the accused infringing products, and marketing and sales of the accused infringing products in the United States.  *See* Section II.C, *supra*.

- **Corporate representatives from Atlas's ultimate parent, Acacia**: including people that can testify about Atlas's recent formation; Acacia's patent licensing and litigation business model; and Acacia's comparable licenses.  *See* Sections II.D-E, *supra*.

- **Named inventors of the Asserted Patents** *See* Section II.F, *supra*.

- **Newracom witnesses**: including peopled that can testify about patent prosecution; licensing; patent assignments; inventor notebooks and related documents; patent marking; conception and reduction to practice physical evidence; product development; marketing and financial documents; Newracom's alleged participation with the 802.11ax wireless standard; and Newracom's communications with TP-Link, if any.  *See* Section II.F, *supra*.

Indeed, as discussed above, numerous jurisdictional and infringement allegations in Atlas's own Complaint center on non-party TP-Link USA as an alleged "related" entity and "distributor" of the accused infringing products that supposedly is "acting in concert" with the named TP-Link Defendants.  *See* Dkt. 1 at ¶¶ 15, 16, 20, 21, 24, 25, 29, 32, 33, 35.  In this same vein, Atlas's own allegations establish that third-party Newracom, as well as several named inventors, are important witnesses located in the CDCA.  *See* Dkt. 1 at ¶¶ 4, 44-46, 62, 102. Thus, per Atlas's own allegations, non-party TP-Link USA and Newracom and their respective employees are critical to Atlas's jurisdictional, infringement, and damages theories.  So this factor also strongly favors transfer because of the availability of compulsory process in the

13

CDCA. *10Tales, Inc.*, 2021 WL 2043978, at *3 ("The allegations set forth in 10Tales' complaint implicates third-party entities such as Google, Apple, and various social media companies all of which are well-known to have strongest presence in California."); *Uniloc USA, Inc*, No. 2017 WL 11553227, at *6-*7 (finding availability of compulsory process favors transfer).

### 4.      The Local Interest Favors Transfer

The local interest factor also favors transfer.  First, the CDCA is home to TP-Link USA, a significant business that could be impacted by this case, and also home to employees whose livelihoods also could be impacted.  Section II.C, *supra*.  Second, Atlas itself has a material presence in the CDCA, as its executives (including its CEO, CFO, Senior Vice President and Director, and Organizer), and its ultimate parent Acacia are all located there.  Sections II.D-E, *supra*.  Atlas was only recently formed in the EDTX, and when a plaintiff's incorporation, office, and documents in Texas "were recent, ephemeral, and a construct for litigation" like here, they are entitled to no weight.  *In re Samsung Elecs. Co., Ltd*., 2 F.4th at 1378.  Third, Newracom— original owner of the Asserted Patents and a purported major contributor to the 802.11ax wireless standard—and several of the named inventors are also located in the CDCA or elsewhere in California.  Section II.D-F, *supra*.

In contrast to the CDCA's substantial interest, the EDTX has no legitimate interest in this case; the recent formation of Atlas in the EDTX is merely "a fiction which appears to have been created to manipulate the propriety of venue." *In re Hoffmann-La Roche Inc*., 587 F.3d at 1337.

### 5.      Court Congestion Is Neutral

The median time from filing to trial in civil cases was 23.0 months in the EDTX and 24.2 months in the CDCA.  *See* Ex. 17.  Moreover, when, as here, "other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh those other factors.'" *In re Juniper Networks, Inc*., 14 F.4th 1313, 1322 (Fed. Cir.

2021) (quoting *In re Genentech, Inc*. 566 F.3d 1338, 1347 (Fed. Cir. 2009)).  Such time-to-trial statistics "are plainly insufficient to warrant keeping this case" in the EDTX "given the striking imbalance favoring transfer based on the other convenience factors." *In re Netflix, Inc*., No. 2022-110, 2022 WL 167470, at *5 (Fed. Cir. Jan. 19, 2022).

### 6.      The "Other Practical Problems" Factor Favors Transfer

As discussed in TP-Link Defendants' pending motion to dismiss, this Court does not have personal jurisdiction, but the TP-Link Defendants have agreed to suit in the CDCA where TP-Link USA is located.  Moreover, TP-Link USA could be joined in the CDCA, but cannot be joined here because it has no regular and established place of business in the EDTX. Transferring the case would avoid having to decide the contested issues of jurisdiction.

Further, this Court should not allow Atlas to manipulate venue by deliberately omitting TP-Link USA from suit while, at the same time, using TP-Link USA as the basis for alleged jurisdiction against TP-Link China and TP-Link Hong Kong.  So if the Court does not dismiss this case outright, it should transfer it to the CDCA.  *In re Samsung Elecs*, 2 F.4th at 1377 ("[W]e are not bound by a plaintiff's efforts to manipulate venue."); *id*. at 1379 ("[D]isregarding this manipulation," plaintiff "could have filed suit in the Northern District of California").

### 7.      All Remaining Factors Are Neutral

Both forums have experience and expertise in patent law, and the TP-Link Defendants are unaware of any issues related to conflicts of laws or the application of foreign law.

## V.      CONCLUSION

Several factors strongly favor transfer and no factors favor keeping this case in the EDTX.  Thus, if this Court does not dismiss the case, it should transfer it to the CDCA.

Dated:  May 16, 2022

Respectfully submitted,

/s/ *Kristopher L. Reed*
Steven D. Moore
(Eastern District of Texas Member)
KILPATRICK, TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
smoore@kilpatricktownsend.com

Kristopher L. Reed
(Eastern District of Texas Member)
KILPATRICK, TOWNSEND & STOCKTON LLP
2001 Ross Avenue, Suite 4400
Dallas, TX 75201
Telephone: (214) 922-7143
Facsimile: (214) 922-7101
kreed@kilpatricktownsend.com

Kevin M. Bell
(Eastern District of Texas Member)
Edward J. Mayle
(*pro hac vice*)
KILPATRICK, TOWNSEND & STOCKTON LLP
1400 Wewatta Street Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
kbell@kilpatricktownsend.com
tmayle@kilpatricktownsend.com

Andrew N. Saul
(Eastern District of Texas Member)
KILPATRICK, TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
asaul@kilpatricktownsend.com

Melissa R. Smith
(Eastern District of Texas Member)
GILLIAM & SMITH LLP
303 South Washington Avenue

16

Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendants*

17

## **CERTIFICATE OF CONFERENCE**

Counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and the motion is opposed.  The personal conference required by this rule was conducted on May 16, 2022.  No agreement could be reached and the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/  Melissa R. Smith*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 16, 2022, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

*/s/  Melissa R. Smith*