# <u>EXHIBIT 1</u>

**No. _____**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## IN RE ZTE CORPORATION

*Petitioner*.

On Petition for a Writ of Mandamus to the
United States District Court for the Western District of Texas
No. 6:22-cv-00136 through -00139
Judge Alan D. Albright

## PETITION FOR A WRIT OF MANDAMUS

Lionel M. Lavenue
David K. Mroz
Bradford C. Schulz
FINNEGAN, HENDERSON, FARABOW
    GARRETT & DUNNER, LLP
1875 Explorer Street, 8th Floor
Reston, VA 20190-6023
Telephone: (571) 203-2750
Facsimile: (202) 408-4400

*Attorneys for Petitioner*

May 5, 2022

## Certificate of Interest

**Case Numbers** _____

**Short Case Caption**   _In re ZTE Corporation_____

**Filing Party/Entity**   ZTE Corporation, Petitioner____

---

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: _May 5, 2022_

Signature:  _/s/ Lionel M. Lavenue_____

Name:       Lionel M. Lavenue_____

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☒ None/Not Applicable | ☒ None/Not Applicable |
| ZTE Corporation | None | None |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| FINNEGAN, HENDERSON, FARABOW, GARRETT, & DUNNER LLP Lionel M. Lavenue | FINNEGAN, HENDERSON, FARABOW, GARRETT, & DUNNER LLP David K. Mroz | FINNEGAN, HENDERSON, FARABOW, GARRETT, & DUNNER LLP Bradford C. Schulz |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

| **6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). |||
|---|---|---|
| ☒    None/Not Applicable | ☐    Additional pages attached ||
| Not Applicable |  |  |

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................. xi

ISSUE PRESENTED ........................................................................................ xii

INTRODUCTION ................................................................................................ 1

RELIEF SOUGHT ............................................................................................... 4

STATEMENT OF JURISDICTION .................................................................... 5

STATEMENT OF FACTS ................................................................................... 5

REASONS WHY THE WRIT SHOULD ISSUE ................................................. 7

    A.    MANDAMUS IS NECESSARY BECAUSE BRAZOS HAS
    NOT SERVED ZTEC IN ACCORDANCE WITH TEXAS
    LAW AS IT WAS REQUIRED TO DO ............................................... 7

        1.    The District Court Erred by Circumventing the Law
        Requiring Compliance Through the Hague Convention
        for Direct Service on a Foreign Entity Under Rules
        4(h)(2) and 4(f)(1) ........................................................... 9

            a.    The District Court Disregarded Long Standing
            Precedent from the Supreme Court, Fifth Circuit,
            and the Texas Long-Arm Statute ................................. 10

            b.    The District Court Ordering Alternative Service
            Was Not Warranted Simply Because Brazos
            Initially Attempted Direct Service by Mailing
            Documents Abroad ...................................................... 14

            c.    The District Court Clearly Abused Its Discretion in
            Permitting Alternative Service not in Compliance
            with the Hague Convention ......................................... 16

        2.    The District Court Improperly Found Non-Party
        ZTEUSA a Domestic "Agent" of ZTEC for Indirect
        Service Purposes Under Rule 4(h)(1)(B) ............................... 20

3. The District Court Erred by Finding That Alternative Service Here Satisfies Due Process for Foreign Defendants Sued in Texas.......................................................24

B. MANDAMUS IS APPROPRIATE.....................................................26

1. The District Court Clearly Abused Its Discretion in Permitting Alternative Service...................................................28

2. ZTEC Has No Adequate Remedy on Appeal ...........................28

3. This Court Should Grant Mandamus to Decide This Basic Question Which Will Recur in Future Cases.................29

CONCLUSION ...................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) ......................................................................27

*Affinity Labs of Tex., LLC v. Nissan N. Am. Inc.*,
  2014 WL 11342502 (W.D. Tex. July 2, 2014)............................................17

*Arroyo v. Oprona, Inc.*,
  No. 16-cv-852, 2016 WL 8607594 (S.D. Tex. Dec. 30, 2016) ..........................21

*In re Atl. Pipe Corp.*,
  304 F.3d 135 (1st Cir. 2002)........................................................................30

*Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS*,
  54 F. Supp. 2d 691 (S.D. Tex. 1999).........................................................12

*BMC Software Belgium N.V. v. Marchand*,
  83 S.W.3d 789 (Tex. 2002)..........................................................................22

*In re BP Lubricants USA Inc.*,
  637 F.3d 1307 (Fed. Cir. 2011) .............................................................27, 30

*Brewer v. Suzuki Motor of Am., Inc.*,
  No. 4:15-cv-197, 2015 WL 4433046 (S.D. Tex. July 17, 20 .............................20

*In re Calmar, Inc.*,
  854 F.2d 461 (Fed. Cir. 1988) ....................................................................26

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
  267 U.S. 333 (1925).....................................................................................21

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*,
  No. 3:17-cv-01827-N, 2018 WL 3330022 (N.D. Tex. Mar. 16,
  2018) ...............................................................................................*passim*

*Glencore Ltd. v. Occidental Argentina Expl. and Prod., Inc.*,
  No. 11-cv-3070, 2012 WL 591226 (S.D. Tex. Feb. 22, 2012)...........................21

*Hargrave v. Fibreboard Corp.*,
 710 F.2d 1154 (5th Cir. 1983) ........................................................................20, 22

*Hoffman v. Blaski*,
 363 U.S. 335 (1960)..............................................................................................29

*Inc. v. Zamil Group Holding, Co.*,
 578 F. App'x 325 (5th Cir. 2014) ........................................................................20

*In re Innotron Diagnostics*,
 800 F.2d 1077 (Fed. Cir. 1986) ......................................................................29, 30

*In re Juniper Networks, Inc.*,
 14 F.4th 1313 (Fed. Cir. 2021) ..............................................................................5

*In re Katrina Canal Breaches Litig.*,
 309 F. App'x 833 (5th Cir. 2009) .......................................................................7, 14

*Kreimerman v. Casa Veerkamp, S.A. de C.V.*,
 22 F.3d 634 (5th Cir. 1994) ...............................................................................3, 15

*LaBuy v. Howes Leather Co.*,
 352 U.S. 249 (1957)..............................................................................................27

*Lisson v. ING Groep N.V.*,
 262 F. App'x 567 (5th Cir. 2007) .......................................................................20, 23

*Macrosolve, Inc. v. Antenna Software, Inc.*,
 No. 6:11-cv-287, 2012 WL 12903085 (E.D. Tex. Mar. 16, 2012).....................12

*Miss. Publ'g Corp. v. Murphree*,
 326 U.S. 438 (1946)..............................................................................................10

*Monolithic Power Sys. Co., Ltd. v. Meraki Integrated Circuit
 (Shenzhen) Tech., Ltd.*,
 No. 6:20-cv-00876, 2021 WL 4974040 (W.D. Tex. Oct. 25, 2021) ..................18

*Nat'l Right to Work Legal Def. v. Richey*,
 510 F.2d 1239 (D.C. Cir. 1975).......................................................................31, 33

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
 484 U.S. 97 (1987)..................................................................................3, 10, 15, 19

*In re OnePlus Technology (Shenzhen) Co., Ltd.*,
  No. 21-165, 2021 WL 4130643 (Fed. Cir. Sept. 10, 2021)............................9, 17

*Paradigm Ent., Inc. v. Video Sys. Co., Ltd.*,
  No. 99-cv-2004, 2000 WL 251731 (N.D. Tex. Mar. 3, 2000) .....................21, 22

*Pennebaker v. Kawasaki Motors Corp., U.S.A.*,
  155 F.R.D. 153 (S.D. Miss. 1994)...................................................................21

*In re Recticel Foam Corp.*,
  859 F.2d 1000 (1st Cir. 1988)........................................................................30

*Religious Tech. Ctr. v. Liebreich*,
  339 F.3d 369 (5th Cir. 2003) .......................................................................9, 11

*Sang Young Kim v. Frank Mohn A/S*,
  909 F. Supp. 474 (S.D. Tex. 1995)..................................................................12

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964)..................................................................................27, 28

*Sheets v. Yamaha Motors Corp., U.S.A.*,
  891 F.2d 533 (5th Cir. 1990) .............................................................3, 11, 12, 15

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017)...........................................................................5, 28, 29, 32

*Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*,
  No. 2:18-cv-00412, 2019 WL 8137134 (E.D. Tex. Oct. 22, 2019) ...................12

*Trustees of Purdue University v. STMicroelectronics N.V.*,
  No. 6:21-cv-00727, 2021 WL 5393711 (W.D. Tex. Nov. 18, 2021).....18, 19, 26

*United States v. Horn*,
  29 F.3d 754 (1st Cir. 1994)............................................................................30

*United States v. Hughes*,
  413 F.2d 1244 (5th Cir. 1969) ........................................................................32

*UNM Rainforest Innovations v. D-Link Corp.*,
  No. 6-20-cv-00143-ADA, 2020 WL 3965015 (W.D. Tex. July 13,
  2020) ..........................................................................................................23

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ......................................................................................29

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1998).............................................................................3, 10, 11, 15

*WSOU Invs. LLC v. Huawei Techs. Co., Ltd.*,
No. 6:20-cv-00198 (W.D. Tex. 2020) ...........................................................................6

*WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co., Ltd.*,
Nos. 6:20-cv-00952, -00953, and -00956 (W.D. Tex. 2020) ..............................6

*WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co., Ltd*,
2021 WL 2870679 (W.D. Tex. July 8, 2021) ....................................................17

**Federal Statutes**

All Writs Act, 28 U.S.C. § 1651 ..................................................................................5

**State Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 17.043 (2015)........................................12, 15

Tex. Civ. Prac. & Rem. Code Ann. § 17.045 ...............................................................9

Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a).......................................................11

Tex. Civ. Prac. & Rem. Code Ann. § 17.045(c).......................................................11

**Rules**

Federal Rule of Civil Procedure 4 ...............................................................3, 12, 13

Federal Rule of Civil Procedure 4(e)........................................................................27, 28

Federal Rule of Civil Procedure 4(f)(1).....................................................................1

Federal Rule of Civil Procedure 4(f)(3).............................................................*passim*

Federal Rule of Civil Procedure 4(h)(1)(B)........................................................7, 20

Federal Rule of Civil Procedure 4(h)(2) ...........................................................*passim*

Federal Rule of Civil Procedure 4(k)(1)..................................................................11

Federal Rule of Civil Procedure 4(k)(1)(a).................................................................2, 10, 13

Federal Rule of Civil Procedure 12(b)(5).......................................................................4, 7, 9

**Other Authorities**

20 U.S.T. 361 (Nov. 15, 1965) ....................................................................................1

16 Charles Alan Wright et al., Federal Practice & Procedure § 3934.1
    (3d ed. 2007) ............................................................................................30

Dani Kas, "Judge Albright Now Oversees 20% of New US Patent
    Cases," ....................................................................................................32

Law360, https://www.law360.com/articles/1361071/judge-albright-
    now-oversees-20-of-new-us-patent-cases (Mar. 21, 2021)...............................32

*Supervisory and Advisory Mandamus Under the All Writs Act*, 86
    Harv. L. Rev. 595, 618 (1973)......................................................................30

*Supreme Court Decision Will Result in Fewer Patent Suits in Eastern
    District of Texas*, Wolf Greenfield IP Alerts,
    https://www.wolfgreenfield.com/publications/ip-
    alerts/2017/supreme -court-decision-will-result-in-fewer-patent-
    suits-in-eastern-district-of-texas (May 22, 2017) .............................................32

## STATEMENT OF RELATED CASES

No appeals in or from the same civil action or proceeding in the lower court have previously been before the Federal Circuit or any other appellate court.

## ISSUE PRESENTED

Whether the Western District of Texas improperly permitted alternative service and wrongfully exercised general jurisdiction over a foreign corporation after the plaintiff transmitted documents abroad as required by the Texas long-arm statute—which invoked the Hague Convention—but never actually completed its service under the Hague Convention.

## <u>INTRODUCTION</u>

Petitioner ZTE Corporation[1] ("ZTEC") is a foreign defendant based in China. Because both the United States and China are signatories to the Hague Convention (a longstanding international treaty), ZTEC is afforded its protections. 20 U.S.T. 361 (Nov. 15, 1965) (hereinafter "Hague Convention"). These protections ensure that service of process on foreign defendants like ZTEC is effectuated fairly and properly.

The Texas long-arm statute requires compliance with the Hague Convention for foreign defendants. It mandates that service papers for foreign defendants be transmitted abroad, which is what invokes the Hague Convention. Here, when Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos") initiated service of process on ZTEC, it transmitted documents abroad to ZTEC's headquarters in China (as required by the Texas long-arm statute). In doing so, Brazos invoked the Hague Convention. But Brazos stopped there—it did nothing to *finish* effectuating service in compliance under the Hague Convention pursuant to Federal Rules of Civil Procedure 4(h)(2) and 4(f)(1), which cover service of corporations *outside* the United States. Instead, Brazos bypassed the Hague Convention and attempted alternative service domestically under Rule 4(h)(1)(B)

---

[1] "ZTE" references ZTE Corporation, but for clarity throughout this petition, petitioner may further make distinctions between ZTE Corporation ("ZTEC") and ZTE (USA), Inc. ("ZTEUSA").

and 4(f)(3) by delivering the complaints in the WDTX to a ZTEC U.S. entity, ZTE (USA), Inc. ("ZTEUSA"), a Northern District of Texas entity that is misvenued in the WDTX. But service in this manner—i.e., service under Rules 4(h)(1)(B) and 4(f)(3)—is not proper here because ZTEC is not a domestic corporation and does not reside in the United States, and Brazos failed to demonstrate ZTEUSA was an appropriate agent for service of ZTEC.

Notably, Brazos sought leave from the district court to serve alternatively under Rules 4(h)(1)(B) and 4(f)(3) and was permitted to do so. In the order permitting this domestic service (which is the order underlying this Petition), the WDTX recognized that documents were transmitted abroad—*but never required compliance with the Hague Convention. See* D.I. 14 (Appx1).[2] This created an end-run around to the Hague Convention and Rules 4(h)(2) and 4(f)(1), and provided the WDTX with yet another mechanism for improperly keeping cases in Texas and accelerating their case schedules. Allowing the district court's decision to stand would cement this end-run, and the Court's intervention is necessary to correct the injustice.

ZTEC's arguments here align with the Federal Rules of Civil Procedure, Supreme Court precedent, and Fifth Circuit precedent. Under Rule 4(k)(1)(a),

---

[2] "D.I. [#]" refers to filings in the district court and "Ex. [#]" refers to Exhibits in the addendum to this petition.

jurisdiction over ZTEC in the district is only proper if ZTEC is subject to service and jurisdiction of a court of general jurisdiction in Texas. The Supreme Court found that "a federal court normally looks either to a federal statute or *to the long-arm statute of the State in which it sits* to determine whether a defendant is amenable to service." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987) (emphasis added). Texas's long-arm statute requires that documents be transmitted abroad to foreign defendants. Under Fifth Circuit precedent, compliance with the Hague Convention is "mandatory" "in all cases . . . where there is occasion to transmit a judicial . . . document abroad." *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 640 (5th Cir. 1994) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 at 699 (1998)); *see also Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533 at 537 (5th Cir. 1990).

Congress likewise recognizes that service "does not conclusively establish the jurisdiction of the court over the person" and that general jurisdiction is subject to the "territorial limits of the court's reach set forth in subdivision (k)." Fed. R. Civ. P. 4 Advisory Committee's Note to 1993 Amendment (further noting that the 1993 amendment "calls attention to the important effect of the Hague Convention . . . bearing on service of documents in foreign countries and favors the use of internationally agreed means of service"). Thus, under the Federal Rules of Civil Procedure, before the district court can exercise jurisdiction over a foreign defendant

3

in Texas, there must be, at a minimum, service of process that comports with Texas law (which, in turn, requires compliance with the Hague Convention). Because no such service occurred here, the district court clearly erred, abused its discretion, and offended traditional notions of "fair play and substantial justice." Appx3-4. And the district court's ruling should be reversed on mandamus.

ZTEC has no adequate remedy without a grant of mandamus. Absent intervention from this Court, ZTEC will be forced to defend itself in a court that failed to properly effectuate service and thus improperly presides over it. Moreover, whether alternative service under Rule 4(f)(3) can be used to circumvent the Texas long-arm statute, Fifth Circuit precedent, and the Hague Convention is an important legal issue that repeatedly arises in patent cases in Texas and in cases throughout the country. Resolution of this issue now will provide clarity to litigants and return the Hague Convention to its rightful place as an important cog in the American legal system.

## **RELIEF SOUGHT**

ZTEC respectfully seeks a writ of mandamus that reverses the district court's order permitting alternative service and mooting ZTEC's motion to dismiss for improper service under Rule 12(b)(5), and that instructs the district court to dismiss the underlying actions.

4

## STATEMENT OF JURISDICTION

This Court has jurisdiction to grant mandamus relief under the All Writs Act, 28 U.S.C. § 1651. *See, e.g.*, *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017) (reversing this Court's denial of a petition seeking mandamus relief due to improper venue).

## STATEMENT OF FACTS

Plaintiff Brazos filed the underlying actions on February 8, 2022, accusing ZTEC of patent infringement. Appx6. Brazos is a limited liability corporation organized in Delaware, with an alleged place of business at 605 Austin Ave, Ste 6, Waco, TX 76701—an address not associated with Brazos but rather a titling company. Appx6, ¶1. Brazos, a self-proclaimed patent litigation business, was formed just months before initiating its litigation campaign in 2020 and lacks any real connections to WDTX. In fact, this Court already found that Brazos's connections to WDTX are "recent and relatively insubstantial," and that "it appears that the relationship between the Texas forum and Brazos is merely the product of pursuing litigation in a preferred forum." *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1320-21 (Fed. Cir. 2021).

Brazos alleges that it is the owner of all rights of the four asserted patents and alleges that ZTEC, a Chinese corporation, infringes the patents. Appx6, ¶¶1-2. Each of these four patents were previously asserted against Chinese entities OnePlus and

Huawei. One patent was asserted against Huawei in March 2020; and the other three were asserted against OnePlus as early as October 2020. *See WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co., Ltd.*, Nos. 6:20-cv-00952, -00953, and -00956 (W.D. Tex. 2020); and *WSOU Invs. LLC v. Huawei Techs. Co., Ltd.*, No. 6:20-cv-00198 (W.D. Tex. 2020).

Despite the multiple year gap between service of OnePlus and Huawei and the filing of these suits, Brazos never attempted proper service of ZTEC in China through the Hague Convention, even though the United States and China are both signatories to the treaty, even though Rules 4(h)(2) and 4(f)(1) require such service, and even though Brazos *initiated* foreign service by mailing copies of the complaints to ZTEC's headquarters in China. Appx18. Instead, Brazos cut bait on foreign service and served *domestically* under Rules 4(h)(1)(B) and 4(f)(3) after seeking permission from the WDTX to do so. Appx3-4. Thus, Brazos never complied with the Hague Convention as required by Rules 4(h)(2) and 4(f)(1). Appx37, fn.5. Notably, before it sought permission to effectuate alternative service, Brazos also mailed copies of the complaints to non-party ZTEUSA's service processor and emailed copies of the complaints to non-party ZTEUSA's outside counsel for *other* cases, Appx19, but none of this satisfies the Hague Convention.

ZTEC filed a motion to dismiss under Rule 12(b)(5) challenging Brazos's insufficient service of process, and the district court mooted the motion by permitting alternative service. Appx1.

**REASONS WHY THE WRIT SHOULD ISSUE**

**A. MANDAMUS IS NECESSARY BECAUSE BRAZOS HAS NOT SERVED ZTEC IN ACCORDANCE WITH TEXAS LAW AS IT WAS REQUIRED TO DO**

The district court clearly erred in its application of the Federal Rules of Civil Procedure. It erroneously permitted alternative service under Rule 4(f)(3), which allowed Brazos to circumvent Rules 4(h)(2) and 4(f)(1) and the mandatory requirements of the Hague Convention. Appx3-4. The district court permitted "alternative service because [Brazos] attempted service through other means first." Appx3. Brazos first attempted service under Rules 4(h)(2) and 4(f)(1) by mailing copies of the complaint abroad to the ZTEC headquarters *in China*. Appx19 and Appx60-63. Brazos then attempted service under Rule 4(h)(1)(B) by indirect service through an alleged ZTEC domestic agent. Appx19 and Appx60-63. The district court further noted that Brazos attempted service via email. Appx3. None of these service attempts were proper. And several of the service attempts triggered mandatory compliance with the Hague Convention, yet Brazos failed to complete service through the Hague Convention. Appx37, fn.5. Notably, Brazos bears the burden of proving that service was valid. *In re Katrina Canal Breaches Litig.*, 309 F. App'x

7

833, 835 (5th Cir. 2009); *see also Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-cv-01827-N, 2018 WL 3330022, at *2 (N.D. Tex. Mar. 16, 2018). It failed to do so here.

The district court clearly abused its discretion by permitting Brazos to circumvent the Hague Convention through its ruling on alternative service. Appx3-4. Not only did Brazos transmit documents abroad, which alone triggers the Hague Convention under Fifth Circuit precedent, compliance with the Hague Convention is also required by the Texas long-arm statute. The district court failed to properly consider this and erred by finding that Due Process was satisfied through alternative service. Appx4. The district court's bypassing of precedent and Texas long-arm statute offends the traditional notions of "fair play and substantial justice," which have long been rooted in the principle that service and jurisdiction must be tied to the forum state. The district court further erred by concluding, without any analysis, that ZTEC's U.S. subsidiary ZTEUSA was an "authorized agent" for receiving service for ZTEC. Appx3. Mandamus is necessary to correct these errors. If Rule 4(f)(3) can be used as it was used here, Rules 4(h)(2), and 4(f)(1) become meaningless. This Court should not permit this end run-around.

**1. The District Court Erred by Circumventing the Law Requiring Compliance Through the Hague Convention for Direct Service on a Foreign Entity Under Rules 4(h)(2) and 4(f)(1)**

Mandamus relief is necessary because, prior to Brazos completing service properly under the Hague Convention, the district court permitted alternative service under Rule 4(f)(3) and effectively mooted ZTEC's motion to dismiss under Rule 12(b)(5). Appx3-4 (limiting ruling to service); *see also* Appx60-63. Alternative service under 4(f)(3) is reserved for "only when special circumstances have justified departure from the more conventional means of service." *In re OnePlus Technology (Shenzhen) Co., Ltd.*, No. 21-165, 2021 WL 4130643, \*3 (Fed. Cir. Sept. 10, 2021). No departure from the convention Hague Convention was justified here. Brazos initially started down the right path, by mailing the complaints abroad to ZTEC's headquarters in China. Appx19. Mailing documents abroad triggers the Hague Convention under Fifth Circuit precedent and under Texas state law. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.045. Thus, when it mailed the complaints to ZTEC in China, Brazos invoked the Hague Convention.

But Brazos never completed service through the Hague Convention, nor demonstrated an undue burden with compliance through the Hague Convention. Appx37, fn.5. The district court has never addressed these facts. Appx3-4. Brazos's

9

unwillingness to comply with the Hague Convention warrants dismissal of the complaints. Mandamus is necessary to correct these legal errors.

### a. The District Court Disregarded Long Standing Precedent from the Supreme Court, Fifth Circuit, and the Texas Long-Arm Statute

In granting alternative service, the district court ignored long standing Supreme Court precedent, Fifth Circuit precedent, and the Texas long-arm statute. For example, in *Omni*, the Supreme Court explained that "[s]ervice of summons is the procedure by which ***a court having venue and jurisdiction of the subject matter*** of the suit asserts jurisdiction over the person of the party served." *Omni*, 484 U.S. at 104 (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-445 (1946) (emphasis added)). The Supreme Court also found that "[b]efore a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Id.*; *see also* Rule 4(k)(1)(a) ("[s]erving a summons . . . establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.").

And as the Supreme Court explained, service must be "valid and complete under both ***state law*** and the Due Process Clause" to establish jurisdiction. *Volkswagenwerk*, 486 U.S. at 707 (emphasis added). The Supreme Court further reasoned that "[t]hose who eschew [the Hague Convention's] procedures risk discovering that the forum's internal law required transmittal of documents for

10

service abroad, and that the Convention therefore provided the ***exclusive*** means of valid service" that establishes jurisdiction under Rule 4(k)(1). *Id.* at 706 (emphasis added).

Moreover, Fifth Circuit and Texas law dictate mandatory compliance with the Hague Convention for service. Service was attempted here by mailing documents abroad pursuant to the Rules 4(h)(2) and 4(f)(1). The Fifth Circuit directs that "courts are to look to the method of service prescribed by the internal law ***of the forum state***." *Sheets*, 891 F.2d at 536-37 (citing *Volkswagenwerk*, 486 U.S. at 699-706). The Fifth Circuit continuously recognizes that service for Texas lawsuits must comport with the Texas long-arm statute for there to be jurisdiction. *Id*. at 537. The district court therefore may preside over ZTEC only if ZTEC is subject to jurisdiction in Texas under the Texas long-arm statute, thus compliance with mandatory service means is of utmost importance.

And in Texas, the long-arm statute extends ***beyond*** what due process requires—it ***expressly requires*** transmittal of documents abroad to a foreign defendant. *Religious Tech.*, 339 F.3d at 373; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a) ("If the secretary of state is served with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided"); § 17.045(c)

11

("If the person in charge of a nonresident's business is served with process under Section 17.043, a copy of the process and notice of the service must be immediately mailed to the nonresident or the nonresident's principal place of business."); *see also Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS*, 54 F. Supp. 2d 691, 693 (S.D. Tex. 1999) ("If service is made pursuant to § 17.043, a copy of the process and notice of service must immediately be mailed to the nonresident or the nonresident's principal place of business."). From there, the Fifth Circuit has concluded that the transmittal of documents abroad required by the Texas long-arm statute "is precisely the type of service that **triggers the application of Hague Convention procedures**." *Sheets*, 891 F.2d at 537 (emphasis added).[3]

Additionally, Congress intended for service of foreign defendants to be effectuated under the Hague Convention. For instance, the 1993 amended Rule 4 expressly prioritized following the Hague Convention procedures. Fed. R. Civ. P. 4 Advisory Committee Note to 1993 Amendment. In fact, the "revision calls attention to the important effect of the Hague Convention . . . bearing on service of documents in foreign countries and favors the use of internationally agreed means of service."

---

[3] *See also Sang Young Kim v. Frank Mohn A/S*, 909 F. Supp. 474, 479-80 (S.D. Tex. 1995); *Bayoil Supply*, 54 F. Supp. 2d at 693; *Traxcell Techs., LLC v. Nokia Sols. & Networks US LLC*, No. 2:18-cv-00412, 2019 WL 8137134, at *3 (E.D. Tex. Oct. 22, 2019); *Macrosolve, Inc. v. Antenna Software, Inc.*, No. 6:11-cv-287, 2012 WL 12903085, at *2 (E.D. Tex. Mar. 16, 2012).

*Id*. The district court's ruling does not address these Congressional notes (Appx1), and incorrectly ignores Texas long-arm statute requirements.

Service must be proper under state law where service is attempted *and at least* must comply with the state law where the district court is located—otherwise it offends the traditional notions of fair play and substantial justice. Untethering service requirements from the physical location of the jurisdiction where the case sits, and from the state long-arm statute that applies in the forum jurisdiction is nonsensical. This untethering effectively rewrites Rule 4 by removing 4(k)(1)(a), which links jurisdiction and service to the home forum. Under Rule 4(k)(1)(a) the district court has jurisdiction over ZTEC only if ZTEC is subject to jurisdiction in Texas via the Texas long-arm statute—thus it makes no sense to glean jurisdiction (or permit alternative service to establish jurisdiction) in Texas when Brazos failed to comport with the mandatory requirements in Texas's law.

Service is a threshold for establishing jurisdiction. The district court should not be permitted to circumvent these conventional jurisdiction threshold requirements by permitting alternative service. This result offends the traditional notions of "fair play and substantial justice," and mandamus is necessary to correct this error.

13

**b. The District Court Ordering Alternative Service Was Not Warranted Simply Because Brazos Initially Attempted Direct Service by Mailing Documents Abroad**

Brazos initiated direct service by mailing documents abroad but refused to complete service in compliance with the Hague Convention. Brazos bears the burden of establishing that service was valid, yet it has not explained why compliance with the Hague Convention was not proper nor unduly burdensome. Appx37, fn.5; *see also In re Katrina*, 309 F. App'x at 835 (5th Cir. 2009); *Fundamental*, 2018 WL 3330022, at *2. The district court was further silent with respect to this conventional and required means of service. Appx3-4. The district court's failure to address the burden issue amounts to clear error.

This clear error is highly material because it allowed Brazos to get away with bypassing compliance with the Hague Convention. Brazos invoked the Hague Convention by transmitting documents abroad, Appx19, but it provided no rationale or undue burden explaining why it could not complete service in compliance with the Hague Convention. Appx23. Brazos even waived arguments on this requirement as "irrelevant given Brazos's pending motion for leave to effect alternative service." App37, fn.5. Brazos had no reason to circumvent conventional service through the Hague Convention, it simply refused to properly serve ZTEC through those conventional means.

14

Brazos incorrectly argued that service of foreign defendants under Rule 4(h)(2) pursuant to the Hague Convention is not required "if the foreign defendant can be served under state law without transmitting documents abroad." Appx20 (citing *Volkswagenwerk*, 486 U.S. at 707). But compliance with the Hague Convention was required for multiple reasons.

First, as addressed above, direct service of a foreign entity under Fifth Circuit federal law required transmitting documents abroad, and even under Texas state law Brazos was required to transmit documents abroad. Brazos *chose to file this lawsuit in Texas*. Thus, it must satisfy the service of process requirements there, which includes compliance with the Texas long-arm statute. *Accord* Tex. Civ. Prac. & Rem. Code Ann. § 17.043 (2015); *see also Omni*, 484 U.S. at 104.

Second, Brazos **actually transmitted** documents abroad, which triggered the need to comply with the Hague Convention. Appx19; *see also Sheets*, 891 F.2d at 537; *Kreimerman*, 22 F.3d at 640 (interpreting Supreme Court precedent as instructing that service via the Hague Convention is "mandatory" "in all cases . . . where there is occasion to transmit a judicial . . . document abroad") (citing *Volkswagenwerk*, 486 U.S. at 699). Yet Brazos refused compliance. The district court's permitting of Brazos to flout the Hague Convention amounts to clear error.

15

**c. The District Court Clearly Abused Its Discretion in Permitting Alternative Service not in Compliance with the Hague Convention**

The district court incorrectly permitted alternative service under Rule 4(f)(3). Appx3-4. In doing so, the district court established a new "reasonable attempt at service" standard and permitted "alternative service because [Brazos] attempted service through other means first." [Dkt. 14, p.3]. The district court further identified personal mail transmitted abroad by FedEx to ZTEC headquarters in China, and service via email as "reasonable *attempt[s]* at service," warranting alternative service. Appx3. As noted above, however, these attempts triggered mandatory compliance with the Hague Convention, and the district court clearly abused its discretion in applying a "reasonable attempt at service" standard that bypasses the Hague Convention requirements.

Notably, the Hague Convention itself provides some limited exceptions to its service procedures, but none apply here. Specifically, the Hague Convention "shall not apply where the address of the person to be served with the document is not known." Hague Convention, art. 1. But here, the address was known and Brazos transmitted documents abroad to that foreign address in China. Appx19. The Convention also permits exercise of jurisdiction before Hague Convention service has been completed if, after at least six months of diligent efforts to certify service via the Convention, no certificate of service is provided. Hague Convention, art. 15. But here Brazos made no effort to serve via the Hague Convention, much less "every

16

reasonable effort" as required under the treaty. *Id.* Finally, "[i]n case of urgency," a judge may also enter "any provisional or protective measures" before Hague Convention service is perfected. *Id.* But neither Brazos (a non-practicing entity) nor the district court raised concerns or cited evidence of urgency—in fact, the district court noted that it did not need to consider "quick" relief. Appx3. Simply put, there were no exceptions to the treaty itself permitting alternative service and noncompliance with the Hague Convention.

Neither Brazos nor the district court identified any reasonable burden for its failure to comply with the Hague Convention. Appx3-4. In fact, unlike the ruling in *OnePlus*, there was no unnecessary delay or undue burden on Brazos warranting circumventing the Hague Convention. *OnePlus*, 2021 WL 2870679 at *4 (W.D. Tex. July 8, 2021). In *OnePlus*, the same plaintiff as here argued that service through the Hague Convention was an "unnecessary delay and expense." *Id.* (citing *Affinity Labs of Tex., LLC v. Nissan N. Am. Inc.*, 2014 WL 11342502 (W.D. Tex. July 2, 2014). But no such "unnecessary delay" existed here as these complaints were essentially identical to complaints raised against OnePlus and Huawei ***nearly two years ago***. For each asserted patent, Brazos strategically waited until after the respective claim construction hearing before asserting the complaints against ZTEC. Any delay was of Brazos's own making, not due to any unsubstantiated claim that the Hague Convention comprises "unnecessary formalities" and delay. Appx23. Additionally,

17

this Court already voiced its "concerns about the district court's invocation of alternative means of service under Rule 4(f)(3) based solely on the fact that service under the Hague Convention is more cumbersome." *In re OnePlus Technology (Shenzhen) Co., Ltd.*, no. 21-165, 2021 WL 4130643 *7 (Fed. Cir. Sept. 10, 2021).

Next, the district court's analysis on the "reasonable attempt at service" element departed from prior precedent in WDTX. Appx3-4; *see also* Appx75-76. For instance, in *Trustees of Purdue University v. STMicroelectronics N.V.*, the district court previously denied alternate service since the plaintiff failed "to at least attempt to serve [defendant] pursuant to the Hague Convention." No. 6:21-cv-00727, 2021 WL 5393711 at *2 (W.D. Tex. Nov. 18, 2021). And the district court previously found that service on a Chinese entity was *not burdensome* through the Hague Convention. *Monolithic Power Sys. Co., Ltd. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*, No. 6:20-cv-00876, 2021 WL 4974040 (W.D. Tex. Oct. 25, 2021). Here, the district court failed to properly apply this precedent, finding that because Brazos transmitted documents abroad to ZTEC's headquarters in China, there were "reasonable attempts at service" that warranted alternative service under Rule 4(f)(3). Appx3.

This was an abuse of discretion. Appx3-4. The noted "attempt" of mailing documents abroad does not even approach a "reasonable attempt" to satisfy the Hague Convention. The Fifth Circuit (as addressed above) requires ***mandatory***

18

*compliance* with the Hague Convention when documents are mailed abroad—Brazos came nowhere near meeting this standard. Its attempts at service were woefully insufficient and *unreasonable*, and Brazos's unwillingness to comply further with the Hague Convention warrants dismissal of the complaint, not permission to circumvent the Hague Convention through alternative service.

The district court further noted that Brazos attempted service by email on ZTEUSA's outside counsel. Appx3. This "attempt" of service was woefully insufficient, and the district court noted as much previously when it explained that "there are few actions made in pursuit of service that could exhaust less effort." *Trs. of Purdue*, 2021 WL 5393711 at *2. Yet here, the district court changed positions found that service by email was a "reasonable attempt" at service. Appx3-4. This further supports the conclusion that the district court's order permitting alternative service offends the traditional notions of fair play and substantial justice. Indeed, "before a court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni*, 484 U.S. at 104; *see also* Appx23. Here, no such service occurred.

In view of Brazos's refusal to comply with service through the Hague Convention, the complaints should have been dismissed for improper service under Rules 4(h)(2) and 4(f)(1), and the district court erred by permitting service in noncompliance with the Hague Convention. Thus, mandamus is warranted.

19

## 2. The District Court Improperly Found Non-Party ZTEUSA a Domestic "Agent" of ZTEC for Indirect Service Purposes Under Rule 4(h)(1)(B)

The district court erred by concluding that Brazos could effectuate service domestically on ZTEC by delivering the complaint to an alleged *authorized* agent of ZTEC's United States subsidiary ZTEUSA. Appx4. Brazos attempted to serve ZTEC domestically on February 14, 2022 through ZTEC's domestic entity and non-party ZTEUSA under Rule 4(h)(1)(B). But this attempted service does not comply with Rule 4(h)(1)(B) because ZTEUSA is not an "authorized agent" for ZTEC.

In Texas and the Fifth Circuit, indirect service of process under Rule 4(h)(1)(B), i.e., service upon a foreign defendant by serving its domestic subsidiary, is only proper when the defendant has "actually authorized" the subsidiary to accept service of process on its behalf. *Brewer v. Suzuki Motor of Am., Inc.*, No. 4:15-cv-197, 2015 WL 4433046, at *1 (S.D. Tex. July 17, 2015) (quoting *Lisson v. ING Groep N.V.*, 262 F. App'x 567, 569 (5th Cir. 2007)). If a foreign defendant has not actually authorized the subsidiary, service of process by serving the subsidiary is valid only if "[t]he relationship between the subsidiary and parent [is] such that they are in reality the same corporation," or an "alter ego." *Id.* at *1 (quoting *Special Indus., Inc. v. Zamil Group Holding, Co.*, 578 F. App'x 325, 332 (5th Cir. 2014)); *see also Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159-60 (5th Cir. 1983); *see also Fundamental*, 2018 WL 3330022, at *3.

20

As a general rule, a foreign company's ownership of a domestic subsidiary by itself is not enough to establish jurisdiction over the foreign company, nor is it enough to permit indirect service of the foreign company via the domestic subsidiary. *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925). The presumption of corporate separateness has routinely been followed in the Fifth Circuit when plaintiffs have attempted to serve a foreign parent through a domestic subsidiary. *E.g.*, *Arroyo v. Oprona, Inc.*, No. 16-cv-852, 2016 WL 8607594, at *4 (S.D. Tex. Dec. 30, 2016) (applying the "presumption of corporate separateness"); *Glencore Ltd. v. Occidental Argentina Expl. and Prod., Inc.*, No. 11-cv-3070, 2012 WL 591226, at *4 (S.D. Tex. Feb. 22, 2012) (noting that in the Fifth Circuit, Rule 4(h) is construed narrowly); *Pennebaker v. Kawasaki Motors Corp., U.S.A.*, 155 F.R.D. 153, 158 (S.D. Miss. 1994) (rejecting plaintiff's effort to serve a Japanese corporate through its wholly owned subsidiary without complying with the service requirements of the Hague Convention).

Brazos failed to demonstrate that non-party ZTEUSA was authorized or an alter ego of ZTEC. *See generally* Appx6 and Appx17. To determine whether indirect service of process is available on a foreign corporation through a subsidiary such as ZTEUSA, courts in Texas and the Fifth Circuit look to whether the domestic subsidiary is the "alter ego" of the foreign company. *Paradigm Ent., Inc. v. Video Sys. Co., Ltd.*, No. 99-cv-2004, 2000 WL 251731, at *3 (N.D. Tex. Mar. 3, 2000).

21

To prevail on an alter ego theory a plaintiff must show "proof of control by the parent over the internal business operations and affairs of the subsidiary." *Hargrave*, 710 F.2d at 1160; *see also Paradigm Ent.*, 2000 WL 251731, at *3. Courts in Texas and the Fifth Circuit are expected to assess whether the control by the foreign parent over the domestic subsidiary is so great "that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *BMC Software Belgium N.V. v. Marchand*, 83 S.W.3d 789, 799 (Tex. 2002) (citing *Hargrave*, 710 F.2d at 1160). The Fifth Circuit's *Hargrave* case identifies five factors used to determine whether a plaintiff has overcome the presumption of corporate separateness. *Hargrave*, 710 F.2 at 1160. Brazos failed to establish whether any of these factors support finding ZTEUSA as an alter ego of ZTEC. In fact, Brazos refused to meaningfully address this issue, opting instead argued that "[ZTEC's] arguments regarding service under Rule[ ] 4(h)(1) . . . (Mot. at 8-14) are irrelevant given Brazos's pending motion for leave to effect alternative service." *See* Appx19 and Appx37, fn.5.

In *Fundamental*, the Northern District of Texas conducted an extensive analysis of service on ZTEC and found that indirect service through ZTEUSA was improper. *Fundamental*, 2018 WL 3330022 at *4. There, that NDTX court found that ZTEC and ZTEUSA "maintain separate headquarters, leadership, accounting systems, human resources departments, and bylaws." *Id*. And, the two engage in

22

distinct "business activities in different geographic markets." *Id.* And ultimately, the NDTX court found that there were sufficient facts to show that "[ZTEUSA] is not the alter ego of [ZTEC]," and that the attempt to serve ZTEC indirectly through ZTEUSA was improper, thus the court granted the motion to dismiss. *Id*. Similarly, Brazos was unable to support its burden under an "alter ego" theory, and the complaints must likewise be dismissed. Appx58-61.

The U.S. domestic ZTEUSA entity is not an alter ego of foreign parent ZTEC, and Brazos failed to contend otherwise. Indeed, when afforded an opportunity to present its alter ego theory, Brazos declined. Appx37, fn.5. Accordingly, Brazos failed to prove that indirect service on ZTEUSA was proper or even reasonable. *Lisson*, 262 F. App'x at 570 (absent express authorization, a domestic subsidiary may be considered an agent for service of process only where the "foreign corporation exercises such control over the domestic subsidiary that the two entities are essentially one"); *UNM Rainforest Innovations v. D-Link Corp.*, No. 6-20-cv-00143-ADA, 2020 WL 3965015, at *4 (W.D. Tex. July 13, 2020). Further yet, the district court declined altogether to consider Fifth Circuit and Texas law or the "alter ego" theory entirely (Appx3-4)—this was a clear abuse of discretion, and a grant of mandamus is necessary to correct.

23

### 3. The District Court Erred by Finding That Alternative Service Here Satisfies Due Process for Foreign Defendants Sued in Texas

Mandamus relief is also necessary because the district court erred by finding that the proposed "method of alternative service comports with due process for the unopposed reasons argued by [Brazos]." Appx4; *see also* Appx64-66. The "reasonable attempts at service" the district court approved are unreasonable and in violation of the Due Process clause, and ZTEC opposed each one. The district court erroneously concluded that ZTEC did "not challenge the proposed method of alternative service compliance with due process." Appx4; *see also* Appx63-66. Indeed, ZTEC clearly and unambiguously argued that the alternative "attempts at service" were "insufficient and fraught with their own jurisdiction and Due Process clause issues." Appx64.

Next, the district court erred by finding that effectuating alternative service by email on outside counsel and direct service to the U.S. subsidiary ZTEUSA satisfies the Due Process requirements for a foreign defendant sued in Texas. Appx4. It erroneously reasoned that Due Process was satisfied under these circumstances. Appx4. These findings offend traditional notions of "fair play and substantial justice" and must be rejected.

As discussed above, Brazos initially attempted service under Rules 4(h)(2), and 4(f)(1) by sending the complaint papers to ZTEC in China. Accordingly, to satisfy Due Process under Fifth Circuit law, Brazos had to comply with the Hague

24

Convention. Providing notice is not the only requirement for satisfying the Due Process clause—the plaintiff must also satisfy the additional Hague Convention requirements, as compelled by the Texas long-arm statute. The district court failed to properly evaluate these additional requirements with respect to the proposed alternative service means. Appx4. And the means of service which establish jurisdiction for a Texas court, must likewise not offend the traditional notions of fair play and must, at a minimum, comport with the Texas law. The district court cannot offend the traditional notions of "fair play and substantial justice" by circumventing the local Texas state requirements for jurisdiction and due process as discussed above in Section A.1. But it did just that when it permitted alternative service.

Further, the district court erroneously concluded that ZTEC did not challenge the proposed methods of alternative service in compliance with Due Process clause. Appx4. But this is false because ZTEC argued that, under the "notions of notice for due process, the Texas long-arm statute requires the transmittal of documents abroad for a foreign defendant." Appx52-53. ZTEC further argued that any reliance on misvenued ZTEUSA to find jurisdiction and proper service (i.e. such as indirect service as the U.S. domestic subsidiary) also offends the notions of "fair play and substantial justice." Appx56.

ZTEC also argued that the proposed alternative service attempt methods "are insufficient and fraught with their own jurisdiction and Due Process clause issues,"

25

and that none of the proposed alternative attempts "rise to a level warranting alternate service." Appx64-66. ZTEC then addressed each proposed alternative means of service—first, ZTEC argued that "service by email exerts miniscule effort" which "hardly rising to the standard of sufficient service and notice." Appx64 (quoting *Trs. of Purdue*, 2021 WL 5393711 at *2. Second, ZTEC argued that "service through delivery on domestic non-party [ZTEUSA]" further fails meet the burden of service and notice as Brazos failed to establish that ZTEUSA was an "alter ego" of ZTEC. Appx65.

Thus, the district court's finding that "due process for the unopposed reasons" was proper is baseless—and in fact, ***ZTEC's positions remained "unopposed."*** Neither Brazos nor the district court addressed ZTEC's arguments opposing alternative service with respect to due process. Appx63-66. As addressed above, service for a Texas suit under Rules 4(h)(2), and 4(f)(1) must comply with the regional Fifth Circuit and Texas requirements—which further require service through the Hague Convention. The alternative service means permitted by the district court fail to comport with the mandatory Hague Convention requirements and thus are improper under the Due Process clause.

## B. MANDAMUS IS APPROPRIATE

A grant of mandamus is appropriate when there has been a "clear abuse of discretion or usurpation of judicial power" by a trial court. *In re Calmar, Inc.*, 854

26

F.2d 461, 464 (Fed. Cir. 1988). A writ of mandamus should issue to prevent a case from proceeding against a foreign defendant over whom the district court improperly presides. *See Abelesz v. OTP Bank*, 692 F.3d 638, 650-53 (7th Cir. 2012) (granting mandamus relief on personal jurisdiction challenge where a case presented a "delicate foreign relations issue[]" and further noting irreparable harm in the form of pressure to settle could flow from the prospect of protracted litigation).

A writ of mandamus is also available as a form of relief under this Court's supervisory authority over the lower courts. The Supreme Court has "approved the use of mandamus to decide a 'basic and undecided' question.'" *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011) (discussing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)). Exercising such discretion is appropriate for recurring issues, when "trial courts have been in considerable disagreement," and when an immediate decision is "important to 'proper judicial administration[.]'" *Id.* (quoting *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 259-60 (1957) (alteration in original)).

The question of whether a court may disregard the mandatory Hague Convention's service of process requirements after documents are transmitted above and allow alternative service pursuant to Rule 4(f)(3), regardless of the procedural limits of the forum state's long-arm statute in which the district court sits, warrants mandamus under this Court's supervisory authority. Rather than waiting for an appeal of a final judgment, this Court should decide the issue now "so as to avoid

piecemeal litigation and to settle [this] new and important proble[m]." *Schlagenhauf*, 379 U.S. at 111.

## 1. The District Court Clearly Abused Its Discretion in Permitting Alternative Service

Not only did Brazos transmit documents abroad, but also under the Texas long-arm statute, Brazos was procedurally required to effectuate service pursuant to the Hague Convention before the district court exercises jurisdiction. But Brazos never followed through and completed service under the Hague Convention. Rule 4(f)(3) cannot be used to bypass the Hague Convention, and the district court's abuse of discretion lies in giving Brazos a loophole to do so.

## 2. ZTEC Has No Adequate Remedy on Appeal

ZTEC should receive mandamus under traditional principles, and supervisory authority. Under the traditional and supervisory standards for writs of mandamus, a writ of mandamus is appropriate because ZTEC has no adequate remedy on appeal. ZTEC is in a similar position here to the petitioner in *TC Heartland*, 137 S. Ct. at 1518, where the Supreme Court granted mandamus relief after a district court denied a motion to transfer due to improper venue and was set to allow the case to proceed without personal jurisdiction. In *TC Heartland*, the Supreme Court never suggested that mandamus was unavailable or inappropriate, and it addressed the venue challenge on the merits. *Id*. at 1518.

28

Both in *TC Heartland* and in this case, mandamus is proper to prevent an unjust trial. Such a trial would be wasteful, both of judicial resources and of the parties' resources. If trial proceeds in the WDTX, any judgment will necessarily be vacated on appeal. Moreover, "the harm—inconvenience to witnesses, parties and other[s]—will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008). This Court should grant mandamus to "avoid the delays and expense of a futile trial." *Hoffman v. Blaski*, 363 U.S. 335, 342 (1960).

Mandamus should issue to correct the district court's clear abuse of discretion and prevent this case from moving forward to trial without proper service before establishing jurisdiction.

### 3. This Court Should Grant Mandamus to Decide This Basic Question Which Will Recur in Future Cases

Although ZTEC should receive mandamus under traditional principles, this petition also presents a scenario that calls for this Court to exercise its supervisory authority. *See In re Innotron Diagnostics*, 800 F.2d 1077, 1081 (Fed. Cir. 1986) ("[T]he regional courts of appeals have increasingly employed the writ in implementing their supervision of district courts.").

Whether and how plaintiffs can serve foreign defendants without use of the Hague Convention is an important issue that will repeatedly recur until resolved by

29

this Court. Resolving such systemically important issues is precisely why "advisory mandamus" exists.

Courts properly employ the writ of mandamus to resolve an unsettled and systematically important issues. *See* Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv. L. Rev. 595, 618 (1973); and 16 Charles Alan Wright et al., Federal Practice & Procedure § 3934.1 (3d ed. 2007).

This Court recognized the practice of advisory mandamus in *Innotron*. *See* 800 F.2d at 1081. And in *BP Lubricants*, this Court granted this form of mandamus based on "exceptional circumstances," including the existence of a "basic and undecided question;" that "trial courts have been in considerable disagreement . . . , resulting in inconsistent results across the country;" and that deciding the matter immediately "present[ed] an issue important to proper judicial administration." 637 F.3d at 1317 (internal quotation marks omitted).

The regional courts of appeals have elaborated on circumstances that warrant advisory mandamus: "It is appropriate when the issue presented is novel, of great public importance, and likely to recur." *United States v. Horn*, 29 F.3d 754, 769 (1st Cir. 1994); *see also In re Atl. Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002) (appropriate to decide a "systemically important issue as to which this court has not yet spoken"); *In re Recticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir. 1988) ("to resolve issues which are both novel and of great public importance.").

The D.C. Circuit has explained that cases authorize advisory mandamus "where the decision will serve to clarify a question that is likely to confront a number of lower court judges in a number of suits before appellate review is possible, as, for example, where the district judges are in error, doubt, or conflict on the meaning of a rule of procedure." *Nat'l Right to Work Legal Def. v. Richey*, 510 F.2d 1239, 1243 (D.C. Cir. 1975).

This petition squarely falls within this past precedent. The issue presented— whether a plaintiff may circumvent the procedural requirements of Texas's long-arm statute and the Hague Convention by transmitting a document abroad and then seeking alternative service pursuant to Rule 4(f)(3) without attempting service through the Hague Convention—is a basic question that is likely to keep reoccurring throughout Texas.

This procedural question is important to proper judicial administration. If a trial occurs without proper service or jurisdiction, then the judgment must be reversed, and a new trial ordered.

Thousands of patent cases are pending in the district courts. And the bulk of these cases proceed in Texas. In fact, according to DocketNavigator, from 2020 to present day, Judge Alan D. Albright (in the WDTX) and Rodney Gilstrap (in the EDTX) rank as the top two judges for handling the greatest number of patent cases in the country. About twenty percent of the new cases are before Judge Alan D.

Albright. *See* Dani Kas, "Judge Albright Now Oversees 20% of New US Patent Cases," Law360, https://www.law360.com/articles/1361071/judge-albright-now-oversees-20-of-new-us-patent-cases (Mar. 21, 2021) (identifying more than 8,000 newly filed patent cases in 2020). Approximately 2500 new patent cases were filed in the Eastern and Western Districts of Texas alone in 2020. *Id*. Due to the venue rulings following *TC Heartland*, U.S. defendants are increasingly being sued in other jurisdictions—such as Delaware—meaning a larger percentage of the new patent cases filed in Texas involve foreign defendants. *See id.* (large number of cases also filed in Delaware); *Supreme Court Decision Will Result in Fewer Patent Suits in Eastern District of Texas*, Wolf Greenfield IP Alerts, https://www.wolfgreenfield.com/publications/ip-alerts/2017/supreme-court-decision-will-result-in-fewer-patent-suits-in-eastern-district-of-texas (May 22, 2017) (noting that after *TC Heartland*, plaintiffs are increasingly suing only foreign parent entities because "[a]s such foreign parent corporations may in some cases be subject to venue in any judicial district, the plaintiff would be able to file suit in the Eastern District of Texas").

In similar circumstances, the Fifth Circuit explained the need for advisory mandamus to avoid a "drain on judicial manpower." *United States v. Hughes*, 413 F.2d 1244, 1248-49 (5th Cir. 1969), *vacated as moot sub nom. United States v. Gifford-Hill-Am., Inc.*, 397 U.S. 93 (1970).

Waiting until an appeal of a final judgment to decide the issue—permitting uncertainty among judges and litigations to persist for years—could require numerous new trials and threaten the orderly administration of justice in the district courts. There has been and will undoubtedly be "significant repetition [of this issue in the district courts] prior to effective review [by this Court]." *Nat'l Right to Work Legal Def.*, 510 F.2d at 1244. Uncertainty about a basic question of procedure cries out for resolution by this Court and necessitate guidance now by way of writ of mandamus.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant this petition for writ of mandamus, directing the district court to dismiss the cases.

Dated: May 5, 2022                    Respectfully submitted

FINNEGAN, HENDERSON, FARABOW,
    GARRETT, & DUNNER LLP

By:    Signature:    /s/ *Lionel M. Lavenue*
        Name:         Lionel M. Lavenue

*Counsel for Petitioner*

33

## Certificate of Service

I hereby certify that on May 5, 2022, I caused the foregoing Petition and accompanying Appendix to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that, I caused the same to be served via U.S. mail, postage prepaid upon the following:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
ThucMinh Nguyen
Kasowitz Benson Torres, LLP
333 Twin Dolphine Drive, Suite 200
Redwood Shores, CA 94065
Telephone:  (650) 453-5170
Facsimile:  (650) 453-5171

Paul Gunter Williams
Kasowitz Benson Torres, LLP
1230 Peachtree Street NE, Suite 2445
Atlanta, Georgia 30309
Telephone:  (404) 260-6102
Facsimile:  (404) 260-6081

Shelley Ivan
Julianne Laporte
Noah P. Dorman
Kasowitz Benson Torres, LLP
1633 Broadway
New York, NY 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

Mark D. Siegmund
Craig D. Cherry
Justin Allen
Steckler Wayne Cochran Cherry, PLLC
8416 Old McGregor Rd.
Waco, TX 76712
Telephone:  (254) 651-3690
Facsimile:   (254) 651-3689

34

The Honorable Alan D. Albright
United States District Court for the
  Western District of Texas
800 Franklin Avenue
Room 301
Waco, TX 76701
(254) 750-1510


Date: May 5, 2022                    By:    Signature:    /s/ *Lionel M. Lavenue*
                                            Name:         Lionel M. Lavenue

                                            *Counsel for Petitioner*

## Certificate of Compliance

1. This document complies with the type-volume limits of Fed. R. App. P. 21(d)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this document contains 7,476 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 2016 in 14-point Times New Roman.

Date: May 5, 2022          By:   Signature:   /s/ *Lionel M. Lavenue*
                                          Name:   Lionel M. Lavenue

*Counsel for Petitioner*