# Exhibit A

**2022-0147, -0148, -0149, -0150**

# United States Court of Appeals for the Federal Circuit

In re: ZTE CORPORATION,

*Petitioner.*

*On Petition for a Writ of Mandamus to the United States District Court for the Western District of Texas Case Nos. 6:22-cv-00136-ADA through 6:22-cv-00139-ADA Honorable Alan D. Albright*

## RESPONSE TO PETITION FOR A WRIT OF MANDAMUS

JONATHAN K. WALDROP
DARCY L. JONES
MARCUS A. BARBER
HEATHER S. KIM
JOHN W. DOWNING
THUCMINH NGUYEN
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, California 94065
(650) 453-5170
jwaldrop@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
djones@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowitz.com

SHELLEY IVAN
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
sivan@kasowitz.com

*Counsel for Respondent WSOU Investments, LLC,
d/b/a Brazos Licensing and Development*

MAY 13, 2022

 COUNSEL PRESS, LLC

(888) 277-3259

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| **Case Number** | 2022-147, 2022-148, 2022-149, 2022-150 |
|---|---|
| **Short Case Caption** | In re: ZTE Corporation |
| **Filing Party/Entity** | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 5/13/2022

Signature: /s/ Jonathan K. Waldrop

Name: Jonathan K. Waldrop

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| WSOU Investments, LLC d/b/a Brazos Licensing and Development | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Jonathan K. Waldrop<br>Kasowitz Benson Torres LLP | Darcy L. Jones<br>Kasowitz Benson Torres LLP | Marcus A. Barber<br>Kasowitz Benson Torres LLP |
| John W. Downing<br>Kasowitz Benson Torres LLP | Heather S. Kim<br>Kasowitz Benson Torres LLP | Shelley Ivan<br>Kasowitz Benson Torres LLP |
| ThucMinh Nguyen<br>Kasowitz Benson Torres LLP | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ one N    /Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ........................................................................................1

SUMMARY OF THE ARGUMENT ................................................................2

FACTUAL BACKGROUND ...........................................................................7

    A.    The Parties ...................................................................................7

           1.    Brazos.............................................................................7

           2.    ZTE ................................................................................7

    B.    The Nonparty ZTE USA That ZTE Created To Avoid Liability
         For Its Infringing Sales In The U.S. .........................................8

    C.    ZTE's Waiver Of Service To Avoid The Hague Convention
         Burden In 11 Other Cases Filed By Brazos Against ZTE ..................9

    D.    Brazos's Good-Faith Attempts To Serve ZTE Before Moving
         The District Court To Authorize Alternative Service ..........................9

    E.    Brazos's Motion For Leave To Effect Alternative Service By
         Email To ZTE's Current U.S. Counsel And Personal Delivery
         To ZTE USA .........................................................................10

    F.    The District Court's Correct Decision Following This Court's
         Ruling In *OnePlus* And Authorizing The Same Alternative
         Service On ZTE ....................................................................11

REASONS A WRIT OF MANDAMUS SHOULD NOT ISSUE HERE ..............12

I.    ZTE FAILED TO SHOW THAT IT HAS NO ADEQUATE MEANS
    TO ATTAIN THE DESIRED RELIEF AS ZTE CAN OBTAIN
    MEANINGFUL APPELLATE REVIEW AFTER FINAL
    JUDGMENT .........................................................................13

II.    ZTE FAILED TO SHOW THAT THE RIGHT OF ISSUANCE OF
    THE WRIT IS CLEAR AND INDISPUTABLE AS THIS COURT
    ALREADY APPROVED THE SAME ALTERNATIVE SERVICE
    AND REJECTED THE ARGUMENTS ZTE RAISES HERE ..................15

A. The Court-Ordered Alternative Service Of Process Complies With The Federal Rules Of Civil Procedure ........................................17

1. Rule 4(f)(3) Gives The District Court Broad Discretion To Order Alternative Service On ZTE ...................................17

2. Brazos Was Not Required To Attempt Service Under The Hague Convention Before Moving The District Court To Authorize Alternative Service ..................................19

3. Rule 4(f)(1) Does Not Mandate The Hague Convention And Does Not Displace The Court-Authorized Alternative Service Under Rule 4(f)(3) Which Stands On Equal Footing .........................................................................24

4. The Court-Ordered Service Under Rule 4(f)(3) Is Independent From Service Under Rule 4(e)(1) Which Follows State Law................................................................26

B. The Court-Ordered Alternative Service Complies With The Constitutional Due Process And The Texas Long-Arm Statute ........27

III. ZTE FAILED TO SHOW THAT THE DRASTIC MANDAMUS RELIEF IS APPROPRIATE UNDER THE CIRCUMSTANCES IN THIS CASE ....................................................................................29

A. ZTE Failed To Show That The District Court Clearly Abused Its Discretion Or Usurped Judicial Power..........................................29

B. Accepting ZTE's Policy Argument Would Lead To The Absurd Result Of Mandating The Hague Convention And Depriving District Courts Of Their Essential Role Of Exercising Judgment To Advance Justice ..............................................................................30

IV. CONCLUSION...............................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbyy Prod., LLC v. Nuance Commc'ns, Inc.*,
564 U.S. 1053 (2011)................................................................20

*Abbyy Prod., LLC v. Nuance Commc'ns, Inc.*,
No. 10-1019. (U.S.) ................................................................20

*Ackerman v. Glob. Vehicles U.S.A., Inc.*, No. 4:11CV687RWS, 2011
WL 3847427
(E.D. Mo. Aug. 26, 2011)................................................................21

*ACQIS LLC v. Lenovo Grp. Ltd.*, No. W-20-CV-00967-ADA, 2021
WL 5332314 (W.D. Tex. Nov. 16, 2021)................................................26

*Bankers Life & Cas. Co. v. Holland*,
346 U.S. 379 (1953)................................................................14

*In re BNY ConvergEx Grp., LLC*,
404 F. App'x 484 (Fed. Cir. 2010) ................................................15

*Brown v. China Integrated Energy, Inc.*,
285 F.R.D. 560 (C.D. Cal. 2012)................................................21

*Cephalon, Inc. v. Watson Pharm., Inc.*,
629 F. Supp. 2d 338 (D. Del. 2009)................................................27

*Cheney v. U.S. Dist. Court for Dist. of Columbia*,
542 U.S. 367 (2004)................................................................12

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-CV-
01827-N, 2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) ................20

*In re HTC Corp.*,
889 F.3d 1349 (Fed. Cir. 2018) ................................................13

*Huawei Techs. USA, Inc. v. Oliveira*,
No. 4:19-CV-229-ALM-KPJ, 2019 WL 3253674
(E.D. Tex. July 19, 2019)................................................16

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ................................................................................31

*In re Lab'y Comput. Sys., Inc.*,
243 F.3d 553 (Fed. Cir. 2000) ...........................................................................13, 15

*LG Elecs., Inc. v. Asko Appliances, Inc.*,
No. 08–828 (JAP), 2009 WL 1811098 (D. Del. June 23, 2009)........................21

*Marks Law Offices, LLC v. Mireskandari*,
704 F. App'x 171 (3d Cir. 2017) .............................................................................16

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ..............................................................................16

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzen)*
*Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2021 WL 4974040
(W.D. Tex. Oct. 25, 2021) .......................................................................................23

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
882 F.3d 494 (5th Cir. 2018) ..................................................................................16

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010) .....................................................................*passim*

*In Re OnePlus Tech. (Shenzhen) Co., Ltd.*,
No. 2021-165, 2021 WL 4130643 (Fed. Cir. Sept. 10, 2021).....................*passim*

*In re Oximetrix, Inc.*,
748 F.2d 637 (Fed. Cir. 1984) ................................................................................32

*Religious Tech. Ctr. v. Liebreich*,
339 F.3d 369 (5th Cir. 2003) ..................................................................................27

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ..........................................................................16, 24

*Sheets v. Yamaha Motors Corp., U.S.A.*,
891 F.2d 533 (5th Cir. 1990) ..................................................................................28

*In re Solerwitz*,
848 F.2d 1573 (Fed. Cir. 1988) ..............................................................................32

iv

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017)....................................................................................14, 15

*In re TCT Mobile Int'l Ltd.*,
   783 F. App'x 1028 (Fed. Cir. 2019) ...............................................................14, 15

*Terrestrial Comms LLC v. NEC Corp.*, No. 6:19-CV-00597-ADA,
   2020 WL 3270832 (W.D. Tex. June 17, 2020) ...............................................18, 19

*Trustees of Purdue Univ. v. STMicroelectronics N.V.*, No. 6:21-CV-
   00727-ADA, 2021 WL 5393711 (W.D. Tex. Nov. 18, 2021) .....................22, 23

*In re Unique Functional Prod., Inc.*,
   75 F. App'x 752 (Fed. Cir. 2003) ..........................................................................15

*In re Volkswagen of Am., Inc.*,
   296 F. App'x 11 (Fed. Cir. 2008) ...................................................................14, 15

*In re Volkswagen of Am. Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009) .............................................................................13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988)................................................................................................29

*In re ZTE Corp.*,
   No. 2022-122, 2022 WL 1419605 (Fed. Cir. May 5, 2022).................................31

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a).........................................................28

**Rules**

Fed. R. Civ. P. 4(e).....................................................................................................26

Fed. R. Civ. P. 4(e)(1)..............................................................................................5, 26

Fed. R. Civ. P. 4(f) ...........................................................................................17, 18, 26

Fed. R. Civ. P. 4(f)(3) ........................................................................................*passim*

Fed. R. Civ. P. 4(h) ....................................................................................................17

Fed. R. Civ. P. 4(h)(1)..............................................................................................6, 26

Plaintiff WSOU Investments LLC d/b/a Brazos Licensing and Development ("Brazos" or "Respondent") submits this response to the petition for a writ of mandamus (the "Petition" or "Pet.") filed by defendant ZTE Corporation ("ZTE" or "Petitioner") seeking an order directing the United States District Court for the Western District of Texas ("District Court" or "WDTX") to reverse its decision authorizing alternative service on ZTE under Rule 4(f)(3) and dismiss the four referenced actions for lack of personal jurisdiction.

## ISSUE PRESENTED

Whether the District Court's decision to: (i) follow this Court's holding in *OnePlus* approving alternative service under Rule 4(f)(3) by email to a foreign defendant's U.S. counsel and personal delivery to its U.S. subsidiary;[1] and (ii) authorize the same alternative service under Rule 4(f)(3) on ZTE (a Chinese company) by email to ZTE's U.S. counsel (currently representing ZTE in 11 other patent infringement cases in the WDTX) and personal delivery to ZTE's U.S. subsidiary, ZTE USA (where ZTE admitted creating ZTE USA to avoid liability for selling infringing products in the U.S.), is so patently erroneous that it warrants the extraordinary and drastic mandamus relief.

---

[1] *See In Re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 WL 4130643, at *2-3 (Fed. Cir. Sept. 10, 2021) (serving a foreign defendant's U.S. counsel and U.S. subsidiary under Rule 4(f)(3) as an alternative to the Hague Convention is proper and sufficient).

## SUMMARY OF THE ARGUMENT

ZTE's Petition fails to meet this Court's high standard for drastic mandamus relief. There is no question that ZTE was sufficiently apprised of these cases and received notice through multiple means. And ZTE, a multi-billion-dollar corporation and frequent U.S. litigant, does not and cannot demonstrate any reason why these cases should not be tried in the United States. ZTE's Petition is thus nothing more than an attempt to delay this litigation.

A petitioner must satisfy the following three requirements for mandamus relief: (1) the petitioner must have no other adequate means to attain the desired relief; (2) the petitioner must show that the right to issuance of the writ is clear and indisputable; and (3) the petitioner must convince the court that the writ is appropriate under the circumstances. ZTE does not satisfy even one of these requirements.

First, ZTE can attain the desired relief by obtaining meaningful review of the District Court's decision after final judgment. The U.S. Supreme Court has made it clear that a petitioner cannot use the extraordinary mandamus relief as a substitute for appeal even if hardship may result from delay or unnecessary trial. This Court routinely denies mandamus in cases where the petitioner (like ZTE) seeks to overturn a decision denying a motion to dismiss for lack of personal jurisdiction,

2

and should do the same here as ZTE failed to demonstrate exceptional circumstances.

Second, ZTE failed to show that the right to issuance of the writ is clear and indisputable as this Court already approved the same alternative service and rejected the very arguments ZTE raises here. Indeed, the District Court correctly followed this Court's prior ruling in *OnePlus* and authorized alternative service on ZTE's U.S. counsel and U.S. subsidiary as such service complies with: (i) the Federal Rules of Civil Procedure, including Rule 4(f)(3), because the District Court has broad discretion to order alternative service and the service here is not prohibited by any international agreements; and (ii) the constitutional due process and Texas long-arm statute because the service was reasonably calculated to apprise ZTE of the pendency of the action and afford it an opportunity to object.

ZTE does not and cannot dispute that Brazos served ZTE pursuant to the District Court's order or that ZTE was apprised of this litigation. Instead, ZTE claims that service here is procedurally ineffective due to Brazos's purported failure to follow the Hague Convention service requirements. Specifically, ZTE claims that Brazos's attempts to serve ZTE through more conventional means (including email to ZTE's current U.S. counsel, delivery to ZTE USA and mail to ZTE in China) before seeking relief from the District Court triggered the Hague Convention service requirements because Brazos's service attempts included mailing documents abroad.

3

ZTE is wrong. In addition to the fact that ZTE failed to cite a single case on point or any relevant Hague Convention rule, this Court held that attempting service under the Hague Convention is not a prerequisite to requesting alternative service under Rule 4(f)(3). *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010). The Court also held that, although district courts may look at whether the plaintiff has reasonably attempted to effectuate service, "those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement." *OnePlus*, 2021 WL 4130643, at *3.

ZTE insists that Brazos cannot circumvent its purported obligation to follow the Hague Convention service requirements under Rule 4(f)(1) because the circumstances here (*i.e.*, Brazos's attempted service by mail to China) do not allow for the alternative service invocation under Rule 4(f)(3). ZTE is wrong again. This Court made it clear that "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections [including subsection 4(f)(1)]; it stands independently, on equal footing." *Nuance*, 626 F.3d at 1239 (citations omitted).

The Court's ruling in *Nuance* is logical and proper as holding otherwise is to effectively mandate the Hague Convention for defendants located outside of the U.S. and deprive district courts of their essential role of exercising discretion under the unique circumstances of each case to prevent foreign defendants from delaying the

4

litigation process and to relieve the burden on plaintiffs by preserving their valuable resources.

Indeed, directing Brazos to serve under the Hague Convention would have made zero sense under the circumstances here, including that ZTE: (i) has been involved in 41 Texas cases; (ii) is currently represented by U.S. counsel in the WDTX; (iii) received the referenced complaints months ago and was fully apprised of the four cases; (iv) waived service in 11 other WDTX cases to relieve the Hague Convention burden on Brazos; (v) failed to challenge the finding in *Fundamental Innovations* (as detailed below) that service on ZTE in China would take approximately 18 months; (vi) failed to argue before the District Court that the alternative service did not comport with the federal due process and Texas long-arm statute requirements; and (vii) failed to dispute that it suffered any material prejudice by being served through the court-ordered alternative service instead of the Hague Convention. As such, the unique facts of this case show that the alternative service here was not authorized for mere convenience.

ZTE also misdirects the Court by asserting that the Texas long-arm statute requires service under the Hague Convention. But the Court already rejected this argument that "confuses service of process under Rule 4(f)(3), which provides for court-directed service by <u>any</u> means not prohibited by international agreement, with service under Rule 4(e)(1), which does not require a court order and provides for

5

service by following state law." *Nuance*, 626 F.3d at 1240 (internal quotation marks omitted) (emphasis added).

Finally, ZTE completely misses the point when arguing that Brazos's attempted service through ZTE USA was defective because under Rule 4(h)(1), service through a domestic subsidiary is proper only when the two companies are in reality the same entity. Service under Rule 4(h)(1) has no relevance to the court-ordered alternative service under Rule 4(f)(3) at issue. Even if Rule 4(h)(1) is somehow relevant here (and it is not), ZTE still loses because it effectively admitted in its court filings that ZTE established ZTE USA to avoid liability for selling the infringing products in the U.S. and that "any conduct claimed against ZTE [] would be the conduct of ZTE USA" (*i.e.*, ZTE and ZTE USA are acting as the same entity). SAppx141, SAppx145.

Third, ZTE failed to show that the writ is appropriate under the circumstances as the District Court correctly ordered alternative service under Rule 4(f)(3) by following this Court's ruling in *OnePlus*. ZTE, as the party with the burden of proof, submitted no evidence to show that the District Court clearly abused its discretion or usurped judicial power. ZTE's manufactured policy argument emphasizing the large number of Texas cases involving foreign defendants has no relevance to the question of what methods of alternative service are appropriate under Rule 4(f)(3). ZTE's policy argument should thus be rejected.

6

As demonstrated herein, ZTE's Petition is meritless, nonsensical, and nothing more than a transparent attempt to waste Brazos's resources. ZTE cannot be allowed to escape this litigation and delay Brazos's recovery by making frivolous arguments that are contrary to this Court's rulings.

Accordingly, the Petition should be denied.

## FACTUAL BACKGROUND

### A. The Parties

#### 1. Brazos

Respondent Brazos is a Delaware company with a principal place of business and office located at 605 Austin Avenue, Suite 6, Waco, Texas 76701. Appx6.

Brazos is the owner of all rights, title and interest in the four U.S. patents asserted in the above-captioned cases. Appx7; SAppx2, SAppx12, SAppx22.

#### 2. ZTE

Defendant ZTE is a multi-billion-dollar Chinese corporation that does business in Texas, directly or through intermediaries, with a principal place of business located at ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province, China. Appx6.

ZTE designs, develops, and makes the accused products in this litigation and ships them to the U.S. for sale. Appx6-13. In fact, the U.S. SEC records and ZTE's public information show that ZTE imports its products, including the accused products, into the U.S. *See* https://sec.report/CIK/0001445156, which links to

7

ZTE's U.S. Import Records [external site] at https://import.report/company/Zte-Corp/page/1) (listing ZTE's latest 50 U.S. imports/132 import manifest records showing ZTE as "Supplier" and ZTE USA as "Receiver/Consignee" under Shipment ID). ZTE also sells to U.S. customers on its website at least the ZTE Axon 30 Ultra, which is accused of infringing Brazos's patents. *See, e.g.*, https://zteusa.com/products/zte-axon-30-ultra (ZTE's global website) with a link to https://ztedevices.com/en-us/axon-30-ultra (ZTE's U.S. website) selling the ZTE Axon 30 Ultra.

### B. The Nonparty ZTE USA That ZTE Created To Avoid Liability For Its Infringing Sales In The U.S.

Critically, ZTE admits in its court filings that ZTE established ZTE (USA), Inc. ("ZTE USA") as "its subsidiary in 1998 for the express purpose of marketing, distributing, [and] selling" the infringing products (SAppx138), that "any conduct claimed against ZTE [] would be the conduct of ZTE USA" (SAppx145), but that ZTE "deliberately avoided contacts within the United States by establishing a US subsidiary" (SAppx141).

ZTE USA maintains a U.S. presence and registered agent for service of process at 815 Brazos St., Suite 500, Austin, Texas 78701. SAppx65.

8

**C.     ZTE's Waiver Of Service To Avoid The Hague Convention
Burden In 11 Other Cases Filed By Brazos Against ZTE**

ZTE has been named as a defendant in 41 cases in Texas in the last three years

alone.  SAppx149-150.

On June 3, 2020, Brazos filed 11 patent infringement actions against ZTE,

including Case Nos.: 6:20-cv-00487-ADA, 6:20-cv-00488-ADA, 6:20-cv-00489-

ADA, 6:20-cv-00490-ADA, 6:20-cv-00491-ADA, 6:20-cv-00492-ADA, 6:20-cv-

00493-ADA, 6:20-cv-00494-ADA, 6:20-cv-00495-ADA, 6:20-cv-00496-ADA and

6:20-cv-00497-ADA.

On July 17, 2020, ZTE's U.S. counsel in all 11 cases, Eric S. Robinson, filed

a Waiver of the Service of Summons stating that ZTE waived service and agreed to

"save the expense" of serving a summons and complaint.  *See, e.g.*, SAppx151.

**D.     Brazos's Good-Faith Attempts To Serve ZTE Before Moving The
District Court To Authorize Alternative Service**

On February 8, 2022, Brazos filed the four patent infringement actions against

ZTE at issue here (Case Nos. 6:22-cv-00136-ADA – 6:22-cv-00139-ADA).

To avoid the significant burden of serving under the Hague Convention and

preserve valuable resources in light of ZTE's U.S. presence, on February 9, 2022,

Brazos's counsel, Heather Kim, emailed ZTE's U.S. counsel representing ZTE in

the other 11 patent infringement cases between the parties, Bradford Schulz and

Lionel Lavenue, asking them to accept service of the four complaints.  SAppx116.

9

On February 10, 2022, ZTE's counsel, Mr. Lavenue responded to Ms. Kim's email. Despite currently representing ZTE in all 11 aforementioned patent infringement cases and actively litigating on ZTE's behalf before the District Court for more than a year (and later representing ZTE in its motion to dismiss these cases and in the instant Petition), Mr. Lavenue refused to accept service stating that he was not authorized to do so. SAppx118.

On February 10, 2022, the District Court issued a summons on ZTE c/o ZTE USA, Incorp Services Inc., 815 Brazos St., Suite 500, Austin, Texas 78701. Also, on February 10, 2022, Brazos mailed the complaints to ZTE in China. SAppx121-122.

On February 14, 2022, Brazos served the complaints on the registered agent of ZTE's U.S. subsidiary (ZTE USA), Jason Casey, at 815 Brazos St., Suite 500, Austin, Texas 78701. SAppx125, SAppx127, SAppx129, SAppx131.

E. **Brazos's Motion For Leave To Effect Alternative Service By Email To ZTE's Current U.S. Counsel And Personal Delivery To ZTE USA**

On March 3, 2022, Brazos filed a motion for leave to effect alternative service in all four cases. Appx17-26. Brazos argued that the motion should be granted because: (1) under Rule 4(f)(3), the District Court had broad discretionary power to order alternative service reasonably calculated to provide proper notice; and (2) this

10

Court had already approved the same alternative service on a Chinese defendant's

U.S. counsel and U.S. subsidiary in *OnePlus.* Appx17-18, Appx21-24.

On March 7, 2022, ZTE's counsel Messrs. Lavenue and Schulz filed a motion

to dismiss the complaints for improper service, lack of personal jurisdiction,

improper venue and failure to state a claim, and an opposition to Brazos's motion

for leave to effect alternative service. Appx48-71. In the motion, ZTE only argued

that the Court should not authorize alternative service under Rule 4(f)(3) because

Brazos "made no effort to accomplish service through [] the Hague Convention."

Appx63.

On March 14, 2022, Brazos filed a reply in support of its motion for leave to

effect alternative service explaining that Brazos was not required to attempt service

under the Hague Convention under this Court's rulings in *OnePlus* and *Nuance*, and

pointing out that even ZTE's own cited cases confirmed that proposition.

SAppx52-57.

> **F.** **The District Court's Correct Decision Following This Court's Ruling In *OnePlus* And Authorizing The Same Alternative Service On ZTE**

On April 8, 2022, the District Court, relying on this Court's ruling in *OnePlus*,

issued an order ("Order") granting Brazos's motion for alternative service by email

to ZTE's U.S. counsel (currently representing ZTE in 11 other cases) and personal

delivery to ZTE's U.S. subsidiary, ZTE USA (selling ZTE's infringing products in

the U.S.). Appx1-5. In the Order, the District Court also reasoned that: (1) alternative service is justified because, in addition to the fact that service under the Hague Convention is more "cumbersome," Brazos made several reasonable attempts to serve ZTE unlike in other cases where the plaintiffs made no effort to put the defendants on notice; and (2) Brazos's proposed methods of alternative service comport with due process, which ZTE failed to challenge. Appx3-4.

Pursuant to the Order, on April 11, 2022, Brazos's counsel, Heather Kim, served the four complaints by email to ZTE's U.S. counsel, Bradford Schulz and Lionel Lavenue. SAppx132.

On April 13, 2022, Brazos served the four complaints by personal delivery to the registered agent of ZTE's U.S. subsidiary (ZTE USA), Jason Casey, at 815 Brazos St., Suite 500, Austin, Texas 78701. SAppx133-136.

On May 5, 2022, ZTE filed the frivolous Petition despite being fully apprised of the four cases pursuant to the authorized alternative service and having knowledge about this Court's prior ruling that a plaintiff is not required to attempt service under the Hague Convention.

## REASONS A WRIT OF MANDAMUS SHOULD NOT ISSUE HERE

A writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks and citation omitted). This Court has held

that "[t]he writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power." *In re Volkswagen of Am. Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

A writ of mandamus may be issued only if the petitioner satisfies the following three requirements: (1) the petitioner must have no other adequate means to attain the relief desired; (2) the petitioner must show that the "right to issuance of the writ" is "clear and indisputable"; and (3) the petitioner must convince the court that the writ is "appropriate under the circumstances." *In re HTC Corp.*, 889 F.3d 1349, 1352 (Fed. Cir. 2018).

As demonstrated below, because ZTE does not satisfy even one of these requirements, the Petition should be denied.

## I. ZTE FAILED TO SHOW THAT IT HAS NO ADEQUATE MEANS TO ATTAIN THE DESIRED RELIEF AS ZTE CAN OBTAIN MEANINGFUL APPELLATE REVIEW AFTER FINAL JUDGMENT

The Court should deny mandamus because ZTE failed to show that it has no adequate means to attain the desired relief. *See In re Lab'y Comput. Sys., Inc.*, 243 F.3d 553 (Fed. Cir. 2000) (denying mandamus and holding that the petitioner, as the party with the burden of proof, failed to show it had no other means of attaining the desired relief). Indeed, there is no question that ZTE can attain the desired relief of dismissing the four cases for lack of personal jurisdiction due to insufficient service of process by obtaining meaningful appellate review of the District Court's decision

13

after final judgment. *See In re Volkswagen of Am., Inc.*, 296 F. App'x 11, 13-14 (Fed. Cir. 2008) (denying mandamus and holding that dismissal for lack of personal jurisdiction can be reviewed on appeal from final judgment).

ZTE simply "cannot justify an end run around the final judgment rule" by arguing that the harm of an "unjust trial" in the WDTX will already have been done by the time a case is tried and appealed (Pet. at 28-29). *In re TCT Mobile Int'l Ltd.*, 783 F. App'x 1028, 1029 (Fed. Cir. 2019).

As the U.S. Supreme Court held, ZTE should not be given the extraordinary mandamus relief as a substitute for appeal even if "hardship may result from delay and perhaps unnecessary trial." *In re TCT Mobile*, 783 F. App'x at 1029 (citing *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)).

Moreover, ZTE, as a billion-dollar global company, failed to show any evidence of financial or other material hardship from litigating in the WDTX. To the contrary, ZTE has been well represented by multiple counsel in 41 cases filed against it in Texas alone (SAppx149-150), and there is no indication that ZTE is incapable of adequately defending itself there. Moreover, ZTE does not dispute that it is proper for these cases ultimately to be tried in Texas. ZTE merely wishes to delay them.

ZTE's reference to *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) (Pet. at 28-29) misses the point. *TC Heartland* is inapposite and

14

distinguishable as that case relates to a venue challenge and not alternative service

of process. And ZTE has failed to show that this Court found *TC Heartland* relevant

to the personal jurisdiction inquiry in any way.

Finally, this Court routinely denies mandamus where a petitioner (like ZTE)

seeks to overturn the denial of a motion to dismiss for lack of personal jurisdiction

and should do so here. *See In re TCT Mobile*, 783 F. App'x at 1029; *In re BNY*

*ConvergEx Grp., LLC*, 404 F. App'x 484, 484-85 (Fed. Cir. 2010); *In re*

*Volkswagen*, 296 F. App'x at 13-14; *In re Unique Functional Prod., Inc.*, 75 F.

App'x 752, 753 (Fed. Cir. 2003); *In re Lab'y Comput.*, 243 F.3d at 553.

Because ZTE must satisfy all three requirements under the legal standard for

mandamus relief but failed to satisfy the first requirement (*i.e.*, to show that it has

no adequate means of obtaining the desired relief), the Court should deny the

Petition.

## II. ZTE FAILED TO SHOW THAT THE RIGHT OF ISSUANCE OF THE WRIT IS CLEAR AND INDISPUTABLE AS THIS COURT ALREADY APPROVED THE SAME ALTERNATIVE SERVICE AND REJECTED THE ARGUMENTS ZTE RAISES HERE

The Court should also deny mandamus because the District Court's analysis

is consistent with this Court's prior rulings in both *OnePlus* and *Nuance*, and ZTE

failed to show that the right of issuance of the writ is clear and indisputable. *See*

*OnePlus*, 2021 WL 4130643, at *2-3 (approving alternative service on a foreign

defendant's U.S. counsel and U.S. subsidiary under Rule 4(f)(3) as an alternative to

the Hague Convention and rejecting the argument that plaintiff had the obligation to attempt service under the Hague Convention before seeking court relief); *Nuance,* 626 F.3d at 1230 (same).[2]

Multiple circuit courts have reached the same conclusion approving similar alternative service under Rule 4(f)(3). *See, e.g.*, *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x 171, 177 (3d Cir. 2017) (affirming court-ordered alternative mail service); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (affirming court-ordered alternative email service); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016-19 (9th Cir. 2002) (affirming court-ordered alternative email and mail service).

Moreover, merely emailing ZTE's U.S. counsel can be sufficient service under Rule 4(f)(3), so Brazos did not even have to serve though personal delivery on ZTE USA (although it did) given ZTE's full knowledge of the action though its current U.S. attorneys. *See, e.g.*, *Nuance*, 626 F.3d at 1239; *Nagravision*, 882 F.3d at 498; *see also Huawei Techs. USA, Inc. v. Oliveira*, No. 4:19-CV-229-ALM-KPJ, 2019 WL 3253674, at *1 (E.D. Tex. July 19, 2019) (authorizing service by emailing

---

[2] In reviewing the District Court's denial of a motion to dismiss for lack of personal jurisdiction, as ZTE is asking here, this Court should apply its own law. *See Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012) (the law of the Federal Circuit applies to determine whether the district court properly decided the question of personal jurisdiction over an out-of-state accused infringer); *Nuance,* 626 F.3d at 1230 (same).

16

the defendant's counsel and noting that courts "routinely direct service on an international defendant's counsel under Rule 4(f)(3)" as such service "erases any material doubt that [Defendant] will be provided notice of this suit") (citation omitted).

### A. The Court-Ordered Alternative Service Of Process Complies With The Federal Rules Of Civil Procedure

Brazos properly served ZTE pursuant to the District Court's Order for alternative service and in accordance with Rules 4(h) and 4(f) of the FRCP. Rule 4(h) states that "unless federal law provides otherwise, a foreign corporation must be served (1) in a judicial district of the United States or (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual." Fed. R. Civ. P. 4(h) (citations omitted).

### 1. Rule 4(f)(3) Gives The District Court Broad Discretion To Order Alternative Service On ZTE

In addition to serving a foreign defendant under the Hague Convention, Rule 4(f) provides for alternative service ordered by a court just like the service the District Court ordered here.

Rule 4(f) states as follows:

> (f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

As such, Rule 4(f)(3) permits a plaintiff to use an alternative method of service if the plaintiff:  (1) obtains permission of the court; and (2) the method is not otherwise prohibited by international agreement.  *See* Fed. R. Civ. P. 4(f)(3); *Nuance*, 626 F.3d at 1239-40; *Terrestrial Comms LLC v. NEC Corp.*, No. 6:19-CV-00597-ADA, 2020 WL 3270832, at *2 (W.D. Tex. June 17, 2020).

Here, Brazos met the Rule 4(f)(3) requirements because it obtained the Court's permission to serve ZTE by email to ZTE's current U.S. counsel and personal service to ZTE's U.S. subsidiary, and ZTE failed to show that those service methods are prohibited by any international agreements.

### 2. Brazos Was Not Required To Attempt Service Under The Hague Convention Before Moving The District Court To Authorize Alternative Service

Contrary to ZTE's assertion (Pet. at 16-19), Brazos was not required to attempt service under the Hague Convention because the Court already rejected this very argument. *See Nuance*, 626 F.3d at 1238 ("While Appellees argue that service must have been attempted under the Hague Convention before alternative service methods can be employed, this court disagrees.").

Notably, in the Petition, ZTE fails to even mention this Court's highly relevant *Nuance* holding, which is the crux of this dispute.

The *Nuance* Court noted that "numerous [other] courts have found alternate service methods appropriate without a prior attempt to serve through the Hague Convention." *Nuance*, 626 F.3d at 1238-39; *see also Terrestrial Comms LLC*, 2020 WL 3270832, at *3 ("The Hague Convention is not mandatory" and "attempting service under the Hague Convention is not a prerequisite to requesting alternative service" under Rule 4(f)(3).).

19

Notably, the defendants in *Nuance* petitioned the Supreme Court for certiorari, arguing that the Federal Circuit was incorrect in holding that alternative service of process is allowed under Rule 4(f)(3) irrespective of whether the litigant tried to follow the Hague convention, and that the Supreme Court should grant the petition to "correct the conflict." Pet. for Writ of Certiorari, 2011 WL 515698, at *14, *Abbyy Prod., LLC v. Nuance Commc'ns, Inc.*, No. 10-1019. (U.S.) But the Supreme Court denied certiorari. *See Abbyy Prod., LLC v. Nuance Commc'ns, Inc.*, 564 U.S. 1053 (2011). If the Supreme Court found no reason to change this Court's decision in *Nuance*, then the Court should similarly find no reason to disturb the well-settled law.

ZTE incorrectly argues that the District Court failed to identify the burden associated with the Hague Convention (Pet. at 17). However, when addressing the unique circumstances here, the District Court reasoned that in addition to the "cumbersome" nature of the Hague Convention, Brazos made several reasonable attempts to serve ZTE by more conventional methods. Appx2-3. The District Court did not have to restate the obvious, especially since it was found in a similar case that service on ZTE under the Hague Convention would require 18 months, which finding ZTE plainly failed to challenge or rebut. *See Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-CV-01827-N, 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018) ("[A]lthough [plaintiff] is attempting to serve ZTE Corporation

20

in China in accordance with the Hague Convention, such service may take 18 months or longer–and the exact time needed for completion is unpredictable. [Plaintiff] thus argues that alternative service on ZTE Corporation's counsel is likely the best, fastest, and most reliable service method. The Court agrees.")[3]

Contrary to ZTE's assertion (Pet. at 14), Brazos did explain the obvious burden of the Hague Convention in the context of this case stating that Brazos sought "to avoid the significant burden of serving under the Hague Convention and preserve valuable resources in light of ZTE's U.S. presence" and the fact that ZTE's U.S. counsel currently represents ZTE in 11 other patent infringement cases in the WDTX. Appx19. As such, Brazos did not fail to address its burden and did not waive any arguments in that regard. And the District Court did not commit any clear errors by authorizing alternative service under the unique circumstances of this case.

Paradoxically, while ZTE argues that the Hague Convention does not involve any burden or delay (Pet. at 17), ZTE waived service of process in 11 other cases,

---

[3] There is no question that service under the Hague Convention is burdensome compared to more conventional service methods. *See, e.g., Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 563, 566 (C.D. Cal. 2012) (authorizing alternative service and noting that service under the Hague Convention would take four to six months); *Ackerman v. Glob. Vehicles U.S.A., Inc.*, No. 4:11CV687RWS, 2011 WL 3847427, at *3-4 (E.D. Mo. Aug. 26, 2011) (authorizing alternative service on defendant's counsel "so as to not further delay" the lawsuit) (internal quotation marks omitted); *LG Elecs., Inc. v. Asko Appliances, Inc.*, No. 08–828 (JAP), 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (authorizing service on defendant's counsel "to prevent further delays in litigation").

admitting on the record that the waiver was signed to "save the expense of serving a summons and complaint." SAppx151. ZTE cannot have it both ways and fundamentally change its position whenever convenient and helpful to ZTE.

ZTE unsuccessfully attempts to distinguish *OnePlus* by arguing that, while in *OnePlus*, service under the Hague Convention was an unnecessary delay, here, there is no delay from service but only from Brazos's purported two-year strategic delay to provide notice of its complaints (Pet. at 17). This statement makes no sense and is contradicted by the undisputed facts.

Indeed, the chronology of events is clear that Brazos: (i) filed the new complaints on February 8, 2022 (Appx6-16, SAppx1-27); (ii) emailed the complaints to ZTE's U.S. counsel in currently-pending litigation between the parties the very next day on February 9, 2022 (SAppx116); and (iii) served the registered agent of ZTE's U.S. subsidiary (SAppx125-131) and mailed the complaints to ZTE in China on February 10, 2022 (SAppx121-122).

ZTE also incorrectly argues that the District Court abused its discretion by finding that Brazos's service attempts were reasonable. Pet. at 18-19. ZTE then improperly cites two distinguishable cases that should be rejected because the plaintiffs there plainly failed to show reasonable efforts to put the defendants on proper notice and, as a result, the court denied alternative service. *See Trustees of Purdue Univ. v. STMicroelectronics N.V.*, No. 6:21-CV-00727-ADA, 2021 WL

22

5393711, at *1 (W.D. Tex. Nov. 18, 2021); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzen) Tech., Ltd.*, No. 6:20-CV-00876-ADA, 2021 WL 4974040, at *1 (W.D. Tex. Oct. 25, 2021).

Here, the circumstances are fundamentally different. Unlike the plaintiff in *Monolithic* that showed zero effort in providing notice through other means and the plaintiff in *Purdue* that contacted only counsel who did not even represent the defendant at the time, Brazos acted in good faith and diligently attempted to put ZTE on notice through three different methods including: (1) emailing the complaints to ZTE's U.S. counsel who currently represents ZTE in 11 patent infringement cases with Brazos (SAppx116); (2) personally delivering the complaints to the registered agent of ZTE's U.S. subsidiary (SAppx125-131); and (3) mailing the complaints to ZTE in China (SAppx121-122).

Faced with Brazos's reasonable service attempts that warranted the authorization of alternative service, ZTE got creative. It did not authorize its U.S. counsel to accept service via e-mail, but then had the same counsel file motions to dismiss and make the nonsensical argument here that because Brazos's various service attempts included mailing documents to ZTE in China, the Hague Convention service requirement was triggered and Brazos was obligated to serve ZTE accordingly. Pet. at 9. However, ZTE failed to cite a single case on point or any relevant Hague Convention rule.

23

Fatally, ZTE's argument is squarely contradicted by the Hague Convention's language that instructs on when documents must be transmitted abroad, and not on when they have been transmitted. *See* Fed. R. Civ. P. 4 Advisory Committee's Note (1993) ("Use of the Convention procedures, when available, is mandatory *if documents* <u>*must be*</u> *transmitted abroad to effect service*.") (emphasis added).

ZTE's argument is also contradicted by this Court's ruling that, although some district courts may look at whether the plaintiff has reasonably attempted to effectuate service, "those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement." *OnePlus*, 2021 WL 4130643 at *3.

### 3. Rule 4(f)(1) Does Not Mandate The Hague Convention And Does Not Displace The Court-Authorized Alternative Service Under Rule 4(f)(3) Which Stands On Equal Footing

ZTE asserts that Rule 4(f) mandates service under the Hague Convention and allows alternative service under 4(f)(3) only if court intervention is necessary and justified. Pet. at 9. But this Court has held that "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections [including subsection 4(f)(1) referencing the option to serve under the Hague Convention]; it stands independently, on equal footing." *Nuance*, 626 F.3d at 1239; *see also Rio Props.*, 284 F.3d at 1016 ("We hold that Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of Civil Procedure, and we commit to the sound

24

discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3).").

The Court's ruling in *Nuance* is logical and proper as holding otherwise is to effectively mandate the Hague Convention for defendants located outside of the U.S. and deprive district courts of their essential role of exercising discretion under the unique circumstances of each case to prevent foreign defendants from unnecessarily delaying the litigation process and to relieve the burden on plaintiffs by preserving their valuable resources.

Directing Brazos to serve under the Hague Convention would have made zero sense under the circumstances here, including that ZTE: (i) has been involved in 41 Texas cases; (ii) is currently represented by U.S. counsel in the WDTX; (iii) received the referenced complaints months ago and was fully apprised of the four cases; (iv) waived service in 11 other WDTX cases to relieve the Hague Convention burden on Brazos; (v) failed to challenge the finding in *Fundamental Innovations* that service on ZTE in China would take approximately 18 months; (vi) failed to argue before the District Court that the alternative service did not comport with the federal due process and Texas long-arm statute requirements; and (vii) failed to dispute that it suffered any material prejudice by being served through the court-ordered alternative service instead of the Hague Convention. As such, the unique facts of this case show

25

that the alternative service was proper and justified, and not authorized for mere convenience.

### 4. The Court-Ordered Service Under Rule 4(f)(3) Is Independent From Service Under Rule 4(e)(1) Which Follows State Law

This Court has made it abundantly clear that Rules 4(f) (Serving an Individual in a Foreign Country) and 4(e) (Serving an Individual within a Judicial District of the United States) are independent and exclusive of one another. *See Nuance*, 626 F.3d at 1240. Nevertheless, ZTE asserts that the Texas long-arm statute requires service under the Hague Convention because it involves transmittal of documents abroad. Pet. at 11-12. But the Court has already rejected this very argument that "confuses service of process under Rule 4(f)(3), which provides for court-directed service by <u>any</u> means not prohibited by international agreement with service under Rule 4(e)(1), which does not require a court-order and provides service by following state law." *Nuance*, 626 F.3d at 1240 (internal quotation marks omitted) (emphasis added).[4]

---

[4] ZTE similarly argues that Brazos's attempted service through ZTE USA was defective because, under Rule 4(h)(1), service through a domestic subsidiary is proper only when the two companies are in reality the same entity. But ZTE confuses Rule 4(f)(3), which provides for court-ordered service by any means, with Rule 4(h)(1), which does not require a court order. Even if Rule 4(h)(1) is somehow relevant here (and it is not), ZTE still loses because it effectively admitted that "any conduct claimed against ZTE [] would be the conduct of ZTE USA" (SAppx145). In addition, the law is clear that the infringing acts of a U.S. subsidiary are imputed on its foreign parent for jurisdictional purposes. *See ACQIS LLC v. Lenovo Grp.*

26

The Court further explained that, for the purposes of Rule 4(f)(3), when the

state's long-arm statute is co-extensive with the federal due process requirements –

the personal jurisdiction analyses under state law and federal law are the same.

*Nuance*, 626 F.3d at 1230-31 ("Because [the state's] long-arm statute is co-extensive

with federal due process requirements, the jurisdiction analyses under [state] law

and federal law are the same.").[5]

### B. The Court-Ordered Alternative Service Complies With The Constitutional Due Process And The Texas Long-Arm Statute

The District Court correctly held that the court-ordered alternative service

"comports with due process for the unopposed reasons argued by Plaintiff" (Appx4),

including that such service was reasonably calculated under the circumstances to

---

*Ltd.*, No. W-20-CV-00967-ADA, 2021 WL 5332314, at *10 (W.D. Tex. Nov. 16, 2021) (imputing the subsidiary Lenovo's infringing sales in the U.S. to the foreign parent LGL because LGL created Lenovo to distribute the infringing products in the U.S.); *Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) (imputing the subsidiary's bad acts to the parent where the parent authorizes those acts and the two companies operate in concert and at "nearer than arm's length" terms).

[5] ZTE cites to *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369 (5th Cir. 2003), to claim the Texas long-arm statute "extends **beyond** what due process requires" (Pet. at 11) when the case itself explicitly states that the statute is coextensive with the confines of due process. *See id.* at 373 ("Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process.").

apprise ZTE of the pendency of the action and afford it an opportunity to present its objections (Appx24).

Because ZTE failed to challenge the compliance of the alternative service with the federal due process and Texas long-arm statute requirements, ZTE's arguments on this issue in the Petition were never properly before the District Court and should not be the subject of mandamus review.

Even if ZTE's arguments were before the District Court (and they were not), ZTE still loses because it plainly failed to cite any cases showing that the alternative service here does not comply with the federal due process or Texas long-arm statute requirements.

ZTE argues that, under *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533 (5th Cir. 1990), the Texas long-arm statute triggers the Hague Convention because the statute reads: "If the secretary of state is served with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided." Tex. Civ. Prac. & Rem. Code Ann. § 17.045(a). But this Court already held in *OnePlus* that "the *Sheet* case, on which defendant relies, did not involve court-authorized service under Rule 4(f)(3) and is therefore inapposite" for the purposes of Rule 4(f)(3) analysis. *See OnePlus*, 2021 WL 4130643 at *3.

28

ZTE's reliance on *Volkswagenwerk* is similarly misplaced because that case stands for the proposition that a foreign defendant can be served under state law without transmitting documents abroad (like the authorized service on ZTE's U.S. counsel and U.S. subsidiary), and the Hague Convention is thus inapplicable. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) ("Due Process Clause does not require an official transmittal of documents abroad every time there is service on a foreign national.").

Accordingly, the District Court correctly held that the alternative service comports with due process and the Texas long-arm statute.

Because ZTE must satisfy all three requirements under the legal standard for mandamus relief but failed to satisfy the second requirement (*i.e.*, to show that the right to issuance of the writ is clear and indisputable), the Court should deny the Petition.

## III. ZTE FAILED TO SHOW THAT THE DRASTIC MANDAMUS RELIEF IS APPROPRIATE UNDER THE CIRCUMSTANCES IN THIS CASE

### A. ZTE Failed To Show That The District Court Clearly Abused Its Discretion Or Usurped Judicial Power

ZTE failed to show that the drastic and extraordinary mandamus relief is appropriate under the circumstances in this case as the Court's clear rulings in both *OnePlus* and *Nuance* confirm that the District Court correctly ordered alternative service under Rule 4(f)(3). ZTE, as the party with the burden of proof, submitted

29

no evidence to show that the District Court clearly abused its discretion or usurped judicial power.

**B.      Accepting ZTE's Policy Argument Would Lead To The Absurd Result Of Mandating The Hague Convention And Depriving District Courts Of Their Essential Role Of Exercising Judgment To Advance Justice**

ZTE's manufactured policy argument seeking an advisory mandamus (which emphasizes the large number of Texas cases involving foreign defendants and purportedly draining judicial power (Pet. at 29-33)) has no relevance to the question of what methods of alternative service are appropriate under Rule 4(f)(3).

Moreover, ZTE's policy argument lacks basic common sense and, if accepted, would lead to the absurd result of:  (i) mandating the Hague Convention in all cases where the defendant is located outside of the U.S.; and (ii) depriving District Courts of their essential role of exercising judgment under the unique circumstances of each case to prevent foreign defendants from delaying the litigation process and to relieve the burden on plaintiffs by preserving their valuable resources.  ZTE's policy argument should thus be rejected.

ZTE implies that Brazos is doing something improper by filing its patent infringement cases against ZTE.  Pet. at 7.  Nothing could be further from the truth.  Brazos is the rightful owner of the asserted patents and has diligently followed the rules in serving ZTE pursuant to the District Court's Order.  ZTE

30

designs, makes, offers for sale, and sells the accused infringing products. And Brazos certainly has the right to exercise its patent rights like every other patent holder and seek to recover for ZTE's wrongful infringement.

ZTE also improperly attempts to ride on the coattails of *Juniper* to downplay Brazos's presence in the WDTX. These arguments are not only wrong but wholly irrelevant to the issues in this litigation. And *Juniper*, which is a venue transfer case, has no application here. *See In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. 2021). Despite repeatedly lambasting Brazos and the District Court, ZTE is the one breaking the law,[6] abusing the judicial process by filing this meritless Petition and attempting to delay Brazos's recovery.[7]

Because ZTE must satisfy all three requirements under the legal standard for mandamus relief but failed to satisfy the third requirement (*i.e.*, to show that the drastic mandamus relief is appropriate under the circumstances of this case), the

---

[6] In March 2017, ZTE agreed to plead guilty to obstruction of justice, making false statements and violating IEEPA. *See* https://www.justice.gov/opa/pr/zte-corporation-agrees-plead-guilty-and-pay-over-4304-million-violating-us-sanctions-sending As a result, ZTE settled with the U.S. Department of Justice, U.S. Department of Commerce and the U.S. Department of the Treasury, agreeing to pay a combined penalty of $1.19 billion for its criminal conduct. *Id.*

[7] Notably, this Court recently denied ZTE's recent mandamus petition on venue transfer in the other 11 cases that was filed with the sole purpose of delaying Brazos's recovery. *See In re ZTE Corp.*, No. 2022-122, 2022 WL 1419605 (Fed. Cir. May 5, 2022).

31

Petition should be denied. Even if ZTE satisfies this requirement (and it does not), the Court should still deny the Petition because ZTE must satisfy all three requirements under the legal standard for mandamus relief, which it failed to do.

There is no question that it would be a miscarriage of justice for a writ of mandamus to issue here when ZTE was properly served, adequately apprised of these cases, and given the opportunity to object.

The Court should reject ZTE's frivolous arguments that are contrary to this Court's rulings on the same issues and deny the Petition. *See In re Oximetrix, Inc.*, 748 F.2d 637, 644 (Fed. Cir. 1984) (denying mandamus petition and imposing sanctions on petitioner for making frivolous arguments); *see also In re Solerwitz*, 848 F.2d 1573, 1575 (Fed. Cir. 1988) (sanctioning counsel for filing and maintaining frivolous appeals that presented legal issues and fact patterns indistinguishable from those decided in the referenced precedents).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the Petition.

Dated: May 13, 2022

/s/ Jonathan K. Waldrop

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
Heather S. Kim
John W. Downing
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, California 94065
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Shelley Ivan
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel for Respondent WSOU Investments, LLC
d/b/a Brazos Licensing and Development*

33

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-0147, 2022-0148, 2022-0149, 2022-0150

**Short Case Caption:** In Re ZTE Corporation

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

the filing has been prepared using a proportionally-spaced typeface and includes __7,459__ words.

the filing has been prepared using a monospaced typeface and includes _____ lines of text.

the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __05/13/2022__       Signature: __/s/ Jonathan K. Waldrop__

Name: __Jonathan K. Waldrop__

Save for Filing

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Federal Circuit by using the

appellate CM/ECF system on May 13, 2022.

I also served the foregoing upon the following counsel of record and the

Honorable Alan D. Albright, United States District Judge, via Express Mail.


Lionel M. Lavenue
David K. Mroz
Bradford C. Schulz
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
1875 Explorer Street, 8th Floor
Reston, VA 20190-6023
Telephone: (571) 203-2750
Facsimile: (202) 408-4400

Hon. Alan D. Albright
United States Court for the Western
District of Texas
800 Franklin Avenue, Room 301
Waco, Texas 76701
Telephone: (254) 750-1501


Dated: May 13, 2022

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop
*Counsel for Respondent WSOU*
*Investments, LLC d/b/a Brazos*
*Licensing and Development*

35