**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>TP-LINK TECHNOLOGIES CO., LTD.,<br>TP-LINK CORPORATION LTD, and<br>TP-LINK INTERNATIONAL LTD.,<br><br>    Defendants. | Civil Action No. 2:21-cv-00430-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

███████████████████████████

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 1

III. LAW ..................................................................................................................... 3

IV.  ARGUMENT ........................................................................................................ 5

    A.   TP-Link purposefully directs activities towards Texas ................................ 5

        i.   TP-Link knows its products will be sold in Texas ................................... 5

        ii.  TP-Link directs activities at the target forum ......................................... 8

            a.   TP-Link maintains significant involvement in United States sales ................. 8

            b.   TP-Link practices all four examples of "something more"

                identified in *Asahi* ................................................................................ 10

    B.   Atlas's claims arise out of TP-Link's activities in Texas ............................. 14

    C.   Asserting personal jurisdiction over TP-Link would be reasonable and fair ................. 14

V.   CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*AGIS Software Dev. LLC v. HTC Corp.*,
   2018 U.S. Dist. LEXIS 167029 (E.D. Tex. Sep. 28, 2018)......................................................... 9

*Am. Patents LLC v. D-Link Corp.*,
   2020 U.S. Dist. LEXIS 123158 (E.D. Tex. Jul. 14, 2020) ...................................................... 13

*Asahi Metal Indus. Co. v. Superior Court of Cal.*
   480 U.S. 102 (1987) ................................................................................................... 4, 13

*Aten Int'l Co. v. Emine Tech. Co.*,
   261 F.R.D. 112 (E.D. Tex. 2009) .......................................................................................... 6

*Baylor Univ. v. Vintage Brand, LLC*,
   2022 U.S. Dist. LEXIS 85794 (W.D. Tex. May 12, 2022) ....................................................... 7

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*
   21 F.3d 1558 (Fed. Cir. 1994) .............................................................................................. 5

*Blitzsafe Tex., LLC v. BMW AG*,
   2018 U.S. Dist. LEXIS 173065 (E.D. Tex. Sep. 5, 2018).................................................... 5, 8

*Celgard, LLC v. SK Innovation Co.*,
   792 F.3d 1373 (Fed. Cir. 2015) ............................................................................................ 4

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................................................... 4

*ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
   2009 U.S. Dist. LEXIS 34767 (E.D. Tex. Mar. 26, 2009) ....................................................... 8

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008).............................................................................................. 4

*Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*,
   2020 U.S. Dist. LEXIS 18697 (E.D. Tex. Feb. 5, 2020).................................................... 13

*MHL TEK, LLC v. Nissan Motor Co.*,
   2008 U.S. Dist. LEXIS 26696 (E.D. Tex. Apr. 2, 2008) ...................................................... 5

*North Am. Philips Corp. v. Am. Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994) ................................................................................... 6

*Nuance Communs., Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) ........................................................................... 14, 15

*Polar Electro Oy v. Suunto Oy*,
   829 F.3d 1343 (Fed. Cir. 2016) ......................................................................... 4, 8, 11

*Seagen Inc. v. Daiichi Sankyo Co.*,
   546 F. Supp. 3d 515 (E.D. Tex. 2021) ................................................................. 5, 14

*Semcon IP Inc. v. TCT Mobile Int'l Ltd.*,
   2019 U.S. Dist. LEXIS 110018 (E.D. Tex. Jul. 1, 2019) ........................................ 15

*Seven Networks, LLC v. ZTE (USA), Inc.*,
   2018 U.S. Dist. LEXIS 89465 (N.D. Tex. May 30, 2018) ................................... 8, 15

*Ultravision Techs., LLC v. GoVision, LLC*,
   2020 U.S. Dist. LEXIS 32618 (Jan. 20, 2020) ....................................................... 14

**Rules**

FED. R. CIV. P. 4(k)(1)(A) .......................................................................................... 4

Plaintiff Atlas Global Technologies LLC ("Atlas") files this Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. 28 ("Motion"). This Opposition adopts Defendants' nomenclature and refers to TP-Link Technologies Co., Ltd. as "TP-Link China" and TP-Link Corporation Ltd. f/k/a TP-Link International Ltd. as "TP-Link Hong Kong." The Defendants are collectively referred to as "TP-Link." Third party TP-Link USA Corporation is referred to as "TP-Link USA."

## I.     INTRODUCTION

There are situations where a mom-and-pop shop sells products to a large distributor, and some of the shop's products ultimately end up being sold in an unexpected forum. And then there is TP-Link, who specifically targets the United States market and configures its products to be sold here. TP-Link's Motion makes it seem almost accidental that the accused products (Wi-Fi 6 routers) are sold in the United States. But TP-Link sells products to a distributor (TP-Link USA) ████████████████████████████████████████████████████████

████████████████████████████████

Further, TP-Link specifically configures the accused products to be sold in the United States and Texas. TP-Link products sold here contain English user guides, American power plugs, and FCC certifications. It is not a coincidence that TP-Link products are sold in Texas; it is part of an intentional plan. TP-Link's attempts to escape this forum should be denied.

## II.    FACTUAL BACKGROUND

There are three TP-Link entities relevant to this Motion: TP-Link China, TP-Link Hong Kong, and TP-Link USA. ██████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

1

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████

TP-Link Hong Kong services United States customers in several ways. ████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

Second, TP-Link Hong Kong "provides specifications, user manuals, installation videos and/or

other technical support documents for the referenced products on the website https://www.tp-

link.com/us/." *Id*. ██████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

TP-Link (the named Defendants in this action) ships the accused products to TP-Link USA.

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████ The accused products are currently sold at major retailers throughout the Eastern District of Texas. Ex. G (Walmart – Marshall); Ex. H (Best Buy – Longview); Ex. I (Office Depot – Longview); Ex. J (Target – Longview).

Prior to providing the accused products to TP-Link USA, TP-Link certifies that the products comply with all necessary FCC requirements governing usage in the U.S. *See* Ex. K (AX3000 – Declaration of Conformity); █████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████ It is the Defendants (TP-Link) that obtain FCC certification so that the products can be sold into the U.S. market and distributed by TP-Link USA.

█████████████████████████████████

██████████████████████ Those products contain markings indicating they are FCC-certified. Ex. L (AX1800 Photos). The packaging also contains U.S.-specific power cords and English user guides ████████████████████████████████

█████████████ Ex. L (AX1800 Photos).

## III.   LAW

A federal district court has personal jurisdiction over a party if the party would be subject to personal jurisdiction in a court of general jurisdiction in the forum state. FED. R. CIV. P.

4(k)(1)(A). When a party is not a resident of the forum state, the exercise of personal jurisdiction must comport with both the state's long-arm statute and the fourteenth amendment to the United States constitution. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). The Texas long-arm statute extends to the limit of federal due process, so the two-part personal jurisdiction test collapses into one question—whether exercising personal jurisdiction comports with federal due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Because this case involves a patent question, Federal Circuit law applies. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).

There are two types of personal jurisdiction, general and specific. Atlas asserts that TP-Link is subject to specific personal jurisdiction. The Federal Circuit has a three-part test to determine whether there is specific personal jurisdiction over a non-resident defendant: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the claim arises out of or relates to the defendant's activities with the forum state; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Celgard*, 792 F.3d at 1377. The Supreme Court's personal jurisdiction jurisprudence has been unsettled since *Asahi*, when the Court deadlocked on whether merely placing a product into the stream of commerce knowing it will be sold in the forum state was sufficient to establish personal jurisdiction, or whether something more was required. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 117 (1987). That issue remains unresolved to this day.[1] *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016) ("The precise requirements of the stream-of-commerce theory remain unsettled."); *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 527 (E.D.

---

[1] The Motion cites the *Asahi* plurality's "something more" standard as settled law, even though the issue is unresolved. *See* Motion at 7.

4

Tex. 2021) (describing the split). The Federal Circuit has not taken a position on whether "stream of commerce alone" or "something more" is required. *Polar Electro*, 829 F.3d at 1349-50. Either way, the Court need not resolve the split here because TP-Link's conduct satisfies both tests.

"Where a defendant purposefully ships an accused product into a forum state through an established distribution channel and the cause of action for patent infringement is alleged to arise out of those activities, no more is usually required to establish specific jurisdiction." *Blitzsafe Tex., LLC v. BMW AG*, 2018 U.S. Dist. LEXIS 173065, at *4 (E.D. Tex. Sep. 5, 2018), quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (quotations and alterations omitted); *see MHL TEK, LLC v. Nissan Motor Co.*, 2008 U.S. Dist. LEXIS 26696, at *6 (E.D. Tex. Apr. 2, 2008) ("BMWMC knows the likely destination of its products. BMWMC sells its products to BMW AG knowing that BMWNA will purchase some of those vehicles for distribution in the United States. BMWNA then distributes X5 and Z4 model vehicles throughout the United States, including Texas. BMWMC should reasonably anticipate being haled into court in Texas.").

## IV.    ARGUMENT

### A.    TP-Link purposefully directs activities towards Texas

#### i.    TP-Link knows its products will be sold in Texas

In its Motion, TP-Link never denies knowing its products will be sold in Texas. It cannot.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



import records show TP-Link China also ships accused products directly to TP-Link USA in the United States. Ex. N (Bill of Lading).

TP-Link is not indifferent towards its products being sold in the United States and Texas; TP-Link **wants** its products sold here, and it has established a distribution chain to accomplish that goal. TP-Link submits documents to the FCC stating that TP-Link products (including the accused products) comply with various FCC requirements. *See* Ex. K (AX3000 – Declaration of Conformity);                                                                           The only reason for

---

[2] TP-Link may argue the "sales" from TP-Link Hong Kong and TP-Link China to TP-Link USA occur in Asia. In *North American Phillips Co.*, the Federal Circuit rejected the argument that goods were deemed "sold" at the location where the goods changed hands. Instead, the court held that the goods were "sold" in Illinois for the purposes of personal jurisdiction because they were ultimately delivered there, even though the buyer took possession outside of Illinois. *See North Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, at 1579-80 (Fed. Cir. 1994); *Aten Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 119 (E.D. Tex. 2009) ("FOB is a contractual term that shifts the risk of loss from seller to buyer at a particular point in time. The relevant inquiry is whether [the defendant] purposefully directs its products toward the Texas market and not whether it retains legal title to the products in the event of loss." (citations omitted)).

TP-Link to certify compliance with FCC requirements is to allow TP-Link products to be sold in the United States. 

It is not a coincidence that TP-Link's products are sold in the United States. It is the result of a deliberate plan.[3]

Once the accused products reach the United States, they are sold nationwide, including in Texas.

*Baylor Univ. v. Vintage Brand, LLC*, 2022 U.S. Dist. LEXIS 85794, at *11-12 (W.D. Tex. May 12, 2022) (holding that the defendant was subject to personal jurisdiction and noting that "[the defendant] took no action to limit its advertisement or selling to the forum state by refusing to sell or ship to Texas customers.").

As a result of TP-Link's actions, the accused products are sold throughout the United

---

[3] f TP-Link makes the argument that it does not know its products are sold in the United States or Texas, that is textbook willful blindness.

States, including at every major electronics retailer in East Texas. *See* Ex. G (Walmart – Marshall); Ex. H (Best Buy – Longview); Ex. I (Office Depot – Longview); Ex. J (Target – Longview); *ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 U.S. Dist. LEXIS 34767, at *42 (E.D. Tex. Mar. 26, 2009) ("[T]his Court presumes that JHT Taiwan knew Texas was a termination point of the distribution channel because the North American companies established a connection with Texas retailers."). "This is not a case where a small manufacturer sells its products to an independent distributor, who then distributes the products to consumers across the nation." *See Polar Electro*, 829 F.3d at 1351. ███████████████████████ ███████████████████████████████████████████████████████████████ It was entirely foreseeable that the accused products would be sold in Texas. This more than satisfies the stream of commerce test. *See Blitzsafe*, 2018 U.S. Dist. LEXIS 173065, at *5-6 ("BMWAG places the accused products into the stream of commerce with knowledge that, through BMWNA's established distribution to other BMW entities, the accused vehicles will be sold in Texas. This knowledge alone is more than sufficient to meet the requirements of *Beverly Hills Fan*."); *Seven Networks, LLC v. ZTE (USA), Inc.*, 2018 U.S. Dist. LEXIS 89465, at *10-11 (N.D. Tex. May 30, 2018) ("ZTE Corp. transfers title of the accused products to an American corporation that ZTE Corp. created for the purpose of distributing and selling its products in the United States. ZTE Corp. thereby places the accused devices in the stream of commerce through an established distribution network that it helped create."); *Aten*, 261 F.R.D. at 119 ("[The plaintiff's] evidence that [the foreign defendant] continually sells its products to a U.S. nationwide retailer is a strong indication that it intends to direct its products nationwide.").

### ii.   TP-Link directs activities at the target forum

#### a.   TP-Link maintains significant involvement in United States sales

Throughout its Motion, TP-Link repeatedly argues that TP-Link USA is "*solely* responsible

for importing, marketing, advertising, offering to sell, and selling 'TP-Link branded' products in the United States. And it is a separate company that is not controlled by either of the named foreign Defendants." *See* Motion at 1 (emphasis in original), 3, 8, 10; Dkt. 29-1 (Zhang Dec.) at ¶4 ("TP-Link China does not direct or control the activities of TP-Link USA in importing, marketing, advertising, offering to sell, or selling TP-Link branded products in the United States."); Dkt. 29-2 (Sun Dec.) ("TP-Link Hong Kong does not direct or control the activities of TP-Link USA Corporation ("TP-Link USA") in importing, marketing, advertising, offering to sell, or selling TP-Link branded products in the United States."). ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ The question of whether TP-Link directed or controlled the activities of TP-Link USA is not the correct issue. Atlas is not arguing that TP-Link USA is the alter ego of TP-Link Hong Kong or TP-Link China—a heightened showing TP-Link attempts to impose. Atlas is arguing that TP-Link Hong Kong's significant oversight over TP-Link USA is evidence of activities targeted at the forum. Thus, "the relevant inquiry is not whether [TP-Link] controlled the intermediaries in the distribution chain, but instead whether it delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *See AGIS Software Dev. LLC v. HTC Corp.*, 2018 U.S. Dist. LEXIS 167029, at *14 (E.D. Tex. Sep. 28, 2018) (quotations omitted).

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



This is not a supplier-distributor arrangement where the supplier provides products outside the U.S. without any knowledge of where the products will be distributed. TP-Link Hong Kong is intimately involved in the sales and marketing of the accused products in the United States and in Texas. Given the contractual relationship between TP-Link and TP-Link USA, jurisdiction over TP-Link is proper.

### b. TP-Link practices all four examples of "something more" identified in *Asahi*

*Asahi's* plurality opinion provided four examples of what the justices considered to be "something more" sufficient to establish personal jurisdiction: (1) designing the product for the market in the forum state; (2) advertising in the forum state; (3) establishing channels for providing regular advice to customers in the forum state; and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *See Asahi*, 480 U.S. at 112. TP-Link has done, and continues to do, all four.

***First***, TP-Link designs and packages the accused products specifically for the United States market. As an example, the accused products sold in the United States contain electrical plugs compatible with United States power outlets. Exhibit L is a series of photos from an AX1800 Wi-Fi 6 router (an accused product) that was recently purchased in Texas. As can be seen in the photos,

the box contains a United States plug that has been "UL US" certified with the certification number "E342511":



Ex. L (AX1800 Photos). The entities that applied for the "UL US" certification associated with that number are TP-Link Hong Kong (Ex. U) and TP-Link China (Ex. V), not TP-Link USA. ■■■

████████████████████████████████████████████████████

██████████████████████████████████ This means TP-Link employees knowingly package products with United States power cords, not cords for some other country. *See Polar Electro*, 829 F.3d at 1351 ("It was [Defendant], not [Third Party], who physically fulfilled the orders, packaged the products, and prepared the shipments in Finland. [Defendant] admits as much.").

In addition, TP-Link specifically configures its products for U.S. operation. There are 13 Wi-Fi channels, only 11 of which are permitted in the United States. Channels 12 and 13 are permitted in certain other countries but not in the U.S. Before selling products in the United States, TP-Link certifies to the FCC that the accused products only operate in channels 1-11. *See* Ex. P (AX3000 Channel Declaration). This means TP-Link sells routers specifically configured to operate in the United States and Texas.

**Second**, TP-Link is involved in advertising the accused products in the United States. TP-Link argues TP-Link USA is "solely" responsible for marketing TP-Link branded products in the United States. Motion at 1. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████ TP-Link also attended the CES 2022 convention to personally advertise its products in the United States. Ex. T (CES Advertisement).

**Third**, TP-Link has established three regular channels to provide customer support in the United States. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████

**Fourth**, TP-Link markets the accused products in Texas through an authorized distributor (TP-Link USA). ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

Even the act of registering trademarks is an activity targeted at the forum. In recent years, both TP-Link Hong Kong and TP-Link China have filed trademark applications for versions of "TP-Link" in the United States. *See* Ex. Q (TP-Link Hong Kong Trademark); Ex. R (TP-Link China Trademark). To obtain a trademark, an applicant must declare the mark is used in commerce. 15 U.S.C. §1051(a)(3)(C). In fact, the TP-Link Hong Kong employee who declared the mark "TP-Link" was used in commerce was Jianmei Sun, TP-Link Hong Kong's declarant in this case. *See* Ex. S (TP-Link Hong Kong Trademark Declaration). As demonstrated by the Distribution Agreement, one of the uses in commerce is TP-Link USA selling the accused products.

Thus, even under the "something more" articulation of the stream of commerce standard, TP-Link's conduct goes well beyond what is necessary to establish personal jurisdiction. The *Asahi* plurality distinguishes between "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State" and "an act purposefully directed toward the forum State." *See Asahi*, 480 U.S. at 113. Given the significant evidence of TP-Link's purposeful activities directed toward the United States and Texas, TP-Link cannot argue its products simply happen to be swept into the forum. *See Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, 2020 U.S. Dist. LEXIS 18697, at *19 (E.D. Tex. Feb. 5, 2020) ("It is undisputed that finished products incorporating [the accused products] frequently are made available for sale in multiple retail locations in Texas. Moreover, [the defendant] appears to have, at the very least, the *intent* that

its products be sold in the United States and Texas, even if it does not know or control all of the precise details of those downstream transactions." (emphasis in original)).

### B.    Atlas's claims arise out of TP-Link's activities in Texas

TP-Link does not raise any new arguments regarding the "arises out of" factor, instead referring back to its arguments regarding minimum contacts. *See* Motion at 9. These arguments fail for the same reasons set forth above. The products accused of infringement in this case are the same products TP-Link places into the stream of commerce knowing the products will be sold in Texas. *See Ultravision Techs., LLC v. GoVision, LLC*, 2020 U.S. Dist. LEXIS 32618, at *20 (Jan. 20, 2020) ("The accused displays that Ultravision focuses on to satisfy the first prong are the same accused displays that Ultravision accuses of infringement. Accordingly, this action 'arises out of or relates to' the Shenzhen AO activities with this forum."); *Seagen*, 546 F. Supp. 3d at 528 (finding this factor was satisfied when the products the defendant placed into the stream of commerce were the products accused of infringement).

### C.    Asserting personal jurisdiction over TP-Link would be reasonable and fair

If the plaintiff establishes the first two prongs of the jurisdictional test, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not reasonable or fair. *Ultravision*, 2020 U.S. Dist. LEXIS 32618, at *21. This factor "applies only sparingly" and is limited to "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *See Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

None of TP-Link's arguments are convincing. First, TP-Link argues it would be severely burdened by having to litigate in Texas, "a venue distant from their homes." *See* Motion at 11. This Court has rejected that exact argument. *See Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, 2019

U.S. Dist. LEXIS 110018, at *11-12 (E.D. Tex. Jul. 1, 2019), pet. for writ of mandamus denied 2019 U.S. App. LEXIS 33161 (Fed. Cir. Nov. 6, 2019) ("TCT International argues that its burden to defend itself in Texas is substantial because it is located in Hong Kong and, thus, it will be required to travel a great distance and defend itself in a foreign legal system which differs significantly from the legal system in Hong Kong. If these factors standing alone were sufficient to deprive U.S. courts of jurisdiction, no holder of a U.S. patent could ever hale a foreign infringer into court." (citations omitted)); *Nuance*, 626 F.3d at 1234 (not unfair when the defendant knew its products would end up in the forum state).

Second (citing venue cases, not jurisdiction cases), TP-Link argues Texas does not have a sufficient interest in litigating this dispute. *See* Motion at 11-12. Atlas is a Texas entity headquartered in Texas. Dkt. 1 at ¶3. This gives Texas a significant interest in this litigation.

TP-Link addresses the remaining three factors in three sentences, none of which demonstrate a "compelling case" for dismissing this action. *See* Motion at 12; *Seven Networks*, 2018 U.S. Dist. LEXIS 89465, at *12 ("ZTE Corp. rightly claims that the burden of defending suit in the United States is significant for a foreign corporation. However, ZTE Corp. fails entirely to recognize the substantial interests of Texas and the United States in enforcing federal patent laws."). Regarding factors three and four, Atlas has a strong interest in obtaining relief in its home state. *See* Motion at 12. Regarding factor five, TP-Link does not identify any "fundamental substantive social polic[y]" that would be advanced by dismissing this lawsuit. *See id.*; *Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, 2019 U.S. Dist. LEXIS 110018, at *12; *Seven Networks*, 2018 U.S. Dist. LEXIS 89465, at *12.

## V.   CONCLUSION

TP-Link intentionally directs its products to the United States, including Texas. ████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ TP-Link modifies

the products intended to be sold in the United States so they are FCC-compliant, contain English

instructions, and can plugged into United States outlets. These are the actions of a company that

wants its products sold here, not those of an indifferent company whose products just happen to

be sold here. TP-Link's Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

16

Dated: September 6, 2022

Respectfully submitted,

*/s/ Blaine Larson*
Max L. Tribble, Jr.
Texas State Bar No. 20213950
Joseph S. Grinstein
Texas State Bar No. 24002188
Alejandra C. Salinas
Texas State Bar No. 24102452
**SUSMAN GODFREY, LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
jgrinstein@susmangodfrey.com
asalinas@susmangodfrey.com

Kalpana Srinivasan
California State Bar No. 237460
Oleg Elkhunovich
California State Bar No. 269238
**SUSMAN GODFREY, LLP**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
oelkhunovich@susmangodfrey.com

Michael F. Heim
Texas State Bar No. 09380923
Eric J. Enger
Texas State Bar No. 24045833
Blaine A. Larson
Texas State Bar No. 24083360
Alden G. Harris
Texas State Bar No. 24083138
William B. Collier, Jr.
Texas State Bar No. 24097519
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com

17

eenger@hpcllp.com
blarson@hpcllp.com
aharris@hpcllp.com
wcollier@hpcllp.com

T. John Ward, Jr.
TX State Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
Facsimile: 903-7572323

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

***Attorneys for Plaintiff***
***Atlas Global Technologies***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served to all counsel of record via email.

*/s/ Blaine Larson*
Blaine Larson


## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that this document contains material designated under the Protective Order (Dkt. 55).

*/s/ Blaine Larson*
Blaine Larson