**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. 2:21-cv-00430-JRG-RSP |
| v. | JURY TRIAL DEMANDED |
| TP-LINK TECHNOLOGIES CO., LTD., TP-LINK CORPORATION LTD, and TP-LINK INTERNATIONAL LTD., | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

█████████████████████████████████████

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   LAW ............................................................................................................................. 1

III.  ARGUMENT ................................................................................................................. 2

      A.   TP-Link has not established that this case could have been brought in the Central
           District of California ............................................................................................. 2

      B.   The Parties are Headquartered in China and Texas, not California ................................ 5

      C.   TP-Link USA's presence in California should be given zero weight in the transfer
           analysis ................................................................................................................. 5

      D.   TP-Link relies on unprepared declarants .......................................................... 7

      E.   The private factors do not clearly favor transfer ........................................... 7

           i.    The relevant documents are in Texas and China ..................................... 7

           ii.   There are relevant third party witnesses in both Texas and California .................. 9

                 a.   Wi-Fi chip suppliers ................................................................... 9

                 b.   ████████████████████████ ...................................... 11

                 c.   Wi-Fi Alliance employees ....................................................... 11

                 d.   Witnesses identified by TP-Link ............................................ 12

           iii.  The willing party witnesses are located primarily in Texas and China ................. 13

           iv.   TP-Link does not identify any practical problems that support transfer ............... 14

      F.   The public factors do not clearly favor transfer ........................................... 14

           i.    Court congestion favors Texas ................................................................ 14

           ii.   Texas has a significant local interest in this case ................................... 15

           iii.  Familiarity of law and conflicts of law are neutral ............................... 15

IV.   CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*CloudofChange, LLC v. NCR Corp.*,
2020 U.S. Dist. LEXIS 206769 (W.D. Tex. Mar. 17, 2020)....................................................... 13

*Enovsys LLC v. T-Mobile USA, Inc.*,
2022 U.S. Dist. LEXIS 106450 (E.D. Tex. Jun. 14, 2022) ......................................................... 8

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
2017 U.S. Dist. LEXIS 213778 (E.D. Tex. Dec. 28, 2017) ..................................................... 2, 4

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
2018 U.S. Dist. LEXIS 22932 (E.D. Tex. Feb. 13, 2018)........................................................... 5

*Hoffman v. Blaski*,
363 U.S. 335 (1960) ................................................................................................................. 2, 4

*In re Apple Inc.*,
818 F. App'x 1001 (Fed. Cir. 2020)................................................................................... 12, 15

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ............................................................................................... 13

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020)............................................................................................. 6

*In re LG Elecs., Inc.*,
Case No. 18-134, Dkt. 31 (Fed. Cir. Apr. 24, 2018).................................................................. 4

*In re Samsung Elecs. Co.*,
2 F. 4th 1371 (Fed. Cir. 2021).................................................................................................. 14

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010)................................................................................................ 14

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008)...................................................................................................... 2

*Intellectual Ventures II v. Fedex Corp.*,
2017 U.S. Dist. LEXIS 192675 (E.D. Tex. Apr. 18, 2017) .................................................... 3, 5

*Japan Display Inc. v. Tianma Microelectronics Co.*,
    2021 U.S. Dist. LEXIS 160256 (E.D. Tex. Aug. 25, 2021)................................. 2, 3, 4

*Jawbone Innovations, LLC v. Samsung Elecs. Co.*,
    2022 U.S. Dist. LEXIS 157916 (E.D. Tex. Aug. 31, 2022)............................... 4, 8, 12

*KT Imaging USA, LLC v. HP Inc.*,
    2021 U.S. Dist. LEXIS 35071 (E.D. Tex. Feb. 25, 2021)......................................... 13

*Quest NetTech Corp. v. Apple, Inc.*,
    2019 U.S. Dist. LEXIS 206019 (E.D. Tex. Nov. 27, 2019)......................................... 2

*Seagen Inc. v. Daiichi Sankyo Co.*,
    546 F. Supp. 3d 515 (E.D. Tex. 2021) ................................................................... 2, 4

*STC.UNM v. Apple Inc.*,
    2020 U.S. Dist. LEXIS 143522 (W.D. Tex. Apr. 1, 2020)....................................... 12

*Uniloc U.S. v. Apple Inc.*,
    2017 U.S. Dist. LEXIS 232721 (E.D. Tex. Dec. 22, 2017) ...................................... 3

**Statutes**

28 U.S.C. §1404(a) .................................................................................................. 1, 4

## I.   INTRODUCTION

TP-Link's Motion to transfer venue to CDCA must be denied because TP-Link has not satisfied the threshold issue of proving it is subject to personal jurisdiction there.[1] Dkt. 30. In a separate jurisdiction motion, TP-Link argued it was ***not*** subject to personal jurisdiction anywhere in the U.S.—including CDCA. Dkt. 28. TP-Link now makes the opposite argument in this Motion, arguing it is subject to personal jurisdiction in CDCA, or alternatively, "consenting" to jurisdiction. TP-Link cannot satisfy its burden with these inconsistent arguments, and the Supreme Court holds that a party cannot fix §1404 jurisdictional defects by consenting to the transferee venue.

Should the Court reach the convenience factors, TP-Link has not proven it would be clearly more convenient to litigate a dispute between Texas and Chinese entities in CDCA. Atlas is a Texas entity, headquartered in Texas, whose president lives in Texas. TP-Link is headquartered in China and admits it has no relevant documents or witnesses in the U.S. TP-Link's Wi-Fi 6 chip suppliers all have relevant facilities and witnesses in Texas. Yet the Motion does not even mention TP-Link's suppliers, must less address their Texas connections. TP-Link points to TP-Link USA's California presence, but TP-Link fails to identify any relevant, specific TP-Link USA documents or witnesses.

## II.   LAW

"[A] district court may transfer any civil action to any other district or division where it might have been brought…." 28 U.S.C. §1404(a). To prove a case "might have been brought" in the transferee forum, the movant must prove the transferee forum would have personal jurisdiction

---

[1] This Opposition adopts Defendants' nomenclature and refers to TP-Link Technologies Co., Ltd. as "TP-Link China" and refers to TP-Link Corporation Ltd. f/k/a TP-Link International Ltd. as "TP-Link Hong Kong." The Defendants are collectively referred to as "TP-Link." TP-Link USA Corporation is referred to as "TP-Link USA."

over every party. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). The movant cannot satisfy its burden by "consenting" to jurisdiction in the transferee venue. *Id.* If the movant can satisfy the threshold jurisdictional question, it must then prove the transferee forum would be "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). "[A] movant must show materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, 2019 U.S. Dist. LEXIS 206019, at *15 (E.D. Tex. Nov. 27, 2019).

## III.    ARGUMENT

### A.    TP-Link has not established that this case could have been brought in CDCA

The Motion should be denied because TP-Link has not satisfied the threshold issue—proving TP-Link is subject to personal jurisdiction in CDCA. This is a straightforward issue: (1) it is TP-Link's burden to prove all defendants are subject to personal jurisdiction in the transferee venue; (2) TP-Link did not meet its burden in the Motion; (3) TP-Link cannot cure its failure to meet its burden by "consenting" to jurisdiction in CDCA; and (4) TP-Link cannot present new arguments or evidence in its Reply brief.

***First***, TP-Link (as the movant) bears the burden to prove the transferee venue has personal jurisdiction over all parties. *Japan Display Inc. v. Tianma Microelectronics Co.*, 2021 U.S. Dist. LEXIS 160256, at *7 (E.D. Tex. Aug. 25, 2021); *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 529 (E.D. Tex. 2021) ("***It is always incumbent on the movant*** to establish that a case could have been initially brought in the transferee forum." (emphasis added)). This is a separate requirement from showing the transferee forum would be clearly more convenient. *Japan Display*, 2021 U.S. Dist. LEXIS 160256, at *8. "A transfer motion should be denied when this threshold burden has not been met." *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, 2017 U.S. Dist. LEXIS 213778, at *4 (E.D. Tex. Dec. 28, 2017).

***Second***, TP-Link has not met its burden of showing both TP-Link China and TP-Link Hong

2

Kong would be subject to jurisdiction in CDCA. *See Intellectual Ventures II v. Fedex Corp.*, 2017 U.S. Dist. LEXIS 192675, at *8 (E.D. Tex. Apr. 18, 2017) (meeting the threshold inquiry "requires more than a naked assertion that the case could have been brought in the transferee forum"). TP-Link's argument is limited to four sentences, only one of which references a jurisdictional fact. *See* Motion at 8-9 (noting that Atlas has asserted "stream of commerce" jurisdiction over TP-Link because it delivers the accused products to TP-Link USA in the U.S.). But in the very next sentence TP-Link rejects its one jurisdictional "fact." *Id*. ("The TP-Link Defendants dispute that allegation…."). TP-Link cites one case, but the parties to that case did not dispute it could have been brought in the transferee venue. *Id*. at 9 (citing *Uniloc U.S. v. Apple Inc.*, 2017 U.S. Dist. LEXIS 232721, at *15 (E.D. Tex. Dec. 22, 2017)). Further, TP-Link does not state whether CDCA has general or specific personal jurisdiction over TP-Link Hong Kong and TP-Link China. Motion at 8-9.

**It is TP-Link's burden** to show every defendant is subject to personal jurisdiction in CDCA, **not Atlas's burden to disprove that fact**. *See Japan Display*, 2021 U.S. Dist. LEXIS 160256, at *7. Not only has TP-Link failed to meet its burden, but it has also argued against its position. On the same day TP-Link filed its Motion, it also filed a motion to dismiss for lack of personal jurisdiction. Dkt. 28. In that motion, TP-Link argued neither TP-Link China nor TP-Link Hong Kong were subject to jurisdiction in the U.S. *Id*. TP-Link made its bed by filing contradictory motions. It must now lie in it. *Japan Display*, 2021 U.S. Dist. LEXIS 160256, at *10 ("[Defendant], apparently wanting to have its cake and eat it too, skirted the threshold §1404 question while attempting to preserve a jurisdictional challenge….").

TP-Link's anticipated rebuttal arguments fall short. TP-Link may argue, "If EDTX has jurisdiction, then CDCA has jurisdiction for the same reasons." This Court has repeatedly rejected

that exact argument. *See Japan Display*, 2021 U.S. Dist. LEXIS 160256, at \*8-9; *Fundamental Innovation*, 2017 U.S. Dist. LEXIS 213778, at \*9 (rejecting the argument that "if it is good enough for Texas, it is good enough for New Jersey"); *Jawbone Innovations, LLC v. Samsung Elecs. Co.*, 2022 U.S. Dist. LEXIS 157916, at \*11 (E.D. Tex. Aug. 31, 2022) ("Merely repeating [the plaintiff's] pleaded venue theory is insufficient for this Court to determine whether this lawsuit 'might have been brought' in the NDCA."). Similarly, TP-Link may argue there is evidence in the record to support personal jurisdiction in CDCA by generally citing the record. It is insufficient for TP-Link to cite the record in general and then ask the Court to identify specific evidence of jurisdiction. *See Seagen*, 546 F. Supp. 3d at 530.

*Third*, TP-Link cannot cure its failure to establish personal jurisdiction by consenting to jurisdiction in CDCA. *See* Motion at 9. A defendant-movant cannot satisfy 28 U.S.C. §1404's threshold "where it might have been brought" requirement by consenting to jurisdiction in the transferee venue. *Hoffman*, 363 U.S. at 342-43; *see Fundamental Innovation*, 2017 U.S. Dist. LEXIS 213778, at \*9 (citing *Hoffman* and rejecting the defendant's argument that the case could have been brought in the transferee venue because the defendant consented to jurisdiction), *pet. denied In re LG Elecs., Inc.*, Case No. 18-134, Dkt. 31 (Fed. Cir. Apr. 24, 2018) (Ex. A); *Japan Display*, 2021 U.S. Dist. LEXIS 160256, at \*9-10 (foreign defendant failed to establish it was subject to personal jurisdiction in the transferee venue when the defendant also filed a motion to dismiss for lack of personal jurisdiction).[2]

*Fourth*, TP-Link cannot raise new arguments or supplement the record in its Reply. *See Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, 2018 U.S. Dist. LEXIS 22932, at \*6

---

[2] Section 1404(a) permits transfer based on consent, but only to districts "to which *all* parties have consented." 28 U.S.C. §1404(a) (emphasis added). Atlas does not consent to transfer to CDCA.

4

(E.D. Tex. Feb. 13, 2018) ("A defendant seeking transfer cannot provide a cursory statement regarding the threshold jurisdictional burden, then wait for a plaintiff to challenge that statement, and only then come forward with more."); *Intellectual Ventures II*, 2017 U.S. Dist. LEXIS 192675, at *6 (criticizing the movant for raising new jurisdictional arguments in its transfer reply).

### B.    The Parties are Headquartered in China and Texas, not California

Atlas is a Texas entity headquartered in Austin. Yudell Dec. ¶5. ███████████████

████████████████████████████████████████ Atlas's president Craig Yudell has lived in Austin for many years. Yudell Dec. ¶5. Mr. Yudell is primarily responsible for the day-to-day operations of Atlas, which include Atlas's licensing efforts for the asserted patents. *Id*. ¶3.

TP-Link comprises two Chinese entities that are headquartered in China, ███████████



████████ TP-Link even titled a section of its jurisdiction brief: "Defendants' Activities All Occur in China." Dkt. 65 at 2.

### C.    TP-Link USA's presence in California should be given zero weight in the transfer analysis

TP-Link has identified zero TP-Link USA witnesses and zero TP-Link USA documents relevant to this case. *See* Motion. That is not hyperbole—they have not identified ***any***. Nor did TP-Link identify any TP-Link USA employees in their initial disclosures. Ex. B at 3. This makes sense given TP-Link's dominant role in the development and sales processes. TP-Link has not identified any relevant, specific sales or marketing knowledge possessed by TP-Link USA employees that is not also possessed by TP-Link employees. For example, TP-Link Hong Kong witnesses can testify

about sales because ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Any relevant sales and marketing documents possessed by TP-Link USA will also be in TP-Link's possession. ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Not only did TP-Link fail to identify specific TP-Link USA documents, ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████Even if TP-Link identifies specific documents possessed by TP-Link USA for the first time in its Reply, ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

TP-Link has not identified a single TP-Link USA document or witness. Its vague statements about sales and marketing (Motion at 11) should be rejected as pure speculation. *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) ("[I]t is reasonable to reject vague and unsupported statements regarding the location of potential witnesses or sources of proof.").

**D.      TP-Link relies on unprepared declarants**

TP-Link relies heavily on declarations from Ms. Jianmei Sun (TP-Link Hong Kong) and Ms. Yanmei Zhang (TP-Link China). Dkt. 30-1, 30-2. TP-Link also designated Ms. Zhang as its 30(b)(6) representative for deposition. ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ the two declarations are nearly identical, down to the same typos in the title ("Service or Process") and opening paragraph ("person knowledge"). Dkt. 30-1, 30-2.

**E.      The private factors do not clearly favor transfer**

**i.      The relevant documents are in Texas and China**

The relevant party documents are stored in Texas and China. Atlas's electronic documents are stored and maintained on a server in Texas, and some are backed up in the cloud. Ex. I at 40:15-41:7. ████████████████████████████████████████████████████

7

██████████ *Enovsys LLC v. T-Mobile USA, Inc.*, 2022 U.S. Dist. LEXIS 106450, at *7 (E.D. Tex. Jun. 14, 2022) (factor weighs against transfer when the defendant did not identify any of its own documents in the transferee forum); *Jawbone*, 2022 U.S. Dist. LEXIS 157916, at *13-14 ("[G]etting documents to the NDCA from South Korea [is] no easier than getting documents to this District.").

There are also relevant third-party documents in Texas. For example, TP-Link's chip suppliers Broadcom, Qualcomm, MediaTek, and Intel all have facilities in Texas. *See* Exs. K-N. The suppliers are likely to have documents at those facilities relating to the design, development, and sales of the Wi-Fi 6 chips located within the accused products. TP-Link's counsel referred to these as the "primary technical documents." Ex. O. Despite that, TP-Link never mentions the location of its suppliers in its Motion. ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

---

[3] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

TP-Link argues TP-Link USA possesses relevant financial documents. Motion at 11. ██

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

Finally, although Newracom possesses documents in California, Newracom's relevant documents are also located in Houston, at the offices of its outside counsel. These documents were collected by Newracom's outside counsel prior to TP-Link's Motion and include all Newracom records for the asserted patents that could be reasonably identified by Newracom and its employees, the inventors of the Asserted Patents. Salinas Dec. ¶5. These documents are equally accessible in Texas and should not weigh in favor of transfer.

### ii.    There are relevant third-party witnesses in both Texas and California

#### a.    Wi-Fi chip suppliers

None of TP-Link's Wi-Fi 6 chip suppliers are headquartered in CDCA. Qualcomm is headquartered in SDCA, Broadcom and Intel are headquartered in NDCA, and MediaTek is headquartered in Taiwan. Ex. Q. TP-Link does not even mention its suppliers, much less identify relevant witnesses in CDCA. ████████████████████████████████

███████████████████████████████████████████████████

All four chipmakers have relevant facilities and employees/former employees in Texas that are subject to this Court's subpoena power. FED. R. CIV. P. 45(c)(1)(B).

- **Jie Fang (Broadcom)**: RF/Analog Design Engineer with "[e]xpertise in RF [radio frequency] tuner and high-speed ADC design" Ex. T. RF/Analog components are found in Wi-Fi 6 radio chips and are accused in Atlas' infringement contentions. *See, e.g.* Ex. R at 26 (citing "Analog and RF" transmit chain components in Fig. 27-17).

- **Sohan Purohit (Broadcom)**: Principal Engineer working on memory design and digital circuit design. Ex. U. Atlas's infringement contentions explicitly accuse the memories and digital processors found in Wi-Fi 6 chips. *See, e.g.*, Ex. S at 3-4.

- **Tawfik Ahmed (Broadcom)**: Hardware Engineer working on low-power memory design (*i.e.* the type of memory used in Wi-Fi 6 chips). Ex. V.

- **Taylor Houser (Broadcom)**: Business Development Manager who "[t]rain[s] and equip[s] teams to pitch value of the Broadcom to end customers," and is therefore a likely relevant witness on topics related to the value of accused features. Ex. W.

- **Lance Watson (former Qualcomm)**: "HW [hardware] & RF [radio frequency] Staff Applications Engineer (Bluetooth, *Wi-Fi*, GNSS and BLE)." Ex. X. As noted above, RF analog hardware is in Atlas' contentions, and Mr. Watson will have relevant infringement testimony about how the accused RF hardware operates.

- **H.S. Nagashree (former Qualcomm)**: Lead Engineer working on testing "verification of Internet Packet Accelerator and *WLAN protocols* (IEEE 802.11ad, 802.11ac, *802.11ax [Wi-Fi 6]*, 802.11be)" and will have knowledge of accused Wi-Fi 6 protocols and Wi-Fi 6 compliance testing. Ex. Y.

- **Sravan Kumar Ankireddy (former Qualcomm)**: "Precoder design for interference cancellation in Multi User MIMO [MU-MIMO]." Ex. Z. Atlas' infringement contentions explicitly accused MU-MIMO functionality, and Mr. Ankireddy will be able to provide testimony about this accused feature and its value. *See, e.g.*, Ex. R at 2, 3, 12, 17, 21 (explicitly accusing "MU-MIMO").

- **Hsiu-Min Tsai (MediaTek)**: Software Engineer who "[s]pecialize[s] in *Wi-fi*/BT front-end module PCB design, matching, tuning, and validation" and is "[f]amiliar with RF transceiver and receiver design structures." Ex. AA. As discussed above, analog RF transceiver components are accused in Atlas's contentions, and Ms. Tsai will be able to provide infringement testimony about these structures.

- **Shahnaz Nagle (MediaTek)**: Memory Circuit Design Engineer who specializes in "high performance and low power memory," and will be able to testify about the low-power memory structures accused in Atlas' infringement contentions. Ex. BB.

- **Richard Cheung (MediaTek)**: Senior Director of Product Marketing who was formerly a Director of Product Management at the Wi-Fi Alliance (discussed below), where he managed "Wi-Fi Alliance certification programs." Ex. CC. Mr. Cheung will be able to provide testimony about the value of the accused Wi-Fi 6 features, and how Wi-Fi 6 standard compliance is certified.

- **Shweta Shrivastava (Intel)**: Software Engineer with "12 years of experience in research and software development in … *WiFi and networking* including inventing

new features, driving them into industry standards, and implementing them into leading industry products." Ex. DD. She is likely to testify about the operation of accused Wi-Fi 6 features, their implementation, and their value to customers.

- **Christopher Bednarz (Intel)**: SoC System Integration Validation Engineer who works on "*Wi-Fi* [] validation content" and is likely to testify about testing of accused functionality and verification of Wi-Fi 6 standards compliance. Ex. EE.

b. ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

c.  **Wi-Fi Alliance employees**

Atlas accuses TP-Link's products of infringement based on their compliance with the 802.11ax Standard (Wi-Fi 6). One of the best sources of evidence of compliance with the standard is the Wi-Fi Alliance, the industry organization that tests and certifies compliance with the Wi-Fi 6 standard. *See* Ex. GG; Ex. HH (listing TP-Link products certified as Wi-Fi 6 complaint). The Wi-Fi Alliance is headquartered in Austin (Ex. II), with multiple relevant witnesses there:

- **Edgar Figueroa**: President and CEO who "[d]efined the processes used by the Wi-Fi industry to agree on requirements and develop new Wi-Fi capabilities" and can testify to the Wi-Fi Alliance's testing and certification processes. Ex. JJ.

- **Kevin Robinson**: Senior VP of Marketing who "[s]peaks worldwide about Wi-Fi's impact on applications, devices, and users" and can testify to the benefits the accused features provide to the accused products. Ex. KK.

- **Tate Joyner**: Program Manager who manages the Alliance's "network of 18 labs for provision of wireless program certification testing services to members" and

11

can testify to the testing and certification processes for accused products. Ex. LL.

- **Bryan Reese**: Technical Editor who is responsible for the Alliance's "technical marketing content" and can testify to the features and benefits of Wi-Fi 6. Ex. MM.

*See STC.UNM v. Apple Inc.*, 2020 U.S. Dist. LEXIS 143522, at \*11 (W.D. Tex. Apr. 1, 2020) (presence of Wi-Fi Alliance weighs against transfer), *pet. denied In re Apple Inc.*, 818 F. App'x 1001, 1004 (Fed. Cir. 2020).

### d. Witnesses identified by TP-Link

TP-Link identifies four categories of third-party witnesses, but those witnesses do not overcome the significant third party connections to Texas. *See Jawbone*, 2022 U.S. Dist. LEXIS 157916, at \*15 (factor is neutral when the parties identified third party witnesses in both forums). *First*, TP-Link identifies "corporate representatives from TP-Link USA." Motion at 13. As explained above, TP-Link does not identify any specific individuals or explain why those individuals possess knowledge that is not also possessed by Defendant TP-Link. TP-Link also failed to identify any TP-Link USA employees in its initial disclosures. Ex. B.

*Second*, TP-Link identifies corporate representatives from Acacia. Those individuals should be evaluated as willing witnesses (*see* below).

*Third*, TP-Link identifies six inventors. Motion at 7, 13. Of those six, two either work or consult for Newracom (Jongee Oh and Ahmad Reza Hedayat) and would be willing to testify at trial in EDTX. Salinas Dec. ¶¶2-3. A third (Yujin Noh) is believed to have moved recently to Korea. Ex. QQ. This leaves just three witnesses, two of which (Yongho Seok and Ahmad Reza Hedayat) reside hundreds of miles away from CDCA in the San Francisco area. Ex. 12; Ex. 15. A different inventor (Minho Cheong) works for AMD in Austin and is subject to this Court's subpoena power. Ex. NN.

*Fourth*, TP-Link identifies unnamed "Newracom witnesses." Motion at 13. But TP-Link

does not identify specific individuals or non-duplicative knowledge. *Id.*

### iii.    The willing party witnesses are located primarily in Texas and China

Atlas and its primary witness are located in Austin, Texas. Yudell Dec. ¶4. Atlas President Craig Yudell is primarily responsible for the operations of Atlas, which include Atlas's litigation and licensing efforts for the Asserted Patents. *Id.* ¶3. Atlas anticipates Mr. Yudell will serve as Atlas's 30(b)(6) representative and main witness at trial. Mr. Yudell has resided and worked in Austin for many years. *Id.* ¶5.

TP-Link also references Marc Booth, Kirsten Hoover, Eric Lucas, and Jennifer Graff. *See* Motion at 9. Marc Booth stated that travel to EDTX would be convenient for him. Booth Dec. ¶4.

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████ Mr. Lucas is no longer employed by Atlas and does not possess any non-duplicative knowledge. Regardless, these individuals have limited importance because any of their relevant information is likely duplicative of information Mr. Yudell possesses in Austin. *See CloudofChange, LLC v. NCR Corp.*, 2020 U.S. Dist. LEXIS 206769, at *12 (W.D. Tex. Mar. 17, 2020) ("The Court assumes only a few party witnesses … will testify at trial.").

Conversely, TP-Link has no relevant witnesses in California. *See* Motion at 10. ████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

*see KT Imaging USA, LLC v. HP Inc.*, 2021 U.S. Dist. LEXIS 35071, at *12 (E.D. Tex. Feb. 25, 2021) (noting that the 100-mile rule should not be rigidly applied where witnesses will be required to travel a large distance regardless of the venue), quoting *In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020).

13

Finally, many named inventors who are willing witnesses are located outside CDCA and EDTX. Heejung Yu, Hongsoog Kim, Hyoung Jin Kwon, and Inkyeong Choi are Newracom consultants in Daejoen, Korea. Salinas Dec. ¶3. Ahmad Reza Hedayat is Newracom consultant located in San Diego (SDCA). *Id.*

#### iv.    TP-Link does not identify any practical problems that support transfer

TP-Link does not make any substantive arguments regarding this factor, instead reiterating its arguments that (1) this Court lacks jurisdiction, and (2) Atlas is attempting to manipulate venue. Motion at 15. Neither argument has any relevance to this factor, nor does the one case TP-Link cites. *See In re Samsung Elecs. Co.*, 2 F. 4th 1371, 1379-80 (Fed. Cir. 2021) (addressing judicial economy and the risk of inconsistent decisions, not venue manipulation, when addressing this factor). In addition, there are two related cases also involving Wi-Fi 6 technology co-pending in this division. *Atlas v. Acer Inc.*, 2:22-CV-259 (filed July 13, 2022, 7 overlapping patents); *Atlas v. Arcadyan Tech. Corp.*, 2:22-CV-349 (filed September 7, 2022, 6 overlapping patents); *see In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010) ("[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, we cannot say the trial court clearly abused its discretion in denying transfer.").

### F.    The public factors do not clearly favor transfer

#### i.    Court congestion favors Texas

Under any metric, this case will proceed to trial faster in EDTX than in CDCA. Under TP-Link's evidence, the median time to trial for all civil cases is one month faster in EDTX. *See* Ex. 17 at 35, 68. The difference is even more pronounced when viewing patent-specific trial statistics. Over the past four years, the median time to trial from patent cases is 592 days in EDTX and 989 days in CDCA. Ex. OO; Ex. PP. That is a difference of 397 days, which is over 13 months. This

factor strongly weighs against transfer.

### ii.    Texas has a significant local interest in this case

This factor weighs against transfer for at least three reasons. First, Atlas is headquartered in Austin, and its president lives in Austin. Yudell Dec. ¶5. Second, this case pertains to the standard testing and adoption work of the Wi-Fi Alliance. *See In re Apple Inc.*, 818 F. App'x at 1004 (affirming denial of transfer where "the Wi-Fi Alliance … was located in Austin, Texas and had 'a heavy localized interest in this case because infringement based on compliance with the 802.11ac standard would affect the Wi-Fi Alliance's promotions and certifications' and hinder its 'goal of spreading use and adoption of the standard.'"). Third, because the four chipmakers and ███ work on the design, development, and manufacturing of accused Wi-Fi 6 components in Texas, this case calls into question the work and reputation of these third parties and their Texas employees.

### iii.    Familiarity of law and conflicts of law are neutral

Both courts are familiar with federal patent law, and there are no conflicts of law to avoid. These factors are neutral and do not favor transfer.

## IV.    CONCLUSION

TP-Link has not met its threshold burden of proving the case could have been brought in CDCA. Should the Court reach the transfer factors, none of the factors clearly support transfer. Atlas has identified more relevant documents and third-party witnesses in Texas than TP-Link has identified in California. The time to trial in EDTX is over a year faster for patent cases than in CDCA. Texas has a strong local interest in this case because Atlas is headquartered here. There are party witnesses in both Texas and California, making that factor neutral at best for TP-Link. The remaining factors are neutral. TP-Link has not met its burden of showing CDCA is a clearly more convenient venue. The Motion should be denied.

15

Dated: September 20, 2022

Respectfully submitted,

*/s/ Blaine Larson*
Max L. Tribble, Jr.
Texas State Bar No. 20213950
Joseph S. Grinstein
Texas State Bar No. 24002188
Alejandra C. Salinas
Texas State Bar No. 24102452
**SUSMAN GODFREY, LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
jgrinstein@susmangodfrey.com
asalinas@susmangodfrey.com

Kalpana Srinivasan
California State Bar No. 237460
Oleg Elkhunovich
California State Bar No. 269238
**SUSMAN GODFREY, LLP**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
oelkhunovich@susmangodfrey.com

Michael F. Heim
Texas State Bar No. 09380923
Eric J. Enger
Texas State Bar No. 24045833
Blaine A. Larson
Texas State Bar No. 24083360
Alden G. Harris
Texas State Bar No. 24083138
William B. Collier, Jr.
Texas State Bar No. 24097519
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com

16

eenger@hpcllp.com
blarson@hpcllp.com
aharris@hpcllp.com
wcollier@hpcllp.com

T. John Ward, Jr.
TX State Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
Facsimile: 903-7572323

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Atlas Global Technologies*

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served to all counsel of record via email.

<em>/s/ Blaine Larson</em><br>Blaine Larson

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that this document contains material designated under the Protective Order (Dkt. 55).

<em>/s/ Blaine Larson</em><br>Blaine Larson

18