**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. 2:21-cv-00430-JRG-RSP |
| v. | JURY TRIAL DEMANDED |
| TP-LINK TECHNOLOGIES CO., LTD., TP-LINK CORPORATION LTD, and TP-LINK INTERNATIONAL LTD., | |
| Defendants. | |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

I.    Courts have found personal jurisdiction under similar fact patterns ...................................... 1

II.    TP-Link purposefully directs activities towards Texas ........................................................... 8

III.    TP-Link's "control" arguments mischaracterize the legal framework ................................... 9

IV.    Atlas's claims arise out of TP-Link's activities in Texas ...................................................... 10

V.    Asserting personal jurisdiction over TP-Link would be reasonable and fair ........................ 10

VI.    Conclusion ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
572 F. Supp. 3d 291 (W.D. Tex. 2021) ...................................................................................... 6

*AGIS Software Dev. LLC v. HTC Corp.*,
2018 U.S. Dist. LEXIS 167029 (E.D. Tex. Sep. 28, 2018) ........................................................ 9

*Aten Int'l Co. v. Emine Tech. Co.*,
261 F.R.D. 112 (E.D. Tex. 2009) ......................................................................................... 4, 7

*CSIRO v. Mediatek, Inc.*,
2013 U.S. Dist. LEXIS 199510 (E.D. Tex. Sep. 12, 2013) ........................................................ 3

*Fractus, S.A. v. Samsung Elecs. Co.*,
2009 U.S. Dist. LEXIS 139636 (E.D. Tex. Dec. 9, 2009) .......................................................... 4

*Freescale Semiconductor, Inc. v. AmTran Tech. Co.*,
2014 U.S. Dist. LEXIS 58044 (W.D. Tex. Mar. 19, 2014) ........................................................ 8

*ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
2009 U.S. Dist. LEXIS 34767 (E.D. Tex. Mar. 26, 2009) .............................................. 5, 7, 10

*Invensense, Inc. v. STMicroelectronics, Inc.*,
2014 U.S. Dist. LEXIS 3311 (E.D. Tex. Jan. 10, 2014) ........................................................ 2, 3

*Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co.*,
2005 U.S. Dist. LEXIS 36211 (E.D. Tex. Dec. 5, 2005) ...................................................... 6, 10

*Largan Precision Co. v. Ability Opto-Electronics Tech. Co.*,
2020 U.S. Dist. LEXIS 18697 (E.D. Tex. Feb. 5, 2020) .................................................. 1, 7, 10

*LG Elecs., Inc. v. Asustek Comps.*,
126 F. Supp. 2d 414 (E.D. Va. 2000) ....................................................................................... 7

*MHL TEK, LLC v. Nissan Motor Co.*,
2008 U.S. Dist. LEXIS 26696 (E.D. Tex. Apr. 2, 2008) ........................................................ 5, 7

*Motion Games, LLC v. Nintendo Co.*,
2014 U.S. Dist. LEXIS 190187 (E.D. Tex. Mar. 7, 2014) ........................................................ 2

*Polar Electro Oy v. Suunto Oy*,
   829 F.3d 1343 (Fed. Cir. 2016) ................................................................................. 8

*Ultravision Techs., LLC v. Holophane Eur. Ltd.*,
   2020 U.S. Dist. LEXIS 112148 (E.D. Tex. Apr. 23, 2020) ....................................... 8

*Verde v. Stoneridge, Inc.*,
   2015 U.S. Dist. LEXIS 37664 (E.D. Tex. Mar. 3, 2015) ........................................... 8

TP-Link knowingly and intentionally modifies the accused Wi-Fi 6 routers to be sold in the U.S. TP-Link sells the accused products to a distributor ███████████████ ████████ TP-Link even ships the accused products directly to the U.S. Once the products reach the U.S., they are sold nationwide, including EDTX. Under these facts, TP-Link knew or should have known its infringing Wi-Fi 6 products would be sold and used in Texas. This is more than sufficient to establish specific personal jurisdiction under the stream of commerce theory.

As explained below, *many* cases have found specific personal jurisdiction under similar fact patterns. TP-Link cites just one case supporting its position (*Freescale Semiconductor*), but that case applied the wrong legal standard, has been distinguished by this District, and was effectively overruled by the Federal Circuit.

## I.    Courts have found personal jurisdiction under similar fact patterns

TP-Link argues Atlas has not shown that TP-Link directed activities at Texas. Courts have repeatedly found personal jurisdiction under fact patterns similar to those here:

- *Largan Precision Co. v. Ability Opto-Electronics Tech. Co.,* **2020 U.S. Dist. LEXIS 18697 (E.D. Tex. Feb. 5, 2020)**: A foreign defendant manufactured components overseas and sold those components to an assembler located in China, who assembled the products and sold them in the U.S. *Id*. at \*16-17. The defendant argued it had no knowledge or control over where the final products were ultimately sold (which included retail stores in Texas). *Id*. The court cited evidence that the defendant targeted the U.S. market, including marketing literature and the fact that the defendant had obtained U.S. patents, and held that the defendant was subject to personal jurisdiction. *Id*. at \*19 ("[The defendant] appears to have, at the very least, the *intent* that its products be sold in the United States and Texas, *even if it does not know or control all of the precise details of those downstream*

1

*transactions*." (emphasis added)); *id*. at \*19-20 ("While [the defendant] may not have direct and complete control over where the final products containing its lenses end up being sold, the Court has no problem concluding that [the defendant] could have expected that those products would be sold in Texas.").

- *Motion Games, LLC v. Nintendo Co.*, **2014 U.S. Dist. LEXIS 190187 (E.D. Tex. Mar. 7, 2014)**: A defendant headquartered in WDTX moved to dismiss for lack of venue, arguing it was not subject to specific personal jurisdiction. *Id*. at \*6. The defendant developed video games that it sold to Nintendo, who sold the games nationwide. *Id*. at \*14. There was evidence the defendant designed games specifically for the North American market and worked with Nintendo to "ensur[e] the successful integration of their software into the final products sold to customers." *Id*. at \*14-15. The court found this sufficient to establish specific personal jurisdiction in EDTX. *Id*. at \*15 ("[T]he Court is persuaded that [the defendant] knew that the games it helped design would reach customers all over the world, including the Eastern District of Texas.").

- *Invensense, Inc. v. STMicroelectronics, Inc.*, **2014 U.S. Dist. LEXIS 3311 (E.D. Tex. Jan. 10, 2014)**: A defendant headquartered in NDTX moved to dismiss for lack of venue, arguing it was not subject to specific personal jurisdiction in EDTX. *Id*. at \*2. The defendant sold components to Apple, who incorporated the components into products sold nationwide. *Id*. at \*9. The defendant argued it was indifferent as to where the accused products were sold and had only "abstract knowledge" the products would be sold in EDTX. *Id*. The court rejected these arguments, citing evidence that the defendant's engineers worked with Apple to incorporate the components into the final products. *Id*. at \*15. This is very similar to how TP-Link obtains U.S. certifications at the request of its

2

customer TP-Link USA. ███████████████████████████████████ ███████████████████████████ Reply at 7 ("Defendants, as the manufacturer, obtain the FCC certifications and UL certifications prior to selling the products to TP-Link USA because ██████████████████████████████████████████"). The *Invensense* court found these specific actions to assist the distributor were sufficient to establish personal jurisdiction. *See Invensense*, 2014 U.S. Dist. LEXIS 3311, at *15-16 ("In doing so, [the defendant] obviously knew that the products it was helping to design would reach customers all over the world, including the Eastern District of Texas. In fact, the purpose of [the defendant's] making its engineers available to Apple was to ensure that its products would be included in a product that would be so widely distributed.").

- *CSIRO v. Mediatek, Inc.*, **2013 U.S. Dist. LEXIS 199510 (E.D. Tex. Sep. 12, 2013)**: A foreign defendant manufactured a component that it sold to another foreign entity. *Id*. at *15. The second foreign entity incorporated the component into a larger product and sold the finished product worldwide, including Texas. *Id*. The defendant argued it had no relation to the entity that ultimately imported and sold the products in Texas. *Id*. The court cited evidence that the defendant targeted the U.S. market, including the fact that it obtained FCC certifications for its products (like TP-Link does, Ex. K) and the fact that it was a member of the Austin-based Wi-Fi Alliance (like TP-Link is, Ex. X). *CSIRO*, 2013 U.S. Dist. LEXIS 199510, at *17. The court found these actions sufficient to establish personal jurisdiction in Texas. *Id*. ("These actions show that the United States is a critical market where [the defendant] directs its activities and intends to sell a large number of its IC chips. Within the United States, Texas is the second most populous state. The Eastern District of Texas includes two of the ten most populated counties in Texas and several

3

counties within the Eastern District form portions of two of the ten largest metropolitan areas in the United States. Thus, [the defendant] cannot target the U.S. wireless market without targeting the Eastern District of Texas.").

- *Fractus, S.A. v. Samsung Elecs. Co.,* **2009 U.S. Dist. LEXIS 139636 (E.D. Tex. Dec. 9, 2009)**: A foreign defendant manufactured the accused products in Asia and sold them to a distributor. *Id*. at *33. The distributor imported the products into the United States, and they were sold nationwide. *Id*. The defendant argued it was not subject to personal jurisdiction because it never directed any activities towards Texas. *Id*. at *33-34. The court rejected this argument because "Defendant's introduction of the phones into a distribution network that would likely make the phones available in Texas constituted purposeful direction of the accused products to Texas." *Id*. at *36-37; *see id*. at *37 ("Defendant was simply the first link in a distribution chain that delivered products to consumers in the United States and Texas, thus it is reasonable to conclude that Defendant knew and expected its phones would be distributed to consumers in the United States, including Texas.").

- *Aten Int'l Co. v. Emine Tech. Co.*, **261 F.R.D. 112 (E.D. Tex. 2009)**: A foreign defendant manufactured the accused products in Asia and sold them to another entity, who imported them into the United States. *Id*. at 119. The defendant argued it was not subject to personal jurisdiction because it delivered the products to a shipping company in Taiwan, shipped the products FOB, and had no knowledge of their final destination. *Id*. The court rejected this argument, noting that the accused products were "consistently available at retail stores in Texas," meaning the defendant "knew or should have known that its products consistently are marketed and sold in Texas." *Id*.; *see id*. (the fact that the defendant

4

"continuously sells its products to a U.S. nationwide retailer is a strong indication that it intends to direct its products nationwide").

- *ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*, **2009 U.S. Dist. LEXIS 34767 (E.D. Tex. Mar. 26, 2009)**: A foreign defendant manufactured the accused products in Taiwan and sold them to subsidiaries, who then sold the products at retailers throughout the United States. *Id*. at *7-8. The defendant argued it did "not exercise control over sales of allegedly infringing products by its brand subsidiaries, including where those products are sold." *Id*. Like TP-Link, the defendant did not dispute that its products were sold in Texas, but argued it did not direct its products to Texas. *Id*. at *38. The court rejected this argument and noted the foreign defendant knew a U.S. entity purchased its products to sell them throughout the U.S. *Id*. at *42. This was sufficient to establish personal jurisdiction. *Id*. at *39 ("A corporation cannot sell its products to national retailers and then claim that it is surprised to be haled into court in a particular State because it was not specifically aware that its products were actually sold or used in that State." (quotations and alterations omitted)); *Id*. at *42 ("[T]his Court presumes that [the defendant] knew Texas was a termination point of the distribution channel because the North American companies established a connection with Texas retailers.").

- *MHL TEK, LLC v. Nissan Motor Co.*, **2008 U.S. Dist. LEXIS 26696 (E.D. Tex. Apr. 2, 2008)**: A foreign defendant manufactured and sold the accused products to a foreign distributor. *Id*. at *4. The foreign distributor sold the products to a U.S. distributor, who then distributed the products throughout the United States, including Texas. *Id*. Like TP-Link, the defendant argued it had no knowledge where the accused products were ultimately sold, including whether they were sold in Texas. *Compare* Reply at 6

5

("Defendants have no knowledge of where in the United States non-party TP-Link USA ultimately sells the products.") with Ex. W (*MHL* Motion) at 9 ("[Defendant] does not do business, make sales, or solicit sales in Texas. Nor does it sell goods to independent third parties with knowledge that the goods are destined for Texas."). The court rejected this argument, holding that the defendant "should reasonably anticipate being haled into court in Texas." *MHL TEK*, 2008 U.S. Dist. LEXIS 26696, at *6.

- *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co.*, **2005 U.S. Dist. LEXIS 36211 (E.D. Tex. Dec. 5, 2005)**: A foreign defendant manufactured the accused products in China and sold them to a Hong Kong distributor. *Id*. at *3. The distributor sold the products at Home Depot stores throughout the U.S., including Texas. *Id*. The defendant argued the fact that the products were sold in the U.S. and Texas was "the result of a unilateral decisions by companies wholly unrelated" to the defendant. *Id*. at *13. The court rejected this argument and found personal jurisdiction, noting that U.S. product markings placed on the accused products by the foreign manufacturer indicated the manufacturer intended for the accused products to reach Texas. *Id*. at *24 ("[The defendant] manufactures an alleged infringing component part obviously designed and intended for sale in the United States. *The fact that [the defendant] … does not control where downstream manufacturers sell products containing the alleged infringing part is of no consequence* because [the defendant] should reasonably expect drills containing the chuck will be sold in the United States and Texas." (emphasis added)).

- *ACQIS LLC v. Lenovo Grp. Ltd.*, **572 F. Supp. 3d 291 (W.D. Tex. 2021)**: A foreign manufacturer defendant entered into a distribution agreement with a U.S. distributor (much like TP-Link and TP-Link USA). *Id*. at *302. The defendant argued the distributor

6

exercised control over how the products were sold in the U.S., and therefore the defendant did not direct any activity towards Texas. *Id*. The court found that by contracting to supply products to a U.S. distributor, the defendant could have expected its products to be sold in Texas and to be subject to jurisdiction here. *Id*. at *304 ("As a result of contracting with Lenovo US to supply products for sale in the United States, [the defendant] could have expected that this lawsuit would be brought into court in the states where Lenovo products are sold. Texas is clearly a destination wherein the products were expected to be sold.").

- *LG Elecs., Inc. v. Asustek Comps.*, **126 F. Supp. 2d 414 (E.D. Va. 2000)**: A foreign defendant manufactured the accused products overseas and sold them to a distributor in Taiwan. *Id*. at 420. The distributor imported the products into the U.S. and sold them nationwide. *Id*. The defendant argued it was not subject to personal jurisdiction in Virginia because it had no contact with the U.S. *Id*. The court rejected this argument and noted it presumed the defendant knew its products were sold in Virginia because its distributor had an established relationship with retailers in Virginia. *Id*. The court also rejected the defendant's attempts to distinguish between delivery in the U.S. and delivery overseas. *Id*. ("Regardless of whether [the defendant] delivered the products in Taiwan or directly to Virginia, [the defendant] places the products into the stream of commerce with the expectation that [the distributor] will further assemble the products, and distribute them throughout the United States. Such distribution's destination included retailers in Virginia."). TP-Link tries to make the same distinction rejected by the *LG* court. *See* Reply at 7-8.

Atlas cited several of these cases (*Aten*, *ICON Health*, *Largan*, and *MHL TEK*) in its Response, yet TP-Link failed to address them in its Reply.

TP-Link relies heavily on *Freescale Semiconductor, Inc. v. AmTran Tech. Co.*, 2014 U.S. Dist. LEXIS 58044 (W.D. Tex. Mar. 19, 2014), which was effectively overruled by the Federal Circuit. In *Freescale*, the court declined to consider the "stream of commerce" theory for establishing specific personal jurisdiction—simply because the Supreme Court had not resolved the *Asahi* split over what that "stream of commerce" required. *Id*. at *18. Instead, the court focused its analysis on "traditional notions of fair play and substantial justice." *Id*. at *19.

*Freescale* is therefore inapt because it uses a different legal framework. Two years after the *Freescale* decision, the Federal Circuit held that "stream of commerce" is still a proper framework for evaluating specific personal jurisdiction. *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1349-50 (Fed. Cir. 2016); *Ultravision Techs., LLC v. Holophane Eur. Ltd.*, 2020 U.S. Dist. LEXIS 112148, at *7 (E.D. Tex. Apr. 23, 2020) (describing stream of commerce as "an independent basis" for personal jurisdiction). Other courts have recognized this distinction and chosen not to rely on *Freescale* when evaluating whether a defendant is subject to stream of commerce specific personal jurisdiction. *See Verde v. Stoneridge, Inc.*, 2015 U.S. Dist. LEXIS 37664, at *11 (E.D. Tex. Mar. 3, 2015) ("The decision in *Freescale* is not dispositive of the issues in this case."). As indicated by the cases cited above, ***many*** courts have continued to find specific personal jurisdiction under a stream of commerce theory.

## II.    TP-Link purposefully directs activities towards Texas

TP-Link never denies that it physically modifies the accused products for sale in the United States and Texas. TP-Link does not deny that its products contain U.S.-specific power plugs, English user guides, and FCC and UL certifications. *See* Reply at 9. Nor does TP-Link dispute that it has filed for and obtained U.S. trademarks. *See* Response at 13. TP-Link does not contest that its products are physically configured to transmit only on Wi-Fi channels permissible in the U.S.

8

*See id*. at 11. And TP-Link did not rebut the fact that both TP-Link China and TP-Link Hong Kong ship products directly to the United States. *See id*. at 6.

TP-Link attempts to downplay its ████████████████████████████████████████████,
describing its relationship with TP-Link USA as "arms-length" (Reply at 4) ████████████
█████████████████████████" (*id*. at 6). ████████████████



████████████████████████████████ TP-Link attempts to soften these facts, but it cannot run from them.

### III.     TP-Link's "control" arguments mischaracterize the legal framework

As Atlas explained in its Response, TP-Link's Motion mischaracterizes the caselaw by arguing that TP-Link must exercise control over TP-Link USA to be subject to personal jurisdiction. *See* Response at 8-10. However, "the relevant inquiry is not whether [TP-Link] controlled the intermediaries in the distribution chain, but instead whether it delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id*. at 9 (quoting *AGIS Software Dev. LLC v. HTC Corp.*, 2018 U.S. Dist. LEXIS 167029, at *14 (E.D. Tex. Sep. 28, 2018)).

TP-Link continues to reject this caselaw in its Reply. *See* Reply at 4 ("Atlas declares '[t]he question of whether TP-Link directed or controlled the activities of TP-Link USA is not the correct issue.' Defendants disagree—TP-Link USA is a non-party, and there is no evidence cited by Atlas that TP-Link USA is controlled by Defendants." (citation omitted)). TP-Link never addresses *AGIS Software* or any of the other cases rejecting the notion that control over the distributor is

9

required to establish stream of commerce specific personal jurisdiction. *See, e.g.*, *Largan,* 2020 U.S. Dist. LEXIS 18697, at *19 ("[The defendant] appears to have, at the very least, the *intent* that its products be sold in the United States and Texas, even if it does not know or control all of the precise details of those downstream transactions." (emphasis in original)); *Jacobs,* 2005 U.S. Dist. LEXIS 36211, at *25 ("The fact that [the defendant] … does not control where downstream manufacturers sell products containing the alleged infringing part is of no consequence because [the defendant] should reasonably expect drills containing the chuck will be sold in the United States and Texas."); *ICON*, 2009 U.S. Dist. LEXIS 34767, at *27-28 (rejecting the defendant's argument that its subsidiaries' Texas contacts could not be attributed to the defendant because the defendant "does not exercise control over its subsidiaries with respect to product sales"). Nor does TP-Link cite a single case in that section of its Reply. Reply at 4-5.

## IV. Atlas's claims arise out of TP-Link's activities in Texas

TP-Link does not address this factor in its Reply. Atlas's claims arise out of TP-Link's activities in Texas for the reasons set forth in Atlas's Response. Response at 14.

## V. Asserting personal jurisdiction over TP-Link would be reasonable and fair

TP-Link has not made a "compelling case" that the assertion of personal jurisdiction would not be reasonable or fair. TP-Link's Reply does not raise any new arguments and or address any of the cases cited in Atlas's Response. *See* Reply at 9-10.

## VI. Conclusion

Many cases have found specific personal jurisdiction under similar fact patterns. TP-Link's Motion should be denied.

Dated: September 21, 2022

Respectfully submitted,

*/s/ Blaine Larson*
Max L. Tribble, Jr.
Texas State Bar No. 20213950
Joseph S. Grinstein
Texas State Bar No. 24002188
Alejandra C. Salinas
Texas State Bar No. 24102452
**SUSMAN GODFREY, LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
jgrinstein@susmangodfrey.com
asalinas@susmangodfrey.com

Kalpana Srinivasan
California State Bar No. 237460
Oleg Elkhunovich
California State Bar No. 269238
**SUSMAN GODFREY, LLP**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
oelkhunovich@susmangodfrey.com

Michael F. Heim
Texas State Bar No. 09380923
Eric J. Enger
Texas State Bar No. 24045833
Blaine A. Larson
Texas State Bar No. 24083360
Alden G. Harris
Texas State Bar No. 24083138
William B. Collier, Jr.
Texas State Bar No. 24097519
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com

11

eenger@hpcllp.com
blarson@hpcllp.com
aharris@hpcllp.com
wcollier@hpcllp.com

T. John Ward, Jr.
TX State Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
Facsimile: 903-7572323

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

***Attorneys for Plaintiff***
***Atlas Global Technologies***

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served to all counsel of record via email.

*/s/ Blaine Larson*
Blaine Larson

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that this document contains material designated under the Protective Order (Dkt. 55).

*/s/ Blaine Larson*
Blaine Larson