# Exhibit A



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| STINGRAY IP SOLUTIONS, LLC, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | CIVIL ACTION NO.  2:21-CV-00045-JRG |
| v. | § | CIVIL ACTION NO.  2:21-CV-00046-JRG |
| | § | |
| TP-LINK TECHNOLOGIES CO., LTD., | § | |
| TP-LINK CORPORATION LIMITED, | § | |
| TP-LINK INTERNATIONAL LTD., | § | |
| | § | |
| | § | |
| *Defendants* | § | |

## ORDER

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process (the "Motion") (Dkt. No. 23)[1] filed by filed by Defendants TP-Link Technologies Co., Ltd. ("TP-Link China"), TP-Link Corporation Limited ("TP-Link Hong Kong"), and TP-Link International Ltd. ("TP-Link Int'l")[2] (collectively, "Defendants"). In the Motion, Defendants contend that dismissal of the above-captioned cases is warranted because personal jurisdiction is not proper in the Eastern District of Texas and because Plaintiff Stingray IP Solutions, LLP ("Plaintiff") attempts to establish jurisdiction through non-party TP-Link USA Corporation ("TP-Link USA"). (Dkt. No. 23 at 1.) In the Motion, Defendants request the alternative relief of transfer to the Central District of California pursuant to 28 U.S.C. § 1406(a). (*Id*. at 16.) Having considered the Motion and the related briefing, the Court is of the opinion that the Motion should be **GRANTED-IN-PART**.

---

[1] Pursuant to a joint motion by the parties, the briefing on the Motion was bifurcated such that remaining briefing on the Motion as to insufficient service of process was separate from remaining briefing on the Motion as to jurisdictional issues. (Dkt. Nos. 29, 32.) The Motion to Dismiss for Insufficient Service of Process was denied on May 4, 2022. (Dkt. No. 50.)

[2] Defendants represent that TP-Link Hong Kong and TP-Link Int'l are the same entity as a result of a name change in 2020. (Dkt. No. 23 at 1.) Accordingly, this Order refers only to TP-Link Hong Kong.

Also before the Court is Defendants' Opposed Motion Under 28 U.S.C. § 1404(a) to Transfer the Action to the Central District of California ("Transfer Motion"). (Dkt. No. 28.) For the reasons set forth herein, the Transfer Motion is **DENIED AS MOOT**.

## I. PROCEDURAL HISTORY

Plaintiff filed two Complaints against Defendants on February 8, 2021. (Dkt. No. 1 in Civil Action Nos. 2:21-cv-0045-JRG (the "-045 case") and 2:21-cv-0046-JRG (the "-046 case").)[3] Summonses were returned executed on March 12, 2021. (Dkt. Nos. 10–12.) Defendants filed the Motion on February 4, 2022. (Dkt. No. 23.) Briefing on the same was bifurcated between Defendants' Motion to Dismiss for Insufficient Service of Process and Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. (Dkt. No. 32.) Defendants filed the Transfer Motion on February 25, 2022 "[w]ithout waiving their defenses to personal jurisdiction." (Dkt. No. 28 at 1.) The Court subsequently granted a period of jurisdictional and venue discovery, which is now complete. (Dkt. No. 39.)

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant." *Cunningham v. CBC Conglomerate LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019). Where a claim involves substantive questions of patent law, the Court applies Federal Circuit law to evaluate personal jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). However, the Fifth Circuit relies on the same analysis as the Federal Circuit in deciding whether personal jurisdiction exists. *Packless Metal Hose, Inc. v. Extek Energy Equip. (Zhejiang) Co.*, 2011 WL 504048, at *1 n.1 (E.D. Tex. Feb. 10, 2011).

---

[3] Since all relevant docket entries in the -045 and -046 cases are the same, reference to the docket herein will refer to the -045 case unless otherwise noted.

Personal jurisdiction exists over a defendant where "a forum state's long-arm statute permits service of process" and where assertion of personal jurisdiction does not violate due process. *NexLearn*, 859 F.3d at 1375. "Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citations omitted).

The Due Process Clause requires that a defendant have sufficient minimum contacts with the forum to confer either general or specific personal jurisdiction. *Wapp Tech Ltd. P'ship v. Micro Focus Int'l, PLC*, 406 F. Supp. 3d 585, 592 (E.D. Tex. 2019). For due process to be satisfied pursuant to specific jurisdiction, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945) (citation omitted). "A court must inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361–62 (Fed. Cir. 2006) (quoting *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174 (1985)). The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559 (1980)).

Upon a showing of purposeful minimum contacts, the defendant bears the burden to prove unreasonableness. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1351-52 (Fed. Cir. 2003). In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing]

3

a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Personal jurisdiction may also exist under Federal Rule of Civil Procedure 4(k)(2), which provides that, "[f]or a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltd.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009)). In analyzing Rule 4(k)(2), a court must consider whether "(1) defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *M-I Drilling Fluids*, 890 F.3d at 999. The due process analysis for specific jurisdiction and Rule 4(k)(2) are similar; however, Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* (quoting *Synthes*, 563 F.3d at 1295).

### III. DISCUSSION

#### a. The Parties

TP-Link Technologies Co., Ltd. ("TP-Link China") is a Chinese corporation with its headquarters and place of business in Shenzhen, China. (Dkt. No. 23 at 3.) Plaintiff does not dispute this. (Dkt. No. 1, ¶ 2; *see also* Dkt. No. 61 at 3.) TP-Link Corporation Limited ("TP-Link Hong Kong") is a corporation organized under the laws of Hong Kong with its headquarters and place of business in Hong Kong. (Dkt. No. 23 at 3.) Plaintiff also does not dispute this, and further argues that TP-Link Hong Kong is "at least a related entity" of TP-Link China by, for example,

"having a direct or indirect subsidiary-parent or sister company relationship." (Dkt. No. 1, ¶ 3; *see also* Dkt. No. 61 at 3.)

Plaintiff refers to TP-Link China and TP-Link Hong Kong collectively as "TP-Link." (*See, e.g.*, Dkt. No. 1, ¶ 4.) In its Complaint, Plaintiff alleges that "TP-Link" was founded in 1996 as a "global provider of reliable networking devices and accessories." (*Id.*, ¶¶ 5–6.) Plaintiff acknowledges that "TP-Link's" products are "manufactured outside the U.S. and then imported into the United States, distributed, and sold to end-users via the internet and in brick-and-mortar stores in the U.S., in Texas and the Eastern District of Texas." (*Id.*, ¶ 6.) Plaintiff contends that "TP-Link" maintains a corporate presence in the United States through "related entity" TP-Link USA Corporation ("TP-Link USA") in California. (*Id.*, ¶ 7.)[4] Plaintiff's Complaint alleges that "TP-Link" "maintains distribution channels in the U.S. . . . via online stores, distribution partners, retailers, reseller partners, solution partners, and other related service providers." (Dkt. No. 1, ¶ 7 (citing https://www.tp-link.com/us).)

### b. Plaintiff's Position

Plaintiff argues that the Court has both general and specific personal jurisdiction over TP-Link China and TP-Link Hong Kong through their "regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this judicial district, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this judicial district vicariously through and/or in concert with its alter egos [and/or] agents[.]" (Dkt. No. 1, ¶¶ 12–30.) Plaintiff

---

[4] TP-Link USA is not a party to this case. Defendants argue that the failure to join TP-Link USA amounts to "venue manipulation" by Plaintiff, but Plaintiff properly contends that "there is no obligation to join every joint tortfeasor, such as TP-Link USA." (*See generally* Dkt. No. 23 at 1–2; Dkt. No. 61 at 21.)

alleges that Defendants are "related to, own[,] and/or control[] subsidiaries . . . that have a significant business presence in the U.S. and in Texas," such as TP-Link USA. (*Id.*, ¶¶ 12, 21.)

Defendants have applied for trademarks and "FCC registrations for the sale and use of TP-Link products in the U.S." (*Id.*, ¶¶ 12, 21; *see also* Dkt. Nos. 61-14, 61-15, 61-16, 61-22, 61-23, 61-24.) According to Plaintiff, "Defendants' specific intent to sell the Accused Products in the U.S. is demonstrated by their domestic activities to meet specific United States industry standards for safety and interoperability, including those mandated by the FCC, Underwriters' Laboratories ('UL'), and the Wi-Fi Alliance." (Dkt. No. 61 at 11.)

Plaintiff also argues that TP-Link USA is an "alter ego and/or an agent" of Defendants such that the exercise of jurisdiction over Defendants in Texas is proper. (Dkt. No. 61 at 22.)[5] Plaintiff contends that Defendants "direct and control" each other and TP-Link USA such that Defendants have committed acts of direct and/or indirect patent infringement within Texas. (Dkt. No. 1, ¶¶ 13, 22.) Plaintiff also alleges that through their "agents in the U.S. and via at least distribution partners, retailers . . . and other service providers, [Defendants have] placed and continue[] to place infringing TP-Link Products into the U.S. stream of commerce." (*Id.*, ¶¶ 14, 21.) Although Plaintiff cites to evidence of only "at least two shipments" of "networking products" by Defendants to TP-Link USA, Plaintiff alleges that Defendants have placed their products "into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into . . . Texas." (*Id.*, ¶¶ 14, 17, 21.)

---

[5] Plaintiff contends that Defendants "fail to controvert key factors" critical to the alter ego analysis required by *DataTreasury Corp. v. Wells Fargo & Co.*, 2009 WL 10743366 (E.D. Tex.) including common business departments, the parent financing the subsidiary, the parent causing the incorporation of the subsidiary, the parent paying the salaries and other expenses of the subsidiary, the subsidiary receiving no business except that given by the parent, the parent using the subsidiary's property as its own, and the commingling of daily operations of the parent and subsidiary. (Dkt. No. 61 at 22.) Plaintiff argues that the evidence shows that TP-Link USA merges sales, marketing, and expenses with Defendants, presents a "unified TP-Link business enterprise" by using the same trademarks, packaging, and website, and further by directing customers to "contact TP-Link USA as a point of contact in the U.S." (*Id.* at 22–23.)

Plaintiff further contends that TP-Link China "utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers and other users, including providing links to via its own website to online stores, retailers, resellers, distributors, and solution partners offering such products and related services for sale." (Dkt. No. 1, ¶ 15 (citing "Where to Buy" page on https://www.tp-link.com/us/).) "Such TP-Link Products and services have been sold in retail stores, both brick and mortar and online, within this judicial district and in Texas, including well-known and widely used retailers Amazon.com, HSN, newegg.com, Sears, QVC, Micro Center, BestBuy, Costco, Lowes, Nebraska Furniture Mart, The Home Depot, Office Depot, Target, Staples, Sam's Club, Walmart, Conn's Home Plus, Game Stop, and Brookstone." (Dkt. No. 1, ¶ 15; *see also id.* at ¶ 17; Dkt. No. 61 at 6.) Plaintiff further contends that TP-Link China provides application software for "download and use in conjunction with and as a part of the wireless communication network that connects TP-Link Products and other network devices." (Dkt. No. 1, ¶ 15.)

Plaintiff focuses on a distribution agreement between Defendants and TP-Link USA. (Dkt. No. 61 at 1.) Plaintiff contends that the products manufactured by Defendants pursuant to the agreement are "specifically configured and packed for sale in the United States." (*Id.*) Plaintiff argues that "TP-Link USA receives and distributes the TP-Link products not as [a]n independent distributor, but at the behest of Defendants" and that the agreement "controls how TP-Link USA markets the TP-Link product[s]" as well as "where it sells" the same. (*Id.*) Plaintiff contends that, pursuant to the agreement, "TP-Link USA purchases product from TP-Link [Hong Kong] and sells them exclusively in the U.S." (Dkt. No. 61 at 3.) Defendants' witness did not "have specific numbers of what sales from TP-Link USA go into each state," but "presume[d]" that some of the sales would go to Texas. (Dkt. No. 61-8 at 6.) The same witness stated that, to his knowledge,

7

TP-Link USA "follow[s] the terms" of the agreement and acknowledged that TP-Link USA's "entire function is . . . to sell products in the United States." (*Id.* at 7; *see also* Dkt. No. 61 at 3–4.)

The distribution agreement was signed on January 17, 2018 by TP-Link Hong Kong and TP-Link USA. (Dkt. No. 61-10.) The agreement grants TP-Link USA the "non-exclusive right to sell and distribute TP-Link [Hong Kong]'s Products in the United States." (*Id.* at 1.) Although the agreement is non-exclusive, "Defendants admit they have no other distribution agreements in the U.S." (Dkt. No. 61 at 9.) Pursuant to the agreement, TP-Link Hong Kong supplies TP-Link USA with "enough technical knowledge regarding the DISTRIBUTED PRODUCTS" sufficient for TP-Link USA to provide technical support to end users. (Dkt. No. 61-10 at 2.) The agreement also states that TP-Link USA "shall have and maintain its own independent marketing channels," shall "develop and pay for necessary advertisements and promotions," and "handle all customer service and technical support obligations" in the United States. (*Id.* at 2–3.) The agreement provides that TP-Link Hong Kong "shall be kept informed of all advertisements and promotions, and shall have the right of prior written approval with respect thereto." (*Id.* at 3.)

The agreement requires that TP-Link Hong Kong "defend, indemnify, and hold harmless" TP-Link USA "from and against any and all Third Party claims and liabilities . . . arising out of or in connection with a claim that the DISTRIBUTED PRODUCTS, when sold or used within the scope of this Agreement, infringes, violates or misappropriates a Third Party's Intellectual Property" and that TP-Link Hong Kong "is given the option, at its expense, to control the action and all requested reasonable assistance to defend the same." (*Id.* at 5.)

Under its "stream of commerce" theory, Plaintiff contends that "[p]ersonal jurisdiction in this District is properly exercised by the Court because both Defendants . . . are part of a distribution chain that starts with the design, development, and manufacture of the Accused

8

Products in Asia by Defendants and results in the distribution and sales of the same products in the U.S. and Texas by TP-Link USA." (Dkt. No. 76 at 3.) Plaintiff argues that Defendants "do not need actual knowledge" of where their products are sold in the United States, "nor must they 'monitor' where" such products are sold. (Dkt. No. 61 at 15.) Rather, according to Plaintiff, it is "enough that the [D]efendants 'reasonably could have foreseen' that their products would be sold in Texas." (*Id.* (citing *Beverly Hills Fan*, 21 F.3d at 1564).) Plaintiff contends that showing that Defendants' products "were sold into a nationwide distribution network and that the products were available in Texas" is enough to make prima facie showing of "purposeful entry" by Defendants into the Texas stream of commerce. (Dkt. No. 61 at 15 (citing *IDQ Operating, Inc. v. Aerospace Commc'ns Holdings Co., Ltd.*, 2016 WL 5349488, at *4 (E.D. Tex. June 10, 2016).)

Plaintiff further contends that Defendants are subject to personal jurisdiction in Texas under the stricter "stream of commerce-plus" test in *Asahi*. (Dkt. No. 61 at 16–17.) Plaintiff alleges that "there is no other means by which TP-Link products reach the State of Texas, except through the established marketing, sales, and distribution channels of Defendants' sole distributor—TP-Link USA." (*Id.* at 17.) Such products are "design[ed] and manufactur[ed] . . . to meet U.S. safety standards . . . and to meet interoperability requirements of Wi-Fi networks." (*Id.*) The products are also packaged "in English" and "bear the U.S. registered trademarks of Defendants, all while identifying TP-Link [China] as the manufacturer." (*Id.*)

Plaintiff argues that Defendants cannot meet their burden to show that the exercise of personal jurisdiction in Texas would "offend[] traditional notions of fair play and substantial justice" because Defendants have submitted to personal jurisdiction in this District in prior lawsuits. (Dkt. No. 61 at 19.)[6] Similarly, Plaintiff argues that the 'fact that [D]efendants have been

---

[6] The exhibit cited by Plaintiff in support of this allegation is TP-Link USA's answer to the Complaint in *Powerline Innovations LLC v. Sharp Corporation et al.*, Case No. 6:11-cv-410 (E.D. Tex. 2011) in which TP-Link USA, on its

sued in this District in at least two other patent infringement cases further belies their claim that there was 'absolutely no reason to have foreseen that they would be haled into Court in Texas." (*Id*. at 20.)

### c. Defendants' Position

Defendants represent that neither TP-Link China nor TP-Link Hong Kong has employees, agents, offices, or other facilities in Texas. (Dkt. No. 23 at 3.) TP-Link China and TP-Link Hong Kong do not "design, manufacture, sell, or offer to sell any products in Texas," nor do they "ship products to Texas" or "conduct any marketing or advertising in, or directed toward, Texas." (*Id*.)

TP-Link USA, a non-party, is a California corporation with its headquarters and principal place of business in Irvine, California. (Dkt. No. 23 at 4.) Defendants represent that TP-Link USA is the company "solely responsible for importing, marketing, advertising, offering to sell, and selling 'TP-Link branded' products in the United States, including the accused products in this case." (*Id*.) TP-Link USA buys the TP-Link branded products from TP-Link Hong Kong "in Asia" and then imports the same into the United States. (Dkt. No. 61 at 4; *see also* Dkt. No. 61-9 at 3–4; Dkt. No. 69 at 2.) At his deposition, TP-Link USA's Chief Operating Officer ("COO") testified that TP-Link USA has an office in Irvine and warehouse in Chino Hills, California. (Dkt. No. 69-5 at 47:9–19, 58:8–23.) TP-Link USA maintains 101 employees between its two locations in California, but of the seven employees that work from home, one works from Texas. (*Id*. at 47:14–48:4.)

TP-Link USA is a wholly owned subsidiary of another non-party, TP-Link UK, Ltd. ("TP-Link UK"). (Dkt. No. 23 at 4.)[7] TP-Link USA is a separate entity from Defendants, and they

---

own and not on behalf of co-Defendant TP-Link China, admitted for the purposes of that action that the exercise of personal jurisdiction was proper over TP-Link USA in Texas. (*See generally* Dkt. No. 61-37.)

[7] Plaintiff faults Defendants' corporate deponent, Ms. Zhang, for being "unable" to provide details as to the history of the corporate relationship between TP-Link USA and Defendants. (Dkt. No. 61 at 3; *see also* Dkt. Nos. 61-4, 61-7.)

share "no common corporate leadership." (Dkt. No. 61-9 at 3.) According to Defendants, "neither . . . TP-Link China or TP-Link Hong Kong directs or controls the activities of TP-Link USA in importing, marketing, advertising, offering to sell, or selling TP-Link branded products in the United States." (Dkt. No. 23 at 4.) Defendants admit that TP-Link Hong Kong "provides paid technical support services to TP-Link USA . . . through its subsidiary TP-Link Customer Services Inc." in the Philippines and that TP-Link Hong Kong "provides specifications, user manuals, installation videos and/or other technical support documents" on its website. (Dkt. No. 61-9 at 5.)

In their Motion, Defendants contend that the Court lacks general jurisdiction over Defendants because "[n]either Defendant is incorporated in Texas, and neither has its principal place of business in Texas." (Dkt. No. 23 at 9.) Plaintiff's Complaint acknowledges that TP-Link China is a Chinese corporation, and that TP-Link Hong Kong is a Hong Kong corporation, and Defendants allege that Plaintiff's failure to recite any additional facts to establish that either Defendant is "at home" in Texas is fatal to its general jurisdiction argument. (*Id.*)

In response to Plaintiff's argument that "Defendants [have] contacts in Texas because each allegedly 'controls or otherwise directs' the sale and shipment of accused products into Texas," Defendants cite to the declarations of their corporate witnesses. (Dkt. No. 23 at 9.) Ms. Zhang, Operations Director of TP-Link China, declares that TP-Link China "does not direct or control the activities of TP-Link USA in importing, marketing, advertising, offering to sell, or selling TP-Link products in the United States." (Dkt. No. 23-1, ¶¶ 1, 4.) Ms. Sun, Director of TP-Link Hong Kong, makes the same representations. (Dkt. No. 23-2, ¶¶ 1, 3.)

Defendants contend that, even absent the declarations supporting its Motion, Plaintiff's "conclusory allegations" that Defendants "control[] or otherwise direct[]" the sale and shipment of accused products into Texas is "insufficient to establish general jurisdiction over either

Defendant." (Dkt. No. 23 at 9.) Plaintiff faults these declarations for failing to rebut the evidence that (i) "TP-Link" advertises itself as a "global provider or reliable networking devices"; (ii) the TP-Link website "lists. . . where consumers can purchase TP-Link products in the U.S., including in Texas"; (iii) TP-Link China "is the applicant for FCC registrations for the sale and use of TP-Link products in the U.S."; and (iv) TP-Link China provides a mobile application for use with certain wirelessly connected products. (Dkt. No. 61 at 2; *see also* Dkt. Nos. 61-2, 61-3.)

Defendants argue that the Court lacks specific jurisdiction over Defendants under the stream of commerce theory. (Dkt. No. 23 at 10–11.) Defendants contend they "have not purposefully directed activities at residents of Texas" and that Plaintiff "fails to allege any specific acts that either Defendant has committed in the State of Texas" aside from "generally alleg[ing] that each Defendant plays some part in placing the accused products in the stream of commerce in Texas and that they somehow direct or control the making, sale, and distribution of the accused products in the United States[.]" (*Id.* at 10 (citing *Freescale Semiconductor, Inc.*, 2014 WL 1603665, at *1 (W.D. Tex. Mar. 19, 2014) ("A rational belief that a component or product will eventually end up in a particular state—even if that belief amounts to a substantial certainty—does not, by itself, amount to purposeful conduct.").)

Defendants stress that "non-party TP-Link USA is solely responsible for importing, marketing, advertising, offering to sell, and selling TP-Link branded products in the United States." (Dkt. No. 23 at 11.) Defendants allege that, "contrary to the allegations in the Complaint, TP-Link USA is not a subsidiary of either Defendant, but instead a wholly owned subsidiary of TP-Link UK." (*Id.* at 11–12.) "TP-Link USA is not an agent of . . . TP-Link China or TP-Link Hong Kong." (*Id.* at 12.) "TP-Link USA conducts its own management process to decide what

new products to purchase from [its] supplier TP-Link [Hong Kong] and in what quantities." (Dkt. No. 69-5 at 123:6–13.)

For the same reasons, Defendants contend that TP-Link USA's actions cannot be imputed to Defendants under an alter ego theory. (*Id*. at 12–13.) Defendants argue that establishing an alter ego relationship is a "high burden" that Plaintiff cannot meet by "put[ting] forward conclusory allegations that Defendants and TP-Link USA Corporation are essentially the same company and that one or more of the entities allegedly can control the activities of the others." (*Id*. at 13.) Defendants contend that any such "conclusory allegations" of "direction or control" are rebutted by the declarations submitted by Ms. Zhang and Ms. Sun. (*Id*.) Furthermore, Defendants confirmed that "Defendants do not share any common corporate leadership with TP-Link USA" and TP-Link USA's COO testified that TP-Link USA has "no relationship with TP-Link China" or interaction with TP-Link China's employees and that "TP-Link [USA]'s relationship with TP-Link Hong Kong is defined solely by a Distribution Agreement." (Dkt. No. 69 at 3–4.) The "plain terms" of the distribution agreement, according to Defendants, "establish an arms-length relationship between TP-Link Hong Kong and TP-Link USA." (*Id*. at 4.)

Finally, Defendants argue that it would offend traditional notions of fair play and substantial justice to subject Defendants to personal jurisdiction in Texas. (Dkt. No. 23 at 14.) Defendants contend that none of the activities alleged by Plaintiff in support of its jurisdictional argument are "directed to consumers *in Texas*." (Dkt. No. 69 at 3) (emphasis added). Defendants argue that the evaluation of the "reasonableness" of exercising jurisdiction depends on several factors: (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the

shared interest of the several States in furthering fundamental substantive social policies." (Dkt. No. 23 at 14 (citing *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010)).)

Under such factors, Defendants argue that the burden to litigate in Texas would be "severe and unreasonable" because they do not conduct business in Texas and "would be forced to litigate in a venue distant from their homes when there was absolutely no reason for them to have 'foreseen' that they would be haled into court in Texas." (Dkt. No. 23 at 14.) As to the second factor, Defendants contend that the only interest that Texas has in this action is Plaintiff's "purported[]" residence in Frisco. (*Id*. at 15.) Defendants argue that this "interest" should be disregarded because, "on information and belief, Stingray was formed only shortly before the Complaint was filed, and it exists primarily or solely to litigate." (*Id*.) Defendants contend that Plaintiff's "attempt to use TP-Link USA (located in the CDCA) as a basis for jurisdiction, while intentionally *not* suing TP-Link USA to avoid the patent venue statute, is precisely the type of gamesmanship that weighs strongly against finding jurisdiction over Defendants." (*Id*.) Defendants argue that "there is no efficiency to be gained or interests to be served by exercising jurisdiction over TP-Link China and TP-Link Hong Kong, both of which are foreign corporations that conduct no business in Texas," that Plaintiff has "no viable claim" over Defendants, and that there are "no fundamental substantive social policies to be served by requiring a foreign corporation with no contacts in the state to litigate thousands of miles from home." (*Id*. at 15–16.)[8]

### d. Fed. R. Civ. P. 4(k)(2)

In the alternative, Plaintiff contends that this Court has personal jurisdiction over Defendants under Fed. R. Civ. P. 4(k)(2) "because the claims for patent infringement in this action

---

[8] Plaintiff rebuts this argument by noting that this Court has already conducted a *Markman* hearing on the Asserted Patents that are at issue in co-pending cases against Amazon. (Dkt. No. 61 at 21, n. 21.)

14

arise under federal law, [Defendants are] not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over [Defendants] is consistent with the U.S. Constitution." (Dkt. No. 1, ¶¶ 18, 23.) Plaintiff clarifies that it only relies on Rule 4(k)(2) in the event that the Court fails to find jurisdiction under Rule 4(k)(1), in which case it would be Defendants' burden to name a state in which the suit can proceed. (Dkt. No. 61 at 24.)

Defendants argue that Fed. R. Civ. P. 4(k)(2) does not apply in this instance because "Defendants would submit to jurisdiction" in the Central District of California." (Dkt. No. 23 at 16.) According to Defendants, if they identify "a state in which [they] would submit to personal jurisdiction, then Rule 4(k)(2) does not apply." (*Id*. (citing *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009)).) For the same reason, Defendants contend that the case should be transferred to the Central District of California because 28 U.S.C. § 1406(a) "allows the Court to transfer a case 'in the interest of justice' to a district where venue is proper even if the Court lacks personal jurisdiction." (Dkt. No. 23 at 16; *see also* Dkt. No. 28.)

## IV.     ANALYSIS

### a.  Defendants Are Not Subject to Personal Jurisdiction in Texas

Competing views of the stream-of-commerce doctrine originated in *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987). It yet remains unresolved which view controls, and the Courts of Appeals have divided on this question. *See, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–68 (Fed. Cir. 1994).[9]

Here, the Court finds that Plaintiff has failed to show that Defendants do more than simply place their products into the stream of commerce—in Asia—and thereafter through a non-party U.S. distributor. Some small number of these products end up in Texas and this District.

---

[9] This Court does not express a view on this unresolved matter as a part hereof.

Ultimately, the Court concludes that the exercise of personal jurisdiction over Defendants in this Court would be unreasonable under these facts.

### b. The Case Should Be Transferred to the Central District of California

Having found that it lacks personal jurisdiction over Defendants, the Court now faces the choice of whether to dismiss or transfer the cases.[10] "Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2)." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). The court may also transfer the action under 28 U.S.C. § 1406(a) "to 'any district or division in which it could have been brought' if the court finds that it is 'in the interest of justice' to transfer the action." *Id.* Since § 1406 authorizes a court to transfer a case due in the interest of justice, the Court need not perform a detailed venue analysis as to this forum. The Court finds in this case that transfer to the CDCA is in the interests of justice.

While transfer is generally preferred over dismissal, a court's "decision to transfer is discretionary, and often made to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Springboards to Ed., Inc. v. Hamilton Cnty. Read 20*, 2017 WL 3023489, at *5-6 (N.D. Tex. July 14, 2017) (citations omitted). To transfer a case under § 1406(a), the Court must determine if a proper venue exists under one of the three categories set out in § 1391(b). Under 28 U.S.C. § 1391(b), and relevant to the instant analysis, a civil action may be brought in a judicial district in which a substantial part of the events giving rise to the claim occurred or a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

---

[10] Defendants also request, in a separate Transfer Motion, that the Court transfer the above-captioned cases to the Central District of California pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 28.)

Relatedly, "Rule 4(k)(2) provides for . . . personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2014). In *Adams*, the Fifth Circuit found that "so long as a defendant does not concede to jurisdiction in another state, a court may use Rule 4(k)(2) to confer jurisdiction." *Adams*, 364 F.3d at 651.[11]

Here, the Court accepts Defendants' admissions that "Defendants . . . submit to jurisdiction in the CDCA." (Dkt. No. 23 at 16.) The CDCA, according to Defendants, is "where TP-Link USA can be properly joined, and where the witnesses and evidence relating to importation and sales of the accused products are located." (*Id*.) In other words, "Defendants are amenable to suit in the CDCA." (*Id*.) In the Transfer Motion, Defendants admit that these cases "could have been brought" in CDCA and contend that the threshold inquiry in the § 1404 analysis is satisfied. (*See, e.g.*, Dkt. No. 28 at 6–7.) The Court finds that Defendants' admissions satisfy both Rule 4(k)(2) and 28 U.S.C. § 1391(b). The Court accepts and relies upon the affirmative representations made by Defendants that CDCA has both proper jurisdiction and venue in this case.

## V.  CONCLUSION.

Pursuant to § 1406(a), the Court transfers this case to the Central District of California. Accordingly, because the Court finds transfer appropriate under § 1406(a) and favored over dismissal, addressing Defendants' alternative argument for transfer pursuant to § 1404(a) (Dkt. No. 28) is unnecessary. It is therefore **ORDERED** that Defendants' Motion to Dismiss for Lack

---

[11] The Federal Circuit held in *Merial Ltd. v. Cipla Ltd.* that an *ex-post* consent to suit in a judicial district is not *necessarily* sufficient to prevent a district court from exercising personal jurisdiction under Fed. R. Civ. P. 4(k)(2). 681 F.3d 1283, 1294–1295 (Fed. Cir. 2012). The Court explained that "a defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent." (*Id*.)

of **Personal** Jurisdiction (Dkt. No. 23) is **GRANTED-IN-PART**, the above-captioned cases are

**TRANSFERRED** to the Central District of California *instanter*, and Defendants' Opposed

Motion Under 28 U.S.C. § 1404(a) to Transfer the Action to the Central District of California (Dkt.

No. 28) is **DENIED AS MOOT**.

 

**So ORDERED and SIGNED this 13th day of October, 2022.**

_____
RODNEY   GILSTRAP
UNITED STATES DISTRICT JUDGE