# DX 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC,<br>       *Plaintiff,*<br><br>-v-<br><br>SERCOMM CORPORATION,<br>       *Defendant.* | § § § § § § § § § § § § § | **6:21-CV-00818-ADA** |
| ATLAS GLOBAL TECHNOLOGIES LLC,<br><br>-v-<br><br>ASUSTEK COMPUTER INC.,<br>       *Defendant.* | § § § § § § § § § § § § | **6:21-CV-00820-ADA** |

## CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF

Before the Court are the Parties' claim construction briefs: Defendants Sercomm Corporation and ASUSTeK Computer Inc.'s Opening and Reply briefs (6:21-cv-00818 ECF Nos. 55 and 71; 6:21-cv-00820 ECF Nos. 55 and 62, respectively) and Plaintiff Atlas Global Techs. LLC's Response and Sur-Reply briefs (6:21-cv-00818 ECF Nos. 64 and 75; 6:21-cv-00820 ECF Nos. 60 and 66, respectively). The Court provided preliminary constructions for the disputed terms one day before the hearing. The Court held the *Markman* hearing on November 4, 2022. 6:21-cv-00818 ECF No. 78, 6:21-cv-00820 ECF No. 68. During that hearing, the Court informed the Parties of the final constructions for the disputed terms. *Id.* This Order does not alter any of those constructions.

## I. DESCRIPTION OF THE ASSERTED PATENTS

Plaintiff asserts U.S. Patent Nos. 9,763,259, 9,825,738, 9,912,513, 9,917,679, 10,020,919, and 10,756,851 against both Defendants; U.S. Patent No. 9,531,520 against Sercomm only; and U.S. Patent Nos. 9,848,442 and 10,153,886 against ASUSTeK only.

## A. Patents asserted against both Sercomm and ASUSTeK

Of the patents asserted against both Sercomm and ASUSTeK, the parties did not have any disputed terms for the '679 Patent.

### 1) U.S. Patent No. 9,763,259

"Beamforming" is a wireless transmission technique that uses multiple antennas to transmit a wireless signal in a particular direction. Wireless devices that support "beamforming" use "sounding" to measure and calibrate the wireless "channel" in order determine how to radiate energy in a preferred direction.

The '520 Patent is entitled "Sounding method" and is directed towards a "sounding method by a receiving device is provided." '259 Patent at Abstract. More specifically, the patent is directed towards sounding for multiple users in a wireless local area network. *Id.* at 1:19–20, 1:59–60. In the claimed invention, using the embodiment depicted in Figure 7, the beamformer, *e.g.*, an access point, transmits a null data packet announcement ("NDPA") to one or more beamformee devices. *Id.* at 9:15–18.

2



FIG. 7

Then, after the short interframe spacing ("SIFS") interval, the beamformer transmits a null data packet ("NDP") to the to one or more beamformee devices. *Id.* at 9:17–18. After another SIFS interval, beamformee 1 transmits sends a feedback frame, in this case a compressed beamforming ("CB") frame, to the beamformer. *Id.* at 9:18–24. The feedback frame may include "subchannel information of a subchannel allocated to the beamformee device for a plurality of space-time streams. In some embodiments, the subchannel information may include an average SNR of the subchannel in the plurality of space-time streams." *Id.* at 10:38–41. After received the CB frame and another SIFS interval, the beamformer transmits beamforming ("BR") report poll ("BR-poll"). *Id.* at 9:24–28. Beamformer and beamformee 2, beamformee 3, and beamformee 4 repeat this process. *Id.* at 9:30–44.

**2) U.S. Patent No. 9,825,738**

3

The '738 Patent is entitled "Acknowledgement method and multi user transmission method."  Figure 22 depicts an exemplary embodiment of an uplink ("UL") multi-user ("MU") procedure in a wireless communication network.  '738 Patent at 20:45–47.



Figure 22 depicts an access point ("AP") and three stations, STA1, STA2, and STA3. Figure 22 depicts that the AP transmits a UL MU MIMO (multiple input multiple output) ("ULI") frame.  *Id.* at 20:48–49.  The ULI frame indicates to the stations STA1, STA2, and STA3 to initiate UL MU-MIMO transmission.  *Id.* at 20:50–52.  Figure 22 depicts that STA1, STA2, and STA3 sequentially transmit UL MU-MIMO request (UL req) frames to the AP.  *Id.* at 20:53–55.  The specification describes that the "UL req frame transmitted by each station includes feedback information for the UL MU-MIMO of the corresponding station."  *Id.* at 20:55–57.  Based on the feedback information from the stations, the AP transmits UL setup message to indicate which stations are may join the UL MU-MIMO.  *Id.* at 20:58–63.  The specification describes that "[t]he setup information may include for example a transmission power, modulation and coding scheme (MCS) information, or a data length to be used by each station. The setup information may further

4

include information on a structure of a long training field (LTF) to be used by each station." *Id.* at 20:63–21:1. In response, the selected stations transmit a UL data frame, UL PPDU in Figure 22, based on the setup information. *Id.* at 21:4–6. In response to those UL data frames, the AP transmits an ACK frame to the stations STA1 and STA2. *Id.* at 21:6–8.

### 3) U.S. Patent No. 9,912,513

The '513 Patent is entitled "System and method for synchronization for OFDMA transmission." The claimed invention "relates in general to wireless communication systems and methods, and more particularly to, for example, without limitation, systems and methods for synchronization for orthogonal frequency division multiple access (OFDMA) transmission." *Id.* at 1:21–25.

The '513 Patent describes that an AP may send a trigger frame to STAs that participate in a subsequent uplink (UL) MU frame in order to initiate the MU simultaneous transmission in OFDMA. *Id.* at 2:47–52. The specification describe that trigger frame may include "some or all of the following features: (a) a list of STAs that an AP seeks a response from; (b) resource allocation information for each STA (e.g., a sub-band assigned to each STA); and/or (c) attributes of the expected UL MU frame, such as the duration, bandwidth, etc., among other features." *Id.* 2:52–58. The specification describes that "resource" may refer to "bandwidth, time/duration that the STAs expect to occupy a transmission medium, and/or possibly a number of spatial streams that the STAs may use." *Id.* at 2:58–61.

The specification also describes that a trigger frame may include information for a guard interval (GI) duration and/or the fast Fourier transform (FFT) size to be used for at least some symbols of an UL frame." *Id.* at 2:61–65. The guard interval is a period of time between

5

transmissions so the two transmissions do not interfere with each other. *Id.* at 13:42–47. After receiving the trigger frame, the STAs responsive transmission uses the GI. *Id.* at 3:52–61.

### 4) U.S. Patent No. 10,020,919

The '919 Patent is entitled "Protection methods for wireless transmissions" and relates to "Multi-User Multiple-Input-Multiple-Output (MU-MIMO) and Orthogonal Frequency Division Multiple Access (OFDMA) communications in a wireless network." '919 Patent at 1:21–24.

The specification of the '919 Patent describes that "[s]ounding operations are used to identify channel conditions in a wireless network." *Id.* at 2:6–7. The specification describes that upside of using sounding is that by "[i]dentifying the channel conditions permits better utilization of the channel by enabling one or more of higher bit rates, use of a greater number of spatial streams, and more effective utilization of transmission power." *Id.* at 2:7–12. The specification also describes that the downside of using sounding is that it "may contribute to the total amount of overhead in a wireless network." *Id.* at 2:12–13.

The specification of the '919 Patent describes that a beamformer (*i.e.*, an AP) transmits a non-data packet announcement ("NDPA") to the STA(s) followed by a non-data packet ("NDP"). *Id.* at 18:19–23. The purpose of the former is to indicate to the STA(s) that the latter is forthcoming. *Id.* In response to the latter, the STA(s) provide channel state information ("CSI") feedback. *Id.* at 18:23–25. The specification describes that the "NDPA frame contains parameters for CSI feedback as well as list of STAs that are directed to participate in the CSI feedback process." *Id.* at 18:55–57.

When there is only one STA, *e.g.*, STA1 in Figure 8A, the STA realizes that it is the only STA participating in the CSI feedback process, and it transmits the CSI feedback at a SIFS interval after the NDP. *Id.* at 18:58–19:9, Figure 8A.



When there are multiple STAs, *e.g.*, STA1, STA2, and STA3 in Figure 8B, participating in the CSI feedback process, all STAs transmit their CSI feedback as part of an MU UL transmission at an xIFS interval after the AP sends the MU trigger frame. *Id.* at 19:33–42.



The specification describes that the "MU Trigger frame 808 indicates to the stations which resources (such as OFDMA Resource Units (RUs), MIMO spatial streams, or both) each of the stations STA1, STA2, and STA3 that providing the CSI feedback should use to provide the CSI feedback." *Id.* at 19:27–31.

### 5) U.S. Patent No. 10,756,851

The '851 Patent is entitled "Multiplexing acknowledgment messages in response to downlink frames" and is directed towards the setting the parameters for the acknowledge / block acknowledgement frame ("ACK/BA frame"). *Id.* at 3:10–12. The '851 Patent discloses using a "control extension," one embodiment of which is described as "an AP may use the QoS control field in the MAC header of each MPDU and an extended HT control field (denoted as HE Control Extension (HECE) in the HT control field) in a DL payload to notify a STA (that has a payload in the DL MU frame) about the sub-band that the STA can use to place its ACK or BA frame in the immediately multiplexed-ACK/BA frame." '851 Patent at 30:16–22. Figure 13 illustrates an example of a control field of a data frame. *Id.* at 30:11–12.



FIG. 13

Figure 13 depicts that "control extension" 1320 is added to the end of the legacy HT control field 1300. *Id.* at Figure 13.

### B. Patent asserted against Sercomm (U.S. Patent No. 9,531,520)

8

The '520 Patent is entitled "Apparatus and method for downlink and uplink multi-user transmissions" and is directed towards "facilitating uplink multi-user acknowledgment transmissions." '520 Patent at Abstract. The specification describes "acknowledgment information may be located in a media access control (MAC) header of a payload section of a MAC Protocol Data Unit [MPDU] within a downlink multi-user frame." *Id.* Acknowledgement information "may include one or more of (1) whether the acknowledgement transmission is multi-user or single user, (2) whether the acknowledgement transmission is transmitted immediately following receipt of the downlink multi-user frame or upon receipt of a multi-user block acknowledgement request frame, and (3) resource scheduling information for an uplink multi-user acknowledgement transmission." *Id.* The specification describes that MPDUs "may be placed in specific resource units within the [downlink multi-user] frame assigned/allocated to each respective [station]." *Id.* at 18:1–5. The specification describes that "resource units" may be "particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted." *Id.* at 18:5–8.

### C. Patents asserted against ASUSTeK (U.S. Patent Nos. 9,848,442 and 10,153,886)

Of the patents asserted against ASUSTeK, the parties did not have any disputed terms for U.S. Patent No. 10,153,886.

The '442 Patent is entitled "Method for transmitting and receiving frame in wireless local area network" and is directed towards a method and apparatus for "a wireless local area network ('WLAN'), and more particularly to methods for transmitting and receiving a frame in an overlapping basis service set (OBSS) environment." '442 Patent at 1:15–18.

9

A basic service set ("BSS") includes a plurality of WLAN devices. *Id.* at 4:17–18. BSSs may overlap. *Id.* at 8:54–57. The BSS that a station is in is called "MyBSS," while another BSS that overlaps with that station is called an "OBSS." *Id.*

The specification describes that a station in a BSS may lose its transmission opportunity ("TXOP," *i.e.*, a window of time to transmit frames) due to a frame transmitted by another station in an OBSS. *Id.* at 1:56–61. To solve this problem, the specification describes receiving a physical protocol data unit ("PPDU"), determining if that PPDU is from the station's MyBSS or OBSS, and then—if the PPDU is from an OBSS—setting virtual carrier sensing by using information included in a preamble of the first PPDU when the received signal strength is higher than a threshold, or attempting to obtain a transmission opportunity when the received signal strength is lower than that threshold. *Id.* at 2:4–19. The virtual carrier sensing may be set based on information included in the preamble of the first PPDU or in the MAC header of the first PPDU. *Id.* at 9:35-45.

## II. LEGAL STANDARD

### A. General principles

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted). The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

10

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361

11

(Fed. Cir. 2008).  In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

An applicant's statements during the PCT prosecution may also indicate the scope of the invention.  *See Caterpillar Tractor Co. v. Berco*, 714 F.2d 1110, 1116 (Fed. Cir. 1983) (stating that when instructions to foreign counsel or representations to foreign patent offices made by an applicant during prosecution of a corresponding foreign application provide "relevant evidence" with respect to claim interpretation, such information "must be considered."); *see also Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) (finding that the applicant's own statements made before the European Patent office support the court's holding).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'"  *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent.  *Id.* at 1318.  Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

## B. Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

## III.   LEGAL ANALYSIS

### A. Term #1: "the downlink multi-user frame including a plurality of resource units (RUs)"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "the downlink multi-user frame including a plurality of resource units (RUs)"<br><br>U.S. Patent No. 9,531,520, Claim 1<br><br>Proposed by Sercomm | Plain and ordinary meaning<br><br>Alternatively, "the downlink multi-user frame including a plurality of particular units of spatial streams and/or subchannels of a wireless channel" | Indefinite |

**The Parties' Positions:**

Sercomm contends that this term is indefinite because "resource units" cannot be both part of the DL MU frame being transmitted and part of the wireless channel over which the DL MU frame is transmitted. Opening at 9. Sercomm contends that Claim 1 describes that the DL MU frame includes resource units ("the downlink multi-user frame including a plurality of resource

13

units." '520 Patent, Cl. 1, Limitation [a]. Sercomm contends the specification describes that "[t]he resource units may be particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted." *Id.* at 14:12–14.

Sercomm also contends that "resource units" does not have a plain-and-ordinary meaning. Opening at 9. Sercomm contends that the extrinsic evidence that Plaintiff provides post-dates the filing of the patent and is thus irrelevant to claim construction. *Id.* (citing *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003)).

In its response, Plaintiff contends that there is no contradiction between "include" and "upon." Response at 3 (analogizing that "[A] house ***includes*** its foundation and is built ***upon*** its foundation. A book ***includes*** its pages and is printed ***upon*** its pages.") (emphasis in original)). Plaintiff contends that the specification uses "include" and "upon" interchangeably. *Id.* at 4. ('520 Patent at 2:49–50, 14:12–14). Plaintiff contends that "[a] POSITA reading the specification would understand that the claimed 'downlink multi-user frame' includes the resource units it is transmitted upon." *Id.*

Plaintiff contends that the specification describes that "including" has a broad ordinary meaning, similar to "comprising." *Id.* Plaintiff contends that "Even if there was a contradiction between the broad term 'including' and the term 'upon' (there is not), this would still not render this term indefinite" as the "upon" embodiment in the specification is described using optional language. *Id.* at 4 (quoting '520 Patent at 14:12–14 ("The resource units may be particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted.")). Plaintiff contends that Sercomm has not provided any reason to limit the claim term to this embodiment. *Id.*

14

Plaintiff contends that "resource units" has a plain-and-ordinary meaning. *Id.* at 5. In particular, Plaintiff contends even Sercomm's expert opined that "resource units" are "those resources that were allocated to the STAs for the subsequent transmission of the uplink frames." *Id.* (quoting Opening, Roy Declaration at ¶ 31). Plaintiff further contends that extrinsic evidence described "resource units" as "particular units of spatial streams and/or subchannels of a wireless channel." *Id.*

In its reply, Sercomm maintains that the term is indefinite, but in the case the Court concludes that it is not, Sercomm contends that the Court should adopt Plaintiff's alternate construction. Reply at 1.

In its sur-reply, Plaintiff contends that Sercomm does not address the arguments in its Response, does not provide any new arguments, and, if the term is not indefinite, concedes that Plaintiff's alternate construction is correct. Sur-Reply at 1.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, while the claim language is clunky, the Court concludes that a POSITA, reading the specification would understand that "includes" and "upon" are used interchangeably. For example, the specification discloses that "resource units may be particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted." '520 Patent at 14:12–14. As such, the Court concludes that a POSITA would understand that the claim term "the downlink multi-user frame including a plurality of resource units (RUs)" includes the resource units it is transmitted upon. *Id.* At minimum, this passage

15

prevents Sercomm from proving, by clear-and-convincing evidence, that a POSITA would not understand, with reasonable certainty, the scope of this term.

*Second*, Sercomm does not consult the specification, but only improperly examines the claim language in isolation.

*Construction*: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Sercomm does not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

With respect to Plaintiff's alternate proposed construction, the Court does not believe it necessary to adopt Plaintiff's proposed construction as the above passage ('520 Patent at 14:12–14) provides a POSITA and a lay jury enough guidance to understand and apply, respectively, this term.

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

**B. Term #2: "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs" / "wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame"**

| Term | Plaintiff's Proposed Construction | TCL's Proposed Construction |
|------|-----------------------------------|-----------------------------|

| "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs" / "wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame"<br><br>U.S. Patent No. 9,531,520, Claims 1, 9<br><br>Proposed by Sercomm | Plain and ordinary meaning | Indefinite |
|---|---|---|

**The Parties' Positions:**

Sercomm contends that this term is indefinite for the same reason Term #1 was indefinite; namely, because "resource units" cannot both be <u>in</u> DL MU frame being transmitted and part of the wireless channel <u>upon</u> which the DL MU frame is transmitted. Opening at 10. Sercomm also contends that because MPDUs are data units, "[r]esource units cannot both be data units to be transmitted and a transmission medium, such as spatial streams or subchannels, that is used for transmissions." *Id.*

In its response, Plaintiff contends that Sercomm's arguments fail for the same reason as for Term #1. Response at 5. With respect to Sercomm's MPDU argument, Plaintiff contends that Sercomm applies an "unusually narrow definition" for "in." *Id.* at 6. Plaintiff contends that there is no contradiction between the words "in" and "upon." *Id.* (analogizing "[a] package can be simultaneously *in* a delivery truck and *upon* a delivery truck. A boat can be simultaneously *in* the

17

water and *upon* the water.") (emphasis in Plaintiff's brief). Plaintiff further contends that "the '520 specification uses words like 'in' and 'upon' interchangeably to describe the relationship between MPDUs and resource units (and the 'upon' embodiment is described using optional language)[.]" *Id.* (quoting '520 Patent at 14:9–14).

In its reply, Sercomm maintains that the term is indefinite, but in the case the Court concludes that it is not, Sercomm contends that the Court should construe the plain-and-ordinary meaning, "in which the claimed 'downlink multi-user frame' includes the resource units it is transmitted upon." Reply at 1–2.

In its sur-reply, Plaintiff contends that Sercomm does not address the arguments in its Response, does not provide any new arguments, and, if the term is not indefinite, should adopt Plaintiff's alternate construction). Sur-Reply at 2.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed according to its plain-and-ordinary meaning for the reasons that follow. *First*, while the claim language is clunky, the Court concludes that a POSITA, reading the specification would understand that "in" and "upon" are used interchangeably to describe the relationship between MPDUs and resource units. For example, the specification discloses that

> Each MPDU may include data and/or control frames intended for each respective STA and may be placed in resource units within the DL MU frame assigned/allocated to each respective STA. The resource units may be particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted.

'520 Patent at 14:9–14. As such, the Court concludes that a POSITA would understand that "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of

18

RUs" means that the MPDUs are placed upon the RUs. At minimum, this passage prevents Sercomm from proving, by clear-and-convincing evidence, that a POSITA would not understand, with reasonable certainty, the scope of this term.

**Second**, as was the case for Term #1, Sercomm again does not consult the specification, but only improperly examines the claim language in isolation.

**Third**, with respect to Sercomm's proposed construction ("in which the claimed 'downlink multi-user frame' includes the resource units it is transmitted upon."), the Court declines to adopt it because it either repeats or paraphrases the claim language, which is not helpful. *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004) (agreeing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction") (internal quotations omitted).

**Construction**: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Defendant does not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

## C. Term #3: "network device"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| | | |

19

| "network device" U.S. Patent No. 9,531,520, Claims 1, 6 Proposed by Sercomm | Plain and ordinary meaning | "an access point that may communicate with STAs over a network" |
|---|---|---|

**The Parties' Positions:**

Sercomm contends that the claim language "unequivocally distinguishes and differentiates" this term from a non-access point "station." Opening at 11 ("generating, by the network device, a downlink multi-user frame addressed to a plurality of stations"). Sercomm contends that the specification recites the same language as the claim language. *Id.* (quoting '520 Patent at 1:26–29).

In its response, Plaintiff contends that this term does not require construction as it is a common, non-technical term. Response at 6. Plaintiff also contends that Sercomm's proposed construction is too narrow for several reasons. First, Plaintiff contends that a "wireless communication device"—which a POSITA would understand to be a "type" of network device in the context of the patents—includes non-access points. *Id.* at 7 (quoting '520 Patent at 6:24–32, 6:38–46, 7:1–3, 21:55–61). Second, Plaintiff contends that "there is often functionality overlap between access points and non-access points. *Id.* at 7 (quoting '520 Patent at 6:45–61). Third, Plaintiff contends that Sercomm's selectively quotes the specification and that the full passage from the specification is directed towards characterizing the "environment" and not "the network device" itself. *Id.* at 8 (quoting '520 Patent at 1:26–29 ("Wireless local area network (WLAN) devices *are deployed in diverse environments*. *These environments* are generally characterized by the existence of access points and non-access point stations.") (emphasis in Plaintiff's brief).

20

In its reply, with respect to Plaintiff's argument that because "network device" is a "common, non-technical term," no construction is needed, Sercomm contends that Claims 1 and 6 describe a network device as an access point communicating with stations. Reply at 2. Sercomm contends that the actions are performed by an access point and not a station on the network. *Id.* For example, Sercomm contends that "Claim 1 requires that the 'network device' generate a downlink multi-user frame addressed to a plurality of stations (that are separate and different from the 'network device'); transmit the downlink multi-user frame to the plurality of non-AP stations; and receive the uplink multi-user response transmission from the non-AP stations." *Id.* Sercomm's expert contends that a "non-access point" does not "generate a downlink multi-user frame addressed to a plurality of stations; transmit the downlink multi-user frame to the plurality of stations; or receive the uplink multi-user response transmission from the stations." *Id.* at 3.

With respect to stations communicating in ad-hoc mode, Sercomm contends that such a station "does not rely on the downlink and uplink communications used in 'infrastructure mode' as required by claim 1." *Id.* at 3 (quoting '520 Patent at 6:53–56).

In its sur-reply, Plaintiff contends that the "isolated statements" Sercomm cites are not a "clear disclaimer." Sur-Reply at 2. For example, Plaintiff contends that "access point" does not appear in the claims, even though it appears in other independent claims. *Id.* With respect to Sercomm's argument that a non-AP STA may act as an AP, Plaintiff contends that the words "ad hoc mode" or "infrastructure mode" does not appear in the patent. *Id.* at 3. Plaintiff contends that the "point of novelty resides with the steps of these methods, not the machine that performs them." *Id.* (quoting *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1229 (Fed. Cir. 2016)). Accordingly, Plaintiff contends that if "network device" was replaced with "computer" or

21

"station" (two specification examples of non-AP devices), the same method steps would have to be performed.  *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  ***Second***, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

***Third***, the Court agrees with Plaintiff that it is not a technical term.  More specifically, while "network device" describes a technical component, the term is also generic, in the same way a "communications device" might describe a telephone.

***Fourth***¸ the Court agrees with Plaintiff that Sercomm's proposed construction is too narrow given that network devices are not limited to access points.  The specification describes that a "wireless communication device"—which a POSITA would understand, in the context of the '520 Patent, to be a "type" of network device—includes non-access points.  *Id.* at 7 (quoting '520 Patent at 6:24–32, 6:38–46).  And, although "access points" appears in other independent claims, it does not appear in the claims-at-issue.

***Fifth***, the Court agrees with Plaintiff that because a STA and access point may have overlapping functionality, *e.g.,* a STA may act as an access point, it is improper to arbitrarily limit network device to an access point.  *See, e.g,* '520 Patent at 6:45–61.  With respect to Sercomm's

22

argument that the aforementioned passage does not support overlapping functionality (because the claim requires communicating in infrastructure mode while two stations communicating with each other communicate in ad hoc mode), the Court disagrees because specification does not describe infrastructure or ad hoc modes.

Therefore, for the reasons described above, the Court's final construction for "network device" is plain-and-ordinary meaning.

### D. Term #4: "wherein the NDPA frame indicates information corresponding to the predetermined length"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "wherein the NDPA frame indicates information corresponding to the predetermined length"<br><br>U.S. Patent No. 9,763,259, Claim 6<br><br>Proposed by Defendants | Plain and ordinary meaning | Indefinite |

**The Parties' Positions:**

Defendants contend that this term is indefinite because "a POSITA would not understand what is—and what is not—within the scope of the phrase 'indicates information corresponding to.'" Opening at 11. Defendants contend that the specification does not provide any guidance. *Id.* at 12. Defendants further contend that the patentee did not choose to use a definite phrase, *e.g.*, "contains information" or "identifies." *Id.* Defendants finally contend that "corresponding to" is a phrase that is "another degree attenuated from simply providing the relevant information." *Id.*

In its response, Plaintiff contends that the "claim context" shows that the claim is not indefinite. Response at 8. In particular, Plaintiff contends that Claim 6 requires that "'the NDPA frame indicates information corresponding to the predetermined length' of the data to be transmitted by the 'feedback frame' recited in '259 Claims 1 and 5." *Id.* (citing '259 Patent at 22:40–53, 22:65–23:7). Plaintiff contends this is necessary to handle situations where the actual length is shorter or longer than the predetermined length. *Id.* (citing '259 Patent at 22:65-67, 22:67-23:4, 15:8-30, Figs. 14-15).

Plaintiff contends that the specification explains there are "numerous ways" to indicate the predetermined length. *Id.* ('259 Patent at 15:38–65 (describing that the NDPA frame may include information on the maximum length)).

Plaintiff finally contends that the claim language and specification are also consistent with extrinsic evidence. *Id.* at 10 (citing dictionary definitions for "indicates" and "corresponding).

In their reply, Defendants contend that, to the extent that the Court finds that the term is not indefinite, the Court should construe the plain-and-ordinary meaning as "in which the NDPA frame may include information on the maximum CB length." Reply at 3.

In its sur-reply, Plaintiff contends that Defendants plain-and-ordinary alternative construction is an attempt to limit the claim term to a disclosed embodiment. Sur-Reply at 4.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the Court concludes that Defendants do not provide clear-and-convincing evidence that this term is indefinite. More specifically, Defendants

24

contend that the specification does not provide any guidance and/or that the patentee did not choose to use a definite phrase, *e.g.*, "contains information" or "identifies." But neither of these arguments demonstrates that the claim term is indefinite, let alone by clear-and-convincing evidence.

With respect to Defendants' contention that "corresponding to" is a phrase that is "another degree attenuated from simply providing the relevant information." But "indicates information corresponding to" is, at most, a broad term, and a claim term is not indefinite simply because it is broad. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017) ("Breadth is not indefiniteness."). Furthermore, the fact that Defendants provide an alternate construction shows that even Defendants believe that the term has a definite scope.

*Second*, the claims show that the claim is not indefinite. More specifically, Claim 6 depends on Claim 5. Claim 5 recites checking whether the length of data to be transmitted by the feedback frame is shorter or longer than a predetermined length. '259 Patent, Claim 5 ("adding pad bits … when a length of data to be transmitted by the feedback frame is shorter than a predetermined length, or partitioning the data into a plurality of fragments … when the length of the data is longer than the predetermined length."). Claim 6 then provides information (*i.e.*, "indicating information") "corresponding the predetermined length." *Id.*, Claim 6.

*Third*, the specification explains there are numerous ways to indicate the predetermined length. '259 Patent at 15:38–65 (*e.g.*, describing that the NDPA frame may include information on the maximum length).

*Fourth*, extrinsic evidence further confirms the Court's conclusion that this term is not indefinite. More specifically, the dictionary definitions show that "indicates" can be implicit or indirect while "corresponding" means "similar in character, form, or function." Response, Ex. E at ATLAS-00033233, Ex. F at ATLAS-00033238.

*Fifth*, the Court agrees with Plaintiff that Defendants' alternate construction ("in which the NDPA frame may include information on the maximum CB length") improperly limits the claim term to disclosed embodiment. *Liebel-Flarsheim*, 358 F.3d at 913 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). The specification plainly recites that "in which the NDPA frame may include information on the maximum CB length" is an embodiment. '259 Patent at 15:43–47.

Therefore, for the reasons described above, the Court concludes Defendants have not provided clear-and-convincing evidence that a POSITA would not understand, with reasonable certainty, the scope of the claim term.

*Construction*: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Defendants do not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

**E. Term #5: "wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames" / "wherein the second information is a function of a total number of space time streams to be**

26

**used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations"**

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames" / "wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations" <br><br> U.S. Patent No. 9,825,738, Claims 1, 9 <br><br> Proposed by Defendants | Plain and ordinary meaning <br><br> Alternatively, "wherein the second information in the common information portion is a value that is related to the total number of space time streams to be used to simultaneously transmit the multiple uplink frames. | Indefinite |

**The Parties' Positions:**

Defendants contend that the claim term is indefinite because a POSITA would not understand with reasonable certainty as to the scope of "second information." Opening at 12. Defendants first contend that the claims do not provide any information regarding "a function." *Id.* Defendants contend that the intrinsic record "similarly fails to provide any clarity" as to the phrase "a function of a total number of space time streams." *Id.* at 13. Specifically, Defendants contend that "a function of a total number of space time stream" or "a total number of space time streams" do not appear in the specification. *Id.* Defendants' expert opines that "function' is broad and essentially unbounded. *Id.*

27

In its response, Plaintiff contends that the claims provide reasonable certainty regarding the scope of this term. Response at 11. More specifically, Plaintiff contends that the claims describes that "an access point provides information, in a common information portion of an uplink setup information transmission, that has a value related to the total number of space time streams used by the responding stations transmitting the responsive multi-user uplink frame." *Id.* (citing '739 Patent, Cl. 9). Plaintiff also contends that the specification also describes this concept. *Id.* ('739 Patent at 22:39–43).

Plaintiff also contends that the specification provides an example of the claimed functional relationship. *Id.* More specifically, Plaintiff contends that the specification describes "identifying the dependence between the total number of space-time streams and the number of long training fields that will be used in the UL MU-MIMO transmissions." *Id.* at 11–12 (citing '738 Patent at 22:22–26, 22:26–29, 22:31–38). Plaintiff contends that the provisional application describes a "similar" concept. *Id.* at 12. More specifically, Plaintiff contends that the provisional application describes that the UL setup packet provides the total number of data streams, which allows the STA to determine the number of long training fields to be include in a UL data frame. *Id.* ('738 Provisional at ATLAS-00013794, -00013796). Plaintiff finally contends that the prosecution history is consistent and describes that the "total number of spacetime streams is the total number of streams to be used in the subsequent UL MU transmissions from the plurality of stations" and that "the number of spatial streams that *one* terminal may use is *not* a function of a *total* number of spatial streams used to perform the multiple uplink frames." *Id.* (quoting '738 file history at ATLAS-00013200 (emphasis in original)).

In their reply, Defendants contend that "[w]ithout explanation of the 'function,' the claim lacks any reasonable certainty[.]" Reply at 4–5. Defendants also contend that Plaintiff's alternate

construction is "equally unknown and unbounded" as it simply replaces "as a function of" with "related to." *Id.* at 5.

In is sur-reply, Plaintiff contends that Defendants confuse breadth with indefiniteness. Sur-Reply at 4 (citing *In re Miller*, 441 F.2d 689, 693 (CCPA 1971)).

Plaintiff also contends that "a function" indicates that "one quantity is determined based on one or more other quantities." *Id.* at 5. Plaintiff further contends that the claim language recites this concept; namely, that the "second information" is the dependent variable and that "total number of space time streams" is the independent variable. *Id.* Plaintiff also contends that the specification describes that the number of long training fields "may be determined in accordance with (*i.e.*, is a function of) the number of space time streams)." *Id.* (citing '738 Patent at 22:22–29).

Finally, Plaintiff contends that its alternative construction "'clarifies' that the claimed 'function' has a value related to the total number of space time streams[.]" *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the Court concludes that Defendants do not provide clear-and-convincing evidence—that this term is indefinite. More specifically, Defendants contend that the claims do not "provide any clarity," while "a function of a total number of space time stream" or "a total number of space time streams" do not appear in the specification. But neither of these arguments demonstrates that the claim term is indefinite, let alone by clear and convincing evidence. In particular, the specification repeatedly uses the phrase

29

"spatial stream" or "space-time stream." *See, e.g.*, '738 Patent at 8:5–24, 8:65–9:2. Furthermore, "as a function of" is a common engineering phrase. Based on that, the Court concludes that a POSITA would understand the meaning of this claim term with "reasonable certainty."

**Second**, the claims and specification are consistent with the plain-and-ordinary meaning of this term, namely where one variable is based on another variable. For example, Claim 9 describes that the "second information" is the dependent variable and that "total number of space time streams" is the independent variable. '738 Patent, Claim 9 ("wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations"). Similarly, the describes that the number of long training fields "may be determined in accordance with (i.e., is a function of) the number of space time streams)." '738 Patent at 22:22–29. This passage describes an example "when the numbers of space-time streams are 1, 2, 3, 4, 5, 6, 7, and 8, the numbers of long training fields may be determined as 1, 2, 4, 4, 6, 6, 8, and 8, respectively." *Id.*

**Third**, with respect to Defendants' argument that function is so broad that it is essentially unbounded, the Court disagrees. As described above, "function" has a well-understood meaning and Defendants have not shown that it is not well-understood or unbounded. Furthermore, "function" is, at most, a broad term, but a POSITA would understand that it is just broadly written. But a claim term is not indefinite simply because it is broad. *BASF*, 875 F.3d at 1367 ("Breadth is not indefiniteness."). Furthermore, the fact that Defendants provide an alternate construction shows that even Defendants believe that the term has a definite scope.

Therefore, for the reasons described above, the Court concludes Defendants have not provided clear-and-convincing evidence that a POSITA would not understand, with reasonable certainty, the scope of the claim term.

*Construction*: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Defendant does not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

### F. Term #6: "uplink setup information"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "uplink setup information"<br><br>U.S. Patent No. 9,825,738, Claims 1, 7, 9, 15<br><br>Proposed by Defendants | Plain and ordinary meaning | "information on the transmission characteristics to be used for a subsequent uplink transmission" |

**The Parties' Positions:**

Defendants contend that construction of this term is necessary to "avoid mischief" later. Opening at 14. Defendants contend that based on the claim language and specification, the claim term means that the "setup information is used for a subsequent uplink transmission." *Id.*

31

In its response, Plaintiff contends that Claim 9 provides sufficient detail regarding the uplink setup information; namely, that "(i) provides information to be used for uplink multi-user transmissions sent simultaneously by a plurality of stations; (ii) includes a common portion; and (iii) includes a dedicated portion[.]" Response at 13 (similar for claim 1). Plaintiff contends that specification is consistent. *Id.* (citing '738 Patent at 17:9–17, 20:48–52, 20:63–21:3, 22:31–44).

Plaintiff contends there are three fundamental problems with Defendants' proposed construction. Plaintiff first contends that Defendants' proposed construction ignores "common" and "dedicated" information, which will lead to jury confusion. *Id.* at 14. Plaintiff next contends that Defendants' proposed construction narrows the claim by limiting the scope to "transmission characteristics" without any justification, when a preferred embodiment describes that the uplink setup information also serves as "an important *initiation* function" for uplink transmission. *Id.* at 14–15 (emphasis in Plaintiff's brief). Plaintiff then contends that Defendants' proposed construction fails to "adequately correlate the uplink setup information to the 'multi-user' transmissions by the plurality of stations[,]" but instead "Defendants broaden this correlation to a 'subsequent uplink transmission[.]" *Id*. at 15.

In their reply, Defendants contend that if the Court declines to adopt their proposed construction, the Court should construe this term as having a plain-and-ordinary meaning of "information that (i) provides information to be used for uplink multi-user transmissions sent simultaneously by a plurality of stations; (ii) includes a common portion; and (iii) includes a dedicated portion." Reply at 5.

In its sur-reply, Plaintiff contends that Defendants do not respond to the arguments in the Response, but only provide an alternate proposed construction that merely paraphrases the claim term. Sur-Reply at 7.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. *First*, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. *Second*, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

*Third*, Defendants' original motivation why this term should be construed—to prevent later "mischief"—is not a reason for the Court to construe this term. The potential for "mischief" at this point in the litigation—prior to fact discovery, prior to final infringement contentions, and prior to expert reports and expert depositions—is, at most, speculative. Furthermore, to the extent there is mischief, the Court believes it is better to handle that through a mini-*Markman*, or a motion for summary judgment or a motion to exclude.

*Fourth*, to the extent Defendants' proposed construction was intended to be limiting, the Court agrees with Plaintiff that Defendants' proposed construction improperly focuses on transmission characteristics only, while ignoring the other types of information. For example, the claims require that the uplink setup information include "a first information to be used for uplink multi-user transmission by the station." '738 Patent, Claim 9, Limitation [b]. As a second example, the claims require that the uplink setup information includes both "common information" and "dedicated information." *Id.*, Claim 9, Limitation [f]. Limiting "uplink setup information" to transmission characteristics only would improperly render parts of the claims to be superfluous.

33

*Fifth*, the Court concludes that Defendants' proposed construction improperly excludes an embodiment. More specifically, the specification describes that an AP "indicat[es] an initiation of uplink multi-user transmission." *Id.* at 4:65–5:3. Therefore, to the extent Defendants' proposed construction was intended to be limiting, because Defendants do not provide "probative evidence to the contrary," Defendants' proposed construction excludes an embodiment. *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification. . . . where claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence to the contrary.").

Therefore, for the reasons described above, the Court finds that "uplink setup information" should be construed according to its plain-and-ordinary meaning.

### G. Term #7: "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations" <br><br> U.S. Patent No. 9,825,738, Claims 6, 14 <br><br> Proposed by Defendants | Plain and ordinary meaning | "wherein the acknowledgement frame includes an information per TID subfield, a block ACK starting sequence control field, and a block ACK bitmap subfield for one or more of the plurality of stations" |

**The Parties' Positions:**

Defendants contend that the patentee acted as his/her own lexicographer in the Abstract. Opening at 14. Defendants contend that the Abstract's recitation of:

34

> An ACK information field for a data unit satisfying a first condition among the plurality of ACK information fields includes a Traffic Identifier (TID) and a block ACK bitmap indicating whether the data unit has been successfully received. An ACK information field for a data unit satisfying a second condition and having been successfully received among the plurality of ACK information fields includes the first TID and does not include a block ACK bitmap.

is a definition and describes what type of information is "satisfactory" to meet the claim scope. *Id.* (quoting '738 Patent at Abstract).

In its response, Plaintiff contends that Defendants' proposed construction replaces the words "acknowledgement information" with "an information per TID subfield, a block ACK starting sequence control field, and a block ACK bitmap subfield." Response at 15. Plaintiff contends that this is improper because it (1) limits the claim scope to a specific embodiment, (2) excludes other embodiments, and (3) "runs contrary to the plain and ordinary meaning of 'acknowledgement information." *Id.* at 15, 17.

With respect to the first problem, Plaintiff contends that Defendants' proposed construction corresponds to the embodiment depicted in Figure 7. *Id.* at 16 (citing 11:34–40, Fig. 7).

35



With respect to the second problem, for the embodiment in Figure 9, Plaintiff contends that it uses "normal ACK" and not "block ACK" as Defendants' proposed construction requires. *Id.* (citing '738 Patent at 12:40–45). Plaintiff further contends that the specification describes that the Block Ack Starting Sequence Control field and Block Ack Bitmap fields are optional while Defendants' proposed construction, by contrast, requires them. *Id.* (citing '738 Patent at 12:59–67). With respect to the embodiment in Figure 17, Plaintiff contends that the specification describes that Block Ack Starting Sequence Control field and Block Ack Bitmap fields are "not included," while Defendants' proposed construction requires them. *Id.* ('739 Patent at 18:20–23). Plaintiff also contends that the specification describes embodiments that do not require a "per TID subfield for a multi-user acknowledgement transmission from an AP," while again Defendants' proposed construction requires them. *Id.* (citing '738 Patent at 4:65–5:28, 5:42–53, 5:54–62, 21:4–8, Figures 22–27). Plaintiff contends that 4:65–5:28 does not mention the TID field, let alone indicate that it is mandatory. *Id.* at 16.

36

With respect to the third problem, Plaintiff contends that Defendants' proposed construction runs "contrary to the plain and ordinary meaning of 'acknowledgment information.'" *Id.* (citing IEEE dictionary). Plaintiff contends that no POSITA would understand that "acknowledgement information" is as narrowly defined as Defendants' proposed construction requires.

In their reply, Defendants contend that if the Court declines to adopt their proposed construction, the Court should construe this term as having a plain-and-ordinary meaning of "wherein the acknowledgement frame includes information used to reply to a message originator that its message was received for one or more of the plurality of stations." Reply at 6.

In its sur-reply, Plaintiff contends that Defendants do not respond to the arguments in the Response, but only provide an alternate proposed construction that is improperly based on extrinsic evidence. Sur-Reply at 7. Plaintiff further contends that the specification does not use the words "message originator." *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, the Court disagrees with Defendants that patentee acted as his own lexicographer. As described above, Defendants cite the Abstract to support that argument. But Defendants do not point to any language in the Abstract—nor did the Court find anything—that signals that the patentee clearly expressed an intent to define this term. *Hill-Rom*, 755 F.3d at 1371 (to act as its own lexicographer,

37

a patentee must "clearly express an intent to redefine the term")). For example, the Abstract did not use the abbreviation "*i.e.*" Furthermore, the alleged "definition" is spread over multiple sentences, which tends to indicate that the Abstract was merely describing one aspect of the claimed invention, rather that clearly expressing an intent to define the term.

Because the Applicant did not act as his own lexicographer and because Defendants do not appear to allege disclaimer, the Court concludes that plain-and-ordinary meaning is the proper construction. *Thorner*, 669 F.3d at 1365.

***Third***, Defendants' proposed construction improperly limits the claim term to one embodiment. More specifically, Defendants' proposed construction appears to correspond to Figure 7. '738 Patent at 11:34–40. But the specification describes Figure 7 as an embodiment. *Id.* at 6:23–25. "Embodiments in the specification—even if there is only one embodiment—cannot limit the scope of the claims absent the patentee's words or expression of manifest exclusion or restriction." *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 860 Fed. App'x 735, 737 (Fed. Cir. 2021) (quotation omitted). Because Defendants have not identified any such words or expression, the Court concludes that Defendants' proposed construction improperly limits the claim scope to a disclosed embodiment.

***Fourth***, Defendants' proposed construction also improperly excludes other embodiments. More specifically, Defendants' proposed construction requires using a "block ACK," but the specification describes that the embodiment depicted in Figure 9 uses a "normal ACK." '738 Patent at 12:40–41 ("The ACK frame is a multi-TID ACK frame and uses a normal ACK not the block ACK as shown in FIG. 9."). Furthermore, Figures 9 and 17 describes that the Block Ack Starting Sequence Control field and Block Ack Bitmap fields are optional and "not included," respectively. '738 Patent at 12:59–67, 18:20–23. In other words, while Defendants' proposed

construction requires that these two fields are required, the specification describes that they are either optional or not included.   Therefore, Defendants' proposed construction excludes the embodiments depicted in Figures 9 and 17.   *Oatey*, 514 F.3d at 1276 ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification. . . . where claims can reasonably be interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence to the contrary.").

Therefore, for the reasons described above, the Court finds that this term should be construed according to its plain-and-ordinary meaning.

### H. Term #8: "a mode that is High Efficiency" / "a mode of a standard previous to a standard defining the High Efficiency mode"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a mode that is High Efficiency" / "a mode of a standard previous to a standard defining the High Efficiency mode"<br><br>U.S. Patent No. 9,848,442, Claims 1, 8<br><br>Proposed by ASUSTeK | "a mode specified as High Efficiency (HE) by an 802.11 Standard or proposed 802.11 Standard" / "a legacy mode specified in a IEEE 802.11 Standard released prior to 802.11ax standard or proposed standard (e.g., a non-HT frame, a HT frame, a VHT frame)" | Indefinite |

**The Parties' Positions:**

ASUSTeK preliminarily contends that "High Efficiency" may have a written description problem as it does not appear in the specification.   Opening at 15.

ASUSTeK contends that while the specification refers to 802.11, nothing in the specification limits the invention to 802.11.   *Id.* at 16 (quoting '442 Patent at 4:18–22 ("The

WLAN device may include a medium access control (MAC) layer and a physical (PHY) layer according to IEEE (Institute of Electrical and Electronics Engineers) 802.11 standard.").

ASUSTeK contends that nothing in the patent provides objective and unchanging standard for determining whether the efficiency is sufficiently "high." *Id.*

ASUSTeK contends that Plaintiff's proposed construction attempts to import limitations from the 802.11 standard, including standards that did not exist. *Id.* ASUSTeK cites several cases for the proposition that a claim term must be interpreted as of the filing date. *Id.* ASUSTeK contends that in the cases it cites, the standard was disclosed in the patents, but in this case, 802.11 was not disclosed. *Id.* at 17.

ASUSTeK finally contends that the examples in Plaintiff's proposed construction are not definitional and would be unhelpful to a jury. *Id.*

In its response, Plaintiff contends that the specification discloses two types of frames: High-Efficiency and legacy. Response at 18. Plaintiff contends that the former is defined by 802.11ax and later standards. *Id.* (quoting '442 Patent at 12:11–16 ("A PHY header (e.g., a preamble) of a frame defined in the IEEE 802.11ax (hereinafter, referred to as '11ax frame' or 'HE frame.'"); *see also* '442 Patent at 12:45–48, 8:6–13). Plaintiff contends that, by contrast, the latter refers to pre-802.11ax standards. *Id.* ('442 Patent at 8:21–28 ("a legacy PPDU (i.e., a PPDU specified by versions earlier than the IEEE 802.11ax)," '442 Provisional at ATLAS-00014123 ("Legacy frame: It indicates all types of frames before 11ax. In other words, non-HT, HT, VHT frame includes in [sic] legacy frame."), ATLAS-00014125). Plaintiff contends that the specification and provisional application provide a list of legacy frames. *Id.* at 18–19 (quoting '442 Patent at 12:19-22). Plaintiff contends that the specification distinguishes between the former

40

and the latter. *Id.* at 19 (quoting '442 Patent at 12:45–48 ("The station may identify the received frame as one of a non-HT frame, a HT frame, a VHT frame, and a HE frame (11ax frame).")).

Plaintiff contends that it added the enumerated examples to aid the jury. *Id.*

Plaintiff contends that a POSITA would understand that High Efficiency/HE refers to a mode that would ultimately become the 802.11ax standard. *Id.* (citing Dkt. No. 60-1 (Shoemake Declaration) at ¶¶ 68–76). Plaintiff contends that 802.11ax was known as the "High Efficiency" WLAN group and that because the inventors participated in that group, they would have understood the contents of the 802.11ax proposal and the meaning of the abbreviation "HE." *Id.*

With respect to ASUSTeK's indefiniteness arguments, Plaintiff first contends that this term is not a term of degree, but rather is a proper noun. *Id.* at 20. Plaintiff further contends that it is not importing an 802.11 limitation into the construction as 802.11ax was a known proposal. *Id.* Plaintiff also contends that none of the cases ASUSTeK cites to found the term to be indefinite. *Id.*

In their reply, ASUSTeK contends that that the specification is not limited to the 802.11 standard. Reply at 6 (quoting 4:18–22 ("The WLAN device may include a [MAC] layer and a [PHY] layer according to IEEE [] 802.11 standard."); 15:29-32 ("various changes, substitutions, and alterations may be made herein without departing from the scope of the disclosure"); 4:7–14 (". . . only certain embodiments of the present disclosure have been shown and described, simply by way of illustration.")). ASUSTeK contends that none of Plaintiff's citations is an express definition for a "***mode*** that is High Efficiency" and that Plaintiff's citations describe an embodiment. *Id.* at 6–7 (emphasis in ASUSTeK's brief).

With respect to Plaintiff's arguments why the claim term is not indefinite, ASUSTeK first contends that "High Efficiency" being a proper noun does not save it from being indefinite because

41

the specification does not define the term and it is not limited to 802.11ax. *Id.* at 7. ASUSTeK further contends that there is not guidance as what is a High Efficiency mode and not High Efficiency mode. *Id.* at 7–8.

In its sur-reply, Plaintiff contends that (1) ASUSTeK or its expert does not "dispute that 'HE' and 'High Efficiency' have a generally understood meaning in the context of 802.11 and Wi-Fi systems" and (2) ASUSTeK does not "contest the specification defines 'HE' as associated with 802.11ax (and 'legacy' as everything before 802.11ax). Sur-Reply at 8.

Plaintiff contends that a claim does not need to cover all embodiments. *Id.* (citing *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1375 (Fed. Cir. 2008)). Plaintiff contends that High Efficiency is a proper noun and every reference to "HE" ties into the 802.11 standard. *Id.* (citing'442 Patent at 12:11–16, 12:45–48, 8:6–13). Plaintiff contends that the specification, likewise, ties "legacy" to the 802.11 standard. *Id.* at 9 (citing '442 Patent at 8:21–28, 12:1–9, 12:45–48). Plaintiff contends that the provisional application also describes that the "carrier sensing in 802.11" as part of the background and problem statement. *Id.*

Plaintiff contends that both the specification and provisional application refer to the 802.11ax standard, which was developed by the High Efficiency WLAN group. *Id.* Plaintiff contends that the inventors were involved with developing the 802.11ax standard and that they would have understood the meaning of "High Efficiency." *Id.* Plaintiff's expert also opines that "High Efficiency" refers to 802.11ax's HE PPDU. *Id.* at 9–10. Plaintiff notes that ASUSTeK's expert never rebutted this point. *Id.* at 10.

Plaintiff finally contends that "High Efficiency" is a proper noun, for the reasons described above, and not a term of degree. *Id.* at 10.

42

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed as plain-and-ordinary meaning wherein the plain-and-ordinary meaning is "a mode specified as High Efficiency (HE) by an 802.11 Standard or proposed 802.11 Standard" or "a legacy mode specified in a IEEE 802.11 Standard released prior to 802.11ax standard or proposed standard."

With respect to whether "High Efficiency" is indefinite, the Court agrees with Plaintiff that this term is not indefinite. More specifically, the Court disagrees with ASUSTeK that "High Efficiency" is a term of degree, rather, it is a proper noun (for the reasons described below) that describes a type of frame in 802.11ax. The Court does not believe that it is importing an 802.11 limitation in order to make this term not indefinite as there does not appear to be any dispute that 802.11ax was a known proposal at the time the patent was filed and thus High Efficiency was a known proper noun. Furthermore, the patentees chose to define the term based on how that term is used in the 802.11ax standard.

With respect to the proper construction for this term, the Court agrees that the patentees acted as their own lexicographer; namely, that the patentees had a clear intent to define the term and they provided a clear definition. *Hill-Rom Servs.* 755 F.3d at 1371 ("To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and must "clearly express an intent to redefine the term."). With respect to intent, the Court concludes that the use of "hereinafter" evinces an intent to define the term. '442 Patent at 12:11–16 ("A PHY header (e.g., a preamble) of a frame defined in the IEEE 802.11ax (hereinafter, referred to as '11ax frame' or 'HE frame.'"). Furthermore, given that there are several references to "High Efficiency" and to "Legacy," that the inventors were part of

43

802.11ax working group, and that 802.11ax was mentioned in the patent, the Court concludes that the patentees had the intent to define "High Efficiency." Furthermore, the consistent capitalization of a term throughout the patent indicates that the term is a proper noun that the patentee defined.

With respect to ASUSTeK's contention that the specification is not limited to the 802.11 standard, the Court disagrees for at least two reasons. *First*, the above analysis explains the reasons why the patentees acted as their own lexicographer. *Second*, the statements that ASUSTeK cites appear to be boilerplate language and thus do not offset the express lexicographical statements described above.

Because the patentees acted as their own lexicographer to define the meaning of "High Efficiency" to have the same meaning as it did in the 802.11ax standard, the Court concludes that this term should be construed according to its plain-and-ordinary meaning in the 802.11ax context, which was known in the art at the time the patent was filed. But to provide the necessary context as to what the plain-and-ordinary meaning, the Court believes it may be helpful for the jury to add the clarification that the plain-and-ordinary meaning is "a mode specified as High Efficiency (HE) by an 802.11 Standard or proposed 802.11 Standard" / "a legacy mode specified in a IEEE 802.11 Standard released prior to 802.11ax standard or proposed standard." Finally, the Court does not believe that the examples provided in Plaintiff's proposed construction would be helpful to include for a jury, so the Court does not include it in its final construction.

Therefore, for the reasons described above, the Court concludes Defendants have not provided clear-and-convincing evidence that a POSITA would not understand, with reasonable certainty, the scope of the claim term. As such, the Court finds that the term is not indefinite and should be construed as plain-and-ordinary meaning wherein the plain-and-ordinary meaning is "a mode specified as High Efficiency (HE) by an 802.11 Standard or proposed 802.11 Standard" / "a

44

legacy mode specified in a IEEE 802.11 Standard released prior to 802.11ax standard or proposed standard."

I. **Term #9: "when . . . a received signal strength of the first PPDU is higher than a first threshold, and the first PPDU is a frame having a mode that is High Efficiency and having a PHY header that includes duration information for setting a virtual carrier sensing . . . when . . . the received signal strength of the first PPDU is higher than the first threshold, the first PPDU is a frame having a mode of a standard previous to a standard defining the High Efficiency mode, and the first PPDU is a frame having a PHY header that does not include duration information for setting the virtual carrier sensing, . . . and "when . . . the received signal strength of the first PPDU is lower than the first threshold . . ."**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "when . . . a received signal strength of the first PPDU is higher than a first threshold, and the first PPDU is a frame having a mode that is High Efficiency and having a PHY header that includes duration information for setting a virtual carrier sensing . . . when . . . the received signal strength of the first PPDU is higher than the first threshold, the first PPDU is a frame having a mode of a standard previous to a standard defining the High Efficiency mode, and the first PPDU is a frame having a PHY header that does not include duration information for setting the virtual carrier sensing, . . . and "when . . . the received signal strength of the first PPDU is lower than the first threshold . . ."<br><br>U.S. Patent No. 9,848,442, Claims 1, 8 | Plain and ordinary meaning | Indefinite.<br><br>If not indefinite, the Court must determine whether only one of the claimed steps with mutually-exclusive conditions, or all three of the claimed steps with mutually-exclusive conditions, are required to occur for purposes of meeting the claim limitations. |

| Proposed by ASUSTeK | | |
| --- | --- | --- |

**The Parties' Positions:**

Claims 1 and 8 are method and apparatus claims, respectively.  Both claims are similar and recite parallel conditions with associated actions, *e.g.*, If A, then X; if B, then Y; if C, then Z.  The parties agree that A/X, B/Y and C/Z are mutually exclusive and cannot all occur at the same time.  Opening at 20; Response at 26–27.

ASUSTeK contends that this term is indefinite because it is unclear when an actor practicing the claims has infringed the patent: (1) when none of the conditions are met, (2) the first time any one of the three conditions is met and the correspondent contingent step is performed, or (3) not until all three conditions have occurred and it has performed all three steps.  Opening at 22.  ASUSTeK contends that, if the Court finds that this claim is definite, the Court "must issue a determination as to whether *all three* contingent steps must actually be performed in order to practice the claim, or if performing only *one of the three* contingent steps (or none, if the conditions are not present) is sufficient to practice the claims."  *Id.* at 22–23, Reply at 12.

In its response, Plaintiff contends that ASUSTeK is attempting to "inject ambiguity into simple, straightforward claims."  Response at 25.  Plaintiff contends that Federal Circuit case law is clear that an accused device must be (1) capable of practicing all three steps to infringe and (2) prior art must disclose all three steps.  *Id.* at 27.  (In addition, in its sur-reply, Plaintiff contends that at least one method step has to be performed.  Sur-Reply at 12.)  With respect to the first condition, Plaintiff cites *Lincoln Nat'l Life Ins. v. Transamerica Life Ins.* as support.  *Id.* (citing 609 F.3d 1364, 1369 (Fed. Cir. 2010)*; see also Interdigital Tech. Corp. v. Lenovo Holding Co.*, 2021 U.S. Dist. LEXIS 88682, at *13–16 (D. Del. May 10, 2021)).  With respect to the second

condition, Plaintiff cites *Hytera Comms. Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, at \*215–16 (Fed. Cir. 2021).

In its reply, ASUSTeK contends that the cases Plaintiff cites only prove that "a system that is not capable of performing those steps when the conditions are met cannot infringe (because it will never perform those steps)." Reply at 10 (discussing *Interdigital Tech. Corp. v. Lenovo Holding Co.*, 2021 U.S. Dist. LEXIS 88682 (D. Del. May 10, 2021) (finding that the defendant's process in *Lincoln* would never perform the contingent claim limitation step if condition (e) were true, and therefore finding no infringement)); *Lincoln*, 609 F.3d at 1367–69 (explaining (1) that Transamerica did not challenge the district court's claim constructions on appeal, and (2) that Transamerica's system could not infringe, notwithstanding the fact that the conditions of claim (e) were never met, because its systems were not programmed to meet the steps of claim (e) if those limitations were met)).

ASUSTeK contends that its proposed construction does not require simultaneous performance of the method steps, but does require that all method steps be performed at some time. *Id.* at 11.

In its sur-reply, Plaintiff contends that ASUSTeK does not cite a single indefiniteness case in its reply and does not cite any expert testimony. Sur-Reply at 12. With respect to *Lincoln*, Plaintiff contends that in that case, the accused product was incapable of performing one of the actions, so the court held that this was insufficient to prove infringement. *Id.*

With respect to invalidity, Plaintiff contends that ASUSTeK makes no effort to distinguish *Hytera*. *Id.* at 13.

47

With respect to apparatus Claim 8, Plaintiff contends that ASUSTeK focuses its entire argument on method Claim 1, but that apparatus and method claims are governed by different law. *Id.* at 13.

**The Court's Analysis:**

With respect to Claim 8, because it is an apparatus claim, none of ASUSTeK's arguments—which are all directed at method claims—apply. Therefore, that claim is not indefinite.

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this Claim 1 is not indefinite. The Court agrees with Plaintiff that the accused device needs to have the capability of to perform all steps, but must actually perform at least one in order for the accused device to infringe. More specifically, a POSITA would understand that the method claim is essentially written as follows:

    if A then X
    else if B then Y
    else if C then Z

Based on that structure, A/X, B/Y and C/Z are mutually exclusive and cannot all occur at the same time. And, as described above, the parties agree that A/X, B/Y, and C/Z are mutually exclusive. Opening at 20; Response at 26–27.

Based on the Circuit's holding *Lincoln*, to infringe, the accused device must be <u>capable</u> of performing all three steps. 609 F.3d at 1370 ("[Plaintiff] was required to prove that [Defendant's] computerized system is configured to make payments regardless of account value, 'even if the account value is exhausted before all payments have been made.'"). The parties do not appear to dispute that the accused device must be capable of performing all three steps.

48

But given that all three steps are mutually exclusive, the Court concludes that only one step must be performed as only one step can be performed at any given time. To conclude otherwise would mean that the claim, as written, would be impossible to infringe. Accordingly, the Court declines to construe a term in such a way. Furthermore, the holding in *Lincoln* does not appear to require that all mutually exclusive method steps must all be performed; rather, it only holds that an accused device must have the capability of performing all method steps (and must practice at least one of the mutually exclusive method steps).

On the other hand, if the accused device does not perform any steps, the claim is not infringed. Allowing a method claim to be infringed when no method steps are performed would effectively convert the claim into an apparatus claim, which is improper. Therefore, at least one conditional method step needs to be practiced for an accused device to infringe.

Therefore, for the reasons described above, the Court concludes Defendants have not provided clear-and-convincing evidence that a POSITA would not understand, with reasonable certainty, the scope of the claim term.

**Construction**: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because ASUSTeK does not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

49

**J. Term #10: "wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length"<br><br>U.S. Patent No. 9,912,513, Claim 1<br><br>"wherein at least a portion of the payload of the uplink frame is associated with the first CP length"<br><br>U.S. Patent No. 9,912,513, Claim 9<br><br>"wherein at least a portion of the legacy header is associated with a second CP length"<br><br>U.S. Patent No. 9,912,513, Claim 10<br><br>"wherein at least a portion of the respective non-legacy header is associated with the first guard interval"<br><br>U.S. Patent No. 9,912,513, Claim 16<br><br>Proposed by Defendants | Plain and ordinary meaning.<br><br>Alternatively, "wherein some or all of the payload of the uplink frame uses the first guard interval length" (Claim 1) / "wherein some or all of the payload of the uplink frame uses the first CP length" (Claim 9) / "wherein some or all of the legacy header uses a second CP length" (Claim 10) / "wherein some or all of the respective non-legacy header uses the first guard interval" (Claim 16) | Indefinite |

**The Parties' Positions:**

Defendants contend that "portion" and "associated with" are both terms of degree and that the claims and specification do not provide any objective meaning and boundary, respectively, for this term. Opening at 23–24. With respect to the latter, Defendants contend that the specification's "only mention of the guard interval in the context of the uplink frame is that the guard interval may be "used" or "utilized" by stations in transmitting the uplink frames." *Id.* at 24 (citing '513 Patent at 12:64–13:3, 13:48–65, 14:47–63, 15:12–20, 16:22–30, 17:28–38). Defendants contend that "Figures 5-8 provide no further definition, depicting the guard interval as being prepended to the uplink frame, but failing to provide any objective guidance on the limits of the 'portion' of the frame that is claimed and how it is 'associated with' the guard interval." *Id.*

Defendants contend that Plaintiff's alternate construction fails because "some or all" fails to provide any objective boundary. *Id.* at 24–25. More specifically, Defendants contend that "a 'portion' of something … cannot include 'all' of it, and 'some' is just as indefinite as the claim term 'portion.'" *Id.* at 25.

In its response, Plaintiff contends that the intrinsic and extrinsic evidence confirms that these claim terms are readily understood according to their plain-and-ordinary meaning. Response at 32. Plaintiff contends that the independent claims, Claims 1 and 9 generally recite:

> [T]wo transmissions: (1) a downlink "trigger frame" sent by an access point to a plurality of stations that, among other things, indicates the guard interval length "to be used" by those stations for a responsive uplink frame; and (2) an "uplink frame" with a header and a payload that is sent by those stations, which actually uses the guard interval length indicated by the downlink frame—"at least [for] a portion of the payload of the uplink frame."

*Id.* at 31. Plaintiff contends that the independent claims describe that "'at least a portion of the payload of the uplink frame' (i.e., some or all of uplink frame's payload) will 'use[]' and therefore be 'associated with the first guard interval length.'" *Id.* Plaintiff contends that dependent Claims

51

10 and 16 "recite similar concepts, but address the guard interval length used by a portion of the legacy or non-legacy "header" (rather than the "payload") of the uplink frame." *Id.*

Plaintiff contends that the specification confirms this understanding. *Id.* More specifically, Plaintiff contends that Figure 8 depicts that "downlink frame 810 may also include information on a guard interval duration GI3 to be utilized by the participating stations." *Id.* at 32 (quoting '513 Patent at 17:17–20). Plaintiff contends that Figure 8 depicts that STA1 and STA2 use the guard interval duration when transmitting uplink frames 830 and 850. *Id.* (citing '513 Patent at 17:34–37). Plaintiff contends that the specification teaches that legacy and non-legacy ("HE") headers may use different guard lengths, which is relevant for dependent Claims 10 and 16. *Id.* at 33 (citing '513 Patent at 10:57–61, 12:12–18, Figure 8).

Finally, Plaintiff contends that dictionary definitions indicate that the claims use the words "portion" and "associate" in the manner consistent with their plain-and-ordinary meanings. *Id.*

With respect to Defendants' indefiniteness arguments, Plaintiff contends that a POSITA would understand that if any part of the UL frame's payload uses the guard interval length indicated by the subsequent DL trigger frame, then "at least a portion of the payload of the uplink frame is associated with the first guard interval length." *Id.* at 3334 (citing Plaintiff's expert declaration at ¶ 99). Plaintiff contends that Defendants' expert does not provide an expert declaration. *Id.* at 34. Plaintiff also contends that Defendants' description of the patent indicate that they implicitly concede the term is not indefinite. *Id.*

Plaintiff next contends that "portion" and "associates with" are not terms of degree, but rather terms with a broad scope. *Id.* Plaintiff contends that even if they are terms of degree, the specification provides objective boundaries. *Id.* at 35. With respect to the former, Plaintiff contends that the claims recite that the "portion" is of the "payload of the uplink frame" for Claims

1 and 9 and "[legacy/non-legacy] header." *Id.* With respect to the latter, Plaintiff contends that that the claimed "association" occurs when "a portion of the uplink frame uses a guard interval length." *Id.*

Finally, with respect to Defendants' arguments against Plaintiff's alternate construction, Plaintiff contends that Defendants' argument ignores the claim language, which recites "at least a portion," and is "met when a portion (*i.e.*, some) or more than a portion (*i.e.*, all) of the uplink frame uses the specified guard interval length." *Id.* at 35–36.

In its reply, Defendants contend that Plaintiff's "long winded" explanation in its response is an effort to rewrite the claims. Reply at 12. Defendants contend that specification—in particular, Figure 8—"does not convey to the POSA *how* there is an association between the guard interval and the payload of the uplink frame, let alone *what* the relevant 'portion' of the uplink frame might be." *Id.* (emphasis in original).

In its sur-reply, Plaintiff contends that that the claims, specification, prosecution history, and extrinsic evidence support Plaintiff's position that the term is not indefinite. Sur-Reply at 14–15. With respect to Defendants argument that Plaintiff is rewriting the claims, Plaintiff contends that a "plain-and-ordinary meaning" construction does not rewrite the claims. *Id.* at 15.

With respect to Defendants' argument that the specification and Figure 8 " provides no insight," Plaintiff contends that the specification describes that " (1) the claimed 'portion' includes the uplink payload symbols that are preceded by the guard interval GI3 … and (2) the claimed "association" comes from the fact that those symbols use the same guard interval GI3 indicated by the prior downlink frame. In view of the above, persons of ordinary skill understand these terms with reasonable certainty." *Id.* at 16 (citing Shoemake Declaration at 32, 35).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed according to its plain-and-ordinary meaning for the reasons that follow. *First*, "portion" and "associated with" are common English words that both a POSITA and lay jury would understand. Even if these terms are terms of degree, because the plain meanings of both words are so well understood and are not technical words, the Court concludes that a POSITA would understand with at least reasonable certainty the scope of the claim.

*Second*, the claims use these terms according to their plain-and-ordinary meaning. For example, Claims 1 and 9 of the '513 Patent describe that "at least a portion of the payload of the uplink frame" (*i.e.*, some or all of uplink frame's payload) will <u>use</u> and therefore be "associated with the first guard interval length." (emphasis added). Dependent Claims 10 and 16 recite similar concepts, but address the guard interval length (instead than the "payload") of the uplink frame.

*Third*, the specification—specifically Figure 8—confirms this understanding. Figure 8 depicts that "downlink frame 810 may also include information may also include information on a guard interval duration GI3 to be utilized by the participating stations." '513 Patent at 17:17–20. Figure 8 depicts that STA1 and STA2 use the guard interval duration GI3 when transmitting uplink frames 830 and 850. *Id.* at 17:34–37. Plaintiff contends that the specification teaches that legacy and non-legacy ("HE") headers may use different guard lengths, which is relevant for dependent Claims 10 and 16. *Id.* at 10:57–61, 12:12–18, Figure 8.

*Fourth*, the dictionary definitions that Plaintiff provides shows that the claims use the words "portion" and "associate" in the manner consistent with their plain-and-ordinary meanings.

54

*Fifth*, with respect to Defendants' argument that "function" is broad an essentially unbounded, the Court disagrees. As described above, "function" has a well-understood meaning and Defendants have not shown that it is not well-understood or unbounded. Furthermore, "function" is, at most, a broad term, but a claim term is not indefinite simply because it is broad. *BASF*, 875 F.3d at 1367 ("Breadth is not indefiniteness."). Furthermore, the fact that Defendants provide an alternate construction shows that even Defendants believe that the term has a definite scope.

Therefore, for the reasons described above, the Court concludes Defendants have not provided clear-and-convincing evidence that a POSITA would not understand, with reasonable certainty, the scope of the claim term.

*Construction*: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Defendants do not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

### K. Term #11: "based on the resources for the UL MU transmission"

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "based on the resources for the UL MU transmission" | Plain and ordinary meaning | Indefinite |

| U.S. Patent No. 9,912,513, Claim 15 Proposed by Defendants | | |
|---|---|---|

**The Parties' Positions:**

Defendants contend that this term is indefinite because a POSITA would not have been reasonably certain "as to whether the processing of the uplink frame, or the uplink frame itself, are required to be 'based on the resources for the UL MU transmission.'" Opening at 25. Defendants contend that the claims and specification do not provide any guidance as neither "refer to 'processing an uplink frame' *based on* the resources for the UL MU transmission." *Id.* at 25–26. More specifically, Defendants contend that none of the claims apart from Claim 15 discloses "processing an uplink frame … based on the resources for the UL MU transmission." *Id.* at 25. Defendants contend that the specification only teaches "inclusion of 'resource allocation for each STA' as part of the trigger frame (i.e., 'downlink frame') transmitted to the STA(s) and that '[e]ach of the participating STAs may send its respective UL frame in its assigned resource'" *Id.* (quoting '513 Patent at 2:54–56, 3:3–5).

In its response, Plaintiff contends that Defendants never alleged that this entire term was indefinite in their invalidity contentions and offer no expert support. Response at 36. Plaintiff contends that even if there are two interpretations for the term, the term is not necessarily indefinite. *Id.* (quoting *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022)). Plaintiff contends that the intrinsic evidence and grammar indicate that the correct construction is that the uplink frame itself is "based on the resources for the UL MU transmission." *Id.* at 36–37.

Plaintiff contends that the claim language describes that the access point creates a trigger frame that allocates resources for the UL MU transmission. *Id.* at 37 (citing '513 Patent, Claim 15, Limitation [b]). Plaintiff contends that the specification describes resources as "bandwidth, time/duration that the STAs expect to occupy a transmission medium, and/or possibly a number of spatial streams that the STAs may use." *Id.* (quoting '513 Patent at 2:58–61). Plaintiff contends that the specification describes resource allocation as "sub-band assigned to a respective one of the participating stations as well as scheduling information regarding when a respective one of the participating stations may transmit using its assigned sub-band." *Id.* (quoting '513 Patent at 11:56–60). Plaintiff contends that "by allocating resources, the trigger frame effectively instructs the stations how and when to send the UL MU transmission to the access point." *Id.*

Plaintiff contends that the specification explains that "when the stations receive the trigger frame, they responsively create and then send the UL MU transmission to the access point." *Id.* at 37–38 (citing '513 Patent at 2:67–3:5, 17:23–42, Fig. 8). Plaintiff contends that "the intrinsic evidence shows the uplink frame itself is based on the resources allocated by the trigger frame." *Id.* at 38.

Plaintiff contends that Defendants' other interpretation (the "processing" is based on resources for the UL MU transmission) makes less sense as the "access point processes the UL frames that it receives based on its programming (which adheres to the 802.11ax standard)." *Id.* (citing '513 Patent at 7:1–20, 8:12–53, Figs. 2 & 3B). Plaintiff also contends that the rules of grammar indicate that "based on the resources for the UL MU transmission" is closer to "uplink frame" than "processing," such that the former is what is based on the resources. *Id.* at 37.

In their reply, Defendants essentially contend that that both interpretations are possible and thus a POSITA would not understand with reasonable certainty the scope of this claim term. Reply

57

at 15–16.  Defendants contend that Plaintiff argument that the access point's programming "adheres to the 802.11ax standard" improperly relies on infringement evidence to support its claim construction position.  *Id.* at 16.  Defendants contend that the grammar cuts the other way because the phrase could be interpreted as the "processing an uplink frame" is "based on the resources for the UL MU transmission."  *Id.* at 17.  Defendants contend that under Plaintiff's interpretation, "processing" means nothing.  *Id.*

In its sur-reply, Plaintiff contends that the "claim itself recites that resources are allocated by the trigger frame 'for the UL [uplink] MU [multi-user] transmission' and the specification describes that "a station receives a trigger frame and creates and sends an uplink multi-user transmission, which includes the claimed "uplink frame comprising a plurality of frames from the set of stations."  Sur-Reply at 17.  Based on that, Plaintiff contends that "it is the 'uplink frame' itself that is 'based on the resources for the UL MU transmission.'"  *Id.*

With respect to Defendants' argument that Plaintiff improperly relies on infringement evidence (802.11ax) standard), Plaintiff contends that patent is a standard essential patent, so it is "no surprise" that the standard might inform the meaning of the patent.  *Id.*

Plaintiff again contends that even if both interpretations are plausible, that does not necessarily mean that the term is indefinite.  *Id.* at 18.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed according to its plain-and-ordinary meaning for the reasons that follow.  ***First***, the Court agrees with Plaintiff that even if there are two interpretations for this claim term, that does not necessarily make it indefinite.

*ClearOne*, 35 F.4th 1351 ("Just because a term is susceptible to more than one meaning does not render it indefinite. ").

**Second**, the grammar of the claim indicates that the correct interpretation is that the uplink frame is "based on the resources for the UL MU transmission." More specifically, "based on the resources for the UL MU transmission" is closer to "uplink frame" than "processing," which indicates that the former is what is based on the resources. Furthermore, Limitation [d] in Claim 15 recites "processing an uplink frame comprising a plurality of frames from the set of stations based on the resources for the UL MU transmission." This limitation describes that "processing an uplink frame" includes what follows "comprising." Therefore, a more natural reading is that everything after "comprising" provides further detail on what precedes "comprising." Given that, Defendants' alleged alternate construction is an unnatural understanding of the relationship of the phrase that follows "comprising" with the phrase that precedes "comprising."

**Third**, the Court agrees with Plaintiff that the claim language also indicates that the correct construction is that the uplink frame itself is "based on the resources for the UL MU transmission." More specifically, Claim 15 recites that the access point creates a trigger frame that allocates resources for the UL MU transmission. '513 Patent, Claim 15, Limitation [b]. The specification describes resources as "bandwidth, time/duration that the STAs expect to occupy a transmission medium, and/or possibly a number of spatial streams that the STAs may use." *Id.* at 2:58–61. The specification further describes resource allocation as "sub-band assigned to a respective one of the participating stations as well as scheduling information regarding when a respective one of the participating stations may transmit using its assigned sub-band." *Id.* at 11:56–60. Putting these passages together, the Court concludes that a POSITA would understand that Claim 15 recites that by allocating resources, the trigger frame effectively instructs the stations how and when to send

59

the UL MU transmission to the access point. This understanding supports that the uplink frame itself—and not the processing of the uplink frame—is "based on the resources for the UL MU transmission."

*Fourth*, the specification explains that "when the stations receive the trigger frame, they responsively create and then send the UL MU transmission to the access point." *Id.* at 2:67–3:5, 17:23–42, Figure 8. This passage indicates that the uplink frame itself is based on the resources allocated by the trigger frame.

*Fifth*, Defendants' other interpretation (the "processing" is based on resources for the UL MU transmission), makes less sense as the specification describes that access point processes the UL frames that it receives based on its programming, which complies with the 802.11ax standard. *Id.* at 7:1–20, 8:12–53, Figures 2, 3B.

Therefore, for the reasons described above, the Court concludes Defendants have not provided clear-and-convincing evidence that a POSITA would not understand, with reasonable certainty, the scope of the claim term.

*Construction*: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Defendants do not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

**L. Term #12: "in response to determining that the number of the one or more station information fields in the NDPA is one" / "when a number of the one or more station information fields in the NDPA is one" / "when the number of the one or more station information fields in the NDPA is greater than one"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "in response to determining that the number of the one or more station information fields in the NDPA is one" / "when a number of the one or more station information fields in the NDPA is one" / "when the number of the one or more station information fields in the NDPA is greater than one" U.S. Patent No. 10,020,919, Claims 1, 2, 8, 11, 12, 19 Proposed by Defendants | Plain and ordinary meaning | Claims 1, 11: plain meaning: there is one station information field in the NDPA Claims 2, 8, 12, and 19 are indefinite. |

**The Parties' Positions:**

Defendants contend that the dependent claims, Claims 2, 8, 12, and 19, are indefinite because they recite an impossibility. Opening at 26. More specifically, Defendants contend that Claims 1 and 11 both "require that the number of station information fields in the NDPA be **exactly one**, otherwise, the first CSI feedback is not transmitted/received and, as a result, the method is not practiced." *Id.* (emphasis in Defendants' brief). Defendants contend that the dependent claims, by contrast, requires that the number of station information fields in the NDPA be **greater than one**. *Id.* at 26–27. Based on those premises, Defendants contend that the dependent claims are indefinite because they require an impossibility; namely, that the number of station information fields in the NDPA be both equal to one (to satisfy the claim language in the independent claims)

61

and greater than one (to satisfy the claim language in the dependent claims). *Id.* at 27 (citing

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1366 (Fed. Cir. 2021); *Trustees of*

*Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1367 (Fed. Cir. 2016)).

Defendants contend that this argument is reinforced by the fact that the dependent claim is

broader than the independent claim. *Id.* at 27–28.

In its response, Plaintiff contends that Figures 8A and 8B depict the difference between the

independent and dependent claims, respectively. Response at 40.



Plaintiff contends that in both Figures 8A and 8B, the access point (AP) sends NPDA

804A/804B followed by NDP 806. *Id.* Plaintiff contends that in Figure 8A depicts that STA1

sends CSI feedback 810 after a standoff period. *Id.* (citing '919 Patent at 18:63–19:10). Plaintiff contends that, by contrast, Figure 8B depicts that STA1, STA2, and STA3 only sends CSI feedback 812A, 812B, and 812C after AP sends MU Trigger 808 and after a standoff period. *Id.* (citing '919 Patent at 19:11–32). Plaintiff contends that the difference in the two figures is based on the number of per-station information fields in the NDPA frame. *Id.* at 40–41. Plaintiff contends that when the NPDA indicates that there is only one station (*i.e.*, one station information field), the only station uses the procedure in depicted in Figure 8A, but when the NPDA indicates that there is more than one station (*i.e.*, more than one station information field), the stations uses the procedure in depicted in Figure 8B. *Id.* at 41 (citing '919 Patent at 18:63-19:3, 19:16–32).

Plaintiff contends that Defendants incorrectly argue that Claims 1 and 11 recite a mandatory method step, *i.e.*, namely that there is only one station information field and thus only one station, which means that the station operates according to Figure 8A (the station sends CSI feedback 810 without waiting for MU Trigger 808). *Id.* at 41.

With respect to Defendants' argument that the dependent claims are broader than the independent claims, Plaintiff contends that Defendants' argument is incorrect because it interprets Claims 1 and 11 as being limited to only one station (*i.e.*, number of per-station information fields is one) when Claims 1 and 11 recite a condition, *i.e.*, determine if there is one station and if so, transmit CSI feedback. *Id.* at 42. Plaintiff contends that because Claims 1 and 11 recite a conditional limitation, which may or may not be true, the independent claims are broader than the dependent claims (*i.e.*, the condition essentially ascertains whether Figure 8A or 8B applies, while the dependent claims are limited to Figure 8B). *Id.*

In its reply, Defendants contend that Claims 1 and 11 "require a determination that the number of station fields in the NPDA is one, and that in response Channel State Information

63

Feedback is transmitted" Reply at 17. Defendants contend that Plaintiff is trying to ignore the "one or more" language to the claims; namely, that Plaintiff is "cross out" Limitation [d] ("in response to determining that the number of the one or more station information fields in the NDPA is one, transmitting first Channel State Information (CSI) feedback in response to receiving the NDP"). *Id.* at 18, 20–21.

Defendants contend that they are not arguing that condition claims are *per se* invalid, but that all steps of a method claim must be performed, even a conditional one. *Id.* at 19. Defendants contend that because it is impossible to perform the method steps when associated when the number of station fields in the NDPA is one (Claims 1 and 11) and when it is greater than one (dependent claims), the dependent claims are invalid as being indefinite. *Id.* at 19–20.

Defendants contend that Plaintiff does not address the cases cited in their Opening brief. *Id.* at 20.

In its sur-reply, Plaintiff contends that Defendants' cases are non-patent cases and/or cases that say nothing about contingent claims. Sur-Reply at 18–19. Plaintiff contends that Defendants ignore the claim language by interpreting the independent claims as being limited to only one station. *Id.* at 19. Plaintiff contends that Defendants also ignore the specification as their reply brief does not cite a single line from the '919 specification. *Id.*

Plaintiff contends that Defendants' argument that the dependent claims are nonsensical is due to Defendants' incorrect interpretation of Claims 1 and 11 being limited to a single station and not that the language of those claims recites a conditional step that determines whether there is a single station. *Id.* at 20.

With respect to Claim 11, Plaintiff contends that Defendants improperly conflate the language of that claim with that of Claim 1. *Id.* at 20. More specifically, Plaintiff contends that

64

Defendants' "analysis is inapplicable to Claim 11" as that claim recites "*when* a number of the one or more station information fields in the NDPA is one." *Id.* (emphasis in Plaintiff's brief).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term is not indefinite and should be construed according to its plain-and-ordinary meaning.

Claims 1 and 2 are representative of the dispute and both claims provide:

1. A method performed by a wireless device, the method comprising:
   receiving a Null Data Packet Announcement (NDPA), the NDPA including one or more station information fields;
   determining exactly a number of the one or more station information fields in the NDPA;
   receiving a Null Data Packet (NDP); and
   in response to determining that the number of the one or more station information fields in the NDPA is one, transmitting first Channel State Information (CSI) feedback in response to receiving the NDP,
   wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA.
2. The method of claim 1, further comprising:
   when the number of the one or more station information fields in the NDPA is greater than one:
   receiving a first trigger frame; and
   transmitting the first CSI feedback in response to receiving the first trigger frame.

'919 Patent, Claims 1–2. Claim 1, Limitation [d] recites a condition ("determining that the number of the one or more station information fields in the NDPA is one") that, if true, describes a method step "transmitting first Channel State Information (CSI) feedback in response to receiving the NDP" that will be performed "in response." If the condition is not true, then the claimed device will <u>not</u> transmit the first transmit first CSI feedback in response to receiving the NDP.

Claim 2 recites a similar limitation; namely, it recites a condition ("when the number of the one or more station information fields in the NDPA is greater than one") that, if true, describes

65

two method steps to perform ("receiving a first trigger frame; and transmitting the first CSI feedback in response to receiving the first trigger frame").  If the condition is not true, then the claimed device will <u>not</u> transmit the first CSI feedback in response to receiving the first trigger frame.

Based on this description of these two limitations, the pseudo-code version of the interaction of these two limitations is as follows:

| Line | Lim | Code |
|---|---|---|
| 1 | 1[d] | if (number of the one or more station information fields in NDPA == 1) then |
| 2 | 1[d] | transmit first CSI feedback in response to receiving the NDP |
| 3 | 1[d] | else |
| 4 | 1[d] | do not transmit first CSI feedback in response to receiving the NDP |
| 5 | 1[d] | |
| 6 | 2 | if (number of the one or more station information fields in NDPA > 1) then |
| 7 | 2 | transmit the first CSI feedback in response to receiving the first trigger frame |
| 8 | 2 | else |
| 9 | 2 | do not transmit the first CSI feedback in response to receiving the first trigger frame |
| 10 | 2 | end if |
| 11 | 1[d] | end if |

Based on the above description and the exemplary pseudo-code, it is obvious that it is impossible for both "if" statements (lines 1 and 6) to evaluate as true.  Therefore, Claim 2 is not nonsensical as it does not recite an impossible situation (*i.e.*, the number of the one or more station information fields in NDPA needs to be equal to both one and greater than one).

And like Term #9, the performance of the method step in line 2 by an accused device is not required in order for the claim to be infringed; the accused device only needs to be capable of performing that claim.  Defendants' contention that the accused device must perform the method step in line 2 in order for the claim to be infringed effectively reads out the condition.

In the alternative, with respect to the "do not transmit" actions in lines 4 and 9, this action is "performed" by implication when the if statements in lines 1 and 6, respectively, evaluate to be

66

false. Therefore, when the number of the one or more station information fields in NDPA is greater than one, a POSITA would understand that the method step in Limitation 1[d] is "performed" by not transmitting anything.

Therefore, for the reasons described above, the Court concludes Defendants have not provided clear-and-convincing evidence that a POSITA would not understand, with reasonable certainty, the scope of the Claims 2, 8, 12, and 19.

*Construction*: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Defendants do not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

Therefore, for the reasons described above, the Court finds that dependent Claims 2, 8, 12, and 19 are not indefinite and that independent Claims 1 and 11 and dependent Claims 2, 8, 12, and 19 should be construed according to its plain-and-ordinary meaning.

**M. Term #13: "wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station | Plain and ordinary meaning<br><br>Alternatively, "wherein the number of the one or more station information fields in the NDPA is the number of | Plain meaning: wherein the number of the one or more station information fields in the NDPA is the number of the one or more station information fields in the |

| information fields in the NDPA"  U.S. Patent No. 10,020,919, Claims 1, 11  Proposed by Defendants | elements in the set of station information fields" | NDPA.  This renders the claim indefinite. |
| --- | --- | --- |

**The Parties' Positions:**

The dispute is the same as it was for Term #13; namely, are Claims 1 and 11 limited to one station (*i.e.*, the number of the one or more station information fields is equal to one).  The parties generally rely on their arguments for Term #13, but make the following new arguments.

In their reply, Defendants contend that Applicant amended the claims to add in the cardinality requirement in order to overcome a rejection to the Stephenson reference.  Reply at 22 (citing Reply, Ex. 10 ('919 Prosecution History) at 160).

In their sur-reply, Plaintiff contends that Defendants' argument is "premised entirely on its position that the NDPA contains only one station information field. As explained for the limitation above, this argument should be rejected."  Sur-Reply at 21.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the same reasons as the Court provided for Term #12.

**N.  Term #14: "scheduling extension"**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |

| #15: "scheduling extension" | Plain and ordinary meaning | A subfield appended to the HT control field that includes scheduling information for the uplink multi-user response |
|---|---|---|
| U.S. Patent No. 10,756,851, Claims 1, 2, 7, 8 | Alternatively, "an extension to the control field that includes scheduling information" | |
| Proposed by Defendants | | |

**The Parties' Positions:**

Defendants contend that this term has no plain-and-ordinary meaning as it does not appear in the specification, but only in the claims. Opening at 29. Defendants contend that the claims describe that (1) "the scheduling extension is associated with the control field ('the control field includes the scheduling extension')[,]" (2) the scheduling extension includes 'scheduling information' ('the scheduling information included in the scheduling extension')[,]" and (3) "'scheduling information' is what the multi-user uplink response is based upon ('multi-user uplink transmission … based on the scheduling information included in the scheduling extension')." *Id.*

Defendants contend that while the specification does not specifically use the words "scheduling extension," it discuses a "HE Control Extension" ("HECE") which is depicted in Figure 13. *Id.* Defendants contend that the HECE field may or may be present. *Id.* Defendants contend that HECE sub-field 1320, when present, is appended to the end of the HT Control Field. *Id.* at 29–30.



FIG. 13

Defendants contend that Plaintiff's dictionary definitions define "extension" as "a part that is added to something to enlarge or prolong it." *Id.* at 30 (citing ATLAS-00033174).

In its response, Plaintiff contends that the fact that a term does not appear in the specification is a "non-sequitur" as a specification can describe a claim term without using identical words. Response at 44 (quoting *Novartis Pharm. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1023 (Fed. Cir. 2022) (the specification "need not describe a limitation in *haec verba*")).

Plaintiff contends that Defendants' proposed construction is wrong as it is both narrower and broader than the plain-and-ordinary meaning. *Id.* Plaintiff contends that Defendants' proposed construction is unduly narrow because it attempts to limit the term to the "HT Control Field" instead of the "control field" as recited in the claims. *Id.* (citing '851 Patent at 30:11–12, 30:16–18). Plaintiff contends that this aspect of Defendants' proposed construction improperly imports a limitation from the specification. *Id.* Plaintiff contends that Defendants' proposed

70

construction is also unduly narrow because it requires the "scheduling extension" must be added to the end of the HT Control Field when there is no indication in the intrinsic record that the "scheduling extension" must be at the end. *Id.* at 44–45. Plaintiff contends that Defendants' proposed construction is overbroad because it requires that the "scheduling extension" is always present when the specification describes that the HECE may or may not be present. *Id.* at 45.

Plaintiff finally contends that Defendants' proposed construction is "incorrect" because it adds the phrase "the uplink multi-user response," which does not appear in the claims. *Id.* Plaintiff contends that that this "creates ambiguity and potential antecedent basis problems." *Id.*

In their reply, Defendants contend that Plaintiff has not provided evidence that this term has a plain-and-ordinary meaning to a POSITA and has not explained what the plain-and-ordinary meaning is. Reply at 22. Defendants' expert opines that this term does not have an established meaning. *Id.* at 22–23.

With respect to Plaintiff's argument that the "specification can describe a claim term without using identical words[,]" Defendants contend that the only place that the specification discusses this term is in reference to Figure 13. *Id.* at 23.

Defendants contend that the patentee made a disclaimer during prosecution that limited the claim scope. *Id.* at 23-24. Defendants contend that Applicant describes the "scheduling extension" in reference to Figure 13. *Id.* at 24. Defendants further contend that Examiner allowed the claims based on amendments reciting a "scheduling extension. *Id.*

With respect to Plaintiff's argument that Defendants' proposed construction is too narrow, Defendants contend that "appended" is consistent with the specification and provides clarity. *Id.* at 24. Furthermore, Defendants contend that there is no plain meaning for this term and the specification only describes appending with respect to the "HT Control Field." *Id.* at 25. With

71

respect to Plaintiff's argument that Defendants' proposed construction is too broad, Defendants contend that the "subfield" in their proposed construction exists only when the "scheduling extension" is present. *Id.*

Finally, Defendants contend that "uplink multi-user response" provides "useful context" for the jury. *Id.*

In its sur-reply, Plaintiff contends that Defendants alleged prosecution history disclaimer for the first time in their reply. Sur-Reply at 21–22. Plaintiff contends that the failure to raise this in their opening brief indicate that the disclaimer is not "clear and unmistakable." *Id.* at 22 (citing *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022)). Plaintiff contends that Defendants' alleged disclaimer is not actually a disclaimer as the paragraph from which Defendants cite to expressly recites "By way of illustration, but not limiting the scope of the claims…" and uses "e.g" to denote examples. *Id.* at 22 (quoting '851 File History at 133). Plaintiff contends that these facts shows that this statement is not an unmistakable disclaimer. *Id.*

Plaintiff contends that even if those prosecution statements were a disclaimer, Defendants' proposed construction improperly further narrows the disclaimer. *Id.* at 23. More specifically, Plaintiff contends that that the words "appended," "HT control field," and "uplink multi-user response" do not appear in the prosecution statement. *Id.* On the other hand, Plaintiff contends that the prosecution statement expressly recites that the "scheduling extension" may or may not be present. *Id.* at 24. Plaintiff contends that its expert confirms a POSITA would not understand that the aforementioned aspects of Defendants' proposed construction are part of the plain-and-ordinary meaning. *Id.* at 25.

Plaintiff contends that because there is no disclaimer, the term should be construed according to its plain-and-ordinary meaning. *Id.* at 24. Plaintiff further contends that "[a] term

72

does not need to be 'common' or used 'in the field' to have a plain and ordinary meaning. The legal definition of plain and ordinary meaning is: 'the meaning one of ordinary skill in the art would ascribe to a term when read in the context of the claim, specification, and prosecution history." *Id.* at 24 (*Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022)).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347.

***Second***, the Court disagrees with Defendants that Applicant made a disclaimer during prosecution. Defendants raised this argument for the first time in their reply brief. As such, it is waived. *United States v. Jackson*, 426 F.3d 301, 304 n. 2 (5th Cir. 2005) ( "Arguments raised for the first time in a reply brief, even by pro se litigants ... are waived."). Furthermore, Defendants failure to raise their prosecution disclaimer argument in its opening brief tends to indicate that even Defendants did not believe that Applicant's statements rise to the level of being "clear and unmistakable," which is necessary to support a finding of a prosecution disclaimer. *Liebel-Flarsheim*, 358 F.3d at 900.

Even if Defendants' made this argument in a timely manner, the statements Defendants point do not rise to the level of being "clear and unmistakable." More specifically, Defendants cite the following passage in support of their disclaimer argument:

> By way of illustration, but not limiting the scope of the claims, FIG. 13 and [0170]-[0173] describe a control field (e.g., 1300) that includes a control extension indication (e.g., 1311). The control field (e.g., 1300) includes a scheduling extension that corresponds to a control extension subfield (e.g., 1320). Paragraph

73

[0204] states, "When the HECEI field 1311 in the HT Control Middle is set to 1, then the HECE sub-field exists, otherwise the HECE sub-field does not exist."

Reply, Ex. 11 at 133.  Rather than being a disclaimer, the description in this passage merely describes examples, which is made clear by the passage's use of language such as "[b]y way of illustration, but not limiting the scope of the claims" and "e.g."  Based on that, the Court concludes that Applicant did not make a prosecution disclaimer.  *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) ("For a statement during prosecution to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'").

Because the Applicant did not make a disclaimer and because Defendants do not appear to allege lexicography, the Court concludes that plain-and-ordinary meaning is the proper construction.  *Thorner*, 669 F.3d at 1365.

***Third***, Defendants' proposed construction narrows the claim language by requiring that the scheduling extension be appended to the end.  More specifically, Defendants' proposed construction recites "[a] subfield appended to the HT control field," but the claims only recite that the "control field includes a scheduling extension."  '583 Patent, Claim 1, Limitation [e].  In other words, the claims are not limited to a HT control field.  As such, Defendants' proposed construction narrows the claim.  Relatedly, Claim 1, Limitations [e] and [f] each recite that the "control field includes a scheduling extension."  *Id.*, Claim 1, Limitations [e], [f].  While "appending" an extension to the end of the control field falls within the meaning of "includes," "append" is not coextensive with "includes."  As such, Defendants' proposed construction again narrows the claim.  Similarly Defendants requires that the scheduling extension includes scheduling information for the uplink multi-user response, but the claims do not recite that requirement.  Rather, the claims only recite "generating a second frame for a multi-user uplink

74

transmission … based on the scheduling information included in the scheduling extension[.]" *Id.*, Claim 1, Limitation [g]. Because "based on" is broader than "includes," Defendants' proposed construction again narrows the claim.

**Fourth**, Defendants' proposed construction is based on Figure 13, but the specification describes that as an exemplary embodiment. *Id.* at 2:9–10 ("FIG. 13 illustrates an example of a control field of a data frame."). As such, Defendants' proposed construction improperly limits the claim term to an embodiment. *Liebel-Flarsheim*, 358 F.3d at 913.

However, to aid the jury in understanding what the plain-and-ordinary meaning of this term is, the Court adds a clarifying phrase to its construction; namely, the Court adds "wherein the plain-and-ordinary meaning is 'an extension to the control field that includes scheduling information.'"

Therefore, for the reasons described above, the Court finds that "scheduling" should be construed as plain-and-ordinary meaning wherein the plain-and-ordinary meaning is an extension to the control field that includes scheduling information."

## IV.    CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below constructions as its final constructions.

**SIGNED** this 2nd day of December, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #1: "the downlink multi-user frame including a plurality of resource units (RUs)"<br><br>U.S. Patent No. 9,531,520, Claim 1<br><br>Proposed by Sercomm | Plain and ordinary meaning<br><br>Alternatively, "the downlink multi-user frame including a plurality of particular units of spatial streams and/or subchannels of a wireless channel" | Indefinite | Not indefinite. Plain-and-ordinary meaning. |
| #2: "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs" / "wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame"<br><br>U.S. Patent No. 9,531,520, Claims 1, 9<br><br>Proposed by Sercomm | Plain and ordinary meaning | Indefinite | Not indefinite. Plain-and-ordinary meaning. |

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #3: "network device"<br><br>U.S. Patent No. 9,531,520, Claims 1, 6<br><br>Proposed by Sercomm | Plain and ordinary meaning | "an access point that may communicate with STAs over a network" | Plain-and-ordinary meaning. |
| #4: "wherein the NDPA frame indicates information corresponding to the predetermined length"<br><br>U.S. Patent No. 9,763,259, Claim 6<br><br>Proposed by Defendants | Plain and ordinary meaning | Indefinite | Not indefinite. Plain-and-ordinary meaning. |

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #5: "wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames" / "wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations"<br><br>U.S. Patent No. 9,825,738, Claims 1, 9<br><br>Proposed by Defendants | Plain and ordinary meaning<br><br>Alternatively, "wherein the second information in the common information portion is a value that is related to the total number of space time streams to be used to simultaneously transmit the multiple uplink frames. | Indefinite | Not indefinite. Plain-and-ordinary meaning. |
| #6: "uplink setup information"<br><br>U.S. Patent No. 9,825,738, Claims 1, 7, 9, 15<br><br>Proposed by Defendants | Plain and ordinary meaning | "information on the transmission characteristics to be used for a subsequent uplink transmission" | Plain-and-ordinary meaning. |

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #7: "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations"<br><br>U.S. Patent No. 9,825,738, Claims 6, 14<br><br>Proposed by Defendants | Plain and ordinary meaning | "wherein the acknowledgement frame includes an information per TID subfield, a block ACK starting sequence control field, and a block ACK bitmap subfield for one or more of the plurality of stations" | Plain-and-ordinary meaning. |
| #8: "a mode that is High Efficiency" / "a mode of a standard previous to a standard defining the High Efficiency mode"<br><br>U.S. Patent No. 9,848,442, Claims 1, 8<br><br>Proposed by ASUSTeK | "a mode specified as High Efficiency (HE) by an 802.11 Standard or proposed 802.11 Standard" / "a legacy mode specified in a IEEE 802.11 Standard released prior to 802.11ax standard or proposed standard (e.g., a non-HT frame, a HT frame, a VHT frame)" | Indefinite | Not indefinite. Plain-and-ordinary meaning wherein the plain-and-ordinary meaning is "a mode specified as High Efficiency (HE) by an 802.11 Standard or proposed 802.11 Standard" / "a legacy mode specified in a IEEE 802.11 Standard released prior to 802.11ax standard or proposed standard" |

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #9: "when . . . a received signal strength of the first PPDU is higher than a first threshold, and the first PPDU is a frame having a mode that is High Efficiency and having a PHY header that includes duration information for setting a virtual carrier sensing . . . when . . . the received signal strength of the first PPDU is higher than the first threshold, the first PPDU is a frame having a mode of a standard previous to a standard defining the High Efficiency mode, and the first PPDU is a frame having a PHY header that does not include duration information for setting the virtual carrier sensing, . . . and "when . . . the received signal strength of the first PPDU is lower than the first threshold . . ." <br><br> U.S. Patent No. 9,848,442, Claims 1, 8 <br><br> Proposed by ASUSTeK | Plain and ordinary meaning | Indefinite. <br><br> If not indefinite, the Court must determine whether only one of the claimed steps with mutually-exclusive conditions, or all three of the claimed steps with mutually-exclusive conditions, are required to occur for purposes of meeting the claim limitations. | Claim 1: Not indefinite. Plain-and-ordinary meaning.[1] <br><br> [1] – To infringe the claim, the accused product must have the capability to perform all steps and must perform at least one. <br><br> Claim 8: Not indefinite. Plain-and-ordinary meaning. |

80

x

| | | | |
|---|---|---|---|
| #10: "wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length"<br><br>U.S. Patent No. 9,912,513, Claim 1<br><br>"wherein at least a portion of the payload of the uplink frame is associated with the first CP length"<br><br>U.S. Patent No. 9,912,513, Claim 9<br><br>"wherein at least a portion of the legacy header is associated with a second CP length"<br><br>U.S. Patent No. 9,912,513, Claim 10<br><br>"wherein at least a portion of the respective non-legacy header is associated with the first guard interval"<br><br>U.S. Patent No. 9,912,513, Claim 16<br><br>Proposed by Defendants | Plain and ordinary meaning.<br><br>Alternatively, "wherein some or all of the payload of the uplink frame uses the first guard interval length" (Claim 1) / "wherein some or all of the payload of the uplink frame uses the first CP length" (Claim 9) / "wherein some or all of the legacy header uses a second CP length" (Claim 10) / "wherein some or all of the respective non-legacy header uses the first guard interval" (Claim 16) | Indefinite | Not indefinite.  Plain-and-ordinary meaning. |

81

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #11: "based on the resources for the UL MU transmission"<br><br>U.S. Patent No. 9,912,513, Claim 15<br><br>Proposed by Defendants | Plain and ordinary meaning | Indefinite | Not indefinite. Plain-and-ordinary meaning. |
| #12: "in response to determining that the number of the one or more station information fields in the NDPA is one" / "when a number of the one or more station information fields in the NDPA is one" / "when the number of the one or more station information fields in the NDPA is greater than one"<br><br>U.S. Patent No. 10,020,919, Claims 1, 2, 8, 11, 12, 19<br><br>Proposed by Defendants | Plain and ordinary meaning | Claims 1, 11: plain meaning: there is one station information field in the NDPA<br><br>Claims 2, 8, 12, and 19 are indefinite. | Claims 1, 11: Plain-and-ordinary meaning.<br><br>Claims 2, 8, 12, and 19: Not indefinite. Plain-and-ordinary meaning. |

82

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #13: "wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA"<br><br>U.S. Patent No. 10,020,919, Claims 1, 11<br><br>Proposed by Defendants | Plain and ordinary meaning<br><br>Alternatively, "wherein the number of the one or more station information fields in the NDPA is the number of elements in the set of station information fields" | Plain meaning: wherein the number of the one or more station information fields in the NDPA is the number of the one or more station information fields in the NDPA. This renders the claim indefinite. | Plain-and-ordinary meaning. |
| #14: "scheduling extension"<br><br>U.S. Patent No. 10,756,851, Claims 1, 2, 7, 8<br><br>Proposed by Defendants | Plain and ordinary meaning<br><br>Alternatively, "an extension to the control field that includes scheduling information" | A subfield appended to the HT control field that includes scheduling information for the uplink multi-user response | Plain-and-ordinary meaning wherein the plain-and-ordinary meaning is "an extension to the control field that includes scheduling information" |