**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. 2:21-cv-00430-JRG-RSP |
| v. | JURY TRIAL DEMANDED |
| TP-LINK TECHNOLOGIES CO., LTD., TP-LINK CORPORATION LTD, and TP-LINK INTERNATIONAL LTD., | |
| Defendants. | |

**<u>PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

1.      "the downlink multi-user frame including a plurality of resource units (RUS)" (9,531,520 claim 1) ............................................................................................... 1

2.      "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs" (claim 1) / "wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame" (claim 9) (9,531,520) ............................................................................................... 2

3.      "network device" (9,531,520 claims 1, 6) ......................................................... 3

4.      "wherein the NDPA frame indicates information corresponding to the predetermined length" (9,763,259 claim 6) ................................................................................. 3

5.      "wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames" (claim 1) / "wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations" (claim 9) (9,825,738) ............................................... 4

6.      "uplink setup information" (9,825,738 claims 1, 9) ........................................... 5

7.      "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations" (9,825,738 claims 6, 14) ............................... 5

8.      "at least a portion" and "associated with" terms (9,912,513 claims 1, 9, 10, 16) ............... 5

9.      "based on the resources for the UL MU transmission" (9,912,513 claim 15) .................... 6

10.     "single-user (SU) format" / "multiple-user (MU) format" terms (9,917,679 claims 1, 6) . 7

11.     "in response to determining that the number of the one or more station information fields in the NDPA is one" (claims 1) / "when a number of the one or more station information fields in the NDPA is one" (claim 11) / "when the number of the one or more station information fields in the NDPA is greater than one" (claims 2, 8, 12, 19) (10,020,919)... 8

12.     "cardinality" (claims 1-9, 11-19) / "wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA" (10,020,919 claims 1, 11) ................................................... 9

13.     "scheduling extension" (10,756,851 claims 1, 2, 7, 8) ....................................... 9

i

## TABLE OF AUTHORITIES

**Cases**

*BASF Corp. v. Johnson Matthey Inc.*,
 875 F.3d 1360 (Fed. Cir. 2017)................................................................................................ 4

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
 35 F.4th 1345 (Fed. Cir. 2022) ................................................................................................ 7

*Golden Bridge Tech., Inc. v. Apple Inc.*,
 758 F.3d 1362 (Fed. Cir. 2014)............................................................................................... 11

*Hytera Communs. Co. v. Motorola Sols., Inc.*,
 841 F. App'x 210 (Fed. Cir. 2021) ......................................................................................... 10

*Lincoln Nat'l Life Ins. v. Transamerica Life Ins.*,
 609 F.3d 1364 (Fed. Cir. 2010)................................................................................................ 9

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
 30 F.4th 1339 (Fed. Cir. 2022) ............................................................................................ 2, 3

*Novartis Pharm. Corp. v. Accord Healthcare, Inc.*,
 38 F.4th 1013 (Fed. Cir. 2022) .............................................................................................. 10

*Sun Chem. Corp. v. United States*,
 698 F.2d 1203 (Fed. Cir. 1983)................................................................................................ 9

*Thorner v. Sony Computer Entm't*,
 669 F.3d 1362 (Fed. Cir. 2012)................................................................................................ 6

1. **"the downlink multi-user frame including a plurality of resource units (RUS)" (9,531,520 claim 1)**

TP-Link argues this term is indefinite because "'resource units' cannot be part of the DL MU frame being transmitted and part of the wireless channel over which the DL MU frame is transmitted." Dkt. 90 ("Resp.") at 3. This statement is simply incorrect. As Dr. Shoemake explained: "The structure of the downlink multi-user frame is subdivided into RUs, and therefore *includes* RUs. The downlink multi-user frame is then subsequently transmitted *upon* corresponding resources of the wireless communication channel to reach its intended recipients." Shoemake Dec. at ¶43 (emphasis added). Just as a book *includes* the pages it is printed *upon*, the DL MU frame *includes* the RUs it is transmitted *upon*.

This is consistent with the specification. For example, Figure 11 shows a frame that *includes* resource units containing data for STA1 and STA2, respectively (green and blue). The y-axis shows frequency (orange), which indicates the RUs in the frame correspond to frequency subchannels *upon which* the frame will be transmitted.



**FIG. 11**

*See also* Shoemake Dec. at ¶39; PX 1 at 1:58-59 ("the downlink multi-user frame *including* a plurality of resource units"); 2:49-50 ("the downlink multi-user frame *includes* a second resource unit"), 14:12-14 ("The resource units may be particular spatial streams or sub-channels of a wireless channel *upon which* the DL MU frame will be transmitted") (emphasis added).

1

TP-Link argues the *Sercomm* court "acknowledged that the specification and claims do not match." Resp. at 3. This is not true. *See* DX 1 at 15 (citing '520 at 14:12-14). The court never held there was any disagreement between the claims and the specification—because there is none. The specification repeatedly describes the downlink multi-user frame as "including" resource units, just as recited in the claim. *See*, *e.g.*, PX 1 at 1:57-58, 2:49-50.

TP-Link also argues the term "including" "leaves room for broader claim scope and causes the claim to be invalid for indefiniteness." Resp. at 4. TP-Link does not explain why it believes "including" broadens the claim. Regardless, claim breadth does not give rise to indefiniteness. *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022).

**2. "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs" (claim 1) / "wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame" (claim 9) (9,531,520)**

Similar to the preceding term, TP-Link argues MPDUs cannot be located "in" resource units because they are transmitted "upon" resource units. Resp. at 5. But there is nothing contradictory about this relationship, as Dr. Shoemake explained: "The MPDUs are each included in their respective RUs of the downlink multi-user frame and are then subsequently transmitted upon the corresponding resources of the wireless channel in order to reach their intended recipients." Shoemake Dec. at ¶51. Just as a package can be *in* a delivery truck and transported *upon* a delivery truck, an MPDU can be *in* a resource unit and transmitted *upon* a resource unit.

The specification makes this relationship clear: *"The data MPDU* may include any type of data (e.g., voice, video, best effort, background, or control data) that is specifically intended for the particular STA and *may be placed in resource units* within the DL MU frame assigned/allocated to each respective STA. *The resource units* may be particular spatial streams

2

or sub-channels of a wireless channel *upon which the DL MU frame will be transmitted.*" PX 1 at 18:1-8. This situation is illustrated in, *e.g.*, Fig. 11 (discussed above), wherein "payload" MPDUs are located in RUs and also transmitted upon RUs. Figure 6B is similar, with data MPDUs ("STA1/STA2 Data") located *in* RUs and the "frequency" y-axis showing the RUs are frequency subchannels *upon which* the frame will be transmitted. *See also* DX 1 at 18 ("A POSITA, reading the specification would understand that 'in' and 'upon' are used interchangeably to describe the relationship between MPDUs and resource units.") (citing '520 at 14:9-14).

3.  **"network device" (9,531,520 claims 1, 6)**

The specification teaches that a "network device" is not limited to an AP. *See, e.g.*, PX 1 at 6:24-32 ("wireless communication devices … may be non-AP STAs"); 6:38-46 ("A non-AP STA … may be, for example, a device with wireless communication capability"); 6:45-46 ("a non-AP STA may act as an AP"), 6:54-56 ("two or more non-AP STAs 212-215, … can communicate directly with each other (without using the AP 211)"). TP-Link fails to cite any intrinsic evidence restricting a "network device" to an AP. Resp. at 5-8. And TP-Link neglects to address the overlapping functionality that a STA and access point may have. *Id.* When analyzing the *same* dispute, the *Sercomm* court held that a network device includes non-access points. DX 1 at 22.

4.  **"wherein the NDPA frame indicates information corresponding to the predetermined length" (9,763,259 claim 6)**

TP-Link contends that since this claim is broad in scope, it must be indefinite. "But a claim is not indefinite just because it is broad." *Niazi*, 30 F.4th at 1347. TP-Link asserts Atlas "fails to identify intrinsic evidence explaining how a frame is to 'indicate information' or how the information 'corresponds to the predetermined length.'" Resp. at 9. Not so. The specification identifies different ways to "indicate" how information corresponds to the predetermined length. PX 2 at 15:38-65; *id*. at 15:44-47 ("[T]he NDPA frame may include information on the maximum

CB length."); *id*. at 14:38-42 ("The maximum CB length may be a maximum length of the data field in CB frame or a maximum length of the CB frame.").

TP-Link wrongly argues the *Sercomm* court failed to articulate the scope for "how" this term functions. Resp. at 9. But that court noted Claim 6 depends on Claim 5, and "Claim 5 recites checking whether the length of data to be transmitted by the feedback frame is shorter or longer than a predetermined length." DX 1 at 25. That court further explained "Claim 6 then provides information (i.e., 'indicating information') 'corresponding the predetermined length.'" *Id*.

5. **"wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames" (claim 1)[1] / "wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations" (claim 9) (9,825,738)**

TP-Link confirms a POSITA understands a function as requiring "a mathematical dependence between quantities." Resp. at 11. Notwithstanding, TP-Link complains the claimed function is not limited to a specific formula. *Id.* But that is an issue of breadth, not definiteness. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017); DX 1 at 30-31 (*Sercomm* court rejecting this exact argument).

The intrinsic evidence is consistent with the meaning of "function," in which the value of one variable depends on another. In the '738 claims, the "second information" is the dependent variable, while the "total number of space time streams" is the independent variable. PX 3 at 26:15-19. The specification and provisional application provide examples, noting the number of long training fields "may be determined in accordance with the number of space time streams," and even providing a specific functional mapping of these variables. *Id.* at 22:22-29; PX 17 at 5, 7. TP-

---

[1] Atlas's opening brief incorrectly listed its proposed alternative construction for claim 1. Atlas's proposed alternative construction is "wherein the second information in the common information portion is a value that ~~is related to~~ <u>depends on</u> the total number of space time streams to be used to transmit the multiple uplink frames." *See* Dkt 85-2 at 6.

Link simply ignores this evidence. Resp. at 10-11. As Dr. Shoemake explained, these terms are not indefinite and would be well understood by a POSITA. Shoemake Dec. at ¶¶67-82.

**6.  "uplink setup information" (9,825,738 claims 1, 9)**

TP-Link concedes the claim language and specification are "abundantly clear." Resp. at 12. But it proposes a construction inconsistent with that "abundantly clear" claim language. TP-Link provides no good reason to substitute its paraphrasing for the actual claim language.

TP-Link also argues this term is indefinite unless its construction is adopted, but it does not come close to providing clear and convincing evidence that this term is indefinite.

**7.  "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations" (9,825,738 claims 6, 14)**

This Court should reject TP-Link's construction. The Abstract is inconsistent with TP-Link's argument that an acknowledgement frame is limited to "an information per TID subfield, block ACK starting sequence control field, and block ACK bitmap subfield." The Abstract states that an "ACK frame" includes "a plurality of ACK information fields." PX 3 at Abstract. And the portion of the specification cited by TP-Link teaches "acknowledgment information" only "may" include the block ACK starting sequence control information. *Id*. at 2:34-42. The specification explains that "[t]he ACK frame may further include identification information of the plurality of transmitting devices." *See id.* at 2:43-44, 6:1-6.

TP-Link's argument that the lexicographer exception applies also fails. Resp. at 13-14. Absent clear disavowal, a term should be given its plain and ordinary meaning. *See Thorner v. Sony Computer Entm't*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

**8.  "at least a portion" and "associated with" terms (9,912,513 claims 1, 9, 10, 16)**

TP-Link argues these terms are indefinite because they "require an undefined 'portion' of something to be 'associated with' something else." Resp. at 14. The *Sercomm* court correctly held

"'portion' and 'associated with' are common English words that both a POSITA and lay jury would understand." DX 1 at 54. Next, TP-Link argues "the claims themselves provide no help in ascertaining any objective meaning of these terms." Response at 15. Not true. The *Sercomm* court found "Claims 1 and 9 of the '513 Patent describe that 'at least a portion of the payload of the uplink frame' (i.e., some or all of uplink frame's payload) will *use* and therefore be 'associated with the first guard interval length.'" DX 1 at 54 (emphasis in original).

Then TP-Link erroneously argues the specification and Figure 8 fail to "provide or shed any light on an objective boundary for these limitations." Resp. at 15. False. With regard to Figure 8, the specification states: "The participating stations *use the guard interval duration GI3* indicated by the downlink frame 810 for UL OFDMA transmission *for the second [payload] part* of their respective uplink frames 830 and 850." PX 4 at 17:34-37 (emphasis added), Fig. 8. Thus, the specification explains (1) the claimed "portion" includes the uplink payload symbols that are preceded by the guard interval GI3 (highlighted yellow in the figure to the right), and (2) the claimed "association" comes from the fact that those symbols use the same guard interval GI3 indicated by the prior downlink frame. In view of the above, a POSITA understands these terms with reasonable certainty. Shoemake Dec. at ¶¶89, 93. The *Sercomm* court agrees. DX 1 at 54 (citing '513 at 17:17-20, 17:34-37, Fig. 8).

### 9. "based on the resources for the UL MU transmission" (9,912,513 claim 15)

TP-Link misreads Atlas's position. To the extent there are two readings of the claim term, "whether the 'based on' language refers to [1] processing of the uplink frame, or [2] the uplink frame itself," Atlas argued that "factually, the intrinsic evidence and everyday grammar show a person of ordinary skill would understand the latter interpretation to be correct—the uplink frame is based on the resources allocated by the trigger frame for the UL MU transmission." Dkt. 88

6

("Op. Br.") at 19. Atlas explained why the language of the specification and the claims favors the latter interpretation. *Id*. at 20. TP-Link does not address these statements. Resp. at 16.

Even if TP-Link is correct that one interpretation is not more correct than the other, that does not render the term indefinite. Atlas argued in the Opening Brief that this Court may hold that the term is not indefinite and ascribe it both meanings, which is what happened in *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1349-51 (Fed. Cir. 2022); *see* Op. Br. at 19, 21. And the *Sercomm* court agreed with this reasoning. DX 1 at 58-59.

**10. "single-user (SU) format" / "multiple-user (MU) format" terms (9,917,679 claims 1, 6)**

With no expert willing to opine a POSITA does not understand these claims, TP-Link must rely on attorney argument to assert these simple terms using common words are indefinite. Resp. at 17-21. TP-Link has not met its burden to prove indefiniteness by clear and convincing evidence.

TP-Link argues neither the claims nor the specification reasonably inform a POSITA as to the scope of SU/MU format. Resp. at 17-19. False. Dr. Shoemake opines the '679 claims disclose that "an acknowledgment frame in MU format will be transmitted simultaneously with an acknowledgment frame from at least one other station," while an acknowledgment frame in SU format will not. Shoemake Dec. at ¶109.

Next, the '679 specification sets the context for SU/MU format by noting "the present invention relates to a Wireless Local Area Network (WLAN)" as set forth in the various 802.11 standards. PX 5 at 1:19-66. Because a POSITA already knew the frame format for uplink single-user transmissions from the legacy 802.11a/g/n/ac standards, the '679 specification did not need to detail the uplink SU frame format. Shoemake Dec. at ¶114; *see also* PX 30 (802.11ac) at, *e.g.*, ATLAS-00032173 (showing exemplary uplink SU formatted frame). But for the uplink MU formatted frames, which were new to 802.11ax, '679 Figure 13 shows an exemplary 802.11ax frame formatted for uplink multi-user transmission where four stations (STA1-4) simultaneously

7

transmit to the access point:

**FIG. 13**

| | | | | HE-STF | HE-LTF | HE-SIG-B | HE-LTF | HE-LTF | HE-LTF | HE-LTF | HE-SIG-C | PSDU(STA4 to AP) |
| L-STF | L-LTF | L-SIG | HE-SIG-A | HE-STF | HE-LTF | HE-SIG-B | HE-LTF | HE-LTF | HE-LTF | HE-LTF | HE-SIG-C | PSDU(STA3 to AP) |
| | | | | HE-STF | HE-LTF | HE-SIG-B | HE-LTF | HE-LTF | HE-LTF | HE-LTF | HE-SIG-C | PSDU(STA2 to AP) |
| | | | | HE-STF | HE-LTF | HE-SIG-B | HE-LTF | HE-LTF | HE-LTF | HE-LTF | HE-SIG-C | PSDU(STA1 to AP) |

Shoemake Dec. at ¶117 (citing '679 Fig. 13, emphasis added); *see also* PX 31 (802.11ax) at, *e.g.*, ATLAS-00021579 (showing exemplary uplink MU formatted frame). Consequently, Dr. Shoemake concludes that a POSITA understands an uplink "SU format" frame is one for sending data from a single station to an access point, *e.g.*, as per the legacy 802.11 a/g/n/ac standards. *Id.* at ¶¶126-127. Conversely, an uplink "MU format" frame is one for sending data from multiple stations to an AP simultaneously, *e.g.*, as shown in Figure 13 and the 802.11ax standard. *Id.*

TP-Link also argues the file history suggests indefiniteness. Resp. at 18-19. Quite the opposite. Dr. Shoemake devotes five pages to the prosecution history and how it shows these terms are *not* indefinite. Shoemake Dec. at ¶¶128-32. In particular, the applicant never distinguished the Cheong reference on the basis of SU/MU format (as TP-Link argues). Instead, the applicant argued Choeng's "group information" was not the claimed "QoS control field including acknowledgment information representing whether the STA is requested to transmit the acknowledgment frame in a single-user (SU) format or in a multiple-user (MU) format." DX 6 at 8.

**11. "in response to determining that the number of the one or more station information fields in the NDPA is one" (claims 1) / "when a number of the one or more station information fields in the NDPA is one" (claim 11) / "when the number of the one or more station information fields in the NDPA is greater than one" (claims 2, 8, 12, 19) (10,020,919)**

TP-Link argues the independent claims require that the NDPA includes one, and only one, station information field. Resp. at 22. TP-Link's argument rests on the idea that claims 1 and 11 cannot be infringed when there is more than one station information field. In support, TP-Link

8

cites a tax case. *See Sun Chem. Corp. v. United States*, 698 F.2d 1203, 1204 (Fed. Cir. 1983) (addressing "Appellant (taxpayer) seek[ing] a refund of taxes paid"). The *Sercomm* court rejected this argument. DX 1 at 61-67.

Conditional method claims are infringed by a device capable of practicing each claimed condition and that actually practices one of the conditions; however, the steps do not need to be practiced simultaneously. *See Lincoln Nat'l Life Ins. v. Transamerica Life Ins.*, 609 F.3d 1364, 1369-70 (Fed. Cir. 2010) (holding that the accused product must be capable of practicing both claimed scenarios to infringe a conditional claim; it was insufficient to prove infringement by proving just one scenario); *see also Hytera Communs. Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, 215-16 (Fed. Cir. 2021) ("the prior art was required to teach both conditions of the 'selecting' step."). Regarding claim 1, an infringing device must be capable of determining whether there is one or more than one station information field. If there is one, it must be capable of responding as claimed, and if there is more than one, infringing claim 1 does not require any particular action. Regarding claim 2, an infringing device would perform the same steps, but also respond to an NDPA with more than one station information field, as specified in that claim.

**12. "cardinality" (claims 1-9, 11-19) / "wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA" (10,020,919 claims 1, 11)**

The intrinsic and extrinsic evidence are clear that "cardinality" is "the number of elements in a set." TP-Link's primary argument—that this phrase means "one equals one" and is indefinite—is premised entirely on its position that the NDPA contains only one station information field. As explained above, this Court should reject TP-Link's argument, just as the *Sercomm* court did. DX 1 at 67-68.

**13. "scheduling extension" (10,756,851 claims 1, 2, 7, 8)**

TP-Link argues "[t]he term 'scheduling extension' does not carry any plain and ordinary

9

meaning" because that exact phrase never appears in the specification. Resp. at 26. This is a red herring. The specification can describe a claim term without using identical words. *See Novartis Pharm. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1023 (Fed. Cir. 2022). And TP-Link never alleges any disclaimer or express definition, so this term should be given its plain and ordinary meaning. *See Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014). There is no basis to limit this term to Figure 13. The intrinsic record repeatedly characterizes Figure 13 as a non-limiting "example" or "embodiment." *See* PX 7 at, *e.g.*, 30:11-12 ("FIG. 13 illustrates ***an example*** of an extended control field 1320 in a HT control field 1300 of a data frame"). The *Sercomm* court agreed Figure 13 is not limiting. DX 1 at 75.

In fact, the *Sercomm* court rejected all the arguments TP-Link now advances. That court rejected the argument that this term should be limited to an "HT" control field. DX 1 at 74. That court rejected the argument that this term is limited to a "subfield" that is added or appended to the control field. *Id.* And that court concluded that this term should be given its plain and ordinary meaning: "an extension to the control field that includes scheduling information." *Id.* at 75. The *Sercomm* court's reasoning was sound, and this Court should come to the same conclusion.

TP-Link argues that "Atlas's own cited extrinsic evidence supports that the 'scheduling extension' should be something that is appended to the HT control field." Resp. at 27. But the cited dictionary definition does not use the word "appended." The definition says an extension can be something that increases the "influence," "operation," or "contents" of something else. PX 29. Likewise, the word "appended" never appears ***anywhere*** in the intrinsic evidence. No evidence supports TP-Link's argument that a scheduling extension must be "appended" to the control field.

Dated: December 23, 2022

Respectfully submitted,

/s/  *Eric Enger*
Max L. Tribble, Jr.
Texas State Bar No. 20213950
Joseph S. Grinstein
Texas State Bar No. 24002188
Alejandra C. Salinas
Texas State Bar No. 24102452
**SUSMAN GODFREY, LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
jgrinstein@susmangodfrey.com
asalinas@susmangodfrey.com

Kalpana Srinivasan
California State Bar No. 237460
Oleg Elkhunovich
California State Bar No. 269238
**SUSMAN GODFREY, LLP**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
oelkhunovich@susmangodfrey.com

Michael F. Heim
Texas State Bar No. 09380923
Eric J. Enger
Texas State Bar No. 24045833
Blaine A. Larson
Texas State Bar No. 24083360
Alden G. Harris
Texas State Bar No. 24083138
William B. Collier, Jr.
Texas State Bar No. 24097519
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com
eenger@hpcllp.com
blarson@hpcllp.com

11

aharris@hpcllp.com
wcollier@hpcllp.com

T. John Ward, Jr.
Texas Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com

*ATTORNEYS FOR ATLAS GLOBAL
TECHNOLOGIES LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 23, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

/s/Eric Enger
Eric Enger

12