IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | Case No.  2:21-cv-430-JRG-RSP |
| TP-LINK TECHNOLOGIES CO., LTD., TP-LINK CORPORATION LIMITED, TP- LINK INTERNATIONAL LTD., | § § § § § | |
| *Defendants.* | § § | |

## REPORT AND RECOMMENDATION

Before the Court, defendants TP-Link Technologies Co., Ltd. ("TP-Link China") and TP-Link Corporation Limited f/k/a TP-Link International Ltd. ("TP-Link Hong Kong") move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for want of personal jurisdiction, **Dkt. No. 28**, move to dismiss pursuant to Federal Rule 12(b)(5) for want of service of process, **Dkt. No. 29**, and alternatively move for transfer to the Central District of California pursuant to 28 U.S.C. § 1404(a), **Dkt. No. 30**. For the following reasons, the motions should be **DENIED**.[1]

## I.    Background

Plaintiff Atlas Global Technologies LLC filed suit alleging various wireless Wi-Fi 6 routers made by defendants and imported into the United States infringe several patents owned by Atlas. Dkt. No. 1.

## II.    Personal Jurisdiction

In the absence of an evidentiary hearing, Atlas need only make a *prima facia* showing of personal jurisdiction. *Celgard, LLC v. SK Innovation Co*., 792 F.3d 1373, 1378 (Fed. Cir. 2015)

---

[1] In view of the resolution of the motions, the motion for oral argument, **Dkt. No. 86**, is **DENIED** as moot.

(citation omitted). Atlas asserts only specific personal jurisdiction. Dkt. No. 62 p 4. The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir.1995). Because a stream of commerce theory is espoused to establish personal jurisdiction, the Court notes that the unresolved plurality decision of *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102 (1987) is deemed nonbinding by the Federal Circuit, which instead applies its precedent from *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). *AFTG–TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1362–66 (Fed.Cir.2012) (discussing the plurality *Asahi* decision and its effect on Federal Circuit precedent).

Defendants claim this Court lacks personal jurisdiction because they do not direct activities into the forum of Texas and argue that suit should have been brought against non-party TP-Link USA Corporation, a California corporation headquartered in Irvine, California. [2] Nonetheless, defendants also admit to preparing English user guides, incorporating power plug and transformer assemblies for compatibility with the American electrical grid, and obtaining US Federal Communications Commission certifications for the accused products sold to its customer, non-party TP-Link USA, who is solely responsible for importing, marketing, advertising, offering to sell, and selling the accused products in the United States. Dkt. Nos. 28 p 1-3 and 7-8; 65 p 1-3. Also, defendants do not deny knowledge of the sale of accused products in Texas and have taken no action to prevent such sales.

These facts are sufficient to establish personal jurisdiction. Pursuant to *Beverly Hills*, where a defendant purposefully ships an accused product into a forum state through an

---

[2] Defendants have not moved to join or add TP-Link USA.

established distribution channel and the cause of action for patent infringement is alleged to arise out of those activities, no more is usually required to establish specific personal jurisdiction. 21 F.3d at 1565. See also *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (foreseeability is relevant when a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

Here, TP-Link USA is the established distribution channel, and TP-Link USA is the sole distributor of "TP-Link" branded products throughout the United States including Texas, which is one of the most populous states. Accordingly, the Court presumes that the defendants reasonably anticipated that its products would be sold in Texas. See, *e.g.*, *ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 wl 1025467, *14 (E.D. Tex. Mar. 26, 2009) ("[T]his Court presumes that JHT Taiwan knew Texas was a termination point of the distribution channel because the North American companies established a connection with Texas retailers."); *Largan Precision Co. v. Ability Opto-Elecs. Tech. Co.*, 2020 WL 569815, at *7 (E.D. Tex. Feb. 5, 2020) ("It is undisputed that finished products incorporating AOET's lenses frequently are made available for sale in multiple retail locations in Texas. Moreover, AOET appears to have, at the very least, the *intent* that its products be sold in the United States and Texas, even if it does not know or control all of the precise details of those downstream transactions.") (emphasis original).

Alternatively, Federal Rule of Civil Procedure 4(k)(2) is applicable. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009) ("Similar to other circuits and the district court in this case, we read Rule 4(k)(2) to allow a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and

(3) the exercise of jurisdiction comports with due process.") (compiling cases). Defendants argue that Rule 4(k)(2) does not apply because they "would submit to jurisdiction in the [Central District of California] where TP-Link USA is located." Dkt. No. 28 p 12; *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) (precluding application of Rule 4(k)(2) when defendant identifies a state in which suit could have been brought); see also Dkt. No. 30 (motion to transfer to Central District of California).[3]

Submission to a transferee forum is insufficient to satisfy 28 U.S.C. § 1404(a)'s "might have been brought" requirement. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Instead, this threshold inquiry of 28 U.S.C. § 1404(a) encompasses a showing of subject matter jurisdiction, personal jurisdiction, and proper venue regardless of submission or waiver. *Id.* ("But the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff."). Defendants' position challenges not only this Court's personal jurisdiction, but also that of the Central District of California. Dkt. No. 28 p 8-9 ("In sum, neither Defendant directs or controls importing, marketing, advertising, offering to sell, or selling the accused products in Texas—or anywhere else in the United States"); see also Dkt. No. 30 p 9 n. 5 ("If the [Central District of California] lacks personal jurisdiction, then so too does this Court."); Dkt. No. 74 p 2 ("If the Court concludes that there is no personal jurisdiction, the transfer motion is moot; if the Court finds jurisdiction, then it follows that the CDCA likewise has jurisdiction, and the threshold transfer inquiry is satisfied.").

Because defendants cannot merely submit to the personal jurisdiction of the Central

---

[3] Of note, defendants argue that Atlas cannot impute to the defendants the actions of non-party TP-Link USA. Dkt. No. 28 p 9-10. Atlas's allegation against TP-Link USA is that it distributes the accused products, whether related or not. Dkt. No. 1. Nonetheless, defendants cannot in turn rely on non-party TP-Link USA to anchor their jurisdictional argument.

District of California for purposes of transfer and because defendants impliedly challenge the

personal jurisdiction of the Central District of California, defendants are precluded from relying

upon such a submission to defeat the application of Rule 4(k)(2). *Cf. Japan Display Inc., et al. v.*

*Tianma Microelectronics Co. Ltd.*, No. 2:20-CV-00283-JRG, 2021 WL 3772425, at *3 (E.D. Tex.

Aug. 25, 2021) ("Although Tianma's Motion to Dismiss was withdrawn, Tianma did not

acknowledge that it was subject to the personal jurisdiction of any U.S. court in its motion

requesting withdrawal, instead stating that its Motion to Dismiss was 'meritorious and legally

sound in substance.' Tianma, apparently wanting to have its cake and eat it too, skirted the

threshold § 1404 question while attempting to preserve a jurisdictional challenge—which

challenge is no longer before the Court.") (internal citation to record document omitted).

Defendants also argue that the exercise of personal jurisdiction would be unreasonable. To

evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five

factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's

interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (5) the shared interest of the several States in furthering

substantive social policies. *Asahi*, 480 U.S. at 113. "When a defendant seeks to rely on the 'fair

play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise

would have personal jurisdiction over the defendant, 'he must present a compelling case that the

presence of some other considerations would render jurisdiction unreasonable.' " *Nuance*

*Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citing *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

On the first factor, defendants claim suit in Texas is burdensome as unforeseeable and thus

the Supreme Court's caution in *Asahi*, 480 U.S. at 114-15, is applicable. Dkt. No. 28 p 11.

"However, *Asahi* involved an upstream supplier who did not create, control, or employ the distribution system that brought its goods (tire valves) to California." *Nuance*, 626 F.3d at 1234. This case is substantially similar to *Nuance* which found that the court erred when it declined to exercise personal jurisdiction. *Id.* Like the relationship between Abbyy Production and Abbyy USA in *Nuance*, the relationship between the defendants and TP-Link USA was intended to distribute products into the United States including to the state of Texas. *Id.*

On the second factor, defendants claim that the only interest Texas has in this suit relates to Atlas' residence in Texas, but that because Atlas was recently formed its residence should be given no weight. Dkt. No. 28 pp 11-12. Standing alone this is not a "compelling" reason to "render jurisdiction unreasonable." *Nuance*, 626 F.3d at 1231.

On the remaining factor, defendants claim with little explanation that there are no interest, efficiencies, or social policies furthered by suit in Texas. Atlas has a clear interest in resolving the claims of infringement. Next, dismissing or transferring the case to the Central District of California would not promote efficiency of such a resolution. See *infra* Part IV.E. And last but not least, patent enforcement has been considered a substantive social policy since the founding of the United States. See, *e.g.*, U.S. Const. art. I, § 8, cl. 8.

Accordingly, defendant's arguments that the exercise of personal jurisdiction would be unreasonable are either rejected or not compelling.

III.    **Service of Process**

Defendants challenge the Court's grant of Atlas's motion for alternative service of process pursuant to Federal Rule of Civil Procedure 4(f)(3) via service upon domestic outside counsel and non-party TP-Link USA's registered agent. Dkt. No. 29 p 1; see also Dkt. No. 21 (order granting

alternative service).[4]

First, Defendants argue that the Texas long-arm statute mandates use of the Hague Convention for service on foreign defendants, in the absence of which the court lacks personal jurisdiction. Dkt. No. 29 pp 3-7. In response, Atlas argues that the Federal Circuit has rejected this argument in *In re OnePlus Technology (Shenzhen) Co.*, Ltd., 2021 WL 4130643 (Fed. Cir. Sep. 10, 2021), Dkt. No 38 pp 4-5, and indeed it has.

> OnePlus further argues that the Texas long-arm statute requires the transmittal of documents abroad to a foreign defendant. See Tex. Civ. Prac. & Rem. Code Ann. § 17.045. Because valid service under Texas law requires the transmittal of documents abroad and triggers the Hague Convention, OnePlus contends that there was no valid service in this case and that the district court therefore lacked jurisdiction over OnePlus.
>
> The problem with OnePlus's jurisdictional argument is that it runs up against this court's decision in *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010). In that case, we rejected the defendants' argument that service authorized by a court under Rule 4(f)(3) did not establish personal jurisdiction over the defendants because it did not satisfy the service provisions of the forum state's long-arm statute. We wrote that the defendants' argument "confuses service of process under Rule 4(f)(3), which provides for court-directed service 'by any means not prohibited by international agreement,' with service under Rule 4(e)(1), which does not require a court-order and provides for service by 'following state law.' " *Id.* at 1240. The restrictions on service under California law, we held, did not "foreclose substituted service on others under Rule 4(f)(3)." Id. OnePlus's reliance on the service requirements of the Texas long-arm statute appears contrary to this court's analysis in *Nuance Communications*.

*Id*. at *2 (footnote omitted). Here, service of process was granted under Rule 4(f)(3), and thus, the Texas long arm statute is immaterial. *Id.*

Further, as this Court found when granting the alternative service, "Compliance with the Hague Convention is mandatory when the requested method of service is effectuated within the territory of the foreign signatory." Dkt No. 21 p *Volkswagenwerk Aktiengesellschaft v. Schlunk*,

---

[4] It is important to note that alternative service was in part granted because Atlas demonstrated extensive and thorough attempts to effectuate service of process by other means on the defendants. Atlas catalogs those efforts in its opposition brief. Dkt. No. 38 pp 1-2.

486 U.S. 694, 699 (1988). To combat this, defendants assert that the Hauge Convention is implicated "if the method of serving process involves the transmittal of documents abroad." Dkt. No. 29 pp 1-2 & 4 citing *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F. 2d 533, 537 (5th Cir. 1990) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699-706 (1988)). Again, this argument was rejected in *OnePlus* via footnote concluding the above passage.

> OnePlus dismisses *Nuance Communications* on the ground that it was applying Ninth Circuit law, and that Fifth Circuit law applies to this case. But OnePlus does not point to any Fifth Circuit authority that is contrary to *Nuance Communications* on this issue. The *Sheets* case, on which OnePlus relies, did not involve court-authorized service under Rule 4(f)(3) and is therefore inapposite.

*Id.* at n.1. Likewise, defendants do not provide Fifth Circuit authority contrary to *Nuance Communication* other than *Sheets*. Here, because the requested method of alternative service was to be, and ultimately was, effectuated within the United States, the Hague Convention was never implicated and service was court-authorized under Federal Rule of Civil Procedure 4(f)(3). In sum, the facts and arguments here are substantially analogous to the those in *Nuance Communications*, which is both controlling and dispositive.

Additionally, the alternative service granted on TP-Link USA is consistent with the Hague Convention and Federal Rule of Civil Procedure 4(e)(1). The Hague Convention's use of "forum state" refers to countries as opposed to subdivisions thereof. *Schlunk*, 486 U.S. at 697-99. Accordingly, the laws of the United States apply. Pursuant to federal law, a corporation can be served under the law of the state in which service was executed. Fed. R. Civ. P. 4(e)(1), (h)(1)(A). Atlas served TP-Link USA's agent for service of process in California. While the rules allow for application of Texas law, they do not preclude the application of California law. *Id*. Accordingly, defendants' reliance on Texas law alone is not persuasive.

Under California law, a corporation may be served through its "general manager." Cal. Civ. P. Code § 416.10(b). A foreign corporation, specifically, may be served through "its general

manager in [California]." Cal. Corp. Code § 2110.1. "It is well settled" that California does not require "strict compliance with statutes governing service of process." *Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 295, 313 (1998); *see also Garcia v. Doe White Trucking Co.*, No. 20-CV-00134-SI, 2020 WL 1156911, at *4 (N.D. Cal. Mar. 10, 2020) (describing similarly). Instead, these statutes "should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant." *Gibble*, 67 Cal. App. 4th at 313; *see also Pasadena Medi-Ctr. Assocs. v. Superior Court*, 9 Cal. 3d 773, 778–79 (1973) (upholding service after concluding that § 416.10 should be "liberally construed"); *Summers v. McClanahan*, 140 Cal. App. 4th 403, 411 (2006) ("It is clear [that] the old rule of strict construction has been rejected and a new rule of liberal construction has been adopted.").

The California Supreme Court has identified a "general manager" for service of process as an agent who (1) is "of sufficient character and rank to make it reasonably certain that defendant would be apprised of the service" and (2) has "given [the defendant] substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state." *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 83–84 (1959) (quotation omitted). "California and federal district courts have relied on the 'character and rank' and 'substantially the business advantages' language from *Cosper* in more than a dozen cases since *Cosper* was decided in 1959." *Falco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d. 1071, 1074 (C.D. Cal. 2013); see, *e.g*, *Yamaha Motor Co. v. Super. Ct.*, 174 Cal. App. 4th 264, 274–75 (2009); *Khachatryan v. Toyota Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008); *Gray v. Mazda Motor of Am., Inc.*, 560 F. Supp. 2d 928, 931 (C.D. Cal. 2008); *Xun v. Daimler AG*, 2020 WL 6784526, at *1 (C.D. Cal. Sept. 3, 2020).

TP-Link USA is of "sufficient character and rank to make it reasonably certain that"

defendants "would be apprised of the service," *Cosper*, 53 Cal. 2d at 83, because TP-Link USA is

a related entity[5] and defendants' sole distributor of the accused products within the United States.

Further, TP-Link USA provides defendants a substantial advantage as its sole distributor in the

United States. Accordingly, service on TP-Link USA's agent for service of process is consistent

with California law, and therefore also Federal Rule of Civil Procedure 4(e)(1).

## IV.    Transfer

Lastly, defendants seek transfer of this suit to the Central District of California where TP-

Link USA is located. Dkt. No. 30. Despite their argument that this Court, and impliedly also the

Central District of California, lacks personal jurisdiction and the effect that such an argument may

have on defendants' ability to satisfy 28 U.S.C. § 1404(a)'s "might have been brought"

requirement, *supra* Part III, the Court proceeds with an analysis of the factors provided in *In re*

*Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*"). *Cf. Japan Display*,

2021 WL 3772425, at *3 (where defendant withdrew a motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(2) but maintained that the position was "meritorious and legally

sound in substance" and did not acknowledge that defendant was subject to the personal

jurisdiction of any U.S. court, the court found the defendant failed to satisfy 28 U.S.C. §

1404(a)'s "might have been brought" requirement, but nonetheless evaluated the convenience

factors).

### A.  Relative ease of access to sources of proof

The ease of access to sources of proof factor considers documents and physical evidence

as opposed to witnesses. *Volkswagen II*, 545 F.3d at 315. The Fifth and Federal Circuits have

stressed that the physical location of such sources of proof remains relevant notwithstanding

---

[5] There is some dispute as to whether TP-Link USA is a subsidiary of defendants. Nonetheless, it is undisputedly part
of the same corporate network and family.

technological advances in data storage, copying, and transmission. *Volkswagen II,* 545 F.3d at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009). However, parties must specifically identify sources of proof, explain their relevance, and specifically identify the location of those sources. *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017) ("Additionally, Utterback fails to identify with any specificity *which witnesses* and *what evidence* would be inaccessible in Mississippi but readily available in Florida. Without more, we cannot credit such vague and conclusional assertions.") (emphasis in original).

The Fifth Circuit has explained that a decreased inconvenience in access to proof due to technological advances "does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. Similarly, the Federal Circuit found error in concluding that the ease-of-access factor was neutral merely because "many of the documents were stored electronically[.]" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (citing *Volkswagen II*, 545 F.3d at 316); see also *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 316). "Thus, the physical location of evidence – even if stored electronically – remains a relevant consideration for the convenience analysis. However, the realities of electronic retrieval and delivery is an established reality that must bear some weight even while not making this factor 'superfluous.'" *Japan Display*, 2021 WL 3772425, at *4.

Defendants first argue that their evidence is stored in China and Hong Kong, whereas TP-Link USA, which as distributor has evidence relevant to sales of the accused product and therefore damages, stores its documents in the Central District of California. Dkt. No. 30 p 11. Atlas responds that evidence relevant to the design and development of the accused product and therefore infringement is within the possession of the defendants located in China and Hong Kong. Dkt. No 68 p 9. Atlas also asserts that the distribution contract between the TP-Link Hong

11

Kong and TP-Link USA provides that TP-Link Hong Kong the right to approve marketing materials, that TP-Link USA submits purchase orders to TP-Link Honk Kong for accused products, and that TP-Link USA must provide requested reasonable assistance during litigation. *Id*. pp 6 & 9. Additionally, Atlas points out that defendants have failed to specifically identify evidence held by TP-Link USA that is not already within the possession of the defendants or that TP-Link USA is not obligated by contract to relinquish upon request. *Id.* pp 7-8.

Defendants next argue that Atlas' recent formation in Texas is a litigation ploy for venue purposes and that Atlas' parent Acacia Research Corporation resides in California with evidence relevant to this suit. Dkt. No. 30 p 11. However, the evidence presented by defendants lacks the requisite degree of control to pierce the veil and supplant Atlas in favor of Acacia. Even if the Court were to consider the residence of non-party Acacia, a plaintiff is obligated to produce evidence wherever suit is filed. Thus, any weight that may be accorded to the storage of evidence by Acacia in California is minor. Further, Atlas argues it resides in Austin and stores relevant documents on a server in Texas. Dkt. No. 68 p 7.

Lastly, defendants argue that the original owner of the patents in suit, Newracom, is headquartered in the Central District of California and likewise stores relevant sources of proof in California. Dkt. No. 30 pp 6-7 & 12. To the extent defendants assert that employees of Newracom with relevant information live in California, that argument is irrelevant under this factor and is addressed below. Atlas responds that although Newracom possesses documents in California, Newracom's documents relevant to this suit were collected by Newracom's outside counsel prior to the filing of the instant motion and stored in the Houston, Texas office of outside counsel. Dkt. No 68 p 9. Additionally, Atlas contends that Broadcom, Qualcomm, MediaTek, and Intel are the suppliers of Wi-Fi 6 chips incorporated into the accused products, have facilities in Texas, and

that those facilities "likely" have documents relevant to design, development, and sales. *Id.* p 8.

Even without affording considerable weight to the movement of Newracom's documents as an artifact of litigation, and discounting somewhat the "likely" possession of relevant documents by chip manufacturers with facilities in Texas, most of the documents relevant to infringement are located in China and Hong Kong, whereas most of the documents relevant to damages at least originate from California. Nonetheless, the distribution agreement between TL-Link Hong Kong and its U.S. counterpart contemplates assistance with document production. Accordingly, the Court finds this factor only slightly favors transfer if not neutral.

### B. Availability of compulsory process to secure the attendance of witnesses.

The second private factor considered is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal district courts have the absolute power to compel attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Federal district courts have trial subpoena power over a person "within the state where the person resides, is employed, or regularly transacts business in person, if the person ... is a party or a party's officer; or ... [if the person] is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). As party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards unwilling third-party witnesses." *C&J Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-cv-00079-JRG-RSP, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (emphasis added). Defendants argue that numerous witnesses are not subject to compulsory process, many of which Atlas rebuts. The Court will address each.

Defendants first argue that corporate representatives of TP-Link USA reside in California. Dkt. No. 30 pp 4 & 13. Atlas does not rebut this argument other than to say that defendants failed

to identify who from TP-Link USA would have relevant information. Dkt. No. 68 p 5. Nonetheless, there is a strong presumption that a corporate representative from TP-Link USA as distributor would have knowledge relevant to damages.

Defendants next argue that corporate representatives from Acacia, namely Marc Booth, Eric Lucas, and Kristen Hoover, have relevant knowledge regarding patent licensing, litigation models, and comparable licenses. Dkt. No. 30 p 13. Atlas respond that such witnesses should be considered as willing given the relationship between the two entities. Dkt. No. 68 p 12-13. Further, Atlas argues that Marc Booth, CEO of Atlas, resides in California but testified to a willingness to travel to the Eastern District of Texas; that Eric Lucas, former VP of Atlas, is no longer employed by Atlas and does not possess any non-duplicative knowledge; and that Kristen Hoover, principal accounting officer of Atlas, resides in California and has knowledge of the license payments received by Acacia but not the patents or underlying technology involved in various licenses agreements. *Id*. Further, Atlas contends Craig Yudell, President of Atlas, resides in Austin, Texas and has all the relevant information that could be provided by Marc Booth, Eric Lucas, and Kristen Hoover. *Id.*

Defendants next argue that the six named inventors of the patents in suit are unlikely to voluntarily travel to the Eastern District of Texas. Dkt. No. 30 pp 7 & 13. Atlas responds that Jongee Oh is employed by, and that Ahmad Reza Hadayat and Hyoung Jin Kwon are consultants of, Newracom, the original owner of the patents in suit, and that all three are willing witnesses; that Yujin Noh is believed to have recently moved to Korea; that Yongho Seok resides in the San Francisco area hundreds of miles away from the Central District of California; and that Minho Cheong currently works for Advanced Micro Devices, commonly known as AMD, in Austin. Dkt. Nos. 68 p 12 and 68-2.

Defendants next argue that beyond the currently employed inventor discussed immediately above, employees of Newracom with information relevant to the patented technology, product design and development, licensing, assignments, marketing, and financials reside in California. Dkt. No. 30 p 13. Atlas does not rebut this argument other than to say that defendants failed to identify with specificity which employees of Newracom may have the relevant information. Dkt. No. 68 pp 12-13.

Additionally, Atlas responds that none of the implicated chip manufacturers of the accused products are headquartered in the Central District of California.  Rather they in the Southern District of California (Qualcomm), Northern District of California (Broadcom and Intel) or in Taiwan (MediaTek). Further, that all four have relevant facilities in Texas, and that current and former employees thereof with information relevant to the design of the chips reside in Texas; that Samsung Austin Semiconductor has witnesses relevant to manufacturing of accused components and testing and compliance with Wi-Fi 6 standards of Qualcomm chips incorporated into some of the accused products; and that Wi-Fi Alliance is headquartered in Austin, Texas and has witnesses relevant testing and compliance with Wi-Fi 6 standards. Dkt. No. 68 pp 9-12.

Setting aside willing witnesses, this factor is neutral considering the residence of witnesses with relevant information in both California and Texas.

### C.  Cost of attendance for willing witnesses

The Fifth Circuit has established what is commonly called the "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, as here, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) ("*Volkswagen I*"); see also *Genentech*, 566 F.3d at 1343. Nonetheless, the Federal Circuit does not apply the 100-mile

rule rigidly when witnesses will have to travel a significant distance no matter where they testify. *Genentech*, 566 F.3d at 1344; see also *In re Apple*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) ("Although it might be true that these individuals will need to travel a greater distance to reach [the Eastern District of Texas] than [the Central District of California] and although a flight from [China] to [the Central District of California] might take a bit less time than from [China] to [the Eastern District of Texas], in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs.") (amended to comport with the facts of this case).

Based upon the precedent of *Genetech* and *Apple*, the inconvenience of willing witnesses from travel from China or Hong Kong to either California or Texas is neutral. Further, given the potential witnesses from both California and Texas, this factor is neutral.

**D. All other practical problems that make trial of case easy, expeditious, and inexpensive**

This factor includes concerns rationally based on judicial economy. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services," the Federal Circuit has declined to hold that a "trial court clearly abused its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010). Atlas points out that "there are two related cases also involving Wi-Fi 6 technology co-pending in this division." Dkt. No. 68 p 14 (citing *Atlas v. Acer Inc.*, 2:22-CV-259 (filed July 13, 2022, 7 overlapping patents); *Atlas v. Arcadyan Tech. Corp.*, 2:22-CV-349 (filed September 7, 2022, 6 overlapping patents)).

Defendants argue that "TP-Link USA could be joined in the [Central Disitrict of

16

California], but cannot be joined [in the Eastern District of Texas] because it has no regular and established place of business in the [Eastern District of Texas]" and that transfer "would avoid having to decide the contested issues of jurisdiction." Dkt. No. 30 p 15. However, in the absence of arguments for or against this Court's exercise of personal jurisdiction over TP-Link USA, the Court finds that as sole distributor of "TP-Link" branded products in the United States without limitation to Texas, this Court more likely than not has personal jurisdiction over TP-Link USA under a stream of commerce theory. *Beverly Hills*, 21 F.3d at 1565 ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction.") (citations omitted); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (foreseeability is relevant when a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

Accordingly, this factor weighs against transfer.

### E. Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347 (citation omitted). "[T]his factor appears to be the most speculative, and case-disposition statistics may not always tell the whole story." *Id*. Defendants argue unpersuasively that this factor is neutral when comparing the median time to trial for the Eastern District of Texas with the Central District of California in civil cases. Dkt. No. 30 pp 14-15. Atlas shows that resolution in this Court is significantly faster in patent cases. Dkt. No. 68 pp 14-15.

Accordingly, this factor weighs against transfer. Nonetheless, the Court is mindful that

17

where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347.

### F.  The Local Interest in Having Localized Interests Decided at Home

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen* I, 371 F.3d at 206. Defendants argue that the case could impact residents of the Central District of California where TP-Link resides and that Atlas' recent formation in Texas is not entitled to any weight citing *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1378. Dkt. No. 30 p 14. Atlas argues for Texas' interest given its residence and the impact the case may have on Wi-Fi Alliance located in Texas and the implicated chip manufacturers with facilities located in Texas.

The actual defendants are from China and Hong Kong. "Any local interest analysis must relate to [defendants] alone, not a third-party who [defendants] elected not to join or to bring into this case – even if it is a [related] corporation." *Japan Display*, 2021 WL 3772425 * 7. There is no affirmative evidence as to whether the implicated US chip manufacturers designed the relevant chips in California or Texas. Otherwise, the design and development of the accused products likely occurred entirely overseas. Accordingly, this factor is neutral.

### G.  Remaining Factors

The parties agree that factors of familiarity of the forum with governing law and avoidance of unnecessary problems of conflict of laws are each neutral. Compare Dkt. No. 30 p 15, with Dkt. No. 68 p 15.

### H.  Conclusion as to transfer

Having considered the arguments for and against transfer, defendants have not clearly

established that the Central District of California is a clearly more convenient venue than the Eastern District of Texas.

## V.      Conclusion

For the reasons discussed above, it is **RECOMMENDED** that defendants' motions to dismiss for want of personal jurisdiction, **Dkt. No. 28**, to dismiss for want of service of process, **Dkt. No. 29**, and for transfer to the Central District of California, **Dkt. No. 30**, be **DENIED.**

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

SIGNED this 28th day of December, 2022.

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE