**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | Case No.  2:21-cv-00430-JRG-RSP |
| TP-LINK TECHNOLOGIES CO., LTD., TP-LINK CORPORATION LIMITED, TP- LINK INTERNATIONAL LTD., | § § § § § | |
| *Defendants*. | § | |

**CLAIM CONSTRUCTION ORDER**

On January 13, 2023, the Court held a hearing to determine the proper construction of disputed terms in United States Patents No. 9,531,520, 9,763,259, 9,825,738, 9,912,513, 9,917,679, 10,020,919, and 10,756,851.  Before the Court is the Opening Claim Construction Brief (Dkt. No. 88) filed by Plaintiff Atlas Global Technologies LLC ("Plaintiff" or "Atlas"). Also before the Court is the Responsive Claim Construction Brief (Dkt. No. 90) filed by Defendants TP-Link Technologies Co., Ltd., TP-Link Corporation Ltd., and TP-Link International Ltd. (collectively, "Defendants" or "TP-Link") as well as Plaintiff's reply (Dkt. No. 91).  Further before the Court are the parties' Patent Rule 4-3 Joint Claim Construction and Prehearing Statement (Dkt. No. 85) and the parties' Patent Rule 4-5(d) Joint Claim Construction Chart (Dkt. No. 93).  Having reviewed the arguments made by the parties at the hearing and in their claim construction briefing, having considered the intrinsic evidence, and having made subsidiary factual findings about the extrinsic evidence, the Court hereby issues this Claim Construction Memorandum and Order.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

Table of Contents

I.  BACKGROUND ........................................................................................................ 3

II.  LEGAL PRINCIPLES ............................................................................................. 4

III.  AGREED TERMS .................................................................................................. 7

IV.  DISPUTED TERMS IN U.S. PATENT NO. 9,531,520 ...................................... 7

    A.  "the downlink multi-user frame including a plurality of resource units (RUs)" ................. 8

    B.  "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs" and "wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame" ........ 12

    C.  "network device" ................................................................................................... 15

V.  DISPUTED TERMS IN U.S. PATENT NO. 9,763,259 ..................................... 20

    D.  "wherein the NDPA frame indicates information corresponding to the predetermined length" ................................................................................................................ 20

VI.  DISPUTED TERMS IN U.S. PATENT NO. 9,825,738 .................................... 24

    E.  "wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames" and "wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations" ............................................................................. 25

    F.  "uplink setup information" ..................................................................................... 29

    G.  "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations" ......................................................................... 32

VII.  DISPUTED TERMS IN U.S. PATENT NO. 9,912,513 ................................... 35

    H.  "wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length," "wherein at least a portion of the payload of the uplink frame is associated with the first CP length," "wherein some or all of the legacy header uses a second CP length," and "wherein at least a portion of the respective non-legacy header is associated with the first guard interval" ................................................. 35

    I.  "based on the resources for the UL MU transmission" ........................................... 40

VIII.  DISPUTED TERMS IN U.S. PATENT NO. 9,917,679 ................................. 43

    J.  "single-user (SU) format," "SU format," "multiple-user (MU) format," and "MU format" ................................................................................................................ 43

IX.  DISPUTED TERMS IN U.S. PATENT NO. 10,020,919 ................................. 48

    K.  "in response to determining that the number of the one or more station information fields in the NDPA is one," "when a number of the one or more station information

fields in the NDPA is one," and "when the number of the one or more station information fields in the NDPA is greater than one"........................................................... 49

    L. "cardinality" ................................................................................................................... 54

    M. "wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA".......................... 56

**X. DISPUTED TERMS IN U.S. PATENT NO. 10,756,851 .................................................... 58**

    N. "scheduling extension" ................................................................................................. 59

**XI. CONCLUSION .................................................................................................................. 61**

**APPENDIX A ................................................................................................................................ 63**

## I. BACKGROUND

Plaintiff alleges infringement of United States Patents No. 9,531,520 ("the '520 Patent"), 9,763,259 ("the '259 Patent"), 9,825,738 ("the '738 Patent"), 9,912,513 ("the '513 Patent"), 9,917,679 ("the '679 Patent"), 10,020,919 ("the '919 Patent"), and 10,756,851 ("the '851 Patent") (Dkt. No. 88, PX 1–7).  Plaintiff states that the patents-in-suit "cover[] various aspects of Wi-Fi 6, the current and most advanced version of Wi-Fi based on the IEEE 802.11ax standard."  (Dkt. No. 88 at 1.)  Plaintiff further states:

> The Asserted Patents enable numerous features of Wi-Fi 6, including OFDMA and MU-MIMO (e.g., the '520, '679, and '851), multi-user triggering frames and/or acknowledgement frames (e.g., the '738, '513, '919), and channel sounding, estimation, and feedback in multi-user communication (e.g., the '259, '919), and interleaving in multi-user systems (e.g., the '187).  These features support key new functionality in Wi-Fi 6, such as simultaneous uplink transmission by multiple users, simultaneous multi-user acknowledgements in response to multi-user transmissions, the ability for adjacent Wi-Fi networks to operate when interference levels are sufficiently low, the ability to timely estimate channel conditions in multi-user environments, and the ability to optimize frequency diversity in multi-user settings.  The Asserted Patents enable significantly higher network throughput, lower latency, lower power operation, and increase the efficiency of Wi-Fi networks—including in the most demanding high-density usage scenarios.

(*Id.* at 2.)

The Western District of Texas construed disputed terms in the patents-in-suit in *Atlas Global Technologies LLC v. Sercomm Corporation*, No. 6:21-CV-00818-ADA ("*Sercomm*"), and *Atlas Global Technologies LLC v. ASUSTek Computer Inc.*, No. 6:21-CV-00820-ADA ("*ASUS*"), and Defendants attach the claim construction opinion from those cases as DX 1 ("*Sercomm/ASUS*").

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties' arguments and facilitating discussion. Those preliminary constructions are noted below within the discussion for each term.

## II. LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim construction is clearly an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). "In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at 841 (citation omitted). "In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the 'evidentiary underpinnings' of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal." *Id.* (citing 517 U.S. 370).

To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See Phillips*, 415 F.3d at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim

or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining

the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III.  AGREED TERMS

The parties reached agreement on constructions as stated in their November 11, 2022 P.R. 4-3 Joint Claim Construction and Prehearing Statement (Dkt. No. 85, Ex. A). Those agreements are set forth in Appendix A to the present Claim Construction Memorandum and Order.

## IV.  DISPUTED TERMS IN U.S. PATENT NO. 9,531,520

The '520 Patent, titled "Apparatus and Method for Downlink and Uplink Multi-User Transmissions," issued on December 27, 2016, and bears an earliest priority date of March 23, 2015. The Abstract of the '520 Patent states:

> Methods and devices are described that facilitate uplink multi-user acknowledgment transmissions. In particular, acknowledgment information may

be located in a media access control (MAC) header of a payload section of a MAC Protocol Data Unit within a downlink multi-user frame. The acknowledgment information may be present in each resource unit of the downlink multi-user frame to indicate to each corresponding station properties/characteristics of a subsequent acknowledgment transmission. The properties may include one or more of (1) whether the acknowledgement transmission is multi-user or single user, (2) whether the acknowledgement transmission is transmitted immediately following receipt of the downlink multi-user frame or upon receipt of a multi-user block acknowledgement request frame, and (3) resource scheduling information for an uplink multi-user acknowledgement transmission.

**A. "the downlink multi-user frame including a plurality of resource units (RUs)"**

| **"the downlink multi-user frame including a plurality of resource units (RUs)"** ('520 Patent, Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning. Alternatively: "the downlink multi-user frame including a plurality of particular units of spatial streams and/or sub-channels of a wireless channel" | Indefinite |

Dkt. No. 85, Ex. B at 1; Dkt. No. 88 at 1; Dkt. No. 90 at 2; Dkt. No. 93 at 1.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning."

(1)  The Parties' Positions

Plaintiff argues that the indefiniteness opinion of Defendants' expert does not make sense, is a purposeful misunderstanding of the patent, and was rejected in *Sercomm/ASUS*. Dkt. No. 88 at 3. Plaintiff asserts:

In ordinary English there is no contradiction between the words "include" and "upon." A house *includes* its foundation and is built *upon* its foundation. A book *includes* its pages and is printed *upon* its pages. Similarly, claim 1 of the '520

Patent recites a DL MU frame structure that *includes* the resource units it is transmitted *upon*. PX 1 ('520) at 30:52–53.

Dkt. No. 88 at 3.

Defendants respond that because "[t]he claimed 'resource units' cannot be part of the DL MU frame being transmitted *and* part of the wireless channel over which the DL MU frame is transmitted," the claim is therefore indefinite. Dkt. No. 90 at 3.

Plaintiff replies by reiterating that "[j]ust as a book *includes* the pages it is printed *upon*, the DL MU frame *includes* the RUs it is transmitted *upon*." Dkt. No. 91 at 1.

At the January 13, 2023 hearing, the parties presented oral arguments.

(2)  Analysis

Claim 1 of the '520 Patent recites (emphasis added):

1.   A method, implemented by a network device in a wireless network, for coordinating an uplink multi-user response transmission to a downlink multi-user transmission, the method comprising:
    generating, by the network device, a downlink multi-user frame addressed to a plurality of stations operating in the wireless network, *the downlink multi-user frame including a plurality of resource units (RUs)*, wherein generating the downlink multi-user frame comprises:
        assigning each RU of the plurality of RUs to a respective station in the plurality of stations, and
        including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs,
        wherein an MPDU in one or more of the RUs in the plurality of RUs includes acknowledgement information indicating properties of a multi-user acknowledgement transmission that the station in the plurality of stations to which the RU is assigned is requested to transmit to acknowledge the downlink multi-user frame;
    transmitting the downlink multi-user frame to the plurality of stations over a wireless channel; and
    receiving the uplink multi-user response transmission, the uplink multi-user response transmission including multi-user acknowledgement transmissions respectively and simultaneously transmitted by two or more stations in the plurality of stations,
    wherein the plurality of RUs respectively correspond to a plurality of simultaneous uplink transmissions, and each of the plurality of simultaneous

- 9 -

uplink transmissions uses a sub-channel, spatial stream, or sub-channel and spatial stream combination that is not used by any other of the plurality of simultaneous uplink transmissions.

The specification discloses that a multi-user frame includes resource units:

In one embodiment, the first MPDU is located in a *first resource unit of the downlink multi-user frame* allocated to the first station, wherein *the downlink multi-user frame includes a second resource* unit that contains a second MPDU with acknowledgement information for a second station to transmit a second multi-user acknowledgement frame.

'520 Patent at 2:47–53 (emphasis added); *see id.* at 25:6–10 ("For example, a first set of STAs may transmit a set of acknowledgements while a second set of STAs may transmit data (e.g., video, voice, etc.) in designated resource units of the same UL MU transmission.").  Plaintiff notes that the specification defines "include" as being akin to "comprising" as in the transitional phrase of a patent claim:

To the extent that the term include, have, or the like is used, such term is intended to be inclusive in a manner similar to the term comprise as comprise is interpreted when employed as a transitional word in a claim.

*Id.* at 29:13–16.  The specification also discloses:

Each MPDU may include data and/or control frames intended for each respective STA and may be placed in resource units within the DL MU frame assigned/allocated to each respective STA.  The resource units may be particular spatial streams or sub-channels of a wireless channel *upon which* the DL MU frame will be transmitted.

*Id.* at 14:9–14 (emphasis added); *see id.* at 18:1–8 (same) & 20:48–50 (same).  Defendants argue that this usage of "upon which" gives rise to a contradiction.

Defendants' expert opines that "the specification requires the RUs to be resources on which DL MU a frame [*sic*, a DL MU frame] is transmitted, yet claim 1 requires the DL MU frame to 'includ[e] a plurality of resource units (RUs),'" and "since the claims are contrary to the specification, a POSITA would have been unable to ascertain the bounds of this claim which, I

- 10 -

understand, renders it indefinite."  Dkt. No. 90, DX 2, Nov. 11, 2022 Roy Decl. at ¶ 31 (citation omitted).  Defendants cite authority that "[s]ometimes such ambiguity [in claim drafting] is the result of sloppy drafting, and sometimes it appears that claims are drafted with a degree of indefiniteness so as to leave room to later argue for a broad interpretation designed to capture later-developed competition."  *See 3M Innovative Props. v. Tredegar Corp.*, 725 F.3d 1315, 1334 (Fed. Cir. 2013) (Plager, J., concurring).

This claim, however, is not drafted in an indefinite manner.  Plaintiff's expert persuasively opines that "the specification teaches a relationship between the RUs of a frame and the resources of the wireless channel," and "there is no contradiction between RUs being part of a frame and an RU of a frame being transmitted upon an associated resource of a wireless channel."  Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶ 36; *see id.* at ¶¶ 33–43; *see also* '520 Patent at 2:47–53 (reproduced above); *id.* at 1:31–36 ("[A]n access point may transmit a single downlink (DL) Orthogonal Frequency Division Multiple Access (OFDMA) frame that assigns particular resource units (RUs) to separate stations in the wireless system.").  In this technical context of wireless transmissions, one cannot expect any ordinary distinctions between "including" and "upon" to necessarily apply.  The opinions of Plaintiff's expert are persuasive that a downlink multi-user frame can be subdivided into RUs and can then be transmitted using those RUs, such that there is no contradiction between the usage of "including" and "upon."

*Sercomm/ASUS* likewise rejected this indefiniteness argument, finding that "while the claim language is clunky, the Court concludes that a POSITA[] reading the specification would understand that 'includes' and 'upon' are used interchangeably."  *Sercomm/ASUS* at 15.

Defendants therefore do not meet their burden to show inconsistency or otherwise show indefiniteness.  *Sonix*, 844 F.3d at 1377.  Defendants do not present any alternative proposed construction, and no further construction is necessary.

The Court therefore hereby construes **"the downlink multi-user frame including a plurality of resource units (RUs)"** to have its **plain meaning**.

**B.  "including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs" and "wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame"**

| **"including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs"** <br> ('520 Patent, Claim 1) <br><br> **"wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame"** <br> ('520 Patent, Claim 9) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | Indefinite |

Dkt. No. 85, Ex. B at 2–3; Dkt. No. 88 at 4; Dkt. No. 90 at 4; Dkt. No. 93 at 1 & 3–4.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction for both of these disputed terms: "Plain and ordinary meaning."

(1)  The Parties' Positions

Plaintiff argues that the indefiniteness opinion of Defendants' expert does not make sense, is a purposeful misunderstanding of the patent, and was rejected in *Sercomm/ASUS*.  Dkt. No. 88 at 3.  Plaintiff asserts:

> Again, Dr. Roy applies unusually narrow definitions of common English words like "in."  There is no contradiction between the words "in" and "upon."  A package can be simultaneously in a delivery truck and upon a delivery truck.  A boat can be simultaneously in the water and upon the water.  Similarly, the '520 specification uses words like "in" and "upon" interchangeably to describe the relationship between MPDUs and resource units (and the "upon" embodiment is described using optional language): . . . .

*Id.*

Defendants respond that "[a]gain, 'resource units' cannot both be included in the DL MU frame (as specified in the claims) *and* part of the streams or sub-channels upon which the DL MU frame is transmitted (as taught by the specification)," and "[r]esource units cannot both be data units to be transmitted *and* a transmission medium (e.g., a spatial streams [*sic*] or subchannel) that is used for transmissions."  Dkt. No. 90 at 5 (citation omitted).

Plaintiff replies by reiterating its arguments and by submitting, for example, that Figure 11 of the '520 Patent illustrates an embodiment "wherein 'payload' MPDUs are located in RUs and also transmitted upon RUs."  Dkt. No. 91 at 3; *see id.* at 2–3.

At the January 13, 2023 hearing, the parties presented oral arguments together with the above-discussed term "the downlink multi-user frame including a plurality of resource units (RUs)."

(2)  Analysis

Claim 1 of the '520 Patent, for example, recites in relevant part (emphasis added):

- 13 -

1.  A method, implemented by a network device in a wireless network, for coordinating an uplink multi-user response transmission to a downlink multi-user transmission, the method comprising:

generating, by the network device, a downlink multi-user frame addressed to a plurality of stations operating in the wireless network, the downlink multi-user frame including a plurality of resource units (RUs), wherein generating the downlink multi-user frame comprises:

assigning each RU of the plurality of RUs to a respective station in the plurality of stations, and

*including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs,*

wherein an MPDU in one or more of the RUs in the plurality of RUs includes acknowledgement information indicating properties of a multi-user acknowledgement transmission that the station in the plurality of stations to which the RU is assigned is requested to transmit to acknowledge the downlink multi-user frame;

* * *

The specification discloses:

Each MPDU may include data and/or control frames intended for each respective STA and *may be placed in resource units within the DL MU frame* assigned/allocated to each respective STA.  The resource units may be particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted.

* * *

*The data MPDU may include any type of data* (e.g., voice, video, best effort, background, or control data) that is specifically intended for the particular STA and *may be placed in resource units* within the DL MU frame assigned/allocated to each respective STA.  The resource units may be particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted.

* * *

The resource units may be particular spatial streams or sub-channels of a wireless channel upon which the DL MU frame will be transmitted.

'520 Patent at 14:9–14, 18:1–8 & 20:48–50 (emphasis added).

The parties raise substantially the same dispute for the present terms as discussed above

regarding the "downlink multi-user frame including . . ." term, although here the operative word

in Claim 1 is "in" rather than "including." Defendants' expert opines that "MPDUs may be transmitted as part of a frame which *uses* RUs (*e.g.*, frequency subcarriers or streams) in both DL and UL transmissions, but they may not be 'included . . . in' or 'located in' RUs as the claims require." *See* Dkt. No. 90, DX 2, Nov. 11, 2022 Roy Decl. at ¶ 37; *see also id.* at ¶¶ 34–37. Plaintiff's expert persuasively opines that there is no contradiction here between the words "in" and "upon." *See* Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶ 51; *see also id.* at ¶¶ 48–51. *Sercomm/ASUS* reached the same conclusion. *See Sercomm/ASUS* at 18–19.

Thus, for substantially the same reasons discussed above as to the "downlink multi-user frame including . . ." term, the Court hereby expressly rejects Defendants' indefiniteness argument for the present terms in Claim 1 and Claim 9. Defendants do not present any alternative proposed construction, and no further construction is necessary.

The Court therefore hereby construes **"including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs"** and **"wherein the first MPDU is located in a first resource unit of the downlink multi-user frame allocated to the first station, wherein the downlink multi-user frame includes a second resource unit that contains a second MPDU that includes acknowledgement information for the second multi-user acknowledgement frame"** to have their **plain meaning**.

## C. "network device"

| "network device"<br>('520 Patent, Claims 1, 6) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "an access point that may communicate with STAs over a network" |

Dkt. No. 85, Ex. B at 4; Dkt. No. 90 at 5; Dkt. No. 93 at 1 & 2.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary ([]reject Defendants' proposal of limiting this term to an 'access point')."

<u>(1) The Parties' Positions</u>

Plaintiff argues that "TP-Link seeks to narrowly limit a 'network device' to an 'access point,' which is just one of many types of network device." Dkt. No. 88 at 6. Plaintiff argues that the specification states that "network device" includes non-access-point stations, that the term "access point" does not appear in Claim 1 or Claim 6 (even though it appears in other independent claims), and that "plain and ordinary meaning will not impermissibly expand the claim scope." *Id.* at 6–7.

Defendants respond that "Atlas ignores how 'network device' is specifically used in claims 1 and 6, namely, to refer to actions performed by an access point ('AP') in communicating with stations." Dkt. No. 90 at 5. Defendants argue that "[a]ny other interpretation would not work" because "a non-access point does *not* generate a downlink multi-user frame addressed to a plurality of stations[,] transmit the downlink multi-user frame to the plurality of stations[,] or receive the uplink multi-user response transmission from the stations, and that a non-access point would not even be capable of doing so." *Id.* at 6 (citation omitted)

Plaintiff replies that "[t]he specification teaches that a 'network device' is not limited to an AP," that "TP-Link fails to cite any intrinsic evidence restricting a 'network device' to an AP," and that "TP-Link neglects to address the overlapping functionality that a STA and access point may have." Dkt. No. 91 at 3 (citations omitted).

At the January 13, 2023 hearing, the parties presented oral arguments.

(2)  Analysis

Claim 1 of the '520 Patent recites (emphasis added):

1.  A method, implemented by a *network device* in a wireless network, for coordinating an uplink multi-user response transmission to a downlink multi-user transmission, the method comprising:

generating, by the *network device*, a downlink multi-user frame addressed to a plurality of stations operating in the wireless network, the downlink multi-user frame including a plurality of resource units (RUs), wherein generating the downlink multi-user frame comprises:

assigning each RU of the plurality of RUs to a respective station in the plurality of stations, and

including a respective set of MAC Protocol Data Units (MPDUs) in each RU of the plurality of RUs,

wherein an MPDU in one or more of the RUs in the plurality of RUs includes acknowledgement information indicating properties of a multi-user acknowledgement transmission that the station in the plurality of stations to which the RU is assigned is requested to transmit to acknowledge the downlink multi-user frame;

transmitting the downlink multi-user frame to the plurality of stations over a wireless channel; and

receiving the uplink multi-user response transmission, the uplink multi-user response transmission including multi-user acknowledgement transmissions respectively and simultaneously transmitted by two or more stations in the plurality of stations,

wherein the plurality of RUs respectively correspond to a plurality of simultaneous uplink transmissions, and each of the plurality of simultaneous uplink transmissions uses a sub-channel, spatial stream, or sub-channel and spatial stream combination that is not used by any other of the plurality of simultaneous uplink transmissions.

As a threshold matter, Plaintiff argues that Defendants do not raise any real claim scope issue because "the point of novelty resides with the steps of these methods, not with the machine that performs them." *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1229 (Fed. Cir. 2016).  The claim, however, expressly recites that the method is "implemented by a network device" and that one of the steps is "generating, by the network device . . .," so in an infringement analysis the meaning of "network device" may be relevant to whether the recited method steps are performed.

Nonetheless, the specification discloses that a device in a communication network can be

an access point ("AP") device or can be a "non-AP" device:

> Wireless local area network (WLAN) devices are deployed in diverse environments.  These environments are generally characterized by the existence of access points and non-access point stations.

> * * *

> In the example network 200, at least one wireless communication device (e.g., device 211) is an access point (AP).  An AP may be referred to as an AP STA, an AP device, or a central station.  The other wireless communication devices (e.g., devices 212–215) may be non-AP STAs. Alternatively, all of the wireless communication devices 211–215 may be non-AP STAs in an Ad-hoc networking environment.

> . . . A non-AP STA (e.g., a client device operable by a user) may be, for example, a device with wireless communication capability, a terminal, a wireless transmit/receive unit (WTRU), a user equipment (UE), a mobile station (MS), a mobile terminal, a mobile subscriber unit, a laptop, a non-mobile computing device (e.g., a desktop computer with wireless communication capability) or the like.  In one or more aspects, *a non-AP STA may act as an AP* (e.g., a wireless hotspot).

> In one aspect, an AP is a functional entity for providing access to a distribution system, by way of a wireless medium, for an associated STA.  For example, an AP may provide access to the Internet for one or more STAs that are wirelessly and communicatively connected to the AP.  In FIG. 2, wireless communications between non-AP STAs 212–215 are made by way of the AP 211.  However, when a direct link is established between two or more non-AP STAs 212–215, the connected STAs 212–215 can communicate directly with each other (without using the AP 211).

> In one or more implementations, OFDMA-based 802.11 technologies are utilized, and for the sake of brevity, a STA refers to a non-AP high efficiency (HE) STA, and an AP refers to an HE AP.  In one or more aspects, *a STA may act as an AP*.

'520 Patent at 1:26–29 & 6:24–61 (emphasis added); *see id.* at Fig. 2 (illustrating devices).

Thus, reading Claims 1 and 6 in light of the specification, these claims use "network

device" to have a broader meaning than "access point," particularly when considering that

independent Claim 18 expressly recites an "access point" in a wireless network.

Defendants submit the opinion of their expert that a non-AP device would be unable to perform the recited steps, and Defendants for example cite disclosure that downlink frames are sent by an AP.  Dkt. No. 90, DX 3, Oct. 17, 2022 Roy Suppl. Decl. at ¶ 4; *see* '520 Patent at 1:29–35, 5:9–13, 5:44–47 & 10:63–67.  The Federal Circuit has stated, however, that "it is . . . improper to add limitations to constructions to exclude only certain inoperable embodiments." *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1025 (Fed. Cir. 2020) (citing *Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1174 (Fed. Cir. 2008)).  The opinion of Defendants' expert in this regard is therefore unpersuasive.  Defendants also argue that "[t]wo connected STAs communicating directly with each other do not use downlink frames and uplink responses."  Dkt. No. 90 at 7.  Defendants' argument perhaps pertains to other arguments such as enablement, written description, or infringement but does not warrant a narrow construction of the generic term "network device."  Indeed, *Sercomm/ASUS* noted that "network device" is "generic, in the same way a 'communications device' might describe a telephone." *Sercomm/ASUS* at 22.

The Court therefore hereby expressly rejects Defendants' proposed construction, and no further construction is necessary. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the

parties' quarrel, the district court rejected Defendants' construction."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1326 (Fed. Cir. 2012); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 977–79 (Fed. Cir. 2021).

The Court therefore hereby construes **"network device"** to have its **plain meaning**.

## V.  DISPUTED TERMS IN U.S. PATENT NO. 9,763,259

The '259 Patent, titled "Sounding Method," issued on September 12, 2017, and bears an earliest priority date of September 23, 2014.  The Abstract of the '259 Patent states:

> A sounding method by a receiving device is provided.  The receiving device receives an NDPA frame from a transmitting device, and then receives an NDP frame from the transmitting device.  After receiving the NDP frame, the receiving device transmits to the transmitting device a feedback frame including subchannel information measured on a subchannel that is allocated to the first receiving device among a plurality of subchannels into which a predetermined band is divided.

### D.  "wherein the NDPA frame indicates information corresponding to the predetermined length"

| "wherein the NDPA frame indicates information corresponding to the predetermined length" ('259 Patent, Claim 6) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | Indefinite |

Dkt. No. 85, Ex. B at 5; Dkt. No. 88 at 7; Dkt. No. 90 at 8; Dkt. No. 93 at 6.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning."

(1)  The Parties' Positions

Plaintiff argues: "This phrase from '259 Claim 6 is understood by one of skill and needs no construction.  It uses commonly-understood words like 'indicates' and 'corresponding' that are not indefinite."  Dkt. No. 88 at 7.  Plaintiff also argues that "[t]he '259 specification explains there are numerous ways to 'indicate' the predetermined length of the CB [(compressed beamforming)] feedback frame," "[t]he extrinsic evidence also confirms Atlas's plain and ordinary meaning construction," and "[f]inally, in the *ASUS* and *Sercomm* cases, Dr. Roy [(Defendants' expert)] asserted an indefiniteness argument that is identical to what he asserts here." *Id.* at 8 (citations omitted).

Defendants respond that "a POSITA would not be able to ascertain what is—and what is not—within the scope of the phrase 'indicates information corresponding to . . .,' and "[n]owhere does [the specification] explain how a frame is to 'indicate information,' or how that information 'corresponds to the predetermined length.'"  Dkt. No. 90 at 8.  Defendants submit that "the patentee elected not to use the phrase 'contains information' or 'identifies' in the specification, the discussion of which could have informed a POSITA, for example, that the NDPA frame actually provides that information." *Id.*

Plaintiff replies that breadth is not indefiniteness and also that "[t]he specification identifies different ways to 'indicate' how information corresponds to the predetermined length." Dkt. No. 91 at 3 (citations omitted).

At the January 13, 2023 hearing, the parties presented no oral arguments and instead rested on their briefing.

(2)  Analysis

Claim 6 of the '259 Patent depends from Claim 5, which in turn depends from Claim 1.

Claims 1, 5, and 6 recite (emphasis added):

1.  A sounding method by a first receiving device, the method comprising:
     receiving a null data packet announcement (NDPA) frame from a transmitting device;
     receiving a null data packet (NDP) frame from the transmitting device after receiving the NPDA frame; and
     transmitting to the transmitting device a feedback frame including subchannel information measured on a first subchannel after receiving the NDP frame, the first subchannel being a subchannel that is allocated to the first receiving device among a plurality of subchannels into which a predetermined band is divided,
          wherein transmitting the feedback frame includes:
               transmitting the feedback frame to the transmitting device while a second feedback frame including subchannel information measured on the second subchannel is transmitted to the transmitting device by a second receiving device, the second subchannel being a subchannel that is allocated to the second receiving device among the plurality of subchannels.

* * *

5.  The method of claim 1, wherein transmitting the feedback frame includes
     adding pad bits to a data field of the feedback frame when a length of data to be transmitted by the feedback frame is shorter than a *predetermined length*, or partitioning the data into a plurality of fragments and inserting any one of the fragments to the data field of the feedback frame when the length of the data is longer than the *predetermined length*.

6.   The method of claim 5, *wherein the NDPA frame indicates information corresponding to the predetermined length*.

The specification discloses:

In some embodiments, the beamformer device may indicate the maximum CB [(compressed beamforming)] length to the beamformee devices.  The maximum CB length may be a maximum length of the data field in the CB frame or a maximum length of the CB frame.

In one embodiment, the beamformer device may indicate the maximum CB length using the NDPA frame.  For example, a data field of the NDPA frame, i.e., a

frame body field of a MAC frame inserted to the NDPA frame may include information on the maximum CB length.

In another embodiment, the beamformer device may indicate the maximum CB length using the NDP frame. For example, a HE signal field (HE-SIG-A or HE-SIG-B) of the NDP frame may include the maximum CB length as the signaling information.

As such, when the beamformer device indicates the maximum CB length using the NDPA frame or the NDP frame, the beamformer device and the beamformee devices may change the maximum CB length each time performing a sounding procedure.

On the other hand, the MAC efficiency may be deteriorated because the beamformee device may perform unnecessary padding or fragmentation due to the maximum CB length. Accordingly, in yet another embodiment, the beamformer device may select the maximum CB length based on other information. For example, the beamformer device may determine the maximum CB length based on a previous CB frame length or the number of antennas.

'259 Patent at 15:38–65; *see id.* at 2:35–37 ("The NDPA frame or the NDP frame may indicate information corresponding to the predetermined length."); *see also id.* at Fig. 20.

Plaintiff's expert opines that "a POSITA would readily understand that the claim requires the NDPA frame to indicate certain information but need not explicitly express that information in a particular format." Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶ 56; *see id.* at ¶¶ 53–64.

Defendants' expert opines that "[t]he specification contains no disclosure on how a frame is to 'indicate[] information' or how that indicated information is to 'correspond[] to the predetermined length.'" Dkt. No. 90, DX 2, Nov. 11, 2022 Roy Decl. at ¶ 40; *see id.* at ¶¶ 39–42.

On balance, Defendants' arguments and expert opinions regarding indefiniteness perhaps may relate to potential assertions of lack of written description or lack of enablement but do not demonstrate any lack of reasonable clarity of the claim language. Indeed, *Sercomm/ASUS* also

rejected substantially the same indefiniteness argument presented here by Defendants, noting that "a claim term is not indefinite simply because it is broad." *Sercomm/ASUS* at 25 (citing *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017)); *see Sercomm/ASUS* at 24–26.  Defendants do not show that "indicate" has anything other than its ordinary meaning in common parlance, and Plaintiff notes that the Federal Circuit has found that "correspond to" has a known plain meaning.  *See Respironics, Inc. v. Invacare Corp.*, 303 F. App'x 865, 880–81 (Fed. Cir. 2008) (finding that "corresponding to" is broader than "equal to"); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999) (affirming application of the "ordinary meaning" of "correspond to").

The Court therefore hereby expressly rejects Defendants' indefiniteness argument. Defendants do not present any alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes **"wherein the NDPA frame indicates information corresponding to the predetermined length"** to have its **plain meaning**.

## VI.  DISPUTED TERMS IN U.S. PATENT NO. 9,825,738

The '738 Patent, titled "Acknowledgement Method and Multi User Transmission Method," issued on November 21, 2017, and bears an earliest priority date of April 4, 2014.  The Abstract of the '738 Patent states:

> An Acknowledgment (ACK) method is provided by a receiving device in a Wireless Local Area Network (WLAN).  The receiving device receives a plurality of data units having a plurality of Traffic Identifiers (TIDs) and transmits an ACK frame including a plurality of ACK information fields for at least part of the plurality of data units.  An ACK information field for a data unit satisfying a first condition among the plurality of ACK information fields includes a Traffic Identifier (TID) and a block ACK bitmap indicating whether the data unit has been successfully received.  An ACK information field for a data unit satisfying a second condition and having been successfully received among the plurality of

ACK information fields includes the first TID and does not include a block ACK bitmap.

**E. "wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames" and "wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations"**

| **"wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames"** ('738 Patent, Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning<br><br>Alternatively:<br>    "wherein the second information in the common information portion is a value that depends on the total number of space time streams to be used to transmit the multiple uplink frames"[1] | Indefinite |

---

[1] Plaintiff previously proposed: "Plain and ordinary meaning.  Alternatively, 'wherein the second information in the common information portion is a value that *is related to* the total number of space time streams to be used to transmit the multiple uplink frames.'"  Dkt. No. 88 at 9 (emphasis added).

| "wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations" ('738 Patent, Claim 9) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning<br><br>Alternatively:<br>    "wherein the second information in the common information portion is a value that depends on the total number of space time streams to be used to simultaneously transmit the multiple uplink frames" | Indefinite |

Dkt. No. 85, Ex. B at 6 & 8; Dkt. No. 88 at 9; Dkt. No. 90 at 9; Dkt. No. 93 at 7–8 & 9.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction for both of these disputed terms: "Plain and ordinary meaning."

(1)  The Parties' Positions

Plaintiff argues that the meaning of "function" is readily understandable in the technical context of these terms.  Dkt. No. 88 at 9.  Plaintiff also argues that the specification provides further clarity and that *Sercomm/ASUS* rejected an indefiniteness challenge.  *Id.* at 9–10.

Defendants respond that the claim language is unclear, that "the concept of a 'function' is broad," and that "the claims themselves provide no help in ascertaining any objective meaning for these terms."  Dkt. No. 90 at 10–11.

Plaintiff replies that "TP-Link complains the claimed function is not limited to a specific formula[, b]ut that is an issue of breadth, not definiteness."  Dkt. No. 91 at 4 (citations omitted).

At the January 13, 2023 hearing, the parties presented oral arguments.

(2)  Analysis

Claim 1 of the '738 Patent, for example, recites (emphasis added):

1.  A method of operating an access point in a wireless communication network, the method comprising:

generating downlink data;

generating uplink setup information, the uplink setup information including a first information to be used for uplink multi-user transmission;

transmitting the downlink data and the uplink setup information in a single physical downlink frame to a plurality of stations;

simultaneously receiving multiple uplink frames from multiple stations of the plurality of stations; and

transmitting an acknowledgement frame to the multiple stations after a successful reception of the multiple uplink frames,

wherein the uplink setup information includes a common information portion and a dedicated information portion, the common information portion includes a *second information* being common to all of the plurality of stations to receive the uplink setup information, and the dedicated information portion includes respective third information specific to each of the plurality of stations to receive the uplink setup information, and

*wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames*.

The specification discloses:

In some embodiments, the common information is information to be commonly used for the UL MU-MIMO transmission by the station STA1 and STA2, and includes the total number of data streams, i.e., space-time streams to be transmitted by the stations STA1 and STA2 and a transmission length of the UL data frame.

'738 Patent at 22:39–44.

Defendants' expert opines that because the claim language merely refers to two pieces of data ("second information" and the "total number of space time streams") without any constraints or guidance regarding the "function," a person of ordinary skill in the art would be unable to determine infringement or non-infringement.  Dkt. No. 90, DX 2, Nov. 11, 2022 Roy Decl. at ¶ 46.

Plaintiff's expert opines that "a function" here simply means that one quantity is determined by one or more other quantities. Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶¶ 68 & 70; *see id.* at ¶¶ 66–79. Plaintiff also cites, as an example, a disclosure in the specification that refers to the number of long training fields being a function of the number of space-time streams:

> For the MIMO channel estimation, the number of HEW long training fields (HEWLTFs) may be determined in accordance with the number of antennas to be used for transmission, i.e., the number of space-time streams. For example, when the numbers of space-time streams are 1, 2, 3, 4, 5, 6, 7, and 8, the numbers of long training fields may be determined as 1, 2, 4, 4, 6, 6, 8, and 8, respectively.

'738 Patent at 22:22–29 (emphasis added).

As to Defendants' argument that the "function" is not adequately defined such that infringement or non-infringement cannot be determined, Plaintiff's expert opines that the claim scope is reasonably clear because "if the second information is not dependent on the value of the total number of space time streams, then it falls outside the scope of the claims." Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶ 75.

*Sercomm/ASUS* likewise found that these terms are not indefinite, noting that "the claims and specification are consistent with the plain-and-ordinary meaning of this term, namely where one variable is based on another variable," and "a claim term is not indefinite simply because it is broad." *See Sercomm/ASUS* at 30 (citing *BASF*, 875 F.3d at 1367); *see id.* at 29–31.

The Court therefore hereby expressly rejects Defendants' indefiniteness argument. Defendants do not present any alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes **"wherein the second information is a function of a total number of space time streams to be used to transmit the multiple uplink frames"**

and **"wherein the second information is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frame and the one or more uplink frames from the one or more other stations"** to have their **plain meaning**.

## F. "uplink setup information"

| "uplink setup information" ('738 Patent, Claims 1, 9) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "information on the transmission characteristics to be used for a subsequent uplink transmission" |

Dkt. No. 85, Ex. B at 9; Dkt. No. 88 at 11; Dkt. No. 90 at 11–12; Dkt. No. 93 at 6–9.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning ([]reject Defendants' proposal that this information must be 'transmission characteristics to be used for a subsequent uplink transmission')."

<u>(1) The Parties' Positions</u>

Plaintiff argues that "[t]he '738 Patent claims provide sufficient detail regarding the uplink setup information and thus no further construction is necessary." Dkt. No. 88 at 11.

Defendants respond that "[t]he disputed phrase, the surrounding claim language, and the specification are abundantly clear: setup information is used for a subsequent uplink transmission." Dkt. No. 90 at 12 (citing '738 Patent at 21:4–6).

Plaintiff replies that "TPLink provides no good reason to substitute its paraphrasing for the actual claim language." Dkt. No. 91 at 5.

At the January 13, 2023 hearing, the parties presented no oral arguments and instead rested on their briefing.

<u>(2)  Analysis</u>

Claim 9 of the '738 Patent, for example, recites in relevant part (emphasis added):

9.   A method of operating a station in a wireless communication network, the method comprising:
. . .
*uplink setup information* including a first information to be used for uplink multi-user transmission by the station,
. . .
transmitting an uplink frame to the access point, the uplink frame being simultaneously transmitted with one or more uplink frames from one or more other stations of the plurality of stations, the uplink frame being generated based on the *uplink setup information*; and
. . .
wherein the *uplink setup information* includes a common information portion and a dedicated information portion, the common information portion includes a second information being common to all of the plurality of stations to receive the uplink setup frame, the dedicated information portion includes respective third information specific to each of the plurality [of] stations to receive the uplink setup information . . . .

The specification discloses:

Referring to FIG. 22, an AP transmits a UL MU-MIMO initiation (ULI) frame to perform UL MU-MIMO with a plurality of stations STA1, STA2, and STA3.  The ULI frame indicates the stations STA1, STA2, and STA3 to initiate the UL MU-MIMO transmission.

* * *

The UL setup frame includes setup information to be used for the UL MU-MIMO by each station.  The setup information may include for example a transmission power, modulation and coding scheme (MCS) information, or a data length to be used by each station.  The setup information may further include information on a structure of a long training field (LTF) to be used by each station.

Each of the stations STA1 and STA2 receiving the UL setup frame transmits a UL data frame, for example a UL MU PPDU, based on the setup information.

* * *

> In some embodiments, the UL setup frame that is transmitted by the AP, after the AP selects the stations for performing the MU-MIMO based on the UL req frames received from the candidate stations, includes setup information. The setup information may include common information that is common to all stations for joining in the UL MU-MIMO and dedicated information that is specific to each station.

> In some embodiments, the common information is information to be commonly used for the UL MU-MIMO transmission by the station STA1 and STA2, and includes the total number of data streams, i.e., space-time streams to be transmitted by the stations STA1 and STA2 and a transmission length of the UL data frame.

'738 Patent at 20:48–52, 20:63–21:6 & 22:31–44; *see id.* at 17:9–17 (similar).

Defendants do not persuasively justify limiting the "uplink setup information" to information on the transmission characteristics to be used for a subsequent uplink transmission. Defendants argue that other types of information are addressed separately, such as the "common" and "dedicated" information recited in above-reproduced Claim 9, but the claim itself recites such "common" and "dedicated" information as "include[d]" within the "uplink setup information." *Sercomm/ASUS* reached the same conclusion, finding that uplink setup information is not limited to transmission characteristics. *See Sercomm/ASUS* at 33–34. Finally, these claims already separately recite "uplink setup information including a first information to be used for uplink multi-user transmission," so Defendants' proposal of "to be used for a subsequent uplink transmission" is confusing and potentially inconsistent and, moreover, Defendants do not adequately support their proposal of introducing "subsequent."

The Court therefore hereby expressly rejects Defendants' proposed construction, and no further construction is necessary, particularly in light of the context provided by surrounding claim language as to what "uplink setup information" includes. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291; *Bayer*, 989 F.3d at 977–79.

The Court accordingly hereby construes **"uplink setup information"** to have its **plain meaning**.

**G.  "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations"**

| "wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations" ('738 Patent, Claim 6)<br><br>"wherein the acknowledgement frame includes acknowledgement information for the station and one or more other stations of the plurality of stations" ('738 Patent, Claim 14) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "wherein the acknowledgement frame includes an information per TID subfield, a block ACK starting sequence control field, and a block ACK bitmap subfield for one or more of the plurality of stations" |

Dkt. No. 85, Ex. B at 10; Dkt. No. 88 at 13; Dkt. No. 90 at 13; Dkt. No. 93 at 8 & 9.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction for both of these disputed terms: "Plain and ordinary meaning ([]reject Defendants' proposed construction)."

(1)  The Parties' Positions

Plaintiff argues that "TP-Link's construction replaces the words 'acknowledgment information' with a lengthy and specific implementation from just one of many embodiments." Dkt. No. 88 at 13.

Defendants respond that "TP-Link's proposed construction should be adopted to avoid any attempt to depart from the specific and clear definition of 'acknowledgement information for one or more of the plurality of stations' in the '738 patent."  Dkt. No. 90 at 13.  In particular,

Defendants argue that "the patentee opens the '738 patent with a specific definition of the 'acknowledgment frame,' including in the Abstract wherein the patentee is otherwise not discussing any preferred embodiment, and then consistently applies that definition across the specification." *Id.* at 13 (citing '738 Patent at 2:34–42, 12:4–8 & FIG. 16).

Plaintiff replies that Defendants do not show any lexicography, and Plaintiff argues that the portions of the Abstract and the specification relied upon by Defendants do not support Defendants' proposed construction. Dkt. No. 91 at 5.

At the January 13, 2023 hearing, the parties presented oral arguments.

(2)  Analysis

Defendants emphasize the Abstract of the '738 Patent, which states:

An ACK information field for a data unit satisfying a first condition among the plurality of ACK information fields includes a Traffic Identifier (TID) and a block ACK bitmap indicating whether the data unit has been successfully received.

Defendants also cite the specification:

An ACK information field for a data unit satisfying the first condition among the plurality of ACK information fields may further include block ACK starting sequence control information. The block ACK starting sequence control information may indicate a sequence number of the first MPDU among a plurality of MPDUs included in the data unit, and a plurality of bits in the block ACK bitmap may indicate whether the plurality of MPDUs have been successfully received in an order of sequence number.

The ACK frame may further include identification information of the plurality of transmitting devices.

'738 Patent at 2:34–44.

Nothing in these disclosures, or the other disclosures cited by Defendants, sets forth anything resembling a definition for "acknowledgement frame," let alone "*clearly* set[s] forth a definition of the disputed claim term," and Defendants do not otherwise justify their narrow proposed construction. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir.

2012) (emphasis added).  *Sercomm/ASUS* reached the same conclusion.  *See Sercomm/ASUS* at 37–39.

Defendants' proposed construction perhaps corresponds to the description of particular figures, such as Figure 7, in the specification:

> The frame body field includes a block ACK (BA) information field.  The BA information field has a variable length according to the number of TIDs and includes an information *per TID (per TID info) subfield*, a *block ACK starting sequence control subfield*, and a *block ACK bitmap subfield*, for each TID.  The information per TID subfield, the block ACK starting sequence control subfield, and the block ACK bitmap subfield are repeated for each TID.
>
> * * *
>
> The first instance of the information per TID subfield, the block ACK starting sequence control subfield, and the block ACK bitmap subfield corresponds to the lowest TID value with subsequent instances ordered by increasing values of the information per TID subfield.

*Id.* at 11:34–41 & 12:4–8 (emphasis added); *see id.* at 14:11–28 (discussing Figure 11).

The specification also describes other embodiments, such as the embodiments of Figures 9 and 17, for example "us[ing] a normal ACK not the block ACK."  *Id.* at 12:40–41; *see id.* at 12:40–67 & 18:20–23.  Plaintiff also persuasively argued at the January 13, 2023 hearing that using TIDs is an optional feature and that the claims here at issue contain no suggestion that they are limited to using TIDs.  Defendants' proposed construction would improperly limit the disputed term to specific features of a particular disclosed embodiment.  *See Phillips*, 415 F.3d at 1323.

The Court therefore hereby expressly rejects Defendants' proposed construction, and no further construction is necessary.  *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291; *Bayer*, 989 F.3d at 977–79.

The Court accordingly hereby construes **"wherein the acknowledgement frame includes acknowledgement information for one or more of the plurality of stations"** to have its **plain meaning**.

## VII.  DISPUTED TERMS IN U.S. PATENT NO. 9,912,513

The '513 Patent, titled "System and Method for Synchronization for OFDMA Transmission," issued on March 6, 2018, and bears an earliest priority date of September 28, 2015.  The Abstract of the '513 Patent states:

> In an example of wireless communications, an access point may send a downlink frame to multiple stations.  The downlink frame may include information indicative of a cyclic prefix length to be utilized by the stations.  In response, some or all of the stations may transmit their respective uplink frames to the access point.  A cyclic prefix for a portion of each respective uplink frame may have a cyclic prefix length corresponding to the information included in the downlink frame.  The downlink frame may be, for example, a beacon frame or a trigger frame.  A trigger frame may allocate resources for uplink orthogonal frequency division multiple access (OFDMA) transmission.  Other methods, apparatus, and computer-readable media are also disclosed.

**H.  "wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length," "wherein at least a portion of the payload of the uplink frame is associated with the first CP length," "wherein some or all of the legacy header uses a second CP length," and "wherein at least a portion of the respective non-legacy header is associated with the first guard interval"**

| **"wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length"** ('513 Patent, Claim 1) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning<br><br>Alternatively:<br>    "wherein some or all of the payload of the uplink frame uses the first guard interval length" | Indefinite |

**"wherein at least a portion of the payload of the uplink frame is associated with the first CP length"**
('513 Patent, Claim 9)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively:<br>    "wherein some or all of the payload of the uplink frame uses the first CP length" | Indefinite |

**"wherein at least a portion of the legacy header is associated with a second CP length"**
('513 Patent, Claim 10)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively:<br>    "wherein some or all of the legacy header uses a second CP length" | Indefinite |

**"wherein at least a portion of the respective non-legacy header is associated with the first guard interval"**
('513 Patent, Claim 16)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively:<br>    "wherein some or all of the respective non-legacy header uses the first guard interval" | Indefinite |

Dkt. No. 85, Ex. B at 11, 13, 14 & 15; Dkt. No. 88 at 14–15; Dkt. No. 90 at 14; Dkt. No. 93 at 11–12.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary constructions for these disputed terms, respectively: "wherein

some or all of the payload of the uplink frame uses the first guard interval length"; "wherein some or all of the payload of the uplink frame uses the first CP length"; "wherein some or all of the legacy header uses a second CP length"; and "wherein some or all of the respective non-legacy header uses the first guard interval."

(1)  The Parties' Positions

Plaintiff argues that "[t]hese claim phrases use simple words—'at least a portion' and 'associated with'—according to their well-understood meaning."  Dkt. No. 88 at 15.

Defendants respond that "[a]ll of these claims require an undefined 'portion' of something to be 'associated with' something else," and "a person of ordinary skill in the art would not be reasonably apprised of the claims' bounds with respect to the limits of the 'portion' of the header and payload that is claimed and the level to which they must be 'associated with' the guard interval or CP length."  Dkt. No. 90 at 14–15.  Defendants argue that "the claims themselves provide no help in ascertaining any objective meaning of these terms," "[n]or does the specification provide or shed any light on an objective boundary for these limitations."  *Id.* at 15.  Defendants urge that "[s]imply saying 'plain and ordinary meaning' as proposed by Atlas provides no objective boundary."  *Id.* at 16.

Plaintiff replies that "portion" and "associated with" are well-understood words in common English and that the specification provides additional context for understanding how these words are used in the claims.  Dkt. No. 91 at 6.

At the January 13, 2023 hearing, the parties presented no oral arguments and instead rested on their briefing.

(2)  Analysis

Claim 1 of the '513 Patent, for example, recites (emphasis added):

1.    An apparatus for facilitating wireless communication, the apparatus comprising:

> one or more memories; and

> one or more processors coupled to the one or more memories, the one or more processors configured to cause:

>> receiving, in a trigger frame transmitted by an access point, an indication of a *first guard interval length*, wherein the trigger frame allocates one or more resources for an uplink (UL) multi-user (MU) transmission and solicits the UL MU transmission, wherein a value of the first guard interval length is to be used by each of a plurality of stations, including the apparatus, associated with the UL MU transmission,

>> generating an *uplink frame* for the UL MU transmission solicited by the trigger frame, wherein the uplink frame comprises a *payload* and a physical layer (PHY) header, and

>> transmitting the uplink frame using a resource allocated by the trigger frame to the apparatus,

>> *wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length.*

The specification discloses:

> Information regarding the guard interval duration GI2 (e.g., a value representing GI2) may be stored in the first part 820 of the downlink frame 810, such as in an HE-SIG-A field, and may be utilized by a receiver of the downlink frame 810 to determine, e.g., for decoding purposes, that the second part 822 of the downlink frame 810 utilizes guard intervals of the guard interval duration GI2.  The downlink frame 810 may also include information on a *guard interval duration GI3* (e.g., information or a value that can identify GI3) *to be utilized by the participating stations*.  In one aspect, the information on the guard interval duration GI3 may be provided in a payload in the second part 822 of the downlink frame 810.

> When the participating stations receive the downlink frame 810 transmitted by the AP, the participating stations may decode the downlink frame 810 and identify that the participating stations are supposed to transmit their own respective uplink frame 830 and 850 after a T2 time period after receiving the downlink frame 810.  *The participating stations may also identify the guard interval duration GI3 to be utilized in the second parts 842 and 862 of the respective uplink frames 830 and 850.*  The participating stations use the predetermined guard interval duration GI1 for the first parts 840 and 860 of their respective uplink frames 830 and 850.  The participating stations use the guard interval duration GI3 indicated by the downlink frame 810 for UL OFDMA transmission for the second part of their respective uplink frames 830 and 850 (e.g., the remaining parts 842 and 862) when the participating stations transmit the uplink frame as part of OFDMA transmission.

- 38 -

'513 Patent at 17:10–39 (emphasis added); *see id.* at Fig. 8; *see also id.* at 3:62–67 ("In one aspect, each of the first and second frames includes a respective first part and a respective second part.  A guard interval duration associated with the second part of the second frame may be based on information (e.g., a value) contained in the first frame that is indicative of the guard interval duration.") & 13:14–34; *see also id.* at Fig. 8.

Particularly when read in light of the specification, this claim language is reasonably clear, wherein "at least a portion" can be understood as referring to some or all, and "associated" can be understood as referring to the recited attribute being used.  The opinions of Plaintiff's expert are further persuasive in this regard.  *See* Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶ 89; *see also id.* at ¶¶ 84–94.  This is also consistent with the analysis in *Sercomm/ASUS.  See Sercomm/ASUS* at 54.

The *Advanced Aerospace* case cited by Defendants involved an "outboard portion" of an airplane wing and, to whatever extent applicable, is factually distinguishable.  *See Advanced Aerospace Techs., Inc. v. U.S.*, 124 Fed. Cl. 282, 293–94 (2015).  The court found indefiniteness because "the intrinsic evidence contains no guidance that would inform a skilled artisan, with reasonable certainty, as to where the 'outboard portion' begins and ends."  *Id.* at 293.  In the present case, the phrase "at least a portion" raises no such concerns as to line-drawing between different portions and instead merely refers to "some or all."

The Court therefore hereby construes these disputed terms as set forth in the following chart:

| Term | Construction |
|---|---|
| **"wherein at least a portion of the payload of the uplink frame is associated with the first guard interval length"** | **"wherein some or all of the payload of the uplink frame uses the first guard interval length"** |
| **"wherein at least a portion of the payload of the uplink frame is associated with the first CP length"** | **"wherein some or all of the payload of the uplink frame uses the first CP length"** |
| **"wherein at least a portion of the legacy header is associated with a second CP length"** | **"wherein some or all of the legacy header uses a second CP length"** |
| **"wherein at least a portion of the respective non-legacy header is associated with the first guard interval"** | **"wherein some or all of the respective non-legacy header uses the first guard interval"** |

## I. "based on the resources for the UL MU transmission"

| **"based on the resources for the UL MU transmission"** ('513 Patent, Claim 15) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | Indefinite |

Dkt. No. 85, Ex. B at 15; Dkt. No. 88 at 19; Dkt. No. 90 at 16; Dkt. No. 93 at 12.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction: "based on the resources for the UL MU transmission" modifies the "plurality of frames from the set of stations."

(1)  The Parties' Positions

Defendants argue that "[t]his term is indefinite because a POSITA would not have been reasonably certain as to whether the processing of the uplink frame, or the uplink frame itself, are required to be 'based on the resources for the UL MU transmission.'"  Dkt. No. 90 at 16.

Plaintiff argues that this term is not ambiguous because "the intrinsic evidence and everyday grammar show a person of ordinary skill would understand the latter interpretation to be correct—the uplink frame is based on the resources allocated by the trigger frame for the UL MU transmission."  Dkt. No. 88 at 19.  Plaintiff argues that Defendants have not addressed Plaintiff's argument in this regard, and Plaintiff also argues that "[e]ven if TP-Link is correct that one interpretation is not more correct than the other, that does not render the term indefinite." Dkt. No. 91 at 6–7.

At the January 13, 2023 hearing, the parties presented no oral arguments and instead rested on their briefing.

(2)  Analysis

Claim 15 of the '513 Patent recites (emphasis added):

15.  A computer-implemented method of facilitating wireless communication, the method comprising:
    determining, by an access point, a first guard interval to be used by a set of stations participating in a multi-user (MU) uplink (UL) transmission;
    creating, by the access point, a trigger frame, wherein the trigger frame includes information indicating the first guard interval for the UL MU transmission, wherein the trigger frame allocates *resources for the UL MU transmission* and solicits the UL MU transmission;
    transmitting, by the access point, the trigger frame to the set of stations; and
    processing an uplink frame comprising a plurality of frames from the set of stations *based on the resources for the UL MU transmission*, wherein each of the plurality of frames comprises a respective payload, and wherein at least a portion of the respective payload is associated with the first guard interval.

The specification discloses:

In one or more aspects, a trigger frame may be a frame sent by an access point (AP) that seeks data, control, or management frame response(s) from stations that participate in a subsequent uplink (UL) MU frame.  The trigger frame may be utilized to initiate the MU simultaneous transmission in OFDMA.  By way of non-limiting example, a trigger frame may include some or all of the following features: (a) a list of STAs that an AP seeks a response from; (b) *resource* allocation information for each STA (e.g., a sub-band assigned to each STA);

and/or (c) attributes of the expected UL MU frame, such as the duration, bandwidth, etc., among other features.  The term "resource" may refer to, for example, bandwidth, time/duration that the STAs expect to occupy a transmission medium, and/or possibly a number of spatial streams that the STAs may use.

* * *

For example, the resource allocation information may include a sub-band assigned to a respective one of the participating stations as well as scheduling information regarding when a respective one of the participating stations may transmit using its assigned sub-band.

. . . Each of the participating STAs may send its respective UL frame in its assigned resource at a predetermined time after receiving the trigger frame.

'513 Patent at 2:47–3:5 & 11:56–60 (emphasis added); *see id.* at 17:23–42.

The claim thus recites that the trigger frame specifies resources for the stations to use when sending frames, and the specification is consistent with this understanding and provides examples of such resources.  *See id.*  The most natural reading of Claim 15, therefore, is that "based on the resources for the UL MU transmission" modifies the "plurality of frames from the set of stations."  In other words, the stations send the frames based on the resources that were allocated by the trigger frame.  *Sercomm/ASUS* reached the same conclusion.  *See Sercomm/ASUS* at 58–60.  The opinions of Plaintiff's expert are also persuasive in this regard. *See* Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶ 103; *see also id.* at ¶¶ 101–03.  Finally, the claim recites the "based on . . ." language in closer proximity to the "plurality of frames" than to the "processing," which further reinforces that the "based on . . ." language modifies the "plurality of frames."  *See DeGeorge v. Bernier*, 768 F.2d 1318, 1323 (Fed. Cir. 1985) ("Modifiers of a term are usually in proximity to such term.").

The Court therefore hereby expressly rejects Defendants' indefiniteness argument. Defendants do not present any alternative proposed construction, and no further construction is necessary beyond clarifying the relationship between the claim language as discussed above.

The Court accordingly hereby construes this claim limitation such that **"based on the resources for the UL MU transmission" modifies the "plurality of frames from the set of stations."**

## VIII.  DISPUTED TERMS IN U.S. PATENT NO. 9,917,679

The '679 Patent, titled "Method and Apparatus for Transmitting Response Frame Based on Type in a High Efficiency Wireless LAN," issued on March 13, 2018, and bears an earliest priority date of November 3, 2014.  The Abstract of the '679 Patent states:

> The present disclosure relates to a method and apparatus for transmitting a response frame based on a type in a High Efficiency Wireless Local Area Network (WLAN) (HEW).  According to an aspect, a method for transmitting an uplink frame by a station (STA) to an access point (AP) in a WLAN may be provided.  The method may include receiving, from the AP, a downlink frame including information related to a type of the uplink frame, the type of the uplink frame including a single-user (SU) type and a multiple-user (MU) type; and transmitting, to the AP, the uplink frame having a type determined based on the information related to the type of the uplink frame, wherein, when the type of the uplink frame corresponds to the MU type, the uplink frame is simultaneously transmitted by a plurality of STAs including the STA and at least one other STA.

**J.    "single-user (SU) format," "SU format," "multiple-user (MU) format," and "MU format"**

| **"single-user (SU) format"**<br>**"SU format"**<br>('679 Patent, Claims 1, 6)<br><br>**"multiple-user (MU) format"**<br>**"MU format"**<br>('679 Patent, Claims 1, 6)| |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | Indefinite |

Dkt. No. 85, Ex. B at 16 & 17; Dkt. No. 88 at 22; Dkt. No. 90 at 17; Dkt. No. 93 at 13–15.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction for these disputed terms: "Plain and ordinary meaning."

(1)  The Parties' Positions

Plaintiff argues that these terms are readily understandable and that, in addition, the claims and the specification provide further guidance.  Dkt. No. 88 at 22.  Plaintiff also cites dictionary definitions.  *Id.* at 23.

Defendants respond:

Atlas's position fails to address the core issue with these terms.  Namely, the common element that lacks definition is the specifically claimed "format." A POSITA would not be reasonably appr[]ised of the claims' bounds with respect to what [*sic*] the "single-user (SU) *format*" or "multi-user (MU) *format*."

Dkt. No. 90 at 17.

Plaintiff replies that the claims and the specification explain the distinction between single-user format and multi-user format, as set forth by Plaintiff's expert, and Plaintiff argues that "[b]ecause a POSITA already knew the frame format for uplink single-user transmissions from the legacy 802.11a/g/n/ac standards, the '679 specification did not need to detail the uplink SU frame format."  Dkt. No. 91 at 7 (citations omitted); *see id.* at 7–8.  Further, as to prosecution history cited by Defendants, Plaintiff argues that "the applicant never distinguished the Cheong reference on the basis of SU/MU format (as TP-Link argues)."  *Id.* at 8.

At the January 13, 2023 hearing, the parties presented oral arguments.

(2)  Analysis

As a threshold matter, to whatever extent Plaintiff is relying upon the IEEE 802.11ax standard as defining the claimed "SU format" or "MU format," the IEEE 802.11ax standard was promulgated several years after the filing and issuance of the '679 Patent and should not be

consulted when construing the disputed terms in the '679 Patent. *See Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) (rejecting consideration of references "dated well after the . . . patent").

Claim 1 of the '679 Patent recites (emphasis added):

1. A method for transmitting an acknowledgement frame for notifying successful data reception by a station (STA) to an access point (AP) in a wireless local area network, the method comprising:

　　receiving, from the AP, a downlink frame including a quality of service (QoS) control field including acknowledgement information representing whether the STA is requested to transmit the acknowledgement frame in a *single-user (SU) format* or in a *multiple-user (MU) format* at a Short Inter-Frame Space (SIFS) time after the downlink frame; and

　　transmitting, to the AP, the acknowledgement frame based on the acknowledgement information at the SIFS time after the downlink frame,

　　　　wherein transmitting the acknowledgment frame comprises:

　　　　　　when the acknowledgment information represents that the STA is requested to transmit the acknowledgement frame in the *MU format* and the STA is allocated a resource, transmitting the acknowledgement frame in the *MU format* on the allocated resource simultaneously with transmission of at least one acknowledgement frame from at least one other STA, and

　　　　　　when the acknowledgment information represents that the STA is requested to transmit the acknowledgement frame in the *SU format*, transmitting the acknowledgement frame in SU format.

Defendants argue that "format" is unclear, particularly when considering that the patentee amended during prosecution to replace "type" with "format":

1.      (Currently Amended) A method for transmitting an ~~uplink~~ acknowledgement frame <u>for notifying successful data reception</u> by a station (STA) to an access point (AP) in a wireless local area network, the method comprising:

receiving, from the AP, a downlink frame including <u>a quality of service (QoS) control field including acknowledgement</u> information <u>representing whether the STA is requested to transmit the acknowledgement frame</u> ~~related to a type of the uplink frame, the type of the uplink frame including~~ <u>in</u> a single-user (SU) ~~type~~ <u>format or</u> [[and]] <u>in</u> a multiple-user (MU) [[type]] <u>format at a Short Inter-Frame Space (SIFS) time after the downlink frame</u>; and

transmitting, to the AP, the <u>acknowledgement</u> ~~uplink~~ frame ~~having a type determined~~ based on the <u>acknowledgement</u> information <u>at the SIFS time after the downlink frame</u> ~~related to the type of the uplink frame~~,

wherein <u>transmitting the acknowledgment frame comprises:</u>[[,]]

when ~~the type of the uplink frame corresponds to the MU type~~ <u>the acknowledgment information represents that the STA is requested to transmit the acknowledgement frame in the MU format and the STA is allocated a resource</u>, transmitting the ~~uplink~~ acknowledgement frame <u>in the MU format</u> [[is]]<u>on the allocated resource</u> simultaneously <u>with transmission of at least one acknowledgement frame from</u> ~~transmitted by a plurality of STAs including the STA and~~ at least one other STA<u>, and</u>

<u>when the acknowledgment information represents that the STA is requested to transmit the acknowledgement frame in the SU format, transmitting the acknowledgement frame in SU format</u>.

*See* Dkt. No. 90, DX 6, June 21, 2017 Amendment at 2 (ATLAS-00018762).

The patentee distinguished the "Cheong" reference (United States Patent Application Publication No. 2013/0188627) as lacking any teaching of the limitations regarding SU format and MU format. *See id.* at 7–8. Defendants do not identify any statement by the patentee in this prosecution history that creates any confusion regarding the word "format" or that otherwise purportedly demonstrates that "format" lacks reasonably clear meaning. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence.").

Defendants cite *TVnGO Ltd. (BVI) v. LG Elecs. Inc.*, 861 F. App'x 453, 458 (Fed. Cir. 2021), which found indefinite two terms that had no plain meaning in the art and were not explained in the specification but rather were added during prosecution.  The terms there at issue were "overlay activation criterion" and "overlay activation signal."  In the present case, the claims provide context by contrasting "single-user (SU) format" and "multi-user (MU) format" with each other, and the specification discusses "single-user (SU) type" and "multiple-user (MU) type" (as well as "single-user (SU) packet" and "multi-user (MU) packet") and also uses the word "format," such as with reference to the disclosed "HE PPDU [(High Efficiency Physical layer Protocol Data Unit)] frame format."  *See* '679 Patent at 2:11–23 & 10:33–13:26; *see also id.* at 37:58–67 ("the PPDU type of an immediate response to a DL MU PPDU . . . may be of the UL SU transmission type (e.g. a legacy PPDU type) or the UL MU transmission type (e.g., a UL MU PPDU type)") & Fig. 23; Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶¶ 126–27.

Plaintiff's expert also persuasively opines that the specification refers to various relevant 802.11 standards, such as 802.11a, 802.11g, 802.11n, and 802.11ac, and that frame "format" has been a well-understood term in those standards.  *See* Dkt. No. 88-1, Nov. 11, 2022 Shoemake Decl. at ¶¶ 114–15; *see, e.g.*, '679 Patent at Fig. 13; PX 30, 802.11ac-2013 at ATLAS-00032173–74.  To the extent Defendants maintain that the terms "single-user (SU) format" and "multi-user (MU) format" are not described in the specification, this argument perhaps may bear upon the written description requirement or the enablement requirement but does not give rise to any indefiniteness.  Finally, as Plaintiff noted at the January 13, 2023 hearing, Defendants' expert does not offer any opinion to rebut the opinions of Plaintiff's expert regarding "format." *See* Dkt. No. 90, DX 2, Nov. 11, 2022 Roy Decl.

The Court therefore hereby expressly rejects Defendants' indefiniteness argument. Defendants present no alternative proposed construction, and no further construction is necessary.

The Court accordingly hereby construes **"single-user (SU) format," "SU format," "multiple-user (MU) format,"** and **"MU format"** to have their **plain meaning**.

## IX.  DISPUTED TERMS IN U.S. PATENT NO. 10,020,919

The '919 Patent, titled "Protection Methods for Wireless Transmissions," issued on July 10, 2018, and bears an earliest priority date of October 12, 2015.  The Abstract of the '919 Patent states:

> A wireless device receives a Multi-User Request-To–Send (MU-RTS) frame, descrambles first scrambled data in the MU-RTS frame using a first scrambling sequence, generates second scrambled data using a second scrambling sequence, and transmits a Clear-to-Send (CTS) frame including the second scrambled data in response to receiving the MU–RTS frame.  The second scrambling sequence is an N-bit left cyclic shift of the first scrambling sequence.  Another wireless device generates first scrambled data using a first scrambling sequence and transmits an MU-RTS frame including the first scrambled data.  The wireless device receives a CTS frame transmitted in response to the MU RTS frame, and descrambles second scrambled data in the CTS frame using a second scrambling sequence. The second scrambling sequence is an N-bit left cyclic shift of the first scrambling sequence.  In either device, N may be 7, and lengths of the first and second scrambling sequences may be 127 bits.

**K. "in response to determining that the number of the one or more station information fields in the NDPA is one," "when a number of the one or more station information fields in the NDPA is one," and "when the number of the one or more station information fields in the NDPA is greater than one"**

| "in response to determining that the number of the one or more station information fields in the NDPA is one" ('919 Patent, Claim 1) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning | "in response to determining that there is one station information in the NDPA" |

| "when a number of the one or more station information fields in the NDPA is one" ('919 Patent, Claim 11) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain meaning | "when there is one station information in the NDPA" |

| "when the number of the one or more station information fields in the NDPA is greater than one" ('919 Patent, Claims 2, 8, 12, 19) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain meaning | Indefinite |

Dkt. No. 85, Ex. B at 19–20; Dkt. No. 88 at 24 & 27; Dkt. No. 90 at 21; Dkt. No. 93 at 16–18.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction for these disputed terms: "Plain and ordinary meaning ([]reject Defendants' proposed construction)."

<u>(1)  The Parties' Positions</u>

Plaintiff argues that Defendants' proposed construction would eliminate "one or more" from these terms, and "nothing in the intrinsic record suggests that the patentee acted as his own lexicographer or that a disclaimer justifies this construction."  Dkt. No. 88 at 25–26.  Plaintiff also argues that "TP-Link's construction does not make sense in light of the dependent claims," "in particular claims 2 and 12, [which] add the second part of this contingent process—when there is more than one station information field a different action is taken."  *Id.* at 26.

Defendants respond:

> [W]hen each method step of the independent claims is practiced, necessarily it would be impossible to practice dependent claims 2, 8, 12, and 19 ("is one" vs. "greater than one").  As such, if these dependent claims were practiced, the independent claims would not be practiced.  This inherent mismatch between the number of station information fields as defined by the independent and dependent claims renders the dependent claims indefinite.

Dkt. No. 90 at 22.  Defendants also argue that Plaintiff's argument that these claims are conditional is unavailing because, Defendants argue, a conditional claim is insufficient if the condition never occurs, and "twisting the language of the claims such that they can be understood as being 'conditional' contradicts the plain and ordinary meaning of the claim language."  *Id.* at 23–24.

Plaintiff replies:

> Conditional method claims are infringed by a device capable of practicing each claimed condition and that actually practices one of the conditions; however, the steps do not need to be practiced simultaneously.  *See Lincoln Nat'l Life Ins. v. Transamerica Life Ins.*, 609 F.3d 1364, 1369–70 (Fed. Cir. 2010) (holding that the accused product must be capable of practicing both claimed scenarios to infringe a conditional claim; it was insufficient to prove infringement by proving just one scenario); *see also Hytera Communs. Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, 215–16 (Fed. Cir. 2021) ("the prior art was required to teach both conditions of the 'selecting' step.").  Regarding claim 1, an infringing device must be capable of determining whether there is one or more than one station information field.  If there is one, it must be capable of responding as claimed, and if there is

more than one, infringing claim 1 does not require any particular action. Regarding claim 2, an infringing device would perform the same steps, but also respond to an NDPA with more than one station information field, as specified in that claim.

Dkt. No. 91 at 9.

At the January 13, 2023 hearing, the parties presented oral arguments.

(2)  Analysis

Claims 1 and 2 of the '919 Patent, for example, recite (emphasis added):

1.  A method performed by a wireless device, the method comprising:
    receiving a Null Data Packet Announcement (NDPA), the NDPA including one or more station information fields;
    determining exactly a number of the one or more station information fields in the NDPA;
    receiving a Null Data Packet (NDP); and
    *in response to determining that the number of the one or more station information fields in the NDPA is one*, transmitting first Channel State Information (CSI) feedback in response to receiving the NDP,
    wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA.

2.  The method of claim 1, further comprising:
    *when the number of the one or more station information fields in the NDPA is greater than one*:
        receiving a first trigger frame; and
        transmitting the first CSI feedback in response to receiving the first trigger frame.

The specification discloses different "sounding" procedures, and "[w]hich of the first sounding procedure and the second sounding procedure is used is indicated by a number of per-station information fields in the NDPA frame."  '919 Patent at 18:52–55; *see id.* at 18:19–49 ("In a first procedure[], a single user provides CSI feedback using a UL Single-User (SU) MIMO transmission.  In a second procedure[], a plurality of users provide CSI feedback simultaneously using an UL MU transmission that uses OFDMA, MU-MIMO, or both."); *see also id.* at 18:50–19:32.

*Sercomm/ASUS* found that because the conditions set forth in Claim 1 and Claim 2 cannot both be satisfied at the same time, there is no impossibility. *Sercomm/ASUS* at 66. *Sercomm/ASUS* noted that the accused device need only be capable of performing the method and therefore need not perform the conditional method steps in every instance. *Id.*

Plaintiff's arguments and the analysis set forth in *Sercomm/ASUS*, *id.*, are persuasive that above-reproduced Claims 1 and 2 are not internally inconsistent but rather recite methods carried out by wireless devices that are capable of operating in a particular way when the number of the one or more station information fields in the NDPA is one and in a different way when the number of the one or more station information fields in the NDPA is greater than one. *See Ex Parte Schulhauser*, No. 2013-007847, 2016 WL 6277792, at *3–*5 (P.T.A.B. Apr. 28, 2016) (citing, e.g., *Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 F. App'x 603, 606–07 (Fed. Cir. 2007) ("It is of course true that method steps may be contingent. If the condition for performing a contingent step is not satisfied, the performance recited by the step need not be carried out in order for the claimed method to be performed.")). The same analysis applies to the other claims here at issue, namely Claims 8, 11, 12, and 19 of the '919 Patent. Also of note, Defendants argue indefiniteness only as to the dependent claims, not the independent claims.

Defendants' cited authority, that a conditional claim is "not . . . sufficient under law" if the "condition never occur[s]," is therefore unpersuasive. *Sun Chemical Corp. v. U.S.*, 698 F.2d 1203, 1208 n.8 (Fed. Cir. 1983).

Additional authorities cited by Defendants, for example that "[i]t is axiomatic that a dependent claim cannot be broader than the claim from which it depends," are likewise inapplicable and unpersuasive. *Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012) (citations omitted); *see Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1335

(Fed. Cir. 2007) ("An independent claim impliedly embraces more subject matter than its narrower dependent claim."); *see also Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1366 (Fed. Cir. 2021) (claims indefinite because "nonsensical and require an impossibility"); *Tr. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1367 (Fed. Cir. 2016) ("[T]he claims describe the step of extracting machine code instructions from something that does not have machine code instructions.  The claims are nonsensical in the way a claim to extracting orange juice from apples would be, and are thus indefinite.") (citations omitted).

At the January 13, 2023 hearing, Defendants argued that the dependent claims are indefinite because the determining steps are spread across multiple claims.  Defendants suggested that the patentee could have avoided this indefiniteness problem by drafting these dependent claims instead as independent claims.  Defendants' argument appears to read the independent claims as reciting not just a determination regarding the recited number but rather that the recited number is indeed equal to one.  Defendants argue that this gives rise to impossibility or inconsistency where the dependent claims recite determining that the number is greater than one.  These "determining" steps, however, do not require that the number must be one or must be greater than one, respectively.  Rather, the "determining" evaluates whether a condition is met.  Thus, as discussed above, the dependent claims incorporate the limitations of the independent claims and thus present something akin to an either-or determination.

The Court therefore hereby expressly rejects Defendants' indefiniteness argument.  As to Defendants' proposal of constructions setting forth that "there is one station information in the NDPA," Defendants do not persuasively show that such constructions would resolve any dispute, and Defendants' proposals would instead tend to confuse rather than clarify the scope of these claims.  The Court therefore hereby expressly rejects Defendants' proposed constructions, and no

further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291; *Bayer*, 989 F.3d at 977–79.

The Court accordingly hereby construes **"in response to determining that the number of the one or more station information fields in the NDPA is one," "when a number of the one or more station information fields in the NDPA is one,"** and **"when the number of the one or more station information fields in the NDPA is greater than one"** to have their **plain meaning**.

## L.  "cardinality"

| "cardinality" ('919 Patent, Claims 1, 11) | |
| --- | --- |
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| "the number of elements in a set" | Needs no construction; plain and ordinary meaning |

Dkt. No. 85, Ex. B at 19; Dkt. No. 88 at 27; Dkt. No. 90 at 25; Dkt. No. 93 at 16 & 18.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction: "Plain and ordinary meaning ([]reject Defendants' proposed construction)."

(1)  The Parties' Positions

Plaintiff argues that "[w]hile the parties do not dispute that cardinality should be given its plain and ordinary meaning, TP-Link does not use this meaning in its construction of the next term." Dkt. No. 88 at 27.

Defendants respond that this term does not require construction and, even under Plaintiff's proposed construction, "the usage of 'cardinality' in claims 1, 11 . . . does not affect the conclusion that claims 1 and 11 are indefinite." Dkt. No. 90 at 25.

Plaintiff replies that "[t]he intrinsic and extrinsic evidence are clear that 'cardinality' is 'the number of elements in a set.'" Dkt. No. 91 at 9.

At the January 13, 2023 hearing, the parties presented no separate oral arguments as to this term.

(2)  Analysis

Claim 1 of the '919 Patent, for example, recites (emphasis added):

1.  A method performed by a wireless device, the method comprising:
    receiving a Null Data Packet Announcement (NDPA), the NDPA including one or more station information fields;
    determining exactly a number of the one or more station information fields in the NDPA;
    receiving a Null Data Packet (NDP); and
    in response to determining that the number of the one or more station information fields in the NDPA is one, transmitting first Channel State Information (CSI) feedback in response to receiving the NDP,
    wherein the number of the one or more station information fields in the NDPA is the *cardinality* of the one or more station information fields in the NDPA.

The parties' briefing demonstrates that the real dispute regarding this claim limitation is directed to the limitation as a whole (addressed below) rather than the word "cardinality." No construction of "cardinality" is necessary.

The Court therefore hereby construes **"cardinality"** to have its **plain meaning**.

**M.  "wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA"**

<table>
<tr><td colspan="2">

**"wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA"**
('919 Patent, Claim 1)

**"wherein the number of the one or more station information fields in the NDPA is exactly the cardinality of the one or more station information fields in the NDPA"**
('919 Patent, Claim 11)
</td></tr>
<tr><td>**Plaintiff's Proposed Construction**</td><td>**Defendants' Proposed Construction**</td></tr>
<tr><td>

Plain and ordinary meaning

Alternatively:
    "wherein the number of the one or more station information fields in the NDPA is the number of elements in the set of station information fields"
</td><td>

Plain meaning: wherein the number of the one or more station information fields in the NDPA is the number of the one or more station information fields in the NDPA.

This renders the claim indefinite.
</td></tr>
</table>

Dkt. No. 85, Ex. B at 20–21; Dkt. No. 88 at 27; Dkt. No. 93 at 16 & 18.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction for both of these disputed terms: "Plain and ordinary meaning."

(1)  The Parties' Positions

Plaintiff argues that "[t]his element was introduced during the prosecution of the '919 Patent to clarify the claims by explaining that the 'number' is the cardinality of the station information fields, e.g., the total number of fields in the set of station information fields." Dkt. No. 88 at 27 (citations omitted).  Plaintiff also argues that "TP-Link's construction eliminates 'cardinality' from the claims and does not provide any alternative language that serves the same clarifying function." *Id.* at 28.

Defendants respond:

As discussed above for the term 1 of the '919 patent, and incorporated herein, claims 1 and 11 plainly require that the number of the "one or more station information fields" be "one" in order to practice claims 1 or 11.  Based on that plain requirement of the claims, this claim element is nonsensical.  To the extent Atlas attempts to ascribe any other meaning to claims 1 and 11, and this claim phrase, other than "one equals one," the claims are indefinite.

Dkt. No. 90 at 25.

Plaintiff replies as to this term together with the term "cardinality," above, and incorporates its arguments as to the above-discussed "number of the one or more station information fields" terms.  *See* Dkt. No. 91 at 9.

At the January 13, 2023 hearing, the parties presented no separate oral arguments as to this term.

(2)  Analysis

Claim 1 of the '919 Patent, for example, recites (emphasis added):

1.  A method performed by a wireless device, the method comprising:
        receiving a Null Data Packet Announcement (NDPA), the NDPA including one or more station information fields;
        determining exactly a number of the one or more station information fields in the NDPA;
        receiving a Null Data Packet (NDP); and
        in response to determining that the number of the one or more station information fields in the NDPA is one, transmitting first Channel State Information (CSI) feedback in response to receiving the NDP,
        *wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA*.

The patentee added this claim limitation during prosecution, evidently to clarify that "number" here refers to *how many* station information fields there are in the NDPA (rather than, perhaps, to refer to a numerical *value* set forth in a station information field).  *See* Dkt. No. 88, PX 25, Oct. 11, 2017 Amendment at 6 (ATLAS-00019162); *see also id.* at ATLAS-00019155 & -206 (interview summaries).

Defendants refer back to their indefiniteness arguments for the other ". . . number of the one or more station information fields . . ." terms.  As discussed above, those indefiniteness arguments are unpersuasive.  Defendants' assertion of indefiniteness as to the present disputed term is likewise unpersuasive.  *Sercomm/ASUS* reached the same conclusion.  *See Sercomm/ASUS* at 67–68.

The Court therefore hereby expressly rejects Defendants' indefiniteness arguments, and no further construction is necessary.  *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207; *ActiveVideo*, 694 F.3d at 1326; *Summit 6*, 802 F.3d at 1291; *Bayer*, 989 F.3d at 977–79.

The Court accordingly hereby construes **"wherein the number of the one or more station information fields in the NDPA is the cardinality of the one or more station information fields in the NDPA"** to have its **plain meaning**.

## X.  DISPUTED TERMS IN U.S. PATENT NO. 10,756,851

The '851 Patent, titled "Multiplexing Acknowledgement Messages in Response to Downlink Frames," issued on August 25, 2020, and bears an earliest priority date of May 10, 2015.  The Abstract of the '851 Patent states:

> In an example of multi-user wireless communications, an access point may send a downlink frame to multiple stations.  Some or all of the stations may generate and transmit their respective uplink frames.  The uplink frames from the stations may be aggregated or multiplexed to form a final uplink frame that is received by the access point.  The uplink frames may be block acknowledgment or acknowledgment (BA or ACK) frames.  Uplink response scheduling may be located in a payload of the downlink frame, in which the uplink response scheduling indicates one or more resource units assigned to the multiple stations for transmitting the uplink frames.  In some examples, the uplink response scheduling is in a control field of the payload, in a trigger frame as part of the payload.  In some aspects, the downlink frame is part of a multicast transmission.  Other methods, apparatus, and computer-readable media are also disclosed.

## N.  "scheduling extension"

| "scheduling extension" ('851 Patent, Claims 1, 2, 7, 8) | |
|---|---|
| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
| Plain and ordinary meaning:    "an extension to the control field that includes scheduling information" | "A subfield included in the HT control field that includes scheduling information for the uplink multi-user response" |

Dkt. No. 85, Ex. B at 21; Dkt. No. 88 at 28; Dkt. No. 90 at 26; Dkt. No. 93 at 19–20.

Shortly before the start of the January 13, 2023 hearing, the Court provided the parties with the following preliminary construction: "an extension to the control field that includes scheduling information."

(1)  The Parties' Positions

Plaintiff argues that "TP-Link's proposed construction is wrong because it is both narrower than the plain and ordinary meaning in some respects and broader than the plain and ordinary meaning in other respects," and Plaintiff submits that *Sercomm/ASUS* adopted Plaintiff's construction.  Dkt. No. 88 at 28.

Defendants respond that although this term does not appear in the specification, the claims and the specification provide context for understanding this term as referring to something appended to the HT control field.  Dkt. No. 90 at 26–27.

Plaintiff replies that "[t]he specification can describe a claim term without using identical words[, a]nd TP-Link never alleges any disclaimer or express definition, so this term should be given its plain and ordinary meaning."  Dkt. No. 91 at 10 (citations omitted).  Plaintiff also argues that "the word 'appended' never appears anywhere in the intrinsic evidence," and "[n]o

evidence supports TP-Link's argument that a scheduling extension must be 'appended' to the control field." *Id.*

At the January 13, 2023 hearing, the parties presented oral arguments.

(2)  Analysis

Claim 1 of the '851 Patent recites (emphasis added):

1.  A station for facilitating multi-user communication in a wireless network, the station comprising:
   one or more memories; and
   one or more processors coupled to the one or more memories, the one or more processors configured to cause:
      receiving a first frame of a downlink transmission for a plurality of stations;
      obtaining a control extension indication from a control field included in the first frame;
      determining whether the control extension indication included in the first frame indicates whether the control field includes a *scheduling extension*;
      obtaining scheduling information from the control field when the control extension indication indicates that the control field includes the *scheduling extension*;
      generating a second frame for a multi-user uplink transmission with the plurality of stations based on the scheduling information included in the *scheduling extension*; and
      transmitting the second frame as part of the multi-user uplink transmission with the plurality of stations.

The specification discloses:

> FIG. 13 illustrates an example of an extended control field 1320 in a HT control field 1300 of a data frame.  For convenience, the extended control field 1320 is sometimes referred to as an HE Control extended subfield/field or an HE control subfield/field.

'851 Patent at 30:11–15; *see id.* at 40:28–29 ("The structure of the HT Control (HTC) field and its possible extension is shown in FIG. 13.").  At the January 13, 2023 hearing, the parties agreed that "HT" is an abbreviation for "High Throughput" and refers to an 802.11 standard that pre-dates the current 802.11ax standard.

The patent also discloses more generally that "[u]plink response scheduling may be located in a payload of the downlink frame," or "[i]n some examples, the uplink response scheduling is in a control field of the payload." *Id.* at Abstract. Defendants' proposal of limiting the "scheduling extension" to being a "subfield included in the HT control field" would improperly limit the disputed term to a specific feature of particular embodiments. *See Phillips*, 415 F.3d at 1323.

As to the remainder of Defendants' proposed construction, other claim language already recites "generating a second frame for a multi-user uplink transmission with the plurality of stations based on the scheduling information included in the scheduling extension." Defendants' proposal that the "scheduling extension" "includes scheduling information for the uplink multi-user response" is therefore unnecessary and potentially confusing. At the January 13, 2023 hearing, Defendants had no objection to the Court's preliminary construction omitting any reference to an uplink multi-user response.

Finally, of note, *Sercomm/ASUS* rejected a similar proposed construction and reached the same conclusion that this term should be interpreted in accordance with Plaintiff's proposed construction. *See Sercomm/ASUS* at 67–75.

The Court accordingly hereby construes **"scheduling extension"** to mean **"an extension to the control field that includes scheduling information."**

## XI. CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patent-in-suit.

The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to

refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**SIGNED this 8th day of February, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

| Term | Parties' Agreement |
|---|---|
| "A method, implemented by a network device in a wireless network, for coordinating an uplink multi-user response transmission to a downlink multi-user transmission, the method comprising:"<br><br>('520 Patent, Claim 1) | Plain and ordinary meaning.  The preamble is limiting. |
| "A method, implemented by a first station in a wireless network, for transmitting an uplink acknowledgment, the method comprising:"<br><br>('520 Patent, Claim 8) | Plain and ordinary meaning.  The preamble is limiting. |
| "A method, implemented by a first station in a wireless network, for transmitting an uplink acknowledgment, the method comprising:"<br><br>('520 Patent, Claim 18) | Plain and ordinary meaning.  The preamble is limiting. |

Dkt. No. 93 at 1, 3 & 4.