-i-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC<br><br>Plaintiff,<br><br>v.<br><br>TP-LINK TECHNOLOGIES CO., LTD.; TP-LINK CORPORATION LTD.; and TP-LINK INTERNATIONAL LTD.;<br><br>Defendants. | Civil Action No. 2:21-cv-00430<br><br>Jury Trial Requested |

**PLAINTIFF'S MOTION THAT CERTAIN FACTS BE CONSIDERED ESTABLISHED**

This Court admonished Defendants that it "finds it implausible" they have "no knowledge of the current owner of [their] sole U.S. distributor, TP-Link USA, and [are] unable to get any detailed sales and financial information regarding sales of TP-Link products in the U.S." Dkt. No. 157 at 1. But despite two hearings and orders from this Court, Defendants failed to 1) provide discovery showing that they have **no** corporate relationship with TP-Link USA[1] or 2) provide information sufficient to substantiate their sales information in light of significant discrepancies between Defendants' data and that of independent third parties (which show much higher sales). Atlas now asks that the Court deem "certain facts … established because [Defendants] will not engage honestly in discovery about those facts." Mar. 27, 2023 Hearing Tr. at 22:20–23:3. Specifically, Atlas asks that the unit sales shown in third-party data Defendants publicly tout be established for purposes of this case. At minimum, the data should be deemed admissible for trial and reliable so Atlas can argue to the jury it is a true reflection of Defendants' sales.

## I. BACKGROUND

### A. Defendants Obstructed Discovery, Forcing Atlas to Move to Compel.

Across several months of discovery Defendants failed to produce basic information showing revenues and costs from sales of the Accused Products. The only information Defendants produced (Ex. 1, TPL0017415) showed units sold to TP-Link USA, but even that appeared incomplete. The data showed approximately ▮▮▮ US sales through Q2 of 2022:



---

[1] At the March 1 hearing, the following exchange occurred: "THE COURT: All right. Well, it's not believable to me that there is no corporate relationship between your client and TP-Link USA based on the information I have. MR. REED: Well, Your Honor, I'd be happy to go back and supplement to see if I can find additional information as to the current corporate structure." Mar. 1, 2023 Hearing Tr. (Dkt. No. 141) at 25:1–:7. Despite counsel's promise to search for additional information about TP-Link's corporate structure, no such information has been provided.

But independent third-party data from the International Data Corporation (IDC) showed approximately 3.5 million sales during the same period:

| Values | Quarter 2019Q3 | 2019Q4 | 2020Q1 | 2020Q2 | 2020Q3 | 2020Q4 | 2021Q1 | 2021Q2 | 2021Q3 | 2021Q4 | 2022Q1 | 2022Q2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Vendor Revenue (US$M) | | $0.07 | $0.47 | $0.72 | $4.01 | $5.73 | $8.80 | $7.06 | $12.69 | $26.35 | $33.11 | $38.99 | $34.78 |
| Units | | 859 | 5,873 | 8,582 | 45,317 | 64,180 | 122,131 | 122,079 | 293,428 | 677,513 | 694,204 | 802,903 | 705,967 |
| Value (US$M) | | $0.07 | $0.57 | $0.88 | $4.86 | $6.94 | $10.67 | $8.56 | $15.39 | $31.93 | $40.13 | $47.25 | $42.16 |

Ex. 2 (ATLAS-TPL-00083592).  The IDC is "the premier global provider of market intelligence, advisory services, and events for the information technology, telecommunications, and consumer technology markets."  https://www.idc.com/about.  Defendants themselves rely on IDC data to tout their market position, including as recently as April 10, 2023.  *See, e.g.*, TP-Link, *TP-Link: The World's No. 1 WiFi Product Provider for 12 Years Running*, https://www.tp-link.com/en/press/news/20553/ (April 10, 2023); TP-Link, *TP-Link ranks as World's No.1 Wi-Fi Products Provider for 10 Years*, https://www.tp-link.com/en/press/news/19549/ (June 1, 2021).

Atlas thus repeatedly asked Defendants to produce fulsome financials and 1) information on whether Defendants sell to other US entities, beyond TP-Link USA, or import products into or through the U.S. that do not go to TP-Link USA (given TP-Link's website identifies other retailers), and 2) the sales information of TP-Link USA (to see whether it matched Defendants' data).  Defendants responded, without any backup, that the only products that enter the U.S. are those sold to TP-Link USA.  Defendants also refused to produce information from TP-Link USA.

When it became clear that TP-Link did not intend to cooperate on this and other issues, Atlas filed a motion to compel.  Dkt. No. 110 at 2, 3–5.

### B.   The Court Found Defendants' Explanations Unbelievable and Implausible.

The Court held two hearings related to Atlas's motion to compel, on March 1 and on March 27.  During the first hearing, in the face of Defendants attempting to distance themselves from TP-

2

Link USA despite a Distribution Agreement between Defendants and TP-Link USA, the Court repeatedly asked if Defendants indirectly own TP-Link USA through intermediaries or for an explanation of the corporate relationship. Defendants could not answer. The Court thus concluded "it's not believable … that there is no corporate relationship between [Defendants] and TP-Link USA" and that "the evidence that we have indicates that [Defendants are] deliberately trying to hide their relationship with TP-Link USA." Mar. 1, 2023 Hearing Tr. (Dkt. No. 141) at 22:13–25:4, 30:15–:20. The Court ordered Defendants to produce financial data, including "the sales and financial information attributable to TP-Link USA." Dkt. No. 138 at 1–2.

The Court's decision did not end the matter unfortunately. Defendants refused to directly obtain the information from TP-Link USA, as ordered, on the basis that they had objected to the report and recommendation.[2] Instead, Defendants served a subpoena, in response to which TP-Link USA produced a spreadsheet that purports to summarize TP-Link USA's sales information, but did not produce the underlying sales and financial documents ordered. TP-Link USA's summary spreadsheet created more questions than it answered. It showed, for example, more unit sales than Defendants' data for some products, fewer sales for others, and (in some instances) fewer sales but higher revenues. Attached as Exhibit 3 is a spreadsheet showing the differences.

Plaintiffs raised Defendants' failure to comply with the Court's order and the data discrepancies at the second, March 27 hearing. The Court found Defendants' position incredible: "I don't believe [Defendants] have no access to the information about the sales of their products in the United States"; "I find [that] position unworthy of belief." Mar. 27, 2023 Hearing Tr. at 23:8–24:1. Plaintiffs also raised that Defendants had never confirmed or disconfirmed that they

---

[2] Notably, Defendants' objection (Dkt. No. 152) did not answer the question the Court identified as "an obvious issue": the actual relationship between Defendants and TP-Link USA. Mar. 1, 2023 Hearing Tr. (Dkt. No. 141) at 23:21–24:8.

3

are the ultimate parent of TP-Link USA. *Id.* at 17:25–18:13.

After the hearing, the Court entered an order providing: "[a]s noted repeatedly during the discovery hearings in this matter to date, the Court finds it implausible that a major manufacturer of sophisticated electronic equipment, like TP-Link Corporation, has no knowledge of the current owner of its sole U.S. distributor, TP-Link USA, and is unable to get any detailed sales and financial information regarding sales of TP-Link products in the U.S." Dkt. No. 157 at 1. It further stated: "the consequences of these apparent misrepresentations will be left for further determination after any light the upcoming depositions may shed." Dkt. No. 157 at 1.

**C.  The Court's Admonitions and Orders Did Not Alter Defendants' Behavior.**

Given the lingering questions and the Court's orders, Atlas tried to probe ownership of TP-Link USA and distribution of TP-Link products via 30(b)(6) deposition and the following topics:

- Topic 15: "[i]dentification of the entity/(ies) that make, use, sell, offer to sell and/or import the Accused Products in the United States."

- Topic 16: "[t]he manner in which You sell and/or distribute each Accused Product, including any agreement relating to each such sale and/or distribution."

- Topic 18: "Your monthly U.S. sales (units and revenue), costs (variable and fixed), and profits (gross, incremental, and operating) for each Accused Product."

The notice defined "You" to mean Defendants and their "agents" or "representatives" and was thus plainly broad enough to cover Defendants' US distributor: TP-Link USA.

TP-Link's corporate representative—Mr. Feiyue Liu—could not testify on several of these topics. First, he testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 4, Liu Dep. Tr. at 61:4–67:4.[3]

---

[3] On redirect, and in response to inappropriately leading questions from his own counsel, he changed his testimony, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 173:17–175:23. But, on further questioning, he again confirmed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 180:16–182:22.

4



Second, ▮

▮

*Id.* at 105:18–:22 ▮

*id.* at 106:11–:21 ▮

▮ Third, Mr. Liu did not know and had not investigated whether ▮

▮

▮ *Id.* at 79:16–81:2

▮ ; *id.* at 83:4–84:20 ▮. Fourth, Mr. Liu testified that he did not know and had not investigated ▮

▮ *Id.* at 35:16–37:24, 41:20–42:5, 42:22–43:6.

In other words, despite two hearings and orders, Defendants did not prepare Mr. Liu to answer questions about the corporate relationship of Defendants and TP-Link USA and the sale, importation, and distribution of TP-Link products in the United States. Defendants once again buried their heads in the sand. Atlas should not be prejudiced by Defendants' obstructionism.[4]

## II. LEGAL STANDARDS

"Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders. Courts have the option to bar the disobedient party from introducing evidence or direct that certain facts shall be 'taken to be established for purposes of the action.'" *Hernandez v. Rush Enterprises, Inc.*, 2020 WL 7041822, at *1 (E.D. Tex. Dec. 1, 2020) (quoting Fed. R. Civ.

---

[4] In response to complaints from Atlas, Defendants refused to provide an additional witness. Defendants offered to "not dispute that TP-Link USA sells 'TP-link'-branded products through the online stores and retailers identified on the www.tp-link.com/us website," "that TP-Link USA is 100% owned by TP-Link UK, Ltd.," and "that the financial data produced by TP-Link USA is authentic and accurate." Ex. 5. But these inconsequential stipulations do not resolve the: 1) the corporate relationship of Defendants and TP-Link USA, and 2) whether Defendants have produced fulsome data on the TP-Link products that have entered the United States.

P. 37(b)(2)(A)). A district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). The "Court also has inherent powers to enter sanctions," *FURminator, Inc. v. PetVac Grp. LLC.*, 2011 WL 3439309, at *5 (E.D. Tex. Aug. 5, 2011), "to punish recalcitrant parties and to deter those similarly situated," *Batson v. Neal Spelce Assoc., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985).

### III. ARGUMENT

Defendants have never provided complete discovery to instill any confidence in the purported summaries of financial data Defendants have produced. Instead, Defendants have feigned ignorance at every turn, only giving cause for concern.

For months Defendants failed to produce simple financial information and claimed they could not obtain information from TP-Link USA. The Court tried to put an end to that by ordering Defendants to produce financial data, including "the sales and financial information attributable to TP-Link USA." Dkt. No. 138 at 1–2. Defendants did not do so. Instead, they elected not to comply with the Court's order and tried to whitewash their defiance by serving a subpoena on TP-Link USA. When Atlas raised during meet and confers and the March 27 hearing that Defendants' data, TP-Link USA's data, and IDC data are inconsistent, Defendants had no answer.

Atlas then tried to explore the discrepancies via 30(b)(6) deposition, as well as to probe the relationship of Defendants and TP-Link USA and the sale, importation, and distribution of TP-Link products in the United States. But again, Defendants refused to engage honestly in discovery by failing to prepare a deponent on these topics despite two hearings and orders. Defendants did not investigate whether products sold to Latin American distributors enter the United States. Nor did they investigate why their financial data differs from TP-Link USA or independent, third-party data. Defendants never remedied these deficiencies.

Defendants thus have obfuscated and blocked discovery concerning their relationship with TP-Link USA and the sale, importation, and distribution of TP-Link products in the United States at every turn. They have thwarted Atlas's efforts to ascertain the full extent of TP-Link products sold, imported, or distributed in the United States—all the while violating the Court's directives.

To address Defendants' obstructionism and remedy the prejudice to Atlas, Atlas requests that the Court—as previewed at the last hearing and consistent with the above authority—find "certain facts … established" concerning "the sales of [TP-Link] products in the United States," as Defendants did not "engage honestly in discovery about those facts." Mar. 27, 2023 Hearing Tr. at 22:20–23:10. Specifically, Atlas asks the Court to find that the unit sales shown in the third-party IDC data are established for purposes of this action. This sanction addresses the harm to Atlas due to Defendants' conduct and furthers "the Rule 37 goals of punishing the party which has obstructed discovery and deterring others who would otherwise be inclined to pursue similar behavior." *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993). And it is much less severe than the remedy ordered in other cases where a party has not engaged honestly in discovery. *See, e.g.*, *Kamatani v. Benq Corp.*, 2005 WL 2455825, at *15 (E.D. Tex. Oct. 4, 2005) (striking defense where the defendant misrepresented its relationship to a third party).

At minimum, the third-party data should be deemed admissible at trial and the jury should be instructed that it may rely upon the IDC data if it chooses. Atlas should be permitted to argue to the jury that the third-party information is the true reflection of Defendants' sales, not Defendants' one-sided and unsupported presentation of that information.

## IV.  CONCLUSION

For these reasons, Atlas respectfully requests that the Court grant its motion.

Dated: April 21, 2023

Respectfully submitted,

*/s/ Max L. Tribble Jr.*
Max L. Tribble Jr.
Texas Bar No. 20213950
mtribble@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
Alejandra C. Salinas
Texas Bar No. 24102452
asalinas@susmangodfrey.com
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Kalpana Srinivasan
CA State Bar No. 237460
ksrinivasan@susmangodfrey.com
Oleg Elkhunovich
CA State Bar No. 269238
oelkhunovich@susmangodfrey.com
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Alexander W. Aiken
WA State Bar No. 55988
aaiken@susmangodfrey.com
**SUSMAN GODFREY LLP**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Michael F. Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric J. Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine A. Larson

████████████████████████████████

Texas Bar No. 24083360
blarson@hpcllp.com
Alden G. Harris
Texas Bar No. 24083138
aharris@hpcllp.com
William B. Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

T. John Ward, Jr.
TX State Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
Facsimile: 903-7572323

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023 a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service by email.

*/s/ Max L. Tribble, Jr.*
Max L. Tribble, Jr.

## CERTIFICATE OF CONFERENCE

The undersigned herby certifies that counsel for the parties have complied with Local Rule CV-7(h). In addition to informal conferences by e-mail, the parties engaged in a lead and local meet and confer phone call concerning the subject matter of this Motion on April 21, 2023. Counsel present on the call included Michael Heim, Andrea Fair, Alden Harris, Alejandra Salinas, and Alexander Aiken for Plaintiff, and Steven Moore, Kristopher Reed, Kevin Bell, and Tom Gorham for Defendants. The parties are at an impasse on the issues that are the subject of the present motion.

*/s/ Michael F. Heim*
Michael F. Heim

*/s/ Andrea Fair*
Andrea Fair