**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>TP-LINK TECHNOLOGIES CO., LTD.,<br>TP-LINK CORPORATION LTD, and<br>TP-LINK INTERNATIONAL LTD.,<br><br>Defendants. | Civil Action No. 2:21-cv-00430-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT OF NO DIRECT
INFRINGEMENT AND NO PRE-SUIT INDIRECT INFRINGEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     RESPONSE TO TP-LINK'S STATEMENT OF ISSUES TO BE DECIDED ................... 1

III.    RESPONSE TO TP-LINK'S STATEMENT OF "UNDISPUTED" MATERIAL FACTS  1

        A.    Complaint and Named Defendants ............................................................ 1

        B.    Defendants' Infringing Activities ............................................................. 2

        C.    Defendants' Pre-Suit Knowledge or Willful Blindness re the Asserted Patents ...... 4

IV.     LEGAL STANDARDS ............................................................................................ 5

V.      ANALYSIS ........................................................................................................... 6

        A.    Substantial Evidence Proves TP-Link Directly Infringes ............................ 6

              1.    TP-Link Offers To Sell The Accused Products ............................... 6

              2.    TP-Link Imports The Accused Products ....................................... 9

        B.    Substantial Evidence Proves TP-Link Indirectly Infringes Because It Knew
              Of Or Willfully Blinded Itself To The Asserted Patents And Its Infringement
              Before This Lawsuit ............................................................................ 10

VI.     CONCLUSION ................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................... 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................... 5

*Linear Tech. Corp. v. Micrel, Inc.*,
    275 F.3d 1040 (Fed. Cir. 2001) ................................................................................. 6

*Litecubes, LLC v. N. Light Prods.*,
    523 F.3d 1353 (Fed. Cir. 2008) ............................................................................... 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................... 5, 13, 14

*Meds. Co. v. Hospira, Inc.*,
    827 F.3d 1363 (Fed. Cir. 2016) ................................................................................. 6

*Mobile Equity Corp. v. Walmart Inc.*,
    No. 2:21-cv-00126-JRG-RSP,
    2022 U.S. Dist. LEXIS 162338 (E.D. Tex. Sept. 8, 2022) ........................... 12, 13, 14

*Motiva Patents, LLC v. Sony Corp.*,
    408 F. Supp. 3d 819 (E.D. Tex. 2019)....................................................................... 5

*Parity Networks, LLC v. Cisco Sys.*,
    No. 6:19-CV-00207-ADA, 2019 U.S. Dist. LEXIS 144094 (W.D. Tex. July 26, 2019) ......... 13

*SEB, S.A. v. Montgomery Ward & Co.*,
    412 F. Supp. 2d 336 (S.D.N.Y. 2006) ..................................................................... 10

*Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd.*,
    396 F. Supp. 3d 323 (S.D.N.Y. 2019) ..................................................................... 13

*Tinnus Enters., LLC v. Telebrands Corp.*,
    846 F.3d 1190 (Fed. Cir. 2017) ................................................................................. 5

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ................................................................................. 5

*Ziilabs, Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 2:14-cv-203-JRG-RSP, 2015 U.S. Dist. LEXIS 42361 (E.D. Tex. Feb. 26, 2015).......... 13

**Statutes**

17 U.S.C. §102(a), §401 ................................................................................................. 7

35 U.S.C. §271(a) ..................................................................................................... 5, 10

**Rules**

FED. R. CIV. P. 56(a) ..................................................................................................... 5

## I.    INTRODUCTION

TP-Link's motion repeatedly misstates the factual record by simultaneously arguing Atlas has no evidence supporting its case while TP-Link's evidence is undisputed.  Dkt. 195 ("Motion" or "Mot.").  Neither is true.  Atlas has ample evidence showing TP-Link has directly infringed the Asserted Patents by offering for sale and importing the accused 802.11ax Wi-Fi 6 products into the United States, and indirectly infringed before the lawsuit was filed because it knew of the asserted standard essential 802.11ax Wi-Fi 6 patents and its standards-based infringement.  When Atlas's evidence is viewed through the proper prism at the summary judgment stage—where all of Atlas's evidence is credited and with all reasonable inferences drawn in Atlas's favor—Atlas easily clears the summary judgment hurdle and the motion should be denied.

## II.    RESPONSE TO TP-LINK'S STATEMENT OF ISSUES TO BE DECIDED

TP-Link misstates the issues to be decided.  Mot. at 2.  The properly framed issues are:

1.    Whether Atlas has evidence that, when credited and all reasonable inferences are drawn in Atlas's favor, shows TP-Link directly infringes the Asserted Patents by offering to sell and importing the Accused Products in the United States; and

2.    Whether Atlas has evidence that, when credited and all reasonable inferences are drawn in Atlas's favor, shows TP-Link had the requisite knowledge of the Asserted Patents and infringement to indirectly infringe the Asserted Patents before this lawsuit was filed.[1]

## III.    RESPONSE TO TP-LINK'S STATEMENT OF "UNDISPUTED" MATERIAL FACTS

### A.    Complaint and Named Defendants

Atlas agrees that its complaint alleges TP-Link directly infringes by offering for sale and importing the Accused Products in the United States.  Mot. at 2-3; Dkt. 1 (Complaint) at ¶¶2, 55,

---

[1] TP-Link does not seek summary judgment for its post-suit indirect infringement.

63, 71, 79, 87, 103, 111.  However, Atlas disputes that its "*sole* claim for indirect infringement" is that TP-Link induces others to *use* the Accused Products; the complaint also alleges TP-Link induces others to directly infringe by, *e.g.*, selling, offering for sale and/or importing the Accused Products.  Mot. at 3; Dkt. 1 at ¶¶56-57, 64-65, 72-73, 80-81, 88-89, 104-105, 112-113.

**B.    Defendants' Infringing Activities**

Atlas disputes that TP-Link does not "offer to sell or import the Accused Products in or into the United States" because its U.S. affiliate, TP-Link USA, is "*solely* responsible for [] offering for sale the Accused Products in the United States" and importing them.  Mot. at 3-4 (emphasis added).

The evidence shows instead that TP-Link offers for sale the Accused Products via its U.S. website.  For example, TP-Link offers the accused AX3000 Wi-Fi 6 mesh router for $129.99 via its U.S. website, https://www.tp-link.com/us/:



Ex. A (TP-Link U.S. website) at 1 (emphasis added).  The website states that the copyright for this TP-Link U.S. website is owned by defendant TP-Link Corporation Limited:

2

Copyright © 2023 TP-Link Corporation Limited. All rights reserved.

*Id.* at 2 (emphasis added).  The Terms of Use for this TP-Link U.S. website explicitly state it is "provided by TP-Link Corporation Limited, located at [] Hong Kong." Ex. B (Terms of Use) at 9. And this U.S. TP-Link website was registered in China (via www.jox.cn), where the TP-Link defendants reside. Ex. C (Whois TP-Link.com) at 3.

Similarly, the evidence shows TP-Link ships the Accused Products to the United States and imports them into the United States. For example, this invoice from Defendant TP-Link International Limited shows ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮



Lastly, the evidence shows Defendants' distributor affiliate, TP-Link USA, ▮▮▮▮

3



Ex. E (Distribution Agreements) at TPL0003349 (emphasis added); *see also id.* at TPL0003350

### C.      <u>Defendants' Pre-Suit Knowledge or Willful Blindness re the Asserted Patents</u>

Atlas disputes "there is no evidence that either Defendant had knowledge of the Asserted Patents prior to the filing of the complaint." Mot. at 4. Many months before the complaint, Atlas sent three letters to various TP-Link representatives. Ex. 8 (Notice Letters). Those letters, which were substantively identical, invited TP-Link to license each of the "Standard Essential Patents (SEP) in Wi-Fi 6" (*i.e.*, those "adopted in the IEEE 802.11ax standard") that Atlas acquired from Newracom. *Id.* TP-Link does not deny that it received those letters and never responded to them. *See* Mot.

Instead, TP-Link argues the notice letters refer to an "unspecified portfolio" of patents, fail to "identify any specific claim of any patent," and "do not allege that any Accused Product infringes any such claim." Mot. at 4-5. Atlas disagrees. The letters specifically identify the patents as those acquired by Atlas from Newracom. Ex. 8. And a quick search of the USPTO database easily identifies all such patents by patent number—*including the Asserted Patents*. Ex. F (USPTO Assignment Search); Ex. G (Newracom-Atlas Patent Assignment). Moreover, because those patents are standard essential to the Wi-Fi 6 802.11ax standard, that means they necessarily cover and are infringed by *each of TP-Link's Wi-Fi 6 802.11ax products*. Ex. H (Shoemake Rpt.) at ¶186.

Accordingly, there is substantial evidence that TP-Link knew of or willfully blinded itself to the Asserted Patents and its infringement before Atlas filed the complaint.

## IV.    LEGAL STANDARDS

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). It is not proper when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant has the burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To prove direct infringement, the patentee must prove the alleged infringer "makes, uses, offers to sell, or sells [] within the United States or imports into the United States" a product or process that meets each claim limitation. 35 U.S.C. §271(a). To prove indirect induced infringement, the patentee "must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal citations omitted). Knowledge may be established through actual knowledge or willful blindness. *See Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 833 (E.D. Tex. 2019). Direct and indirect infringement may be proven via circumstantial evidence. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017)

5

## V.    ANALYSIS

### A.    Substantial Evidence Proves TP-Link Directly Infringes

TP-Link argues "there is no evidence in the record" showing it offers to sell or imports the Accused Products.  Mot. at 6-8.  False.  The below evidence, when accepted as true with all reasonable inferences drawn in Atlas's favor, proves TP-Link directly infringes by offering to sell and importing the Accused Products.

#### 1.    TP-Link Offers To Sell The Accused Products

Substantial evidence shows that TP-Link offers for sale the Accused Products via its U.S. website.  For example, TP-Link offers the accused AX3000 Wi-Fi 6 mesh router for $129.99:



Ex. A (TP-Link U.S. website) at 1 (emphasis added).  This is a commercial offer for sale under the law of contracts because it is sufficiently definite to show "the manifestation of willingness to enter into a bargain" by TP-Link.  *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1050 (Fed. Cir. 2001) (citing Restatement (Second) of Contracts § 26); *see also Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363, 1373 (Fed. Cir. 2016) (the Federal Circuit looks to the law of contracts to determine an

offer for sale).  The website includes key terms like a price ($129.99) and quantity (1-pack).  Ex. A (TP-Link U.S. website) at 1.  And it includes a "Buy Now" button through which a customer can accept TP-Link's offer to sell the AX3000 Wi-Fi 6 router for the offered price.  *Id.*  Similar evidence exists for the other Accused Products.  Ex. I (TP-Link U.S. website, Wi-Fi 6 Routers) at, *e.g.*, 5 (offering Archer AX55 for $109.99).  Accordingly, TP-Link offers the Accused Products for sale via its U.S. website.

TP-Link appears to concede the TP-Link U.S. website offers to sell the Accused Products, but nonetheless argues "Defendants do not control [that U.S.] website," TP-Link USA does.  Mot. at 7.  That is a hotly disputed fact.  On Atlas's side of the ledger is evidence that Defendant TP-Link Corporation Limited owns the copyright in the TP-Link U.S. website.  Ex. A (TP-Link U.S. Website) at 2.  This means Defendant TP-Link Corporation Limited—not its TP-Link USA affiliate—claims to be the original author of the TP-Link U.S. website.  *See* 17 U.S.C. §102(a), §401.  Also, the Terms of Use for that TP-Link U.S. website explicitly state it is "provided by TP-Link Corporation Limited, located at [] Hong Kong."  Ex. B (Terms of Use) at 9; *see also id.* ("TP-Link provides … (2) websites(s) that may be accessed at https://www.tp-link.com/us/").  Further, that TP-Link U.S. website was registered in China, which strongly suggests it is not controlled by TP-Link USA.  Ex. C (Whois TP-Link.com) at 3.  Atlas's expert, Dr. Shoemake, explains why this evidence shows TP-Link offers to sell the Accused Products.[2]  Ex. H (Shoemake Rpt.) at ¶184 & fn 39.  And this Court has previously stated it does "not find credible the evidence that [the TP-Link Defendants] have produced about their relationship with TP-Link USA.  I think that the

---

[2] TP-Link moved to strike Dr. Shoemake's opinion that TP-Link offers for sale the Accused Products via its U.S. website due to a purported "lack of specialized knowledge."  Mot. at 7; *see* Dkt. 196.  Atlas opposes for the reasons in its concurrently filed opposition brief.  But even if the Court strikes Dr. Shoemake's ultimate opinion, that does not eliminate the underlying evidence showing TP-Link controls its U.S. website.

evidence that we have indicates that [the TP-Link Defendants] are deliberately—deliberately trying to hide their relationship with TP-Link USA." Ex. J (3/1/23 Motion Hearing) at 30:15-20; *see also id.* at 24:6-8, 25:1-4 (This Court found it "very hard [] to believe that TP-Link USA has no relationship to the Chinese TP-Link entities" and noted "it's not believable [] that there is no corporate relationship between [the TP-Link Defendants] and TP-Link USA.") On TP-Link's side of the ledger is nothing more than self-serving testimony from TP-Link interested employees. Mot. at 7-8 (citing, *e.g.*, Ex. 1, Zhang Tr., & Ex. 4 Liu Tr.). Given the contradictory evidence, this is a classic jury question.

TP-Link's non-infringement expert (Dr. Hansen) raises a second non-infringement argument, which TP-Link may proffer in Reply. Dr. Hansen contends the Terms of Use distinguish between "Services" provided by TP-Link and "Products" provided by TP-Link USA. Ex. K (Hansen Report) at ¶90. The Terms of Use directly contradict this argument. The Terms of Use define "TP-Link" as "TP-Link Corporation Limited." Ex. B (Terms of Use) at 9. The Terms of Use then list things that "TP-Link provides," which include: (1) products; (2) the U.S. website; and (3) services.

**TERMS OF USE**

Welcome to TP-Link!

The Services defined herein are provided by TP-Link Corporation Limited., located at Room 901,9/F., New East Ocean Centre, 9 Science Museum Road, Tsim Sha Tsui, Kowloon, Hong Kong, its affiliates and subsidiaries. This document may refer to the service provider as "TP-Link Corporation Limited.," "TP-Link," "we," "us," or "our."

TP-Link provides:

(1) TP-Link hardware products ("Products"), (2) website(s) that may be accessed at https://www.tp-link.com/us/ and www.kasasmart.com ("Sites") and https://www.tapo.com/us/, (3) services, including technical support and services accessible through the Site(s) ("Web Apps"), (4) software that may be downloaded to your

*Id.*  A reasonable jury reviewing these statements could conclude that Defendant TP-Link is the one providing both products for sale and the U.S. website.  Because there is a genuine dispute as to whether TP-Link directly infringes by offering the Accused Products for sale via its U.S. website, this Court must deny summary judgment.

### 2.    TP-Link Imports The Accused Products

Substantial evidence shows that TP-Link imports the Accused Products into the United States.  For example, this invoice shows ███████████████████████████

███████████████████████████



Ex. D (Invoices) at TPL0003326 (emphasis added).  All the other produced invoices similarly show ███████████████████████████  *Id.* at TPL0003327-3340.  Dr. Shoemake explains why these invoices prove TP-Link directly infringes.  Ex. H (Shoemake Rpt.) at ¶185.  Accordingly, substantial evidence proves that TP-Link imports the Accused Products into the United States.

TP-Link relies solely on a third-party website, www.investopedia.com, to interpret cryptic acronyms in the invoices (*e.g.*, "FCA," "EXW," or "FOB") and then argue this necessarily means

"non-party TP-Link USA takes possession of the goods in Asia and there is no importation into the United States by Defendants." Mot at 8. False. At best, this presents a factual dispute regarding importation that precludes summary judgment. *See Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1370 (Fed. Cir. 2008) ("[S]imply because an article is delivered 'free on board' outside of the forum, a sale is not necessarily precluded from occurring in the forum."); *SEB, S.A. v. Montgomery Ward & Co.*, 412 F. Supp. 2d 336, 340 (S.D.N.Y. 2006) ("[T]hat a product is sold F.O.B. China or F.O.B. United States, does not, by itself, determine where a product is sold for the purposes of § 271(a).").

### B. <u>Substantial Evidence Proves TP-Link Indirectly Infringes Because It Knew Of Or Willfully Blinded Itself To The Asserted Patents And Its Infringement Before This Lawsuit</u>

TP-Link wrongly asserts: "there is no evidence that Defendants knew of the Asserted Patents, let alone of Atlas's allegations of patent infringement, before the filing date of the Complaint." Mot. at 9. To the contrary, substantial evidence shows that TP-Link knew of the Asserted Patents and its infringement (or willfully blinded itself to those facts) many months before Atlas filed this lawsuit.

On June 8, 2021, Atlas sent three letters to various TP-Link representatives. Ex. 8 (Notice Letters). Those letters notified TP-Link about each of the "Standard Essential Patents (SEP) in Wi-Fi 6" (*i.e.*, those "adopted in the IEEE 802.11ax standard") that Atlas acquired from Newracom:



*Id.* (emphasis added).[3]

A quick search of the USPTO database for "Newracom" and "Atlas" easily identifies all

such patents, by patent number, relating to 802.11ax that were assigned by Newracom to Atlas—

including the Asserted Patents:

---

[3] TP-Link does not argue that it did not receive or know of these letters.  *See* Mot. at 9 (only noting the letters "were not sent to Defendants.").  Nonetheless, to the extent TP-Link argues in Reply that it did not know of these letters because they were sent to TP-Link USA, this Court has dismissed the notion that TP-Link lacks knowledge of TP-Link USA.  *See* Ex. J (3/1/23 Motion Hearing) at 24:6-8, 25:1-4, 30:15-20.

Exhibit A

| Patent No. | Country | Title of Invention | Filing Date | Application No. | Issue date |
|---|---|---|---|---|---|
| | | * * * * * | | | |
| 9,825,738 | US | Acknowledgement method and multi user transmission method | 4/3/2015 | 14/678,724 | 11/21/2017 |
| | | * * * * * | | | |
| 9,763,259 | US | Sounding method | 9/22/2015 | 14/862,078 | 9/12/2017 |
| | | * * * * * | | | |
| 9,912,513 | US | System and method for synchronization for OFDMA transmission | 7/6/2016 | 15/203,717 | 3/6/2018 |
| | | * * * * * | | | |
| 9,532,187 | US | Interleaver for physical layer protocol data unit in a high efficiency wireless LAN | 8/11/2015 | 14/823,524 | 12/27/2016 |
| | | * * * * * | | | |
| 9,917,679 | US | Method and apparatus for transmitting response frame based on type in a high efficiency wireless LAN | 11/3/2015 | 14/931,753 | 3/13/2018 |
| | | * * * * * | | | |
| 9,531,520 | US | Apparatus and method for downlink and uplink multi-user transmissions | 3/23/2016 | 15/078,920 | 12/27/2016 |
| | | * * * * * | | | |
| 10,020,919 | US | Protection methods for wireless transmissions | 4/25/2017 | 15/497,094 | 7/10/2018 |

Ex. F (USPTO Assignment Search); Ex. G (Newracom-Atlas Patent Assignment) at 22, 25, 26, 29, 30, 33, 39.

Further, as Dr. Shoemake explains, because the Asserted Patents are standard essential to the Wi-Fi 6 802.11ax standard, that means they necessarily cover and are infringed by each of TP-Link's Wi-Fi 6 802.11ax products. Ex. H (Shoemake Rpt.) at ¶186. Because Atlas told TP-Link that the patents were 802.11ax Wi-Fi standard essential, TP-Link knew that its Wi-Fi 6 802.11ax products necessarily infringed. *See id.* When all this evidence is credited and all reasonable inferences are draw in Atlas's favor, a jury could reasonably find that TP-Link knew by at least June 8, 2021: (1) of Atlas's 802.11ax Wi-Fi 6 standard essential Asserted Patents; and (2) that its Wi-Fi 6 802.11ax products necessarily infringed those standard essential Asserted Patents. Alternatively, a jury could reasonably find that TP-Link willfully blinded itself to those facts by ignoring the letters and burying its head in the sand with respect to the patents and its infringement. *See Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 162338, at *8 (E.D. Tex. Sept. 8, 2022) (presentation "describ[ing] the technology of the Asserted Patent" and "disclos[ing] the technology's status as patented in the United States" was "sufficient

12

to establish a genuine dispute of material fact regarding Walmart's actual knowledge of or willful blindness to infringement"), *report and recommendation adopted*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 175052 (E.D. Tex. Sept. 27, 2022)

TP-Link argues the June 8, 2021 notice letters "do not support an inference of knowledge because they do not identify any Asserted Patent." Mot. at 9. But as explained above, those letters identify the Newracom 802.11ax Wi-Fi 6 standard essential patent portfolio that was acquired by Atlas, from which TP-Link could easily identify the Asserted Patents by number. *See supra.* Knowledge of the patents can be proven via circumstantial evidence. *Lucent Techs.*, 580 F.3d at 1322. Moreover, this Court has held that notifying a party of a patent portfolio can plausibly provide the requisite knowledge of patents within that portfolio. *See Ziilabs, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:14-cv-203-JRG-RSP, 2015 U.S. Dist. LEXIS 42361, at \*9-10 (E.D. Tex. Feb. 26, 2015); *see also Simo Holdings, Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 335 (S.D.N.Y. 2019); *Parity Networks, LLC v. Cisco Sys.*, No. 6:19-CV-00207-ADA, 2019 U.S. Dist. LEXIS 144094, at \*8-9 (W.D. Tex. July 26, 2019). This Court has also held that a party need not show that it identified specific patent numbers "in pre-suit materials" to establish a "claim of pre-suit indirect infringement." *Mobile Equity Corp.*, 2022 U.S. Dist. LEXIS 162338, at \*7 (denying motion for summary judgment of no pre-suit knowledge and explaining that "Walmart does not offer any case law supporting the necessary conclusion that the absence of identifying patent numbers, offers to license, and accusations of infringement in pre-suit materials is fatal to a claim of pre-suit indirect infringement").

TP-Link complains that the June 8, 2021 notice letters "fail to identify any particular claim or basis for infringement of any Asserted Patent." Mot. at 9. However, as explained above, those letters state that Atlas's Asserted Patents are "Standard Essential Patents (SEP) in Wi-Fi 6." Ex.

8.  And due to that Wi-Fi 6 802.11ax standard essentiality, TP-Link's Wi-Fi 6 802.11ax Accused Products necessarily infringe.  Ex. H (Shoemake Rpt.) at ¶186; *see Lucent Techs.*, 580 F.3d at 1322. In any event, this Court has rejected the argument that a patentee must make specific accusations of infringement "in pre-suit materials" to establish a "claim of pre-suit indirect infringement." *Mobile Equity Corp.*, 2022 U.S. Dist. LEXIS 162338, at *7.

Lastly, TP-Link argues Atlas admitted in its interrogatory response that TP-Link was not willfully blind before the complaint.  *See* Mot. at 8 and fn. 5 (citing Ex. 11 at 55).  That is false. Atlas's interrogatory response explicitly pointed to the June 8, 2021 pre-suit licensing letters as evidence and then explained how TP-Link willfully blinded itself at that time:

> TP-Link also knew by at least *June 8, 2021* that it needed a license to the Asserted Patents for TP-Link's Wi-Fi 6 products….  TP-Link willfully blinded itself to its infringement of the Patents-in-Suit and consciously refused to respond to Atlas's licensing overtures; *once Atlas told TP-Link that it needed to take a license to the Asserted Patents for its Wi-Fi 6 Products, TP-Link believed with high probability that its Wi-Fi 6 products infringed but took deliberate action to avoid learning further details of its infringement*.

Ex. 11 (Atlas Rog. Resp.) at 54-55 (emphasis added).

## VI.    CONCLUSION

Because Atlas has evidence showing TP-Link directly infringes by offering to sell and importing the Accused Products and indirectly infringes by inducing others to infringe with the requisite knowledge of the patents and the infringement, Atlas respectfully requests the Court to deny TP-Link's Motion.

Dated: June 22, 2023                            Respectfully submitted,


                                               */s/ Eric J. Enger*
                                               Max L. Tribble, Jr.
                                               Texas State Bar No. 20213950
                                               Joseph S. Grinstein
                                               Texas State Bar No. 24002188
                                               Alejandra C. Salinas
                                               Texas State Bar No. 24102452
                                               **SUSMAN GODFREY, LLP**
                                               1000 Louisiana Street, Suite 5100
                                               Houston, Texas 77002
                                               Telephone: (713) 651-9366
                                               Facsimile: (713) 654-6666
                                               mtribble@susmangodfrey.com
                                               jgrinstein@susmangodfrey.com
                                               asalinas@susmangodfrey.com


                                               Kalpana Srinivasan
                                               California State Bar No. 237460
                                               Oleg Elkhunovich
                                               California State Bar No. 269238
                                               **SUSMAN GODFREY, LLP**
                                               1900 Avenue of the Stars, 14th Floor
                                               Los Angeles, CA 90067
                                               Telephone: (310) 789-3100
                                               Facsimile: (310) 789-3150
                                               ksrinivasan@susmangodfrey.com
                                               oelkhunovich@susmangodfrey.com


                                               Michael F. Heim
                                               Texas State Bar No. 09380923
                                               Eric J. Enger
                                               Texas State Bar No. 24045833
                                               Blaine A. Larson
                                               Texas State Bar No. 24083360
                                               Alden G. Harris
                                               Texas State Bar No. 24083138
                                               William B. Collier, Jr.
                                               Texas State Bar No. 24097519
                                               **HEIM, PAYNE & CHORUSH, LLP**
                                               1111 Bagby, Suite 2100
                                               Houston, Texas 77002
                                               Telephone: (713) 221-2000
                                               Facsimile: (713) 221-2021
                                               mheim@hpcllp.com

                                               15

eenger@hpcllp.com
blarson@hpcllp.com
aharris@hpcllp.com
wcollier@hpcllp.com

T. John Ward, Jr.
TX State Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
Facsimile: 903-7572323

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Atlas Global Technologies*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served to all counsel of record via CM/ECF and via email.

*/s/ Eric J. Enger*
Eric J. Enger

## CERTIFICATE OF AUTHORITIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Eric J. Enger*
Eric J. Enger