# Exhibit J

THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

* * * * *

ATLAS GLOBAL TECH, LLC. * NO. 2:21-CV-430
 * Marshall, Texas
VS. *
 * 9:00 a.m. - 10:20 a.m.
TP-LINK TECH CO. LTD, ET AL * March 1, 2023

* * * * *

**MOTION HEARING**

BEFORE JUDGE ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

* * * * *

Proceedings recorded by computer stenography
Produced by computer-aided transcription

*Edward L. Reed*
9251 Lynne Circle
Orange, Texas 77630 * 409-330-1605

**APPEARANCES:**

For the Plaintiff:

    MR. MAX L. TRIBBLE, JR.
    MS. ALEJANDRA C. SALINAS
    **Susman Godfrey, LLP**
    1000 Louisiana
    Suite 5100
    Houston, TX 77002

    MR. ALDEN HARRIS
    **Heim Payne & Chorush, LLP**
    1111 Bagby, Suite 2100
    Houston, TX 77002

    MS. ELIZABETH L. DERIEUX
    **Capshaw DeRieux, LLP**
    114 E. Commerce Ave.
    Gladewater, TX 75647

    MS. ANDREA L. FAIR
    **Ward Smith & Hill, PLLC**
    1507 Bill Owens Parkway
    Longview, TX 75604

For the Defendant:

    MR. STEVEN D. MOORE
    MR. KRISTOPHER L. REED *(Dallas Office)*
    **Kilpatrick Townsend & Stockton, LLP**
    Two Embarcadaro Center, Suite 1900
    San Francisco, CA 94111-3834

    MR. J. TRAVIS UNDERWOOD
    **Gillam & Smith, LLP**
    102 N. College
    Suite 800
    Tyler, TX 75702

Courtroom Deputy:

    BECKY ANDREWS

Court Reporter:

    EDWARD L. REED

**P R O C E E D I N G S**

**9:00 A.M. - MARCH 1, 2023**

THE COURT:  For the record, we're here for the Discovery Motion Hearing in Atlas Global Technologies vs. TP-Link Technologies, et al, which is Case No. 2:21-430 on our docket.  Would counsel state their appearances for the record.

MS. FAIR:  Good morning, Your Honor.  Andrea Fair on behalf of the plaintiff.  With me today are lead counsel, Mr. Max Tribble, Ms. Alejandra Salinas, and Mr. Alden Harris, and we're ready -- and Ms. Betty DeRieux.  And we're ready to proceed.

THE COURT:  All right, thank you, Ms. Fair.

MR. UNDERWOOD:  Good morning, Your Honor. Travis Underwood on behalf of the defendants.  We've got our lead counsel, Steve Moore, and Kris Reed, and we're ready to proceed.

THE COURT:  All right.  Thank you, Mr. Underwood.

In keeping up with the notices, it's my understanding that the defendant's Motion to Compel, which is at Docket No. 112, has been mooted by production since the motion was filed.

Is that a correct understanding?

MR. REED:  *(Microphone not on)* I believe that

that that's no more specific than just saying "relevant documents" in terms of what they are seeking from TP-Link USA.

And just to make sure, in our prior agreement that we would produce the costs and revenue information, we are not agreeing that we are producing any information from TP-Link USA.

THE COURT: Well, we can talk about the control issue. Your client is not denying that it is the ultimate owner of TP-Link USA, is it?

MR. REED: Oh, we are denying that, Your Honor. That is not correct.

THE COURT: Who owns TP-Link USA.

MR. REED: TP-Link USA is owned by a company called TP UK Limited.

THE COURT: Who owns TP-UK?

MR. REED: According to the latest filing in the UK, latest publicly available filing --

THE COURT: I don't really care about according to any filings. You represent the company at the top. You are not willing to make a representation for your client as to this, as opposed to just saying this is what it says in some record somewhere?

MR. REED: First of all, we don't represent the company at the top. Our client, the defendants,

aren't the company at the top.

THE COURT:  Who is the company at the top?

MR. REED:  The company at the top -- again, to our knowledge, and we've had this in our certification that we filed with the Court -- is a company called Big -- well, with respect to TP UK Limited, it's a company called Big Field International Limited.  And that company is owned by a company called Ivy Grove Limited, which is incorporated in the BVI.

THE COURT:  And owned by who?

MR. REED:  And I don't now.  That's as far as I know the chain goes back.

THE COURT:  You know, I have this declaration by the CEO of TP-Link USA from the *Freeny* litigation that said that TP-Link USA is a subsidiary of TP-Link Tech.  TP-Link Tech is one of your clients; right?

MR. REED:  That's correct.  And for a time that was accurate, that's correct.  It was divested and sold to TP UK Limited.  And that is the current parent of TP-Link USA.

THE COURT:  And are you representing that there is no relationship between TP-Link Tech and this Virgin Islands entity?

MR. REED:  Your Honor, as I stated, I don't know if there is a relationship with the Virgin Islands

entity.

THE COURT:  Why?  It's an obvious issue as to what the relationship is between your client and TP-Link USA.  And what I am hearing from you is that your client has created this Byzantine network of corporations in order to avoid that.  But it's very hard for me to believe that TP-Link USA has no relationship to the Chinese TP-Link entities.

MR. REED:  Your Honor, the relationship, and this is based on all the information I know, is based on that distribution of the entities Your Honor has.  They were a subsidiary for a period of time.  My understanding around the time frame of 2016/2017 time frame, that relationship ended with the divestiture of them to TP UK Limited.

THE COURT:  And can you represent to me that that wasn't simply the creation of various intervening entities?

MR. REED:  I'm sorry, the creation of various intervening entities?

THE COURT:  Yes.  That it's not just that TP-Link Tech, your client, created other entities to put between itself and TP-Link USA?

MR. REED:  I do not know the reasons one way or the other as to why that occurred, no, Your Honor.

THE COURT:  All right.  Well, it's not believable to me that there is no corporate relationship between your client and TP-Link USA based on the information I have.

MR. REED:  Well, Your Honor, I'd be happy to go back and supplement to see if I can find additional information as to the current corporate structure.  But what I do know is what we have in the sworn testimony in this case is that the TP-Link Technologies Company Limited and TP-Link Corporation Limited, the two defendants in this case, do not control TP-Link USA.

THE COURT:  And that, of course, is not the issue, whether they control the entity or not.  The question is do they have sufficient control to get the information that's relevant to this litigation against your clients.

MR. REED:  And again, what has been testified to is they do not have that control.

THE COURT:  Yeah.  I noted that in the declarations they don't dispute this declaration that Mr. Shu provided in the *Freeny Litigation*.  They just identify it.  If it is not correct, why don't they dispute it?

MR. REED:  Again, for some period of time that was accurate, what was said in that particular

document.  I forget the exact date of the *Freeny* Declaration, but, again, June 24, 2013, it's my understanding in 2013 that TP-Link USA was a subsidiary of TP-Link Technologies Company Limited.

THE COURT:  And your client is not aware of the chain between it and TP-Link USA at this time?

MR. REED:  Your Honor, I have not investigated if there is such a chain in terms of going back to the British Islands Company.  No, I don't know the answer to that today.  I'm not going to represent one way or the other there is a chain back all the way to the a BVI company.  I simply don't know.

THE COURT:  Well --

MR. REED:  Now, we can go back and investigate that and report back to Your Honor, but sitting here today, I can't answer that question.

THE COURT:  I think the fact that the CEO of TP-Link USA swore to this Court that TP-Link USA was a subsidiary of your client creates a situation where, if you want the Court not to believe it, you need to provide detailed information about what happened to change it, other than just saying that they created some other entity to play that role.

MR. REED:  Your Honor, again, we're happy to go back and supplement the record to give more

information regarding the connection, if any, between TP-Link Technologies Corporation and TP UK and any upstream entities.  But what I do know, again from the record, is that they are no longer a subsidiary of TP-Link Technologies Company Limited.

THE COURT:  You indicate that your client, TP-Link Tech, does not have any information about the marketing of its products that is conducted by TP-Link USA?

MR. REED:  I'm not sure we represented that, Your Honor.  What we said is that they control the marketing for the area in which they are the distributor, which is the United States.  TP-Link, our clients, do provide some promotional materials to them, which are publicly available.  The vast majority of them are on the Internet with respect to the Accused Products.  And those have been all collected and produced in this case.

THE COURT:  What about the provision of the Distribution Agreement that was just referred to by Ms. Salinas?

MR. REED:  Yes, Your Honor.  To the extent that any marketing information has been provided to the defendants in this case, those being TP-Link Tech and TP-Link Corporation, that information has been produced

28

in this case.

THE COURT:  And why shouldn't you be directed to request from TP-Link USA all of the advertisements and promotions that they have?

MR. REED:  Your Honor, we could request that. I'm not sure that there is any advertisement and promotions that aren't existing.  Again, TP-Link USA promotes these products publicly on the Internet.  If they have additional information that we haven't produced, again any information should have come to us and it should have already been produced.

THE COURT:  Is there any reason you haven't requested that information from TP-Link USA?

MR. REED:  Again, because we do not control the information of TP-Link USA.

THE COURT:  You know, I'm looking at the provisions of the Distribution Agreement that says that your client shall be kept informed of all advertisements and promotions and shall have the right of prior written approval with respect thereto.

MR. REED:  And, Your Honor, with respect to any advertisements and promotions, of which we've been informed and which such approval has been sought, we have produced that information.  We have produced those marketing materials.

29

THE COURT:  Why shouldn't you be ordered to request it?

MR. REED:  To request it from TP-Link USA?

THE COURT:  Yes.

MR. REED:  Your Honor, we could request marketing materials from TP-Link USA if there is some set of materials that have not been provided to us.

THE COURT:  Well, how do you know if you don't ask for it?

MR. REED:  We don't know if there is something that they have that we don't already have; that's correct.

THE COURT:  I mean, that's kind of like the lawyer saying, "I haven't asked my client to give me this information, but as far as I know, it's all been provided."

You have to ask, don't you?

MR. REED:  Well, Your Honor, they are not our client in this case, TP-Link USA.

THE COURT:  Right, but they have a contractual right to it.

MR. REED:  They have a right to marketing information, right.  Prior approval, right, the prior approval of marketing information.

THE COURT:  And are you saying that you don't

think that gives you a right to know what the -- your client a right to know what advertisements, promotions, and marketing materials are being used to market your client's products?

MR. REED:  That's not what we're saying, Your Honor.

THE COURT:  Then why don't you have your client ask for it?

MR. REED:  We're happy to have our client ask for marketing materials that have not already been provided to us.  We're happy to make that ask.

THE COURT:  Good.

MR. REED:  But the request from plaintiff goes far beyond that, Your Honor.

THE COURT:  I, at this point, do not find credible the evidence that your clients have produced about their relationship with TP-Link USA.  I think that the evidence that we have indicates that your clients are deliberately -- deliberately trying to hide their relationship with TP-Link USA.

MR. REED:  Your Honor, the divestiture of TP-Link USA happened well before this case.

THE COURT:  I don't know when it happened.  Do you?

MR. REED:  It happened in the 2016/2017 time

frame, and that's part of a deposition that was taken in this case.  That was discussed.

THE COURT:  All right.  And who was it transferred to?  What entity?

MR. REED:  TP-Link UK Limited.

THE COURT:  And that was still an entity owned by the Chinese entity?

MR. REED:  Not owned by the Chinese entity. In 2017 that TP-Link UK Limited became owned by a separate company, from my understanding, from the documents that they submitted in this case.

THE COURT:  But the trail is lost there.  You don't know what the relationship between the British Virgin Islands entity and the Chinese entity is?

MR. REED:  At this point I do not know the relationship between those entities; that's correct.

THE COURT:  So why should I assume there is none?

MR. REED:  I don't think we should assume either direction, Your Honor.  I think that's what we are trying to say.  What we do know or all I can tell you today is that they have separate employees, they have separate officers.  They operate at arm's length with our clients.  They have a Distribution Agreement that's at arm's length.  Although we do know, without

assuming anything, is all the indicia are that there is no control over this entity, TP-Link USA, a separate California corporation that has an arm's length agreement with one of the defendants.

THE COURT:  All right.  Well, at some point your clients will want to offer evidence, and at that point we will have to make a determination about whether or not their evidence is appropriate given their unwillingness to provide other discovery.  But I understand your position.

MR. REED:  Your Honor, again, we would offer to supplement the record, if Your Honor would agree, to provide more information on the relationship, if any, with that particular entity.

THE COURT:  All right.  Well, I leave that to your discretion.  At this point I'm just going to grant the motion by the plaintiff and leave it to your clients to decide how they want to respond to the order.

MR. REED:  Thank you, Your Honor.

THE COURT:  Thank you, Mr. Reed.

MR. HARRIS:  Good morning, Your Honor.

THE COURT:  Good morning, Mr. Harris.

MR. HARRIS:  The third category that I want to talk about today is basic technical documents for the