**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>TP-LINK TECHNOLOGIES CO., LTD.,<br>TP-LINK CORPORATION LTD, and<br>TP-LINK INTERNATIONAL LTD.,<br><br>    Defendants. | Civil Action No. 2:21-cv-00430-JRG-RSP<br><br>JURY TRIAL DEMANDED |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE PORTIONS
OF PLAINTIFF'S INFRINGEMENT EXPERT OPINIONS (DKT. 196)</u>**

████████████████████████

# TABLE OF CONTENTS

I.    Background................................................................................................................. 1

II.    Legal Standards........................................................................................................ 1

III.    Analysis ................................................................................................................... 2

   A.  Dr. Shoemake's Direct Infringement Analysis (¶¶184-185)................................. 2

   B.  Dr. Shoemake's Indirect Infringement Analysis (¶¶186-218) ............................. 5

   C.  Dr. Shoemake's Cross-References ........................................................................ 7

IV.    Conclusion ............................................................................................................. 11

████████████████████████████████████████████

## TABLE OF AUTHORITIES

**Cases**

*Asia Vital Components Co. v. Asetek Danmark A/S*,
  377 F. Supp. 3d 990 (N.D. Cal. 2019) ................................................................ 11

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993).......................................................................................... 2, 3

*Finesse Wireless, LLC v. AT&T Mobility, LLC*,
  2022 U.S. Dist. LEXIS 230134 (E.D. Tex. Dec. 21, 2022)..................................... 2

*Gree, Inc. v. Supercell Oy*,
  2020 U.S. Dist. LEXIS 126913 (E.D. Tex. Jul. 20, 2020)................................... 5, 7

*Litecubes, LLC v. N. Light Prods.*,
  523 F.3d 1353 (Fed. Cir. 2008)............................................................................ 4

*Robroy Indus. – Tex., LLC v. Thomas & Betts Corp.*,
  2017 U.S. Dist. LEXIS 54230 (E.D. Tex. Apr. 10, 2017) ....................................... 2

*Spreadsheet Automation Corp. v. Microsoft Corp.*,
  587 F. Supp. 2d 794 (E.D. Tex. 2007).................................................................. 7

*Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*,
  2021 U.S. Dist. LEXIS 49066 (D. Del. Mar. 16, 2021) ....................................... 10

*Terrebonne Parish NAACP v. Jindal*,
  2015 U.S. Dist. LEXIS 142277 (M.D. La. Oct. 18, 2015) .................................. 2, 5

## I.    INTRODUCTION

TP-Link moves to strike three portions of the infringement report of Dr. Matthew Shoemake, Atlas's infringement expert. Dkt. 196 ("Motion"). None of the three arguments have merit. First, TP-Link seeks to certain of exclude Dr. Shoemake's opinions regarding direct infringement. In this section of his report, Dr. Shoemake relies on TP-Link's own statements, website, and shipping invoices to show direct infringement. TP-Link contends Dr. Shoemake misinterpreted its website and invoices, but this is a challenge to the ***substance*** of his testimony, not the ***methodology*** he employed. TP-Link never argues Dr. Shoemake was wrong for considering the types of evidence he did.

Second, TP-Link seeks to exclude Dr. Shoemake's evidence of indirect infringement, including TP-Link's advertising, product literature, and distribution agreements. This goes well beyond what other cases have held. Even if the Court holds that Dr. Shoemake cannot offer an opinion on TP-Link's ultimate state of mind, this Court has held that Dr. Shoemake should still be permitted to testify regarding the underlying facts and evidence supporting his opinion.

Finally, TP-Link seeks to exclude 199 paragraphs of Dr. Shoemake's report (despite addressing just a handful of those paragraphs) for cross-referencing other portions of the report. Dr. Shoemake provides a detailed infringement analysis for every claim limitation. Rather than copying and pasting previous analysis in multiple locations throughout the report, in certain instances, Dr. Shoemake cross-references prior analysis. TP-Link fails to cite a single case saying this is impermissible. The Motion should be denied.

## II.    LEGAL STANDARDS

"The Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before

1

the jury that it is appropriate for the jury's consideration." *Finesse Wireless, LLC v. AT&T Mobility, LLC*, 2022 U.S. Dist. LEXIS 230134, at *20 (E.D. Tex. Dec. 21, 2022). A motion to strike does not replace "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

## III.    ANALYSIS

TP-Link seeks to exclude paragraphs 124-218 of Dr. Shoemake's Report. Motion at 2. This is presumably a typo because Exhibit 1 starts with paragraph 184, and paragraphs 124-183 are unrelated to anything addressed in the Motion. If TP-Link is actually seeking to exclude paragraphs 124-183, that relief should be denied because those paragraphs are not addressed in the Motion.

### A.    Dr. Shoemake's Direct Infringement Analysis (¶¶184-185)

TP-Link seeks to exclude some of Dr. Shoemake's direct infringement opinions,[1] but it fails to cite a single case excluding any comparable opinions. ***TP-Link does not even cite a patent case***. Instead, TP-Link cites a breach of contract case (*Robroy Indus. – Tex., LLC v. Thomas & Betts Corp.*, 2017 U.S. Dist. LEXIS 54230 (E.D. Tex. Apr. 10, 2017)) (Motion at 4) and a case about the Voting Rights Act (*Terrebonne Parish NAACP v. Jindal*, 2015 U.S. Dist. LEXIS 142277 (M.D. La. Oct. 18, 2015)) (Motion at 5).

TP-Link's argument reads more like a factual challenge to Dr. Shoemake's opinion rather than a *Daubert* challenge to his methodology. For example, in paragraph 184, Dr. Shoemake opines that TP-Link offers products for sale in the United States through its U.S. website. Ex. 1 at ¶184. In support, Dr. Shoemake cites the website itself, which states that "The Services defined herein are provided by TP-Link Corporation Limited," a defendant in this case:

---

[1] The only paragraphs cited in this section of the Motion are 184-185, so Atlas limits its Response to those paragraphs. *See* Motion at 3-5.

> **Welcome to TP-Link!**
>
> The Services defined herein are provided by TP-Link Corporation Limited., located at Room 901,9/F., New East Ocean Centre, 9 Science Museum Road, Tsim Sha Tsui, Kowloon, Hong Kong, its affiliates and subsidiaries. This document may refer to the service provider as "TP-Link Corporation Limited.," "TP-Link," "we," "us," or "our."

Ex. A (TP-Link Terms of Use) at 9 (cited by Dr. Shoemake at Ex. 1, ¶184).

Dr. Shoemake then explains one of the "services" provided by TP-Link is sales through the website https://www.tp-link.com/us/:

> TP-Link provides:
>
> (1) TP-Link hardware products ("Products"), (2) website(s) that may be accessed at https://www.tp-link.com/us/ and www.kasasmart.com ("Sites") and https://www.tapo.com/us/, (3) services, including technical support and services accessible through the Site(s) ("Web Apps"), (4) software that may be downloaded to your smartphone or tablet to access services ("Mobile Apps"), and (5) subscription services, including services that can be accessed using the Web Apps and Mobile Apps ("Subscription Services"). The term "Services" means the Sites, Web Apps, Mobile Apps, and Subscription Services, which may be used in conjunction with Products and in other ways provided by TP-Link. Some Products and Services of TP-Link can be used together or in ways that integrate with products and services from third parties.

Ex. A (TP-Link Terms of Use) at 9-10 (cited by Dr. Shoemake at Ex. 1, ¶184). This is a perfectly logical and reasonable infringement opinion. TP-Link's website offers "services" from defendant TP-Link, and one of the "services" is the sale of products in the United States.

and that Dr. Shoemake should not be able to opine on "who maintains and controls the website in question" (Motion at 4). This is a factual challenge masquerading as a *Daubert* challenge. Dr. Shoemake is perfectly qualified to opine that "The Services defined herein are provided by TP-Link Corporation Limited" means that TP-Link Corporation Limited provides the listed services. Ex. 1 at ¶184. Similarly, Dr. Shoemake employs his technical background to explain that the cited website was registered in China. *Id.* at ¶190 n.39.

TP-Link never argues it was improper for Dr. Shoemake to review website declarations and registrations, nor does TP-Link argue website sales are an improper methodology for

3

[redacted]

determining sales in the United States. [redacted]

[redacted]

[redacted] TP-Link is free to cross-examine Dr. Shoemake, but *Daubert* exclusion is not appropriate.

In paragraph 185, Dr. Shoemake opines that TP-Link directly infringes the apparatus claims by importing the accused products into the United States. Ex. 1 at ¶185. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] *See Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1370 (Fed. Cir. 2008) ("[S]imply because an article is delivered 'free on board' outside of the forum, a sale is not necessarily precluded from occurring in the forum."). More importantly, this is a challenge to Dr. Shoemake's conclusions, not his methodology. [redacted]

4

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ TP-Link simply contends Dr. Shoemake misinterpreted the invoice.[2]

The case TP-Link cites is easily distinguishable. *See* Motion at 5. In *Terrebonne*, the challenged expert offered an opinion (on voting dilution, not infringement) that was not supported by a single independently developed fact. *Terrebonne*, 2015 U.S. Dist. LEXIS 142277, at *9. Instead, the expert simply reviewed the opinions of *other* experts and then offered an opinion on the ultimate legal question. *Id*. at *9-10. Here, Dr. Shoemake does not rely on the work of others; he cites his own independently developed facts and offers his opinions regarding those facts.

At a minimum, even if the Court were to strike Dr. Shoemake's ultimate conclusions on direct infringement in paragraphs 184-185, he should still be allowed to opine on the underlying facts supporting his opinion. *See Gree, Inc. v. Supercell Oy*, 2020 U.S. Dist. LEXIS 126913, at *5 (E.D. Tex. Jul. 20, 2020). In paragraph 184, Dr. Shoemake should be allowed to testify that TP-Link Corporation Limited provides various "services," one of the listed services is a U.S. website, and customers in the United States can use that website to purchase the accused products. Ex. 1 at ¶184. Similarly, in paragraph 190, he should be allowed to testify about the ownership and registration of the website. *Id*. at ¶190 n.39. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**B.    Dr. Shoemake's Indirect Infringement Analysis (¶¶186-218)**

Dr. Shoemake's induced infringement analysis contains two sections—one regarding TP-Link's knowledge of the asserted patents, and the other regarding TP-Link's intent to induce

---

[2] TP-Link's expert Dr. Hansen commits the same "errors" TP-Link accuses Dr. Shoemake of making. ████████████████████████████████████████████

████████████████████████████

purchasers and end users to directly infringe the asserted patents. Dr. Shoemake cites a wide variety of evidence in each section.

In the knowledge section, Dr. Shoemake cites three categories of evidence. First, he cites pre-suit letters sent from Atlas to TP-Link advising TP-Link of the portfolio. Ex. 1 at ¶186. Second, Dr. Shoemake cites the complaint from this litigation. *Id*. at ¶187. Third, he cites Atlas's infringement contentions served in this litigation. *Id*. at ¶188. TP-Link does not challenge any of this evidence or argue it is unreliable. Motion at 5. Instead, TP-Link simply argues Dr. Shoemake cannot testify about TP-Link's state of mind. *Id*.

In the intent section, Dr. Shoemake cites evidence from a wide variety of sources. He cites TP-Link's website (Ex. 1 at ¶190), press releases (*id*. at ¶192), promotional videos (*id*. at ¶193), support downloads (*id*. at ¶195), apps (*id*. at ¶196), recruitment of Brand Ambassadors (*id*. at ¶198), marketing documents (*id*. at ¶199), product packaging (*id*. at ¶¶200-04), user guides (*id*. at ¶205), 30(b)(6) deposition testimony (*id*. at ¶205), customer support agreements (*id*. at ¶206), FCC certifications (*id*. at ¶207), U.S. trademark filings (*id*. at ¶208), distribution agreement with TP-Link USA (*id*. at ¶214), and shipping invoices (*id*. at ¶217). TP-Link does not challenge ***any*** specific piece of evidence or contend it was improper for Dr. Shoemake to rely on any individual piece of evidence cited in this section of his report. *See* Motion at 5-6. Nor does TP-Link challenge the credibility of any document cited by Dr. Shoemake in this section. *See id*. Not even Dr. Hansen (TP-Link's non-infringement expert) attempts to rebut any of Dr. Shoemake's induced infringement analysis in his expert report. Ex. B (Hansen Report) at ¶93.

TP-Link instead seeks to exclude the ***entirety*** of Dr. Shoemake's induced infringement analysis on the ground that he should not be allowed to testify as to TP-Link's state of mind. *See* Motion at 5-6. That goes well beyond what its cited caselaw supports. Even if the Court holds that

Dr. Shoemake cannot offer ultimate opinions on TP-Link's intent, he should still be allowed to testify on the underlying facts and evidence supporting his conclusion. *See Gree*, 2020 U.S. Dist. LEXIS 126913, at *5. In *Gree*, even though the court precluded the plaintiff's expert from offering his opinion on the defendant's ultimate state of mind, the expert was still permitted to testify that the defendant's advertisements and marketing materials directed users to perform a claim limitation. *See id.*; *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 803 (E.D. Tex. 2007) (permitting a willful infringement expert to testify about the underlying facts supporting his opinion). The same is true here. Even if Dr. Shoemake cannot testify as to TP-Link's ultimate state of mind, he should be permitted to testify about all the evidence cited in his report.

### C. <u>Dr. Shoemake's Cross-References</u>

Dr. Shoemake's infringement report spans 1650 paragraphs and 751 pages. Ex. C (Shoemake Report). Over those 751 pages, Dr. Shoemake provides detailed infringement analysis for every limitation of every asserted claim. Dr. Shoemake cites a plethora of infringement evidence, including product marketing (*e.g.*, *id.* at ¶144), Wi-Fi chip datasheets (*id.* at ¶157), product specifications (*id.* at ¶162), Wi-Fi Alliance certifications (*id.* at ¶169), deposition testimony (*id.* at ¶263), interrogatory responses (*id.* at ¶265), source code (*id.* at ¶268), and the 802.11 Standard (*id.* at ¶271). In some instances, rather than copying and pasting relevant analysis from prior limitations, Dr. Shoemake cross-references other sections of his report. This was not done to "hide the ball" or purposefully obfuscate his infringement analysis. *See* Motion at 8.

Even the cross-references TP-Link highlighted in its Motion do not demonstrate a failure to properly disclose Dr. Shoemake's infringement analysis. TP-Link cites limitation 1[H] of the '520 Patent. Motion at 6. In limitation 1[H], Dr. Shoemake states that the 802.11ax Standard confirms his infringement analysis. Ex. 1 at ¶300. He then quotes specific portions of the Standard

and explains why those portions of the Standard support infringement. *Id*. at ¶301. He also refers

to a prior limitation (1(C)) and explains why that limitation contains relevant analysis:

> h)      Limitation 1[H]—"wherein the plurality of RUs respectively correspond to a plurality of simultaneous uplink transmissions, and each of the plurality of simultaneous uplink transmissions uses a sub-channel, spatial stream, or sub-channel and spatial stream combination that is not used by any other of the plurality of simultaneous uplink transmissions."
>
> 300)    The 802.11ax standard confirms that TP-Link's Wi-Fi 6 Access Points perform this step wherein the plurality of RUs respectively correspond to a plurality of simultaneous uplink transmissions, and each of the plurality of simultaneous uplink transmissions uses a sub-channel, spatial stream, or sub-channel and spatial stream combination that is not used by any other of the plurality of simultaneous uplink transmissions.
>
> 301)    For example, the 802.11ax standard explains, as shown above at 1[C], each RU contains scheduling information corresponding to a respective uplink transmission. Further, each uplink transmission is simultaneous and each uses at least a different sub-channel as set by the RU allocation subfield:
>
> > An example of UL OFDMA acknowledgment to an HE MU PPDU is shown in Figure 10-14a.



**Figure 10-14a—Example of HE MU PPDU transmission with immediate UL OFDMA acknowledgment**

802.11ax-2021 at §10.3.2.13.2 Acknowledgment procedure for DL MU PPDU in MU format

> A non-AP STA that is the recipient, within an HE MU PPDU, of a QoS Data frame or QoS Null frame with HETP Ack ack policy, of an MU-BAR Trigger frame or a GCR MU-BAR Trigger frame, or of a Management frame that solicits acknowledgment, <u>shall send the immediate response according to the scheduling information that is carried either in the Trigger frame(s) or TRS Control subfield.</u>

802.11ax-2021 at § 10.3.2.13.2 Acknowledgment procedure for DL MU PPDU in MU Format.

> The RU Allocation subfield along with the UL BW subfield in the Common Info field identifies the size and the location of the RU. If the UL BW subfield indicates 20 MHz, 40 MHz, or 80 MHz PPDU, then B0 of the RU Allocation subfield is set to 0. If the UL BW subfield indicates 80+80 MHz or 160 MHz, then B0 of the RU Allocation subfield is set to 0 to indicate that the RU allocation applies to the primary 80 MHz channel and set to 1 to indicate that the RU allocation applies to the secondary 80 MHz channel. The mapping of B7–B1 of the RU Allocation subfield for a Trigger frame that is not an MU-RTS Trigger frame is defined in Table 9-29i. See 9.3.1.22.5 for the encoding of the RU Allocation subfield in an MU-RTS Trigger frame.

802.11ax-2021 at §9.3.1.22 Trigger frame format

> 302)  I incorporate all the evidence from limitations 1[A]-1[G] here.

*Id.* at ¶¶300-302.

TP-Link takes issue only with Dr. Shoemake's final statement: "I incorporate all the evidence from limitations 1[A]-1[G] here." That statement simply recognizes that the antecedent basis for portions of the limitation can be found earlier in Dr. Shoemake's analysis. For example, limitation 1[H] requires "the plurality of RUs [resource units] . . . ." Ex. 1 at ¶300. Dr. Shoemake

9

does not specify the claimed "resource units" in his analysis for limitation 1[H] because he identifies the resource units in limitation 1[B]. *See* Ex. C (Shoemake Report) at ¶271.

The first cross-reference TP-Link cites in its table (Motion at 7) is paragraph 275, which addresses limitation 1[B] of the '520 Patent. Limitation 1[B] requires "the network device." Ex. C (Shoemake Report) at ¶271. Dr. Shoemake identifies the claimed network device in limitation 1[A]. *Id.* at ¶250. Similarly, limitation 1[B] requires "a downlink multi-user frame." *Id.* at ¶271. Dr. Shoemake addresses"a downlink multi-user transmission" in limitation 1[A], and much of the evidence overlaps. *See, e.g.*, *id.* at ¶260.

TP-Link attempts to group many paragraphs together under the same umbrella, even though there are differences. For example, many paragraphs incorporate specific components of prior analysis into a later limitation. *See, e.g.*, Ex. C (Shoemake Report) at ¶632 ("I incorporate all the testing, deposition, written discovery, and source code evidence from limitation 18[A] here."); *id.* at ¶1136 (similar); *id.* at ¶1317 (similar); *id.* at ¶1444 (similar). TP-Link does not address why every cited paragraph should be treated the same.

TP-Link's cases do not support its position. TP-Link first cites *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, 2021 U.S. Dist. LEXIS 49066 (D. Del. Mar. 16, 2021). In *Sprint*, the court precluded a technical expert from incorporating by reference his expert reports and trial testimony from multiple ***other*** litigations. *Id.* at *9-10. TP-Link seeks to prevent Dr. Shoemake from cross-referencing other limitations ***within the same claim of the same patent***. This is not "purposeful obfuscation" or "hiding the ball." Further, the *Sprint* court granted the plaintiff leave to amend its expert report to include the referenced material directly without cross-references. *Id.* at *11.

10

Second, TP-Link cites *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990 (N.D. Cal. 2019). *Asia Vital* addresses the specificity required in an invalidity report. *Id*. at 1005-06. The case does not address whether an infringement expert can cross-reference other limitations within the same patent.

The Court should not strike Dr. Shoemake's cross-references. But even if it does, Atlas should be permitted to amend Dr. Shoemake's report to included the referenced material directly without cross-referencing, as was allowed in *Sprint*.

## IV.    CONCLUSION

Dr. Shoemake prepared a thorough, detailed report that cited a variety of evidentiary sources. TP-Link does not challenge any of the cited evidence as unreliable, nor does TP-Link allege that Dr. Shoemake should not have relied upon any piece of evidence. The Motion should be denied.

11

Dated: June 22, 2023

Respectfully submitted,

/s/ *Blaine Larson*
Max L. Tribble, Jr.
Texas State Bar No. 20213950
Joseph S. Grinstein
Texas State Bar No. 24002188
Alejandra C. Salinas
Texas State Bar No. 24102452
**SUSMAN GODFREY, LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
jgrinstein@susmangodfrey.com
asalinas@susmangodfrey.com

Kalpana Srinivasan
California State Bar No. 237460
Oleg Elkhunovich
California State Bar No. 269238
**SUSMAN GODFREY, LLP**
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
oelkhunovich@susmangodfrey.com

Michael F. Heim
Texas State Bar No. 09380923
Eric J. Enger
Texas State Bar No. 24045833
Blaine A. Larson
Texas State Bar No. 24083360
Alden G. Harris
Texas State Bar No. 24083138
William B. Collier, Jr.
Texas State Bar No. 24097519
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021
mheim@hpcllp.com
eenger@hpcllp.com
blarson@hpcllp.com

12

███████████████████████████████

aharris@hpcllp.com
wcollier@hpcllp.com

T. John Ward, Jr.
Texas Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
Texas Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com

*ATTORNEYS FOR ATLAS GLOBAL
TECHNOLOGIES LLC*

13

████████████████████████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email.

*/s/ Blaine Larson*
Blaine Larson

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that this brief contains materials designated as confidential under the Protective Order (Dkt. 55).

*/s/ Blaine Larson*
Blaine Larson