**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **ATLAS GLOBAL TECHNOLOGIES LLC**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TP-LINK TECHNOLOGIES CO., LTD.;<br>TP-LINK CORPORATION LTD.; and TP-<br>LINK INTERNATIONAL LTD.;**<br><br>**Defendants.** | **Civil Action No.  2:21-cv-00430**<br><br>Jury Trial Requested |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE PORTIONS OF PLAINTIFF'S DAMAGES OPINIONS**

██████████████████████

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

III.   LEGAL STANDARD.......................................................................................... 2

IV.    ARGUMENT ...................................................................................................... 3

       A.     Mr. Weinstein Explained Why the ██ Rate Does Not Need to Be
              Apportioned Further; Defendants' Contrary Arguments Go to
              Weight, Not Admissibility. ...................................................................... 3

       B.     Defendants' Challenges to Mr. Weinstein's Methodology for
              Apportioning the ██ Rate Go to Weight, Not Admissibility. ............................ 7

       C.     Mr. Weinstein May Rely on IDC Data. .................................................... 10

V.     CONCLUSION .................................................................................................. 15

███████████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*,
  No. 2:22-cv-00126-JRG-RSP, 2022 WL 14318049 (E.D. Tex. Oct. 24, 2022) ....................5, 8

*Avondale Mills, Inc. v. Norfolk S. Corp.*,
  No. 1:05–2817–MBS, 2008 WL 6953956 (D.S.C. 2008) .......................................................12

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)...............................................................................................5

*Blanche Rd. Corp. v. Bensalem Twp.*,
  No. Civ. A. 89-9040, 1996 WL 368347 (E.D. Pa. June 25, 1996) .........................................12

*Brazos River Auth. v. GE Ionics, Inc.*,
  469 F.3d 416 (5th Cir. 2006) .................................................................................................15

*Cirba Inc. v. VMware, Inc.*,
  No. CV 19-742-LPS, 2020 WL 70968 (D. Del. Jan. 7, 2020)..................................................8

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*,
  809 F.3d 1295 (Fed. Cir. 2015)...............................................................................................3

*Conoco, Inc. v. Dep't of Energy*,
  99 F.3d 387 (Fed. Cir. 1996)..................................................................................................12

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)...................................................................................................... *passim*

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
  927 F.3d 1292 (Fed. Cir. 2019)...............................................................................................3

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)...............................................................................................5

*Fox v. Taylor Diving & Salvage Co.*,
  694 F.2d 1349 (5th Cir. 1983) ...............................................................................................12

*Hardin v. Samsung Electronics Co. Ltd.*,
  No. 2:21-cv-00290-JRG (E.D. Tex. Jan. 30, 2023), ECF No. 225 ...............................1, 14, 15

*Jones v. Harley-Davidson, Inc.*,
  No. 2:14-cv-694-RWS-RSP, 2016 WL 5340264 (E.D. Tex. Sept. 23, 2016) .........................11

████████████████████████████

*Jordan v. Nationstar Mortg., LLC*,
  No. 2:14-cv-0175-TOR, 2018 WL 11436328 (E.D. Wash. July 25, 2018)..............................12

*Kaist IP US LLC v. Samsung Elecs. Co.*,
  No. 2:16-cv-01314-JRG-RSP, 2018 WL 2688185 (E.D. Tex. June 5, 2018) .........................14

*Mobility Workx, LLC v. Cellco P'ship*,
  No. 4:17-cv-00872, 2019 WL 5721814 (E.D. Tex. Nov. 5, 2019)............................................6

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*,
  No. 15 C 1067, 2019 WL 5206273 (N.D. Ill. Mar. 13, 2019) ...................................................8

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
  35 F.4th 1367 (Fed. Cir. 2022) .................................................................................................3

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
  No. 2:15-cv-01366-JRG-RSP, 2021 WL 662238 (E.D. Tex. Feb. 20, 2021)........................1, 8

*Red Rock Analytics, LLC v. Samsung Elecs. Co.*,
  No. 2:17-cv-00101-RWS-RSP, 2019 WL 13212713 (E.D. Tex. Feb. 6, 2019) .......................8

*ResQNet.com, Inc. v. Lansa, Inc.*,
  828 F. Supp. 2d 688 (S.D.N.Y. 2011).....................................................................................10

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.*,
  No. CV 19-1515-RGA, 2022 WL 17084156 (D. Del. Nov. 18, 2022)....................................5

*Salazar v. AT&T Mobility LLC*,
  No. 2:20-cv-00004-JRG (E.D. Tex. July 28, 2021), ECF No. 226...........................................5

*Stevens v. Ford Motor Co.*,
  No. 2:18-cv-00456, 2022 WL 19978265 (S.D. Tex. Sept. 29, 2022)........................................9

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015).................................................................................................2

*Uniloc USA, Inc. v. Elec. Arts, Inc.*,
  No. 6:13-cv-259, 2015 WL 11089477 (E.D. Tex. Apr. 23, 2015) ...........................................3

*United States v. Magleby*,
  241 F.3d 1306 (10th Cir. 2001) ..............................................................................................15

*United States v. Mount*,
  896 F.2d 612 (1st Cir. 1990)....................................................................................................12

*United States v. New-Form Mfg. Co.*,
  27 C.I.T. 905 (2003) ...............................................................................................................12

███████████████████████████████

*Vectura Ltd. v. Glaxosmithkline LLC*,
    981 F.3d 1030 (Fed. Cir. 2020)............................................................................................3, 4

*VirnetX Inc. v. Apple Inc.*,
    No. 6:12-cv-00855-RWS, 2020 WL 11714546 (E.D. Tex. Sept. 1, 2020)...........................3, 5

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014).................................................................................................3

*Wi-Lan Inc. v. Alcatel-Lucent USA Inc.*,
    No. 6:10-cv-521, 2013 WL 10404065 (E.D. Tex. June 28, 2013) ............................................5

*Wilson By & Through Wilson v. Merrell Dow Pharms. Inc.*,
    893 F.2d 1149 (10th Cir. 1990) ..............................................................................................12

## Federal Rules

Federal Rule of Evidence 803(17) ......................................................................................1, 11, 12

Federal Rule of Evidence 703 ......................................................................................1, 11, 12, 13

## Other Authorities

https://www.idc.com/about ..................................................................................................10

████████████████████████████

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Expert Report of Roy Weinstein (May 2, 2023) |
| 2 | Exhibits to the Expert Report of Roy Weinstein (May 2, 2023) |
| 3 | Supplemental Expert Report of Roy Weinstein (May 5, 2023) |
| 4 | Supplemental Exhibits to the Supplemental Expert Report of Roy Weinstein (May 5, 2023) |
| 5 | Excerpts of the Expert Report of Matthew B. Shoemake, Ph.D. Regarding Infringement (May 2, 2023) |
| 6 | Excerpts of Letter from Atlas's Counsel to Defendants' Counsel re Defendants' Document Production (June 20, 2022) |

## I.   INTRODUCTION

Defendants offer two reasons for excluding certain of the opinions of Atlas's damages expert, Mr. Roy Weinstein.  Neither justifies exclusion.

**First**, Defendants contend that Mr. Weinstein should have apportioned his two proffered royalty rates— ██ and ██ —further or differently.   But Mr. Weinstein explained his methodology and conclusions.  Defendants "may believe that further apportionment may be proper or that certain assumptions may be incorrect, but these are questions for a jury to decide." *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 WL 662238, at *6 (E.D. Tex. Feb. 20, 2021).

**Second**, Defendants argue that Mr. Weinstein cannot rely on data from the International Data Corporation (IDC)—an independent market research firm.  Defendants' argument is not the proper subject of a *Daubert* motion.  It is also meritless.  Contrary to Defendants' claim, the IDC data is not inadmissible hearsay.  It falls under Federal Rule of Evidence 803(17) as a market report that is regularly relied on.   And even if it were otherwise inadmissible, the probative value substantially outweighs any prejudice to Defendants, so Mr. Weinstein can rely on it under Rule 703.  Mr. Weinstein 1) uses IDC data to calculate Defendants' sales to date because Defendants' data is highly questionable and 2) uses data for products that employed the prior Wi-Fi standard (Wi-Fi 5) to project the growth and then decline in sales of products using the current standard (Wi-Fi 6) because it the best available data for doing so.  Defendants' only response is to question the data, but this Court has rejected a similar argument and admitted IDC data, explaining "the jury will have to decide which [data] they find more credible."  *Hardin v. Samsung Electronics Co. Ltd.*, No. 2:21-cv-00290-JRG (E.D. Tex. Jan. 30, 2023), ECF No. 225 at 26:21–30:23.

For these reasons, the Court should deny Defendants' Motion (Dkt. No. 201).

1

██████████████████████████████████████████

## II.      BACKGROUND

Atlas alleges that Defendants directly and indirectly infringe Atlas patents that are essential to the 802.11ax or Wi-Fi 6 standard.  Dkt. No. 1 ¶¶ 47–115.  Mr. Weinstein is Atlas's damages expert and has calculated Atlas's damages across 172 paragraphs and 70 pages.  Ex. 1 (Weinstein Rpt.).  Mr. Weinstein has opined that the parties would agree to a royalty of ███ in view of four licenses Atlas has entered for its Wi-Fi 6 patent portfolio, which includes the Asserted Patents, at a ███ undiscounted rate.  Ex. 1 (Weinstein Rpt.) ¶¶ 145–160.  Defendants do not challenge the comparability of the licenses.  Mr. Weinstein has also opined that, in the alternative, the parties would agree to a rate of ███, which reflects the ███ rate discounted to reflect the value of benefits attributable to patents in Atlas's larger portfolio that are unasserted here.  *Id.*  Mr. Weinstein has offered several different damages figures, depending on 1) the structure of the license (running royalty or lump sum), 2) whether Defendants' sales data or IDC data is used, and 3) the start date for damages.  Ex. 1 (Weinstein Rpt.) ¶¶ 159–171.[1]  Defendants do not challenge 1) or 3).

## III.     LEGAL STANDARD

Expert testimony is admissible if it "rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court."  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596 (citation omitted).

---

[1] Mr. Weinstein's supplemental report and exhibits update the figures to reflect additional sales data produced by Defendants.  *See* Ex. 3 (Weinstein Supp. Rpt.); Ex. 4 (Weinstein Supp. Exs.).

███████████████████████████████████████████████

## IV.    ARGUMENT

### A.    Mr. Weinstein Explained Why the █ Rate Does Not Need to Be Apportioned Further; Defendants' Contrary Arguments Go to Weight, Not Admissibility.

"The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014). "[W]hen a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required." *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). "That is because a damages theory that is dependent on a comparable license (or a comparable negotiation) may in some cases have 'built-in apportionment.'" *Id.* at 1040. "Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Id.* at 1041.[2]

"This is one such case." *Vectura Limited*, 981 F.3d at 1040. Mr. Weinstein opines that the parties would agree to a █ royalty rate in view of four licenses (1) to the Asserted Patents, (2) covering the same accused Wi-Fi standards, and (3) that everyone agrees are comparable. No further apportionment is required. *See Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022) (no further apportionment required where the parties agreed a "license was comparable"); *VirnetX Inc. v. Apple Inc.*, No. 6:12-cv-00855-RWS, 2020 WL 11714546, at *1 (E.D. Tex. Sept. 1, 2020) (denying a motion to exclude Mr. Weinstein's opinions and rejecting

---

[2] *See also Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1301 (Fed. Cir. 2019) (no further apportionment required as it was "built in" to the agreement relied on); *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (models predicated on comparable licenses are "typically reliable because the parties are constrained by the market's actual valuation of the patent"); *Uniloc USA, Inc. v. Elec. Arts, Inc.*, No. 6:13-cv-259, 2015 WL 11089477, at *6 (E.D. Tex. Apr. 23, 2015) ("rate was based exclusively on an earlier license" and thus "directly tied to the value of the infringing technology").

██████████████████████████████████████████████

the argument that further apportionment was required where Mr. Weinstein relied on licenses that the defendant did not contend "were not sufficiently comparable to survive *Daubert*").

Defendants assert that a further reduction is required because the four licenses were to Atlas's entire portfolio of Wi-Fi 6 patents and thus included patents other than those asserted here. Mot. at 1, 4–7. Mr. Weinstein, however, considered this fact and still opined that no further reduction in the $.92 rate is warranted. He explained:

- ████████████████████████████████████ and the Asserted Patents ██████████████████████████████████ ██████ relying on Dr. Matthew Shoemake (Atlas's technical expert).

- That ████████████████████████████████████████ citing the deposition testimony of Atlas President and corporate representative Craig Yudell.

- That Atlas has negotiated the same ████ rate ████████████████████ ██████████████████████████████ citing Atlas's licenses and licensing history.

- And that ████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████

Ex. 1 (Weinstein Rpt.) ¶ 156.

Defendants acknowledge Mr. Weinstein's opinions but argue they are insufficient. Mot. at 1, 6. Such arguments go to weight, not admissibility, however, as highlighted by decisions from the Federal Circuit, this Court, and others.

In *Vectura Limited*, for example, the Federal Circuit rejected the argument that further apportionment of a license was necessary, even though the license (similar to here) "encompassed rights to more than 400 patents," because the party "introduced evidence" as to why further apportionment was unnecessary (as here). *Vectura Limited*, 981 F.3d at 1041. Likewise, in *Bio-Rad Laboratories*, the Federal Circuit rejected the argument that further "quantitative adjustment of the royalty rate in the three agreements [at issue] was required" because the expert explained

4

why such adjustments were not necessary (again, as here).  *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1377 (Fed. Cir. 2020); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("[p]rior licenses ... are almost never perfectly analogous to the infringement action," but if accompanied by testimony accounting for the "distinguishing facts," they may help the jury decide an appropriate royalty award).

In *VirnetX Inc. v. Apple Inc.*, this Court rejected a *Daubert* motion arguing that Mr. Weinstein "alleged[ly] fail[ed] to apportion" licenses that (as here) were "broader than the hypothetical negotiation," explaining that the defendant could "vigorously cross examine" him on this point.  2020 WL 11714546, at *1; *see also Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, No. 2:22-cv-00126-JRG-RSP, 2022 WL 14318049, at *5 (E.D. Tex. Oct. 24, 2022) (rejecting the argument that three licenses needed "more apportionment" as going to weight).  And in *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, the court denied a *Daubert* motion arguing that an expert failed to apportion the rate from licenses that included more patents than those asserted on the ground that the expert explained "why the licenses are comparable" and (as here) "provide[d] reasoning for why" the additional patents did not "impact his overall calculation."  No. CV 19-1515-RGA, 2022 WL 17084156, at *2 (D. Del. Nov. 18, 2022).[3]

In short, then, "it is the jury's responsibility to resolve" the parties' disagreement "as to … the proper level of apportionment."  *Salazar v. AT&T Mobility LLC*, No. 2:20-cv-00004-JRG (E.D.

---

[3] Against this authority, Defendants offer a single inapposite case with a "cf." citation: *Wi-Lan Inc. v. Alcatel-Lucent USA Inc.*, No. 6:10-cv-521, 2013 WL 10404065, at *3 (E.D. Tex. June 28, 2013). Mot. at 6–7.  There, the Court excluded an expert's opinions because he failed to "account for the differences between … worldwide portfolio licenses and a license to the patents-in-suit for U.S. sales of Defendants' accused products" beyond the rote statement that he took "all the evidence into consideration."  *Id.* at *4.  In contrast to *Wi-Lan*, Mr. Weinstein here took account of differences between the licenses and the hypothetical negotiation and explained why no adjustment to the royalty rate was necessary; he did not merely state that he took "all the evidence into consideration."

████████████████████████████████████████████████████

Tex. July 28, 2021), ECF No. 226 at 3.  Defendants' arguments are "better characterized as disputes over weight and credibility than admissibility. . . .  [C]ross-examination, rather than exclusion, is more a more appropriate means to establish the weight of the evidence, for it is not the role of the Court to weigh the strength of [Mr. Weinstein's] conclusions."  *Mobility Workx, LLC v. Cellco P'ship*, No. 4:17-cv-00872, 2019 WL 5721814, at *8 (E.D. Tex. Nov. 5, 2019).

To hide the true nature of their "weight, not methodology" challenge, Defendants contend that Mr. Weinstein's opinions are "no more than a conclusory note" and "*ipse dixit.*"  Mot. at 1, 6. Not so.  Defendants, for example, contend that Mr. Weinstein's opinion that ██████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████       Mot. at 6.

But this wooden reading of Mr. Weinstein's report ignores the reasons given in the immediately preceding sentences, quoted and bulleted above, that support this conclusion.  *See* Ex. 1 (Weinstein Rpt.) ¶ 156 (citing Atlas's technical expert, deposition testimony, and Atlas's licensing history).

Defendants also say that Mr. Weinstein's statement that ████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████       is unsupported.  Mot. at 6.

But in the very next sentence of their brief, Defendants acknowledge this understanding comes from Dr. Shoemake, Atlas's technical expert.  Mot. at 6.  Defendants do not assert that Mr. Weinstein should not have relied on Dr. Shoemake, or that Dr. Shoemake's report does not contain such opinions.[4]  Mr. Weinstein thus supported his opinions.  They are not conclusory or

---

[4] Defendants complain that Mr. Weinstein cites Dr. Shoemake's report without a pincite to the paragraph number, but Defendants offer no authority imposing such a requirement.  Further, imposing one would elevate form over substance.  There is no question that the opinions in question appear in Dr. Shoemake's report.  *See, e.g.*, Ex. 5 (Shoemake Rpt.) ¶¶ 1627–1634

██████████████████████████████████████

*ipse dixit.* Defendants disagree with his conclusions, but that is not the stuff of *Daubert*.

Defendants finally contend that because Mr. Weinstein acknowledged that two technologies of Atlas's larger patent portfolio are not being asserted in this litigation—midambles and BSS coloring—the value of the benefits attributable to those technologies must be excluded from the $.92 rate. Mot. at 1, 5. But again, Defendants are raising nothing more than an expert dispute. Mr. Weinstein explained why no reduction is necessary. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ Accordingly, there is no reason to expect that the parties to the hypothetical negotiation would have agreed to a lower rate and there is no need to make the reduction Defendants claim. Defendants will have their chance to prove otherwise at trial.

Because Mr. Weinstein relied on comparable licenses and explained why there is no need to apportion the ███ rate further, and Defendants' real beef is with those conclusions, Defendants have not shown that exclusion is warranted.

**B.      Defendants' Challenges to Mr. Weinstein's Methodology for Apportioning the ███ Rate Go to Weight, Not Admissibility.**

Even if Defendants were correct that Mr. Weinstein needed to reduce the ███ royalty rate

_____

(███████████████████████████████████████████████████).

7

(and they are not), he has in fact offered alternative opinions doing so.  He apportioned the ▇ rate by "subtract[ing] the benefits" associated with technologies taught by patents in Atlas's broader portfolio—and thus subject to Atlas's portfolio licenses—but not asserted here: BSS coloring and midambles.  Ex. 1 (Weinstein Rpt.) ¶¶ 157–158.  Excluding those benefit results in a further apportioned rate of ▇.  Ex. 1 (Weinstein Rpt.) ¶ 158.

Defendants argue that the Court should exclude these opinions because they are allegedly flawed and unsound.  Mot. 7–10.  But arguments that Mr. Weinstein "did not do the apportionment correctly and/or came out with an erroneous result" "bear on the weight to be given to . . . testimony, not its admissibility."  *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15 C 1067, 2019 WL 5206273, at *1 (N.D. Ill. Mar. 13, 2019).  This Court should thus reject them as it has done in many other cases.  *See Arigna Tech. Ltd.*, 2022 WL 14318049, at *5 (rejecting challenges to "apportionment steps" because they go "to the credibility of [the expert's] report and testimony"); *Personalized Media Commc'ns, LLC*, 2021 WL 662238, at *6 ("Mr. Dansky's attempt to apportion the royalty base is sufficient to meet the minimum apportionment necessary. Apple may believe that further apportionment may be proper or that certain assumptions may be incorrect, but these are questions for a jury to decide."); *Red Rock Analytics, LLC v. Samsung Elecs. Co.*, No. 2:17-cv-00101-RWS-RSP, 2019 WL 13212713, at *4–5 (E.D. Tex. Feb. 6, 2019) (rejecting challenges to an apportionment analysis because "the heart of Samsung's disagreements lies with Dr. Jones's conclusions"); *see also Cirba Inc. v. VMware, Inc.*, No. CV 19-742-LPS, 2020 WL 70968, at *2 (D. Del. Jan. 7, 2020) (attacks on apportionment methodology went "to the weight, not admissibility, of the evidence").

In any event, Defendants' disagreements are unavailing.  Defendants are correct that Mr. Weinstein's apportionment analysis is predicated on removing the value attributable to

8

████████████████████████████████████████████████████

benefits taught by Atlas patents that are not at issue in this litigation.  But Defendants' further contention that Mr. Weinstein did not deduct the value of such benefits in apportioning to the ██ rate is perplexing.  Mot. at 8–10.  The snippets Defendants include from Mr. Weinstein's exhibits show exactly how Mr. Weinstein removed the benefits.  Where there were once eleven benefits, now there are nine.  And the result is the ██ rate is apportioned to ██.  Mot. at 8–9.

Defendants' assertion that Mr. Weinstein's methodology ████████████████

███████████████████████████████████████████████████

███████████████████████" (Mot. 9–10), is equally if not more perplexing.  The point of the analysis was to remove the value of any benefits attributable to BSS coloring and midambles and not account for them in the royalty rate.  And the value of the Asserted Patents is not "overstated"—again, the rate is reduced from ██████.

Defendants contend that Mr. Weinstein's methodology ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████  But there would never be a situation where Atlas would do this because the Asserted Patents do *not* cover that technology.  Defendants' hypothetical is just that then: a hypothetical divorced from reality that does not undermine Mr. Weinstein's methodology.  And even if the methodology produces counterintuitive results in a hypothetical world divorced from reality, Defendants can examine that on cross examination.  Absurdities or implausible results go to the weight to be given testimony, not admissibility.  *See Stevens v. Ford Motor Co.*, No. 2:18-cv-00456, 2022 WL 19978265, at *13 (S.D. Tex. Sept. 29, 2022) ("Even assuming without deciding that Mr. Gaski's survey produces absurd results …, the Court agrees with Plaintiffs that— at best—this attack goes to weight, not admissibility.").  Defendants' claim that the results of Mr.

9

██████████████████████████████████████████

Weinstein's analysis are erroneous is precisely the type of disagreement with an expert's conclusions that is improper to raise to raise via a *Daubert* motion.

Finally, Defendants complain that Mr. Weinstein's ████ rate reflects a ████████████████

████████████████████████████████████████████████████

██████████████████  That result should not be surprising, and it is certainly not problematic.  The patents in Atlas's portfolio cover overlapping technologies and benefits—most of which are covered by the Asserted Patents.  Ex. 1 (Weinstein Rpt.) ¶¶ 156–157.  Further, engaging in the raw counting exercise suggested by Defendants is fundamentally flawed.  Such a methodology assumes that each patent in Atlas's portfolio has equal, independent value, but that assumption lacks is "supported by nothing other than its simplicity."  *See ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 695 (S.D.N.Y. 2011) (rejecting an opinion that "simply divided" the rates of license agreements "by the number of patents that the licenses covered").

### C.    Mr. Weinstein May Rely on IDC Data.

IDC is "the premier global provider of market intelligence, advisory services, and events for the information technology, telecommunications, and consumer technology markets." https://www.idc.com/about.  Mr. Weinstein relies on data from IDC market reports for two purposes.  First, because of serious questions concerning the accuracy of the data produced by Defendants, he relies on IDC data as an alternative source for calculating the number of Accused Products Defendants have sold to date.  Ex. 1 (Weinstein Rpt.) ¶¶ 101–106, 171.  Second, he relies on IDC data related to the sales of **Wi-Fi 5** products—*i.e.*, products that employed the previous Wi-Fi standard—to forecast the likely adoption, growth rate, and then decline in sales of **Wi-Fi 6** products going forward.  Ex. 1 (Weinstein Rpt.) ¶¶ 167–171; Ex. 2 (Weinstein Rpt. Exs.), Exs. 12–14.  He does so because, ████████████████████████████████████

10

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████    Ex. 1 (Weinstein Rpt.) ¶ 167.

Defendants contend that the IDC data is hearsay and that Mr. Weinstein cannot rely on it under Federal Rule of Evidence 703 because the probative value does not substantially outweigh any prejudice to Defendants. Mot. at 10–13. Defendants' argument, however, is not "properly raised in connection with a *Daubert* motion." *Jones v. Harley-Davidson*, Inc., No. 2:14-cv-694-RWS-RSP, 2016 WL 5340264, at *2 (E.D. Tex. Sept. 23, 2016) (considering the same argument). Moreover, if the Court grants Plaintiff's Motion that Certain Facts Be Considered Established (Dkt. No. 175), Defendants' arguments are moot, as Atlas has requested that the Court "find that the unit sales shown in … third-party IDC data are established for purposes of this action," or (at minimum) that "the third-party data … be deemed admissible at trial and the jury … be instructed that it may rely upon the IDC data if it chooses," to remedy Defendants' discovery misconduct. Dkt. No. 175 at 6–7.

On the merits, Defendants' argument fails for two reasons. **First**, the IDC data is not inadmissible hearsay. Federal Rule of Evidence 803(17), concerning "market reports and similar commercial publications," provides that "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations" "are not excluded by the rule against hearsay." Fed. R. Evid. 803(17). Mr. Weinstein explains that in his experience "[i]nformation published by IDC is commonly relied upon by economists, investment analysts and others interested in high-technology markets." Ex. 1 (Weinstein Rpt.) ¶ 104. Moreover, Defendants themselves regularly rely on IDC data. Ex. 1 (Weinstein Rpt.) ¶ 104

11

n. 184 (collecting references).  Accordingly, the data falls within the exception of Rule 803(17) and is not inadmissible hearsay.  *See Conoco, Inc. v. Dep't of Energy*, 99 F.3d 387, 393 (Fed. Cir. 1996) (characterizing Rule 803(17) as reaching, *inter alia*, "market reports" like those here); *Jordan v. Nationstar Mortg., LLC*, No. 2:14-cv-0175-TOR, 2018 WL 11436328, at *4 (E.D. Wash. July 25, 2018) ("deed data" purchased "from three private vendors" fell within exception because it was "generally relied upon by persons in a particular occupation, here appraisers"); *Avondale Mills, Inc. v. Norfolk S. Corp.*, No. 1:05–2817–MBS, 2008 WL 6953956, at *4 (D.S.C. 2008) (financial reports from Moody's and Standard and Poor's admissible).[5]

The IDC data Mr. Weinstein uses to project future sales—Mr. Weinstein's second use—is not inadmissible hearsay for an independent reason.  The information is admissible "for the limited purpose of informing the jury of the basis of [Mr. Weinstein's] opinion"—his basis for projecting future sales of Wi-Fi 6 products—"and not for proving the truth of the matter asserted," the Wi-Fi 5 sales used for the forecast actually occurred.  *See Wilson By & Through Wilson v. Merrell Dow Pharms. Inc.*, 893 F.2d 1149, 1153 (10th Cir. 1990); *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, but not as general proof of the truth of the underlying matter." (citation omitted)).  For either of these reasons, the IDC data is not inadmissible hearsay.

**Second**, even if the data were inadmissible hearsay, as Defendants acknowledge, Rule 703

---

[5] *See also United States v. Mount*, 896 F.2d 612, 625 (1st Cir. 1990) (testimony from expert that "dealers like herself" relied on information sufficient to satisfy "the foundational requirements of Rule 803(17)"); *United States v. New-Form Mfg. Co.*, 27 C.I.T. 905, 917 (2003) ("The report at issue—compiled largely from public records by one of the world's leading providers of global business information, and offered through a subscriber service aimed at the business and financial communities—is clearly the sort of record contemplated by Rule 803(17)."); *Blanche Rd. Corp. v. Bensalem Twp.*, No. Civ. A. 89-9040, 1996 WL 368347, at *2 (E.D. Pa. June 25, 1996) ("sales data" published by real estate firm and "customarily relied upon by valuation experts" fell under exception).

allows experts to rely on otherwise inadmissible hearsay if 1) "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject" and 2) "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Fed. R. Evid. 703.  That is the case here.  Defendants do not contest the first prong and Mr. Weinstein explains that IDC data is regularly relied on.  Ex. 1 (Weinstein Rpt.) ¶ 104.

Defendants contest the second, but the data is probative and there is no unfair prejudice to Defendants from Mr. Weinstein relying on it.  As to Mr. Weinstein's first use, the data is relevant for showing Defendants' sales to date because of serious questions concerning the accuracy of Defendants' data.  As Atlas explained in its Motion that Certain Facts Be Considered Established, Defendants' data—which they claim is incontrovertible—differs dramatically from IDC data and the data of Defendants' U.S. distributor, and Defendants have never reconciled or explained the differences, instead obfuscating.  *See* Dkt. No. 175 at 1–5.

As to the second use, the Wi-Fi 5 sales data is highly probative for forecasting future sales of Wi-Fi 6 products because it allows for a full picture as to the increase and then decrease in sales of products embodying a particular Wi-Fi standard.  Moreover, as Mr. Weinstein explains, ███

██████████████████████████████████████████

██████████████████████████████████████████

██████  Ex. 1 (Weinstein Rpt.) ¶ 167.  Lastly, Defendants were asked to produce forecasts for Wi-Fi 6 sales, but did not produce or identify any.  Ex. 6 at 6 (letter requesting forecasts).  Given this, the IDC data of Wi-Fi 5 sales is the most probative data for forecasting future sales.[6]

---

[6] Defendants claim that Mr. Weinstein could have used their sales data to forecast sales (Mot. at 12), but the data postdates the hypothetical negotiation and thus would not have been available to the parties to forecast Wi-Fi 6 sales.  The IDC Wi-Fi 5 data, on the other hand, would have been available, which is why Mr. Weinstein relies on it.  Defendants ignore this explanation and pretend it does not exist.  *See* Mot. at 12.  Further, Defendants' Wi-Fi 6 data does not show the adoption

13

████████████████████████████████████

Defendants contend that the IDC data lacks any probative value because it is purportedly inaccurate and would inflate their sales.  But this Court recently rejected the argument that IDC data is "misleading" and "inflated numbers" for damages compared to a defendant's data, and admitted the data, explaining: "I don't think there's any basis that the Court can say that the jury has to accept [the defendant's] financials as opposed to admissible market summaries.  And the fact they're different is something that the jury will have to decide which they find more credible." *Hardin v. Samsung Electronics Co. Ltd.*, No. 2:21-cv-00290-JRG (E.D. Tex. Jan. 30, 2023), ECF No. 225 at 26:21–30:23.  That reasoning applies equally here.

Further, Defendants' only support for claiming the IDC data is inaccurate is a disclaimer on the IDC website.  Mot. at 11.  That disclaimer, however, is for the **website** "and all content, materials, information and services, provided on" the **website**.  Defendants' Ex. E.  It is not for the **market report and data** upon which Mr. Weinstein relies.  Instead, IDC states that its market reports result from "research 'standards [that] consist of the documentation of methodologies used and forecast assumptions, projections from only surveys that are statistically sound to ensure only objective and accurate data is used, validation and 'sanity checks' to help provide boundary conditions for major forecasts, implementation of standard definitions across geographies and coverage areas, and the use of common analytical tools to ensure consistency."  Ex. 1 (Weinstein Rpt.) ¶ 105 (quoting https://www.idc.com/about/methodology).  And even if the disclaimer Defendants cite were applicable, Defendants carefully excise IDC's statement that it "endeavors to provide information that is accurate."  Defendants' Ex. E.  Defendants are thus wrong to claim

---

and then decline of products implementing a Wi-Fi standard, which is what Mr. Weinstein was trying to forecast.  It shows only increasing sales.  At minimum, any disagreement as to the data to use for forecasting goes to weight.  *See Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-cv-01314-JRG-RSP, 2018 WL 2688185, at *2 (E.D. Tex. June 5, 2018) (disagreement "as to what variables should be considered . . . goes to . . . weight").

that the IDC has admitted its data is inaccurate.  The IDC data is relevant and probative.

On the other side of the balance, Defendants have not pointed to any unfair prejudice. Defendants assert that allowing Mr. Weinstein to use IDC data to determine the number of Accused Products sold to date (Mr. Weinstein's first use) is prejudicial because it shows more sales than Defendants' data.  Mot. at 11–12.  But again, this Court recently rejected this argument, holding that admitting IDC data was not "unfairly prejudicial" over objections from the defendant that the data showed "inflated numbers."  *Hardin v. Samsung Electronics Co. Ltd.*, No. 2:21-cv-00290-JRG (E.D. Tex. Jan. 30, 2023), ECF No. 225 at 26:21–30:23.  Further, evidence is not prejudicial simply because it is "adverse to the opposing party."  *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006); *United States v. Magleby*, 241 F.3d 1306, 1315 (10th Cir. 2001) ("Evidence is not unfairly prejudicial simply because it is detrimental to a party's case.").

As to Mr. Weinstein's second use—using IDC data to forecast sales—Defendants fail to identify any prejudice.  They insinuate that the data is inflated (Mot. at 12), but inflated compared to what?  Defendants have not produced any forecasts of future Wi-Fi 6 sales and thus lack any basis for saying that the growth curve derived by Mr. Weinstein is inflated.  Defendants suggest that using IDC data to forecast sales "grossly overstate[s] Defendants' actual sales in the market" (Mot. at 11), but this misses what the data were used for.  Mr. Weinstein used the IDC data—for the second purpose—to forecast **future** sales, not identify **past** sales.

## V.     CONCLUSION

Because Defendants' apportionment challenges go to weight, not admissibility, and because Defendants are incorrect that Mr. Weinstein cannot rely on IDC data, their motion to exclude should be denied.

███████████████████████████████████████

Dated: June 22, 2023

Respectfully submitted,

*/s/ Alexander W. Aiken*

Max L. Tribble Jr.
Texas Bar No. 20213950
mtribble@susmangodfrey.com
Joseph S. Grinstein
Texas Bar No. 24002188
jgrinstein@susmangodfrey.com
Alejandra C. Salinas
Texas Bar No. 24102452
asalinas@susmangodfrey.com
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Kalpana Srinivasan
CA State Bar No. 237460
ksrinivasan@susmangodfrey.com
Oleg Elkhunovich
CA State Bar No. 269238
oelkhunovich@susmangodfrey.com
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Alexander W. Aiken
WA State Bar No. 55988
aaiken@susmangodfrey.com
**SUSMAN GODFREY LLP**
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

Michael F. Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric J. Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine A. Larson
Texas Bar No. 24083360

16

blarson@hpcllp.com
Alden G. Harris
Texas Bar No. 24083138
aharris@hpcllp.com
William B. Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

T. John Ward, Jr.
TX State Bar No. 00794818
Email: jw@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
Email: andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
Facsimile: 903-7572323

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
**CAPSHAW DeRIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

***Attorneys for Plaintiff***

17

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2023 a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service by email.

/s/ Alexander W. Aiken

Alexander W. Aiken