# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC., AMGEN MANUFACTURING,  )
LIMITED, AND AMGEN USA INC.,             )
                                                              )
                                                              )        C.A. No.:  14-1317-SLR
            Plaintiffs,                                )           (CONSOLIDATED)
                                                              )
            v.                                            )        **JURY TRIAL DEMANDED**
                                                              )
SANOFI; SANOFI-AVENTIS U.S. LLC;     )
AVENTISUB LLC, f/d/b/a AVENTIS          )
PHARMACEUTICALS INC., and REGENERON )
PHARMACEUTICALS, INC.,                     )
                                                              )
            Defendants.                             )

## AMGEN'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Amgen on March 9, 2016 respectfully moved the Court, pursuant to Fed. R. Civ. P. 50(a),

for an Order granting judgment as a matter of law for Amgen and against Defendants.

The grounds for the motion include the following: Defendants have not presented a

legally sufficient evidentiary basis for a reasonable juror to find for Defendants with respect to

their invalidity defenses of obviousness, lack of written description, and enablement relating to

claims 2, 7, 9, 15, 19, and 29 of U.S. Patent No. 8,826,165 and claim 7 of U.S. Patent Nos.

8,859,741 ("the Asserted Claims" of the "Amgen Patents").

## I.       OBVIOUSNESS DEFENSE

1.        Defendants rely on two alleged § 102(e) prior art references to support their

obviousness defense: WO 2008/125623 ("Novartis") and WO 2009/055783 ("Schering").  *See*

Final Jury Instruction at 23 (Obviousness).

2.        Neither Novartis nor Schering is prior art under *Dynamic Drinkware, LLC v.*

*National Graphics,* 800 F.3d 1375 (Fed. Cir. 2015); *Ariosa Diagnostics, Inc. v. Illumina, Inc.*,

IPR2014-010936, 2016 WL354412 (PTAB Jan. 7, 2016).

3. It is undisputed that the priority date for the Asserted Claims of the Amgen Patents is January 9, 2008. *See* Final Jury Instructions at 29.

4. It undisputed that the filing dates of the non-provisional Novartis and Schering PCT Applications are April 11, 2008 and October 27, 2008, respectively. DTX-1896 and DTX-1897.

5. Neither filing date antedates the priority date of the Asserted Claims.

6. Defendants assert that the Novartis and Schering PCT applications are entitled to claim the benefit of the filing date of their respective provisional applications, dated Apr. 13, 2007 and Oct. 26, 2007.

7. Pursuant to this Court's March 2, 2016 Memorandum Order, to establish these provisional applications as prior art, Defendants must prove that the specifications of the Novartis and Schering Provisional Applications provide written description and enablement support for the claims of their respective PCT Applications. (D.I. 250 at 2 (citing *Dynamic Drinkware*, 800 F. 3d at 1378)). Defendants were required to do so by clear and convincing evidence. *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996).

8. Defendants "concede[d] that their experts did not satisfy the legal requirements as set forth above." (*Id.*) The Court provided Defendants with an opportunity to cure their defect by supplementing their expert reports. (*Id.* at 3-4).

9. As set forth in Amgen's March 7, 2016 Motion to Exclude (D.I. 271), despite providing the Defendants' expert, Dr. Ravetch, leave to perform the written description and enablement analysis required by *Dynamic Drinkware*, he conceded at deposition that he did not perform any written description or enablement analysis relating to the Schering and Novartis references. At trial he admitted that he did not analyze whether the specifications of the Novartis

or Schering Provisional Applications (1) described representative species of antibodies to support any claim of their respective PCT Applications (Trial Tr. at 460-13-17; 462:8-13); (2) disclosed common structural features that would support any claim of their respective PCT Applications (Trial Tr. at 460:22-461:2; 462:14-18); or (3) enabled any claim of their respective PCT Applications (Trial Tr. at 460:18-21; 462:3-7).

10.     Dr. Ravetch further admitted that he did not analyze whether the Novartis Provisional Application disclosed a well-characterized antigen to support any claim of the PCT Application.  (Trial Tr. at 461:3-8).

11.     Dr. Ravetch also admitted that neither the Novartis nor Schering Provisional Applications included any actual anti-PCSK9 monoclonal antibody (Trial Tr. 461:19-463:1; 476:4-6).

12.     Dr. Ravetch's analysis is based exclusively on the fact that the words of the non-provisional claims appear verbatim in the provisional applications (Trial Tr. 459:3-460:3) which is not legally adequate under *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002).  *See also* D.I. 250 at 2 fn.1 and *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1349 (Fed. Cir. 2010).

13.     Neither Schering nor Novartis is entitled to the benefit of the filing date of their respective provisional applications and therefore neither reference can be prior art. *Dynamic Drinkware*, 800 F.3d at 1381.

14.     In light of the foregoing, Amgen respectfully requests judgment as a matter of law that neither the Novartis reference nor the Schering reference is prior art.

15.     Further, since neither reference is prior art, Defendants cannot possibly meet their burden of proving by clear and convincing evidence that the claims of the Amgen patent are

invalid in light of Novartis and Schering.  Since those are the only two references asserted by Defendants, Amgen requests judgment as a matter of law that the claims of the Amgen patents are not invalid as obvious.

16.     Even if the Schering and Novartis references are deemed to be prior art under § 102(e), Dr. Jackson's testimony that Amgen had developed the claimed anti-PCSK9 antibodies by October 2006 is uncontroverted. Trial Tr. at 262:18-265:16; 281:6-21; JTX-0353; and PDX-0214.  Amgen had its research plan in June 2006 describing the goal of generating antibodies that bind at the site to which PCSK9 binds to LDLR.  Trial Tr. 257:16-258:24; PTX-3271.  Then, in October 2006, Amgen actually had the antibodies in hand that bind to the region, and residues, on PCSK9 to which the LDLR binds.  Trial Tr. at 263:20-265:24: JTX-0353; JTX-0002; PTX-3462; PTX-3463; DTX-1059; PTX-3508; JTX-0008; and PTX-3700.

17.     After generating the antibodies, during the remainder of 2006 and through 2007, Amgen diligently pursued the characterization of these antibodies as they were screened for binding and blocking, binning, in vitro and in vivo activity verified, and crystal structure analysis was performed on two of the antibodies.  Trial Tr. at 265:25-285:21. Thus, at least by October 2006, Amgen conceived of the claimed invention, and then was diligent in reducing it to practice thereafter that resulted in the filing of its third provisional application containing all of this data in January 2008.

18.     As mentioned above, both the Novartis Provisional Application (filed Apr. 13, 2007) and the Schering Provisional Application (filed Oct. 26, 2007) post-date that invention date. *See Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1383 (Fed. Cir. 2011) (explaining that a party may antedate a prior art reference if "(1) it reduced its invention to practice first ... or (2) it was the first party to conceive of the invention and then exercised

4

reasonable diligence in reducing that invention to practice."); *see also Sanofi-Aventis v. Pfizer, Inc.*, 733 F.3d 1364, 1369 (Fed. Cir. 2013). Moreover, neither the Schering nor Novartis reference disclosed *any* monoclonal antibodies, let alone monoclonal antibodies that bind to the claimed residues. Thus, Amgen made at least as much as the cited reference teaches before the date of the reference – while the references discuss antibodies prophetically, they do not disclose any actual antibodies. Trial Tr. at 462:19-463:1; JTX-0057 and Trial Tr. 476:1-477:17; JTX-0082. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996); *In re Stempel*, 241 F.2d 755, 759 ("[U]nder the law all the applicant can be required to show is priority with respect to so much of the claimed invention as the reference happens to show.") (C.C.P.A. 1957); *In re Stryker*, 435 F.2d 1340 (C.C.P.A.1971); *Alcon Research Ltd. V. Barr Labs. Inc.*, 837 F. Supp. 2d 364, 388 (D. Del. 2011) (patent holder "demonstrated conception and reduction to practice of at least as much of his invention as the [reference] showed."); *ISCO Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489 (D. Del. 2003).

19. As a result, neither the Novartis Provisional Application nor the Schering Provisional Application can serve as invalidating prior art. Accordingly, Amgen requests judgment as a matter of law that the claims of the Amgen patents are not invalid as obvious.

20. In addition, Defendants failed to present sufficient evidence that either reference would have rendered any of Amgen's claims obvious at the time of Amgen's priority date (January 9, 2008).

21. Defendants admit that Schering did not disclose *any* actual anti-PCSK9 monoclonal antibody, much less any monoclonal antibody that bound the particular residues of PCSK9 recited in Amgen's Asserted Claims. Defendants have failed to show that Claim 29 of

5

the '165 patent is obvious because there was no evidence relating to blocking the binding of PCSK9 by at least 80 percent. (Trial Tr. at 476:11-16)

22.     Dr. Ravetch applied improper hindsight. First, it is uncontroverted that Novartis lists 260 amino acids on the surface of PCSK9 without any specific recognition of the specific residues listed in the Asserted Claims, and therefore does not teach or provide any suggestion to make antibodies that bind to the PCSK9 amino acid residues recited in the Asserted Claims. Second, Dr. Ravetch's obviousness analysis required a knowledge of the significance of the amino acid residues that were recited in the Asserted Claims, which was unknown by the world until the filing date. (Trial Tr. at 411:4-9.) Third, Dr. Ravetch selectively chose portions of the Novartis and Schering references that supported his obviousness analysis while wholly ignoring other language in the same documents that were counterfactual to his opinion. (Trial Tr. at 422:11-16; 426:23-427:1).

23.     Even if Defendants had presented proper evidence of motivation, Defendants presented no evidence that one of ordinary skill in the art would have had any reasonable expectation of success in making the claimed invention based on the limited disclosure of polyclonal antibodies by Schering. Further, Dr. Ravetch admitted that when Novartis followed its own disclosure to actually make an antibody to block the interaction between PCSK9 and LDLR, that antibody – called the "H1 Fab" – did not bind to any of the amino acid residues listed in Amgen's Asserted Claims. (Trial Tr. at 473:15-24). Similarly, Dr. Ravetch admitted there was no evidence in the Schering PCT Application that any of the antibodies disclosed bound to Amgen's recited amino acid residues. Trial Tr. at 477:10-17.

## II.   WRITTEN DESCRIPTION DEFENSE

24.   Defendants have also presented insufficient evidence in their case in chief for a reasonable juror to conclude that Amgen's asserted claims have been proven invalid for lack of adequate written description by clear and convincing evidence.

25.   Written description requires an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art" to determine whether the specification "describe[s] an invention understandable to that skilled artisan and show[s] that the inventor actually invented the invention claimed." *Ariad*, 598 F.3d F.3d 1336, 1351 (Fed. Cir. 2010).

26.   Defendants have alleged that the specification of the Amgen patents fails to adequately describe the full scope of the claimed genus of antibodies.

27.   One way to consider whether the combination of words, structures, figures, diagrams, formulas, etc., contained in the patent application is sufficient for a genus claim under § 112, ¶ 1 is to assess whether the specification includes a representative number of species falling within the scope of the claimed invention, or by structural features common to the members of the genus, so that a person of ordinary skill in the art can "visualize or recognize" the members of the claimed invention.  *Ariad*, 598 F.3d at 1350.

28.    Yet Defendants have failed to show a lack of a representative number of species falling within the scope of the claimed invention, **and** they have failed to show lack of common structural features.  Indeed, as a preliminary matter, neither Dr. Eck nor Dr. Siegel provided evidence that they applied the Court's claim construction when opining on whether antibodies disclosed in the patent fall within the scope of the asserted claims.  Trial Tr. at 565:9-17.

## A.  Representative Species

29.  With respect to the representative species analysis,  there are no "hard line rules" regarding the number of representative species that must be disclosed in order to adequately support the genus claims.  The specification only needs to disclose enough that "one of ordinary skill in the art can visualize or recognize members of the genus." *Ariad*, 598 F.3d at 1350.

30.   Dr. Ravetch testified and did not address the question of whether Amgen's patents disclose a representative number of species.  Dr. Eck did not testify at all on the representative species standard and provided no opinion that the patent specification lacks species of antibodies representative across the scope of the asserted claims.  While the patent discloses several antibodies, Dr. Eck brought forward no evidence that the additional antibodies beyond 21B12 and 31H4 fail to fall under the asserted claims, and could thus constitute additional species representative of the claimed genus.  Neither did Dr. Siegel.  While it is Defendants' burden of proof to demonstrate a lack of representative species by clear and convincing evidence, their experts were not able to state that the antibodies in the patent failed to fall within the scope of the claimed invention.  Dr. Siegel stated that he didn't know whether the antibodies disclosed in the patent, other than 21B12 and 31H4, fell within the scope of the asserted claims.  Trial Tr. at 692:1-7.

31.  Defendants have failed to prove by clear and convincing evidence that the specification of the Amgen patents fails to disclose a representative number of species of the genus claimed by Amgen's claims.

## B.  Structure Function

32.  Alternatively, the written description requirement can be satisfied where a reasonable structure-function correlation is established.

8

33. Again, Dr. Ravetch testified and said nothing about whether Amgen failed to adequately disclose a common structure-function relationship. Both Dr. Siegel and Dr. Eck failed to establish with clear and convincing evidence that the antibodies of the genus disclosed in the patent lack common structural features that have a correlation to function.

## C.     Newly-Characterized Antigen

34. In the case of a claim to antibodies, this Court's instructions provide that the correlation between structure and function may also be satisfied by the disclosure of a newly-characterized antigen by its structure, formula, chemical name, or physical properties if the level of skill and knowledge in the art of antibodies at the time of filing was such that production of antibodies against such an antigen was conventional or routine.

35. Dr. Siegel admitted that the "sweet spot" disclosed within Amgen's patent specification is both novel and well-characterized. (Trial Tr. at 676:8-677:6 and 678:2-20). In addition, Dr. Ravetch testified that the level of skill and knowledge in the art of antibodies as of January 9, 2008 was mature, conventional, and routine. (Trial Tr. at 409:4-11). Accordingly, Defendants' own expert witnesses confirm that the requirements for proving written description under the newly-characterized antigen test have been satisfied. For that reason, Amgen respectfully requests that this court enter judgement as a matter of law that the claims of the Amgen patents are not invalid under 35 U.S.C. § 112, ¶ 1. Further, neither Drs. Eck nor Siegel addressed the concept of a newly characterized antigen in their testimony and thus failed to show that the claimed invention is not supported under that prong of the written description analysis. *Centocor Ortho Biotech, Inc. v. Abbott Labs*, 636 F.3d 1341, 1351 (Fed. Cir. 2011); *Noelle v. Lederman*, 355 F.3d 1343, 1349 (Fed. Cir. 2004).

## III. **Enablement**

36. Enablement is a legal determination of whether a person of ordinary skill in the art could make and use the claimed invention in light of the patent disclosure. In order to prove invalidity for lack of enablement, Defendants were required to prove that the claims were not enabled by clear and convincing evidence. They have failed to do so.

37. Defendants have alleged that the claims of the Amgen patents are invalid because they did not enable one of skill in the art to make and use the antibodies of the claimed invention. In order to make such an antibody, Defendants conclude that a person of ordinary skill in the art would be required to engage in undue experimentation. But the evidence presented does not support this claim by clear and convincing evidence. Dr. Siegel described a series of conventional technologies for making antibodies and did not testify that they would be insufficient for the person of ordinary skill to utilize to make and use the claimed invention with the patents in- hand. With regard to one method, he merely stated it was "a lot of work and a lot of steps." Trial Tr. 668:20-21. Defendants' experts cited to no problem or hindrance that a person of ordinary skill in the art would confront in repeating the examples of the patent or in using any of the alternative methods described in the patent or known in the art. Evidence regarding other steps that the inventors may have performed is further not relevant to the enablement analysis. Trial Tr. 671:20-32 Instead, Defendants carry the burden proof that following the procedures in the patent, with the knowledge of the person of ordinary skill, that the claimed invention could not be made without undue experimentation.

38. Federal Circuit case law (*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986)) has held that enablement "is not precluded even if some experimentation is necessary," provided the amount of experimentation is not "unduly

10

extensive." Indeed, the Federal Circuit has reversed a finding of non-enablement on grounds similar to those alleged by Defendants, holding that because methods of screening and methods of making monoclonal antibodies were well known in the art, "there was not a shred of evidence that undue experimentation was required by those skilled in the art to practice the invention."

39. Dr. Ravetch testified that one of ordinary skill in the art could generate antibodies that will block LDL binding and map to specific amino acid residues using "well-known methods and techniques." Tr. at 440 13-24. Thus, Defendants acknowledge that antibodies can be made using known techniques, without undue experimentation. As a result, Defendants have presented insufficient evidence upon which a reasonable jury could conclude that the Asserted Claims of the Amgen Patents are not enabled.

## IV.  Conclusion

40. For the reasons explained above, Amgen respectfully requests judgment as a matter of law that the claims 2, 7, 9, 15, 19, and 29 of U.S. Patent No. 8,826,165 and claim 7 of U.S. Patent Nos. 8,859,741 are not invalid under 35 U.S.C. 103, or §112, ¶ 1

11

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
1000 North King Street
Wilmington, DE  19801
(302) 571-6681
msharp@ycst.com

OF COUNSEL:

William G. Gaede, III
David L. Larson
Eric W. Hagen
Terry W. Ahearn
Bhanu K. Sadasivan
Shane G. Smith
Evan Boetticher
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
(650) 815-7400

Sarah C. Columbia
K. Nicole Clouse
Lauren Martin
Esther E. Lin
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4074

Michael V. O'Shaughnessy
Rebecca Harker Duttry
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

Dated:  March 11, 2016

*Attorneys for Amgen Inc.*