IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, § § *Plaintiff*, § § v. § § CIVIL ACTION NO. 2:21-CV-00430-JRG-RSP TP-LINK TECHNOLOGIES CO., LTD., § TP-LINK CORPORATION LIMITED, § TP-LINK INTERNATIONAL LTD., § § *Defendants*. § | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Atlas Global Technologies LLC's Motion for Summary Judgment on Defendants'[1] Counterclaim. **Dkt. No. 198**.[2] Defendants filed their Response (Dkt. No. 210), Atlas Global filed its Reply (Dkt. No. 222), and Defendants filed their Sur-reply (Dkt. No. 234). For the following reasons, it should be **GRANTED**.

### I. BACKGROUND

Atlas Global alleges that Defendants infringe U.S. Patent Nos. 9,532,187 ("the '187 Patent"), 9,763,259 (the "'259 Patent"), 9,825,738 (the "'738 Patent"), 9,912,513 (the "'513 Patent"), 9,917,679 (the "'679 Patent") (collectively, the "Asserted Patents")).[3] According to Atlas Global, the Asserted Patents cover various aspects of Wi-Fi 6, the current and most advanced version of Wi-Fi based on the Institute of Electrical and Electronics Engineers (IEEE)

---

[1] TP-Link Technologies Co., LTD. and TP-Link Corporation, LTD., f/k/a TP-Link International, LTD.'s (collectively, "Defendants").

[2] Citations to docket and page number correspond to those assigned through ECF.

[3] Atlas Global's initial complaint, filed November 22, 2021, also asserted U.S. Patent Nos. 9,531,520 (the "'520 Patent"), 10,020,919 (the "'919 Patent"), and 10,756,851 (the "'851 Patent"), which have since been dropped from the case. *See* Complaint, Dkt. No. 1 at ¶ 1; *see also* Joint Pretrial Order, Dkt. No. 241 at 5.

802.11ax standard. *See* Dkt. No. 88 at 6–7 ("The Asserted Patents enable numerous features of Wi-Fi 6, including OFDMA and MU-MIMO" (*e.g.*, the '679), "multi-user triggering frames and/or acknowledgement frames" (*e.g.*, the '738, '513), "channel sounding, estimation, and feedback in multi-user communication" (*e.g.*, the '259), "and interleaving in multi-user systems" (*e.g.*, the '187)). Based on its recognition that the Asserted Patents are standard essential patents, Atlas Global concedes it is obligated, under the IEEE, to grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination. Motion, Dkt. No. 198 at 4–5; Letter of Assurance, Dkt. No. 198-2 at 3; *see also* IEEE Bylaws, Dkt. No. 198-7 at 19 (Section 6.2(b) – setting forth requirements of a Letter of Assurance).

In June 2021, Atlas Global contends it sent letters and emails to three different TP-Link representatives—inviting them to engage in licensing discussions with Atlas Global regarding its standard essential patent portfolio. Motion, Dkt. No. 198 at 5; *see generally* June 2021 Letters and Emails, Dkt. No. 198-4. Defendants did not respond. Motion, Dkt. No. 198 at 5. In November 2021, Atlas Global filed this suit against Defendants. *Id.*

In February 2023, Defendants filed a counterclaim alleging that Atlas Global breached its contractual obligations (1) by "failing to communicate with Defendants or to offer Defendants FRAND license terms for the Asserted Patents before filing this Complaint" and (2) by failing to disclose one or more of the Asserted Patents to the IEEE. Answer, Dkt. No. 120 at ¶¶ 8–27 (Counterclaim Count 1: Breach of Contract). Fact discovery closed on May 1, 2023. *See* Sixth Amended Docket Control Order, Dkt. No. 173 at 4.

Atlas Global now moves for summary judgment to eliminate Defendants' counterclaim for three independent reasons: (1) Defendants failed to establish that Atlas Global did not communicate with them prior to filing this case or properly disclose any asserted patent; (2) the

2

Letter of Assurance, as a matter of contract interpretation, does not require Atlas Global to provide Defendants with any notice prior to filing the case or further disclose any asserted patent to the IEEE; and (3) Defendants have failed to establish that they are willing licensees that can enforce the Letter of Assurance against Atlas Global. Motion, Dkt. No. 198 at 6–11.

The central issue presented in the motion is whether Atlas Global was obligated to offer Defendants a license on FRAND terms prior to filing this suit. Since Defendants have not cited any authority actually supporting their position, Defendants' counterclaim fails as a matter of law.

## II.  LAW

### A.  Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

A "no evidence" summary judgment is appropriate when the moving party demonstrates an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has demonstrated the absence of evidence, the nonmovant must present affirmative evidence indicating that there is a genuine factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A party moving for a "no evidence" summary

3

judgment need not "produce evidence showing the absence of a genuine issue of material fact" on issues for which it does not bear the burden of proof. *Celotex*, 477 U.S. at 325. A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific facts which meet its burden of proof. *Id.* "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy*, 44 F.2d at 312 (citing *Liberty Lobby*, 477 U.S. at 247).

### B. Standard Essential Patents

Standard setting organizations work to set technical specifications that ensure that a variety of products from different manufacturers operate compatibly. *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1030 (9th Cir. 2015). Since standards from the standard setting organizations "often incorporate patented technology, all manufacturers who implement a standard must obtain a license to use those standard-essential patents." *Id.* While standards offer significant benefits to consumers and manufacturers, they also create risks that companies will engage in anti-competitive behavior. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 481 (5th Cir. 2021). To alleviate that risk, standard essential patent holders are often required to commit to license their patents on fair, reasonable, and non-discriminatory (FRAND) terms. *Id.* Doing so often involves forming a contract with the standard setting organization in accordance with that organization's policy. "Companies seeking to license under these terms become third-party beneficiaries of the contract between the standard-essential patent holder and the standard setting organization. They are thus enabled to enforce the terms of that contract." *Id.* (citing *Microsoft*, 696 F.3d at 885).

### III. ANALYSIS

There is no dispute that Atlas Global is contractually bound by the IEEE to license the Asserted Patents on FRAND terms. Motion, Dkt. No. 198 at 4–5; Letter of Assurance, Dkt. No.

198-2 at 3 (pledging to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination"); *see also* IEEE Bylaws, Dkt. No. 198-7 at 19 (Section 6.2(b) – setting forth requirements of a Letter of Assurance). Defendants are third-party beneficiaries of that contract. *HTC*, 12 F.4th at 481.

The analysis begins with the language of the contract itself. "'Contract interpretation is a question of law generally amenable to summary judgment.'" *Authentic Apparel Grp., LLC v. United States*, 989 F.3d 1008, 1014 (Fed. Cir. 2021) (citing *Premier Office Complex of Parma, LLC v. United States*, 916 F.3d 1006, 1011 (Fed. Cir. 2019)). The language of the IEEE Bylaws and the Letter of Assurance are dispositive of Defendants' counterclaim resting on two separately flawed grounds.

The first basis for Defendants' counterclaim—that Atlas "breached its contractual commitments with respect to the IEEE" by failing to disclose one or more of the Asserted Patents to the IEEE—is unsupported. *See* Answer, Dkt. No. 120 at ¶ 23. The Letter of Assurance states, "[t]he Submitter *may, but is not required to*, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims," and requires the Submitter to check box 1 or box 2. Letter of Assurance, Dkt. No. 198-2 at 3 (emphasis added). The executed Letter of Assurance checked box 2, which reads:

> When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, *all Essential Patent Claims that the Submitter may currently or in the future have the ability to license* shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

*Id.* (emphasis added). Defendants do not cite any authority establishing another requirement. Similarly, Defendants present no evidence of a pre-existing or simultaneously submitted specific

5

assurance identifying potential Essential Patent Claims. Since Defendants offer no evidence to support the claim that Atlas Global failed to disclose one or more of the Asserted Patents to the IEEE, the claim fails as a matter of law.

Turning to the second claim, Defendants contend that Atlas Global also breached its contractual obligations by not communicating with Defendants or offering Defendants FRAND license terms for the Asserted Patents before filing this Complaint. Answer, Dkt. No. 120 at ¶¶ 19, 22. It too fails as a matter of law.

First, neither the IEEE bylaws nor the Letter of Assurance include such an obligation. The IEEE Bylaws request "licensing assurance, on the IEEE Standards Board approved Letter of Assurance form, from the patent holder or patent applicant." IEEE Bylaws, Dkt. No. 198-7 at 19 (Section 6.2 – Policy)." The Letter of Assurance must include one of two terms: (a) a disclaimer that the Submitter "will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing a compliant implementation of the standard;" or (b) a "statement that a license for a compliant implementation of the standard will be made available to an unrestricted number of applicants on a worldwide basis without compensation or under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination." *Id.* According to the IEEE Bylaws, a transfer of rights cannot be used to circumvent obligations undertaken by the standard essential patent owner. *Id.* Further, the Bylaws state that the IEEE is not responsible for (1) "identifying Essential Patent Claims for which a license may be required," (2) "conducting inquiries into the legal validity or scope of those Patent Claims," or (3) "determining whether any licensing terms or conditions provided in connection with submission of a Letter of Assurance, if any, or in any licensing agreements are reasonable or non-discriminatory." *Id.*

Atlas Global's Letter of Assurance—formerly Newracom's—uses the IEEE template. Letter of Assurance, Dkt. No. 198-2 at 2–3. The Letter of Assurance does not require a license or specific terms be offered *before* filing suit, and it also does not require specific identification of standard essential patents. *Id.* As previously discussed, it requires the Submitter to declare it "may own, control or have the ability to license Patent Claims that might be or become Essential Patent Claims," and requires a commitment to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." *Id*. Atlas Global's obligation is to *grant*—rather than *offer*—licenses on FRAND terms. See *Ericsson Inc. v. D-Link Sys., Inc.*, No. 6:10-CV-473, 2013 WL 4046225, at *25 (E.D. Tex. Aug. 6, 2013) ("A patent holder does not violate its RAND obligations by seeking a royalty greater than its potential licensee believes is reasonable … Instead, both sides' initial offers should be viewed as the starting point in negotiations."), *aff'd in part, vacated in part, rev'd in part* (on other grounds), 773 F.3d 1201 (Fed. Cir. 2014). Thus, Atlas Global has not violated its contractual requirements.

Second, case law does not create the legal requirement that Defendants contend it does. Defendants contend courts have found that "[f]ailure to communicate an offer on FRAND terms before filing suit has been found to breach the patent holder's contract with the standard setting body." Response, Dkt. No. 210 at 10–16 (citing *TCL Commc'ns Tech. Holdings Ltd v. Telefonaktenbologet LM Ericsson*, No. SA-CV-1400341-JVS-ANX, 2014 WL 12588293, at *4 (C.D. Cal. Sept. 30, 2014); *Realtek Semiconductor Corp. v. LSI Corp.,* 946 F. Supp. 2d 998, 1008 (N.D. Cal. 2013); *Microsoft Corp. v. Motorola, Inc.,* 696 F.3d 872, 884 (9th Cir. 2012)). None of the cited cases support Defendants' assertion.

In *TCL*, the Central District of California denied a motion to dismiss because TCL sufficiently pleaded that Ericsson breached its contractual obligation to license its standard

7

essential patents to TCL on FRAND terms. 2014 WL 12588293, at *4–5. In contrast to Defendants' assertion, the court agreed that Ericsson has a contractual obligation to *license its patents on FRAND terms* to TCL because it represented to standards organization that its patents were standards essential. *Id.* at 4.

Similarly, neither *Realtek* nor *Microsoft* support the Defendants' assertion. *Realtek*, 946 F. Supp. 2d at 1008 (holding that defendants instigating an ITC action *seeking injunctive relief* against Realtek "*prior* to offering a RAND license to Realtek was a violation of its contractual obligations to the IEEE and to Realtek to license their standard essential patents under RAND terms") (emphasis added); *Microsoft*, 696 F.3d at 884 (9th Cir. 2012) (affirming the district court's holding that Motorola's RAND declarations to the ITU created a contract enforceable by Microsoft as a third-party beneficiary, and the contract in some way governs what actions Motorola may take to enforce its ITU standard-essential patents because implicit in Motorola's promise was a guarantee not to take steps to *keep would-be users from using the patented material, such as seeking an injunction*) (emphasis added). Thus, the courts in *Realtek* and *Microsoft* held that it was improper for a standard essential patent holder to enforce its *exclusionary rights*, especially before engaging in negotiations for monetary relief.

Finally, because there is no legal requirement to present a pre-suit FRAND offer, Defendants fail to provide evidence sufficient to create a genuine dispute of material fact. Defendants identify no language in the Letter of Assurance or IEEE Bylaws that requires Atlas to offer a license before filing suit. Defendants do not cite any evidence that Atlas Global has additional disclosure requirements beyond those spelled out in the Letter of Assurance. Defendants provide no evidence that tends to show Atlas Global's or Newracom's non-compliance with its IEEE obligations. Further, certain of Dr. McGahee's opinions rely on the flawed understanding that the IEEE Bylaws require Atlas Global to *offer* a license on FRAND

terms. *See* IEEE Bylaws, Dkt. No. 198-7 at 19 (Section 6.2(b) – stating "a license for a compliant implementation of the standard *will be made available*); *see also* Dr. McGahee Damages Report, Dkt. No. 210-6 at ¶ 36 ("I understand that the Letter of Assurance can include one of two terms: … a declaration that the submitter will *offer a license*") (emphasis added).

### IV.   CONCLUSION

It is **RECOMMENDED** that the motion for summary judgment (Dkt. Nos. 198) be **GRANTED** and the Counterclaim be **DISMISSED WITH PREJUDICE** because Defendants' breach of contract counterclaim fails as a matter of law.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 28th day of July, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE