## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  2:21-CV-00430-JRG-RSP |
| TP-LINK TECHNOLOGIES CO., LTD., | § | |
| TP-LINK CORPORATION LIMITED, | § | |
| TP-LINK INTERNATIONAL LTD., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court is TP-Link Technologies Co., LTD. and TP-Link Corporation, LTD.,

f/k/a TP-Link International, LTD.'s (collectively, "Defendants") Motion to Exclude Portions of

Plaintiff Atlas Global Technologies LLC's Infringement Expert Opinions. **Dkt. No. 196**.[1] Atlas

Global filed its Response (Dkt. No. 204), Defendants filed their Reply (Dkt. No. 217), and Atlas

Global filed its Sur-reply (Dkt. No. 228). For the following reasons, the Court **GRANTS-IN-**

**PART** the motion to the extent that Dr. Shoemake (like any other expert) is precluded from

testifying as to the knowledge or intent of the Defendants for indirect infringement.

### I.      BACKGROUND

Atlas Global alleges that Defendants infringe U.S. Patent Nos. 9,532,187 ("the '187

Patent"), 9,763,259 (the "'259 Patent"), 9,825,738 (the "'738 Patent"), 9,912,513 (the "'513

Patent"), 9,917,679 (the "'679 Patent") (collectively, the "Asserted Patents")).[2] According to

Atlas Global, the Asserted Patents cover various aspects of Wi-Fi 6, the current and most

---

[1] Citations to docket and page number correspond to those assigned through ECF.

[2] Atlas Global's initial complaint, filed November 22, 2021, also asserted U.S. Patent Nos. 9,531,520 (the "'520 Patent"), 10,020,919 (the "'919 Patent"), and 10,756,851 (the "'851 Patent"), which have since been dropped from the case. *See* Complaint, Dkt. No. 1 at ¶ 1; *see also* Joint Pretrial Order, Dkt. No. 241 at 5.

advanced version of Wi-Fi based on the Institute of Electrical and Electronics Engineers (IEEE) 802.11ax standard. *See* Dkt. No. 88 at 6–7 ("The Asserted Patents enable numerous features of Wi-Fi 6, including OFDMA and MU-MIMO" (*e.g.*, the '679), "multi-user triggering frames and/or acknowledgement frames" (*e.g.*, the '738, '513), "channel sounding, estimation, and feedback in multi-user communication" (*e.g.*, the '259), "and interleaving in multi-user systems" (*e.g.*, the '187)). Defendants filed a counterclaim alleging that Atlas Global breached its contractual obligations (1) by failing to offer Defendants a license under fair reasonable and non-discriminatory (FRAND) terms prior to filing suit and (2) by not disclosing the Asserted Patents to the IEEE. Answer, Dkt. No. 120 at ¶¶ 8–27 (Counterclaim Count 1: Breach of Contract).

Atlas Global's infringement expert, Dr. Matthew Shoemake, has a Ph.D. in electrical engineering, has been involved in the development of IEEE 802.11 standards, and has experience in the design and operation of Wi-Fi technologies. Dr. Shoemake Infringement Report, Dkt. No. 204-4 at ¶¶ 16–33 (Section IV. Qualifications); *see also* Dr. Shoemake CV, Dkt. No. 228-2 at 2. Dr. Shoemake also has a bachelor's degree in computer science and 27 years of industry experience. Dr. Shoemake CV, Dkt. No. 228-2 at 2–3.

In his report, Dr. Shoemake opines that defendant TP-Link Corporation Limited directly infringes by (1) offering the Accused Products for sale in the United States and (2) by importing the Accused Products into the United States. *See id.*, Dkt. No. 196-1 at ¶¶ 184–185.

Dr. Shoemake also opines that defendant TP-Link Corporation Limited indirectly infringes because it (1) has knowledge of the Asserted Patents and of the infringement, (2) induces purchasers and end-users to use the Accused Products in the United States in a manner that infringes the Asserted Patents, (3) induces TP-Link USA to sell and offer to sell the Accused

Products in the United States to directly infringe, and (4) induces TP-Link USA to import the Accused Products into the United States to directly infringe. *Id.* at ¶¶ 186–218.

Further, in Dr. Shoemake's limitation-by-limitation infringement analysis of '520 Patent (*e.g.*, limitation 1[A]–1[H]), he supplements his analysis with a statement for each limitation that states, "I incorporate all the evidence from [prior limitations] here." *Id.* at ¶ 275 (Analyzing limitation 1[B] and incorporating all evidence from limitation 1[A]), ¶ 278 (Analyzing limitation 1[C] and incorporating all evidence from limitations 1[A] and 1[B]), ¶ 281 (Analyzing limitation 1[D] and incorporating all evidence from limitations 1[A]–1[C]), ¶ 289 (Analyzing limitation 1[E] and incorporating all evidence from limitations 1[A]–1[D]), ¶ 291 (Analyzing limitation 1[F] and incorporating all evidence from limitations 1[A]–1[E]), ¶ 299 (Analyzing limitation 1[G] and incorporating all evidence from limitations 1[A]–1[F]), ¶ 302 (Analyzing limitation 1[H] and incorporating all evidence from limitations 1[A]–1[G]). He follows a similar process for each of the Asserted Patents and claims. *See* Motion, Dkt. No. 196 at 10 (chart showing each of the paragraphs in Dr. Shoemake's Infringement Report with similar language).

Defendants move to exclude Dr. Shoemake's opinions regarding (1) Defendants' alleged acts of direct infringement, (2) Defendants knowledge and intent for indirect infringement. *Id.* at 4–5. Defendants also move to strike portions of Dr. Shoemake's report that cross-reference other parts of his report by "incorporate[ing] all the evidence." *Id.* at 5. For each of the three topics, there are two issues for the Court to address.

First, do Dr. Shoemake's opinions satisfy the reliability and relevance requirements of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)? Yes. Second, should the Court exclude certain of Dr. Shoemake's opinions under Fed. R. Civ. P. Rule

26(a)(2)(B), or Fed. R. Evid. Rules 703 and 704? Yes, to the extent those opinions answer the ultimate questions of Defendants' knowledge and intent. Otherwise, no.

## II.    LAW

"Except as otherwise provided in this title, whoever without authority *makes, uses, offers to sell, or sells* any patented invention, within the United States or *imports* into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a) (emphasis added). Determining whether a product or method infringes a patent is a two-step process. *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*) (citations omitted), *aff'd*, 517 U.S. 370 (1996)). The Court must first determine the proper construction of the asserted claims, which is a matter of law. *Id.* (citing *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008), and *Shire Dev., LLC v. Watson Pharm.*, 787 F.3d 1359, 1364 (Fed. Cir. 2015)). At the second step, the finder of fact must determine whether the asserted claim, as properly construed, "reads" on the product or method. *Id.* (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309 (Fed. Cir. 2009)).

Induced infringement under 35 U.S.C. § 271(b) "requires proof of underlying direct infringement, as well as proof that (1) 'the defendant knew of the patent,' (2) the defendant knew or should have known that 'the induced acts constitute patent infringement,' and (3) the defendant 'possessed specific intent to encourage another's infringement.'" *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (citing *Sanofi, LLC v. Watson Labs. Inc.*, 875 F.3d 636, 643–44 (Fed. Cir. 2017)).

"Contributory infringement under 35 U.S.C. § 271(c) requires proof that (1) the defendant had 'knowledge of the patent in suit,' (2) the defendant had 'knowledge of patent

infringement,' and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use." *Id.* (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 1926, 191 L.Ed.2d 883 (2015)).

Induced infringement pursuant to § 271(b) and contributory infringement pursuant to §271(c) each require knowledge of infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)). The knowledge requirement includes both knowledge of the patents in suit, *id,* and knowledge of another's direct infringement resulting from the accused's conduct. *See id.* at 639–40; *see also Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004). "[K]nowledge of infringement can be inferred from circumstantial evidence." *Warsaw* 824 F.3d at 1347 (Fed. Cir. 2016) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769–71 (2011)).

Assessments as to infringement generally involves expert witnesses. An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

(1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct ...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

## III.   ANALYSIS

### A. Dr. Shoemake's Direct Infringement Opinions are Sufficiently Reliable and Relevant to Avoid Exclusion

First, Defendants argue that Dr. Shoemake's direct infringement opinions are outside of his area of expertise and invade the province of the jury, rather than assist the jury to understand the evidence. Motion, Dkt. No. 196 at 5–6. According to Defendants, Dr. Shoemake lacks relevant specialized training or knowledge regarding "offers for sale" or how to interpret "terms of service" of a website to opine on whether Defendants offered for sale or sold an Accused Product in the United States through a website. Defendants further challenge Dr. Shoemake's opinions as to whether Defendants imported an Accused Product into the country based on certain invoices. *Id.* at 6–7 (citing Dr. Shoemake Infringement Report, Dkt. No. 196-1 at ¶¶ 184–85 and ¶ 190, n. 39 (discussing which party controls the TP-Link USA website)).

Here, Dr. Shoemake uses his background and knowledge to opine that Defendants directly infringe by offering for sale Accused Products in the United States through a website, and separately by importing Accused Products into the United States. To develop his opinions regarding potentially infringing sales and offers for sale, he analyzes the "services" offered on the website and information regarding the website's registration. *See* Dr. Shoemake Infringement

Report, Dkt. No. 196-1 at ¶ 184, ¶ 190, n. 39. Based on that, he offers an opinion that Defendants maintain and control the website, and therefore satisfy the direct infringement requirement of *offering for sale* or *selling* Accused Products for sale in the United States. Separately, to form his opinions regarding potentially infringing important conduct, he reviews Defendants' invoices that include "Ship To" addresses in the United States. Using that information, Dr. Shoemake concludes that Defendants or their affiliates import the Accused Products into the United States. Dr. Shoemake Infringement Report, Dkt. No. 196-1 at ¶ 185.

Defendants do not challenge his understanding of direct infringement or his methodology. Instead, Defendants primarily challenge the substance of Dr. Shoemake's opinions. Therefore, Defendants' cited cases are unpersuasive. To illustrate this point, Defendants dispute *who*—Defendants or third-party TP-Link USA—controls a website that offers Accused Products for sale in the United States. *See* Dr. Hansen Noninfringement Report, Dkt. No. 204-3 at ¶¶ 89–91 (opining that the evidence of record refutes Dr. Shoemake's opinions and concluding that Defendants do not sell Asserted Products in the United States). Similarly, Defendants dispute *where*—Hong Kong or the United States—Defendants relinquish control of the Accused Products as those products are imported into the United States. *See* Dr. Hansen Noninfringement Report, Dkt. No. 204-3 at ¶ 92 (opining that Dr. Shoemake ignored "FCA HONGKONG" in the invoice and concluding Defendants relinquish possession of the Accused Products in Hong Kong).

The Court is also not persuaded that Dr. Shoemake's opinions "fail to apply specialized knowledge to assist the jury," rather than land on one side of the direct infringement issue based on disputed facts. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of

facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system'"). Dr. Shoemake's opinions contain analysis that is helpful to understand disputed facts on the issue of direct infringement, so exclusion is not warranted under Federal Rules of Evidence 703 and 704. Defendants' can properly address Dr. Shoemake's opinions through cross-examination. *Daubert*, 509 U.S. at 596.

In sum, the Court is not convinced that Dr. Shoemake's direct infringement opinions should be excluded.

### B.  Dr. Shoemake's Indirect Infringement Opinions are Sufficiently Reliable and Relevant, but He Cannot Testify as to Defendants' Mental State

Second, Defendants contend that Dr. Shoemake's opinions as to Defendants' knowledge and intent are improper as merely summarizing evidence and providing Plaintiff's argument on the ultimate jury question of induced infringement. Motion, Dkt. No. 196 at 8 (citing *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *10 (E.D. Tex. Apr. 10, 2017); *Gree, Inc. v. Supercell Oy*, No. 2:19-CV-00071-JRG-RSP, 2020 WL 4059550, at *2 (E.D. Tex. July 20, 2020)).

"[W]illful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (and for contributory infringement under § 271(c)), even in the absence of actual knowledge. *Global–Tech*, 131 S.Ct. at 2070." *Warsaw*, 824 F.3d at 1347. Additionally, circumstantial evidence may be used to prove knowledge of infringement and intent to induce infringement. *Id.* (collecting cases).

Here, Dr. Shoemake cites three types of evidence to opine that Defendants have knowledge of the Asserted Patents and the infringement. Dr. Shoemake Infringement Report,

Dkt. No. 196-1 at ¶ 186 (citing three letters sent from Atlas Global's president to TP-Link CEO, COO, and VP of Channel Sales—on or about June 8, 2021—identifying Atlas Global's Wi-Fi 6 standard essential patents), ¶ 187 (citing March 9, 10, 11, and 15, 2022 dates that Atlas Global served its complaint on Defendants), ¶ 188 (citing May 4, 2022 date that Atlas Global served Defendants with its infringement contentions). In each paragraph, Dr. Shoemake opines that Defendants knew *or were willfully blind* to the infringement.

Similarly, Dr. Shoemake cites a variety of evidence to opine that Defendants have the requisite intent to induce infringement. Dr. Shoemake Infringement Report, Dkt. No. 196-1 at ¶ 190 (TP-Link's website), ¶ 192 (press releases), ¶ 193 (promotional videos), ¶ 195 (support downloads), ¶ 196 (apps), ¶ 198 (recruitment of Brand Ambassadors), ¶ 199 (marketing documents), ¶¶ 200-04 (product packaging), ¶ 205 (user guides), ¶ 205 (30(b)(6) deposition testimony), ¶ 206 (customer support agreements), ¶ 207 (FCC certifications), ¶ 208 (U.S. trademark filings), ¶ 214 (distribution agreement with TP-Link USA), and ¶ 217 (shipping invoices).

Consistent with prior precedent, the experts are precluded from testifying as to whether Defendants possessed the requisite knowledge or intent for indirect infringement. *Gree*, No. 2:19-CV-00071-JRG-RSP, 2020 WL 4059550, at *2; *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 5:05-cv-157, 2010 WL 11531436, at *5 (E.D. Tex. June 18, 2010) ("the question of intent is a classic jury question and not one for the experts."); *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 803 (E.D. Tex. 2007). Nevertheless, Dr. Shoemake may testify as to the underlying facts that in his opinion may show Defendants' state of mind.

### C. Dr. Shoemake's Cross-References are Not Improper

Third, Defendants seek to exclude paragraphs of Dr. Shoemake's report accompanying

his infringement analysis of each asserted claim as allegedly failing to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). Motion, Dkt. No. 196 at 9–11. According to Defendants, Dr. Shoemake's "indiscriminate and unexplained incorporation of 'all the evidence' is insufficiently explained for the elements in which it is cited. *Id.* at 11 (citing *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 979307, at *1 (D. Del. Mar. 16, 2021))

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to "contain...a complete statement of all opinions that the witness will express and the basis and reasons for them; [and] the facts or data considered by a witness in forming them." Fed. R. Civ. P. 26(a)(2)(B).

Here, Dr. Shoemake's report spans 751 pages and he analyzes each limitation citing an array of evidence. Dr. Shoemake Infringement Report, Dkt. No. 204-4 at 47; *id*. at ¶ 144 (product marketing), ¶ 157 (Wi-Fi chip datasheets), ¶ 162 (product specifications), ¶ 169 (Wi-Fi Alliance certifications, ¶ 263 (deposition testimony), ¶ 265 (interrogatory responses), ¶ 268 (source code), ¶ 271 (802.11 Standard). In *Sprint*, the Court struck parts of an expert report for failing to comply with Rule 26 because an expert witness, Dr. Wicker, incorporated reports and testimony from prior litigations totaling over 3,351 pages and at least 18 days of his prior deposition and trial testimony. 2021 WL 979307, at *2–4. Here, unlike in *Sprint*, Dr. Shoemake includes separate paragraphs of analysis for each limitation accompanying his incorporation of the evidence statements. Furthermore, Dr. Shoemake identifies the evidence upon which he relies elsewhere in the same report. Consequently, his statements incorporating by reference are not conclusively "purposeful obfuscation (or, hiding the ball) of what the opinions are that Dr. Wicker intends to express at the trial in this case," as they were in *Sprint*.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** the motion to the extent that the expert is precluded from testifying as to the knowledge or intent of Defendants for indirect infringement. Nevertheless, he may testify as to the underlying facts that in his opinion tend to establish knowledge or intent. If Dr. Shoemake's testimony goes beyond his report, a contemporaneous objection can be made. The motion is otherwise **DENIED**.

**SIGNED this 28th day of July, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE