## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  2:21-CV-00430-JRG-RSP |
| TP-LINK TECHNOLOGIES CO., LTD., | § | |
| TP-LINK CORPORATION LIMITED, | § | |
| TP-LINK INTERNATIONAL LTD., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff Atlas Global Technologies LLC's Motion that Certain Facts be Considered Established. **Dkt. No. 175**. Atlas Global requests that the Court sanction Defendants[1] under Rule 37 because Defendants allegedly failed to comply with their discovery obligations and Court orders. Specifically, Atlas Global requests that the Court either (1) establish independent third-party International Data Corporation's ("IDC") unit sales attributable to Defendants, or alternatively, (2) find the IDC unit sales admissible for trial and reliable so Atlas Global can argue it is a true reflection of Defendants' sales before the jury. Defendants filed a Response (Dkt. No. 184), and the parties filed supplemental briefs (Dkt. Nos. 255, 259) in response to the Court's Order (Dkt. No. 248). For the following reasons, the Court **GRANTS** the motion.

## I.      BACKGROUND

Atlas Global alleges that Defendants infringe U.S. Patent Nos. 9,532,187 (the "'187 Patent"), 9,763,259 (the "'259 Patent"), 9,825,738 (the "'738 Patent"), 9,912,513 (the "'513

---

[1] TP-Link Technologies Co., Ltd. (now renamed TP-Link Lianzhou Co., Ltd. and sometimes referred to as TP-Link China) and TP Link International Ltd. (now renamed TP-Link Corporation Limited and sometimes referred to as TP-Link Hong Kong) (collectively, "Defendants")

Patent"), 9,917,679 (the "'679 Patent") (collectively, the "Asserted Patents")).[2] According to Atlas Global, the Asserted Patents cover various aspects of Wi-Fi 6, the current and most advanced version of Wi-Fi based on the Institute of Electrical and Electronics Engineers (IEEE) 802.11ax standard. *See* Dkt. No. 88 at 6–7 ("The Asserted Patents enable numerous features of Wi-Fi 6, including OFDMA and MU-MIMO" (*e.g.*, '679 Patent), "multi-user triggering frames and/or acknowledgement frames" (*e.g.*, '738 Patent, '513 Patent), "channel sounding, estimation, and feedback in multi-user communication" (*e.g.*, '259 Patent), "and interleaving in multi-user systems" (*e.g.*, '187 Patent)).

TP-Link USA was formerly a subsidiary of TP-Link Technologies Co., Ltd. Xu Decl., Dkt. No. 20-2. TP-Link USA Corporation has been Defendants' sole U.S. distributor except during a two-month window in late 2020, in which a separate entity that no longer exists, Trend Success Technology Limited ("TSTL"), fulfilled most of Defendants' orders. Response, Dkt. No. 184 at 3, 8; *see also* Defendants' Supp. Interrog. No. 10, Dkt. No. 184-2 at 3. In their response to the motion, Defendants maintained that TP-Link USA was no longer a related entity.

During discovery, Atlas Global sought sales information from Defendants, TP-Link USA, and independent third-party IDC. Motion, Dkt. No. 175 at 2. Defendants initially produced publicly available sales information. At a discovery hearing, Defendants also stated that TP-Link USA became owned by TP-Link UK Limited in the 2016–2017 timeframe, and that TP-Link UK is owned by Big Field International Limited, which is owned by Ivy Grove Limited. Hearing Transcript (3/1/23), Dkt. No. 141 at 22:13–23:20. After being ordered by the Court, Defendants produced their own financial information and separately served a subpoena on TP-Link USA to obtain Defendants' sales information attributable to TP-Link USA. At another hearing, the Court

---

[2] Atlas Global's initial complaint, filed November 22, 2021, also asserted U.S. Patent Nos. 9,531,520 (the "'520 Patent"), 10,020,919 (the "'919 Patent"), and 10,756,851 (the "'851 Patent"), which have since been dropped from the case. *See* Complaint, Dkt. No. 1 at ¶ 1; *see also* Joint Pretrial Order, Dkt. No. 241 at 5.

heard arguments about the discrepancies in Defendants' sales information between the different sources. Defendants maintained they were unable to get detailed sales and financial information regarding their U.S. sales. After the hearing, the Court found that Defendants' denial that they had access to the records of their U.S. sales was not plausible, and warned Defendants that consequences based on their apparent misrepresentations would be determined after depositions. Order, Dkt. No. 157 at 1.

Atlas Global deposed Defendants' 30(b)(6) witness and asked about Defendants' relationship with TP-Link USA and the reasons for the discrepancies in the sales information between the different sources. Motion, Dkt. No. 175 at 5–6 (listing deposition Topics 15, 16, 17). During the deposition, Defendants' corporate representative testified that TP-Link USA "is an independent third-party distributor" and that he had "never heard" of Ivy Grove Limited, the entity in the British Virgin Islands. *See* Liu Feiyue Dep. (3/21/23), Dkt. No. 175-4 at 35:16–43:6.

On May 1, 2023, after Atlas Global filed this motion and after the close of fact discovery, Defendants produced an updated spreadsheet showing unit sales and revenue by month per Atlas Global's request. Response, Dkt. No. 184 at 3. In addition, Defendants indicated that their sales information from the two months TSTL filled orders was inadvertently omitted from its previous production. *Id.*

On July 20, 2023, months after the close of fact discovery, Defendants quietly filed a supplemental corporate disclosure statement. Notice, Dkt. No. 243. That document represents that Defendant TP-Link Corporation Limited is a subsidiary of Big Field Pte. Limited, which is a subsidiary of both Ivy Grove Limited and Diamond Creek Global Limited. In sum, Defendants now acknowledge common ownership of both Defendants and TP-Link USA.

## II.    LAW

Fed. R. Civ. P. 37 sets the consequences of untimely or insufficient disclosure by a party: "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). When determining substantial justification or harm, courts consider "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564 (5th Cir. 2004) (quoting *Tex. A & M Research Found. v. Magna Transp., Inc.,* 338 F.3d 394, 402 (5th Cir. 2003)).

In addition to or instead of this sanction, "the court, on motion and after giving an opportunity to be heard … (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." FED. R. CIV. P. 37(c)(1)(C). One contemplated form of relief is to issue an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." FED. R. CIV. P. 37(b)(2)(A)(i); *see also Hernandez v. Rush Enterprises, Inc.*, 2020 WL 7041822, at *1 (E.D. Tex. Dec. 1, 2020) ("Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders. Courts have the option to bar the disobedient party from introducing evidence or direct that certain facts shall be 'taken to be established for purposes of the action."). Subject to certain limitations, a district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990).

III.     ANALYSIS

At the first discovery hearing, the Court did "not find credible the evidence" that the Defendants "produced about their relationship with TP-Link USA." Hearing Transcript (3/1/23), Dkt. No. 141 at 30:15–17. At the second discovery hearing, Defendants maintained that the lack of any relationship between Defendants and TP-Link USA meant that either party would have to obtain sales data from TP-Link USA by subpoena. The Court stated Defendants' inability to obtain financial information about products sold from its sole U.S. distributor—TP-Link USA—to be "an inherently incredible statement." Hearing Transcript (3/27/23), Dkt. No. 255-2 at 7:14–17; *see also id.* at 23:8–24:1.

The Court reiterated that it "finds it implausible that a major manufacturer of sophisticated electronic equipment, like TP-Link Corporation, has no knowledge of the current owner of its sole U.S. distributor, TP-Link USA, and is unable is unable to get any detailed sales and financial information regarding sales of TP-Link products in the U.S." Order, Dkt. No. 157 at 1. The Court warned that "[t]he consequences of these apparent misrepresentations will be left for further determination after any light the upcoming depositions may shed." *Id.* During the deposition, Defendants' Rule 30(b)(6) corporate representative testified as to having "never heard" of Ivy Grove Limited—the entity in the British Virgin Islands that we now know commonly owns Defendants and TP-Link USA. *See* Liu Feiyue Dep. (3/21/23), Dkt. No. 175-4 at 35:16–43:6.

At the July 24, 2023, Pretrial Conference, the parties presented oral arguments regarding the motion (Dkt. No. 175) and had additional opportunities to present arguments in supplemental briefing. In their brief, Defendants first provide a rationale for the discrepancies between Defendants' and TP-Link USA's sales data. Supp. Response, Dkt. No. 259 at 2–3. Second,

5

Defendants assert that any questions left unanswered from the depositions should have been resolved before Atlas Global stipulated to factual issues regarding the witness. *Id.* at 3–4. Finally, Defendants contend that there is nothing improper about Defendants' corporate restructuring, they assert they complied with their discovery obligations, and the relatively similar unit counts between the TP-Link sales data and the IDC sales data supports the reliability of sales data TP-Link produced. *Id.* at 4–8.

The Court finds that Defendants' representations in the 30(b)(6) deposition that, among other things, Defendants had "never heard" of Ivy Grove Limited and that TP-Link USA was an independent third party, constitute a failure to disclose that has had a prejudicial effect sufficient to warrant additional relief beyond allowing the IDC unit counts to be merely admissible. Defendants' assertion they complied with their disclosure obligations is belied by the fact that their corporate disclosure statement—confirming that Defendants and TP-Link USA are commonly owned entities—surfaced a mere one month before trial, and after a year of representations that TP-Link USA was an unrelated entity.

Deeming the IDC unit counts as established facts in this action is an appropriate remedy to cure the prejudice to Atlas Global that occurred during discovery. The added complexity in presenting two separate sets of Defendants' sales data and explaining Defendants' discovery conduct to the jury would distract from addressing the cause of action in the case. In addition, the remedy is necessary because Defendants would otherwise undercut the reliability of the IDC sales data. Without having the information regarding the recurring dispute about Defendants' relationship with TP-Link USA revealed through discovery hearings, the jury would not be able to fully evaluate the lessened reliability of the sales data obtained and produced from the TP-Link Defendants and TP-Link USA, as well as the need for Plaintiff's expert to use the IDC data.

## IV.      CONCLUSION

Defendants' conduct regarding its relationship with TP-Link USA is nothing short of exceptional. *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014).  For the reasons previously discussed, the Court **GRANTS** the motion such that the sales figures in the IDC reports relied upon by Plaintiff's expert shall be deemed established and may not be attacked by Defendants.  Plaintiffs will not be permitted to offer argument or testimony about the discovery disputes and misrepresentations referred to above, but may offer testimony and argument about the common ownership of the Defendants and TP-Link USA (as established through the Supplemental Notice, Dkt. No. 243) as it bears upon infringement.

**SIGNED this 2nd day of August, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE