IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | § |
| | § CIVIL ACTION NO. 2:21-CV-00430-JRG-RSP |
| TP-LINK TECHNOLOGIES CO., LTD., | § |
| TP-LINK CORPORATION LIMITED, | § |
| TP-LINK INTERNATIONAL LTD., | § |
| | § |
| *Defendants*. | § |

**REPORT AND RECOMMENDATION**

Before the Court is Defendants'[1] Motion for Partial Summary Judgment of No Direct Infringement and No Pre-Suit Indirect Infringement. **Dkt. No. 195**.[2] Plaintiff Atlas Global filed its Response (Dkt. No. 205), Defendants filed their Reply (Dkt. No. 215), and Atlas Global filed its Sur-reply (Dkt. No. 229). For the following reasons, it should be **DENIED**.

**I.     BACKGROUND**

Atlas Global alleges that Defendants infringe U.S. Patent Nos. 9,532,187 ("the '187 Patent"), 9,763,259 (the "'259 Patent"), 9,825,738 (the "'738 Patent"), 9,912,513 (the "'513 Patent"), 9,917,679 (the "'679 Patent") (collectively, the "Asserted Patents")).[3] According to Atlas Global, the Asserted Patents cover various aspects of Wi-Fi 6, the current and most advanced version of Wi-Fi based on the Institute of Electrical and Electronics Engineers (IEEE)

---

[1] TP-Link Technologies Co., Ltd. (also referred to as TPL China in the briefing) and TP-Link Corporation, Ltd. (also referred to as TPL Hong Kong in the briefing) f/k/a TP-Link International, Ltd. (collectively, "Defendants").

[2] Citations to docket and page number correspond to those assigned through ECF.

[3] Atlas Global's initial complaint, filed November 22, 2021, also asserted U.S. Patent Nos. 9,531,520 (the "'520 Patent"), 10,020,919 (the "'919 Patent"), and 10,756,851 (the "'851 Patent"), which have since been dropped from the case. *See* Complaint, Dkt. No. 1 at ¶ 1; *see also* Joint Pretrial Order, Dkt. No. 241 at 5.

802.11ax standard. *See* Dkt. No. 88 at 6–7 ("The Asserted Patents enable numerous features of Wi-Fi 6, including OFDMA and MU-MIMO" (*e.g.*, the '679), "multi-user triggering frames and/or acknowledgement frames" (*e.g.*, the '738, '513), "channel sounding, estimation, and feedback in multi-user communication" (*e.g.*, the '259), "and interleaving in multi-user systems" (*e.g.*, the '187)).

According to the complaint, Defendant TP-Link Technologies Co., Ltd. is based and has its business in Shenzen, China, and Defendant TP-Link Corporation, Ltd. is based and has its business in Hong Kong, China. Complaint, Dkt. No. 1 at ¶¶ 5–6. Defendants assert that TP-Link USA Corporation ("TP-Link USA") is the sole customer of TP-Link Corporation, Ltd., which sells the Accused Products to TP-Link USA in China. *See* Motion, Dkt. No. 195 at 6. At least some of the Accused Products are available through a TP-Link website. *Id*.

Until recently filing an updated Corporate Disclosure Statement (Dkt. No. 243), Defendants maintained they had no corporate relationship with TP-Link USA. That document, along with piecemeal information throughout the record reveals that Defendants and TP-Link USA are commonly owned by Ivy Grove Limited. *See* Order, Dkt. No. 261 at 5.

According to Atlas Global, on June 8, 2021, Atlas Global's President, Craig Yudell, sent three letters regarding its standard essential patent portfolio to TP-Link representatives—the first to Jeff Barney, COO; the second to Louis Liu, CEO; and the third letter to Mr. Bijoy Alaylo, VP Channel Sales. Letters, Dkt. No. 195-8 at 2–4.

Defendants move for summary judgment on two issues: (1) whether Atlas Global can establish that Defendants directly infringe any claim of the Asserted Patents; and (2) whether Atlas Global can establish indirect infringement before the filing date of the lawsuit, November 22, 2021.

## II.     LAW

### A. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. *Liberty Lobby*, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific facts which meet his burden of proof. *Id.* "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy*, 44 F.2d at 312 (citing *Liberty Lobby*, 477 U.S. at 247).

### B. Indirect Infringement

Induced infringement under 35 U.S.C. § 271(b) "requires proof of underlying direct infringement, as well as proof that (1) 'the defendant knew of the patent,' (2) the defendant knew or should have known that 'the induced acts constitute patent infringement,' and (3) the defendant 'possessed specific intent to encourage another's infringement.'" *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (citing *Sanofi, LLC v. Watson Labs. Inc.*, 875 F.3d 636, 643–44 (Fed. Cir. 2017)); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 135 S. Ct. 1920, 1926, 191 L.Ed.2d 883 (2015) ("Induced infringement requires that the defendant knew about the patent and that the induced acts would amount to patent infringement."); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 131 S. Ct. 2060, 179 L.Ed.2d 1167 (2011).

The Federal Circuit and Supreme Court recognize that willful blindness may supply the requisite knowledge for induced infringement. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016) ("*Commil*, in reaffirming *Global–Tech*, also necessarily reaffirmed that willful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (and for contributory infringement under § 271(c)), even in the absence of actual knowledge.") (citing *Global-Tech*, 563 U.S. at 768, 131 S. Ct. 2060; *Commil*, 135 S. Ct. at 1926); *see also Global-Tech*, 563 U.S. at 770, 131 S. Ct. 2060 (affirming finding of induced infringement where a defendant "willfully blinded itself to the infringing nature of the sales it encouraged" its customers "to make"). The Supreme Court explained that willful blindness, in the context of induced infringement, has two elements: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 768, 131 S. Ct. 2060.

4

The knowledge and intent requirements for induced infringement may be established by circumstantial evidence, even in circumstances involving willful blindness. *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 408 (Fed. Cir. 2018) ("We conclude, however, that the evidence in this case, while not overwhelming, provides at least circumstantial evidence that would allow a jury to reasonably find that Enplas had knowledge of the patents and of its customers' infringing activity and that it intended to induce their infringement."); *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018) ("Circumstantial evidence can support a finding of specific intent to induce infringement."); *see also Global-Tech*, 563 U.S. at 766 ("courts applying the doctrine of willful blindness hold that defendant cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances."); *id.* at 770-71 (reviewing circumstantial evidence before the jury and concluding that the "evidence was more than sufficient for a jury to find" willful blindness); *accord Warsaw*, 824 F.3d at 1348 ("we conclude that there was substantial evidence that [defendant]'s infringement position was objectively unreasonable and that the jury, based on this evidence, could reasonably have concluded that [defendant] had knowledge (or was willfully blind to the fact) that it was infringing.").

### III. ANALYSIS

#### A. There are Genuine Disputes of Material Fact as to Whether Defendants Directly Infringed the Asserted Patents

Defendants argue that the evidence in the record shows that (1) Defendants make the products accused in this case ("Accused Products") overseas, (2) Defendants offer for sale and complete all sales of their products overseas, (3) the Accused Products are purchased and imported into the United States by non-party TP-Link USA Corporation, and (4) Defendants use

any Accused Product in the United States. Motion, Dkt. No. 195 at 4. Therefore, according to Defendants, summary judgment should be entered in Defendants' favor on the claim of direct infringement. *Id*.

The Court disagrees. First, the parties dispute who owns and controls the TP-Link U.S. website that offers Accused Products for sale. *See* Website Screen Capture, Dkt. No. 205-3 at 2–3. Defendants assert that the website is owned and controlled by TP-Link USA. Atlas Global presents evidence that Defendant TP-Link Corporation Ltd. owns the copyright to the TP-Link U.S. website—and therefore claims to be the original author of the website offering Accused Products for sale. Response, Dkt. No. 205 at 11. Atlas Global also offers evidence that (1) the Terms of Use for the TP-Link U.S. website state it is "provided by TP-Link Corporation Limited, located at [] Hong Kong," and (2) the website is registered in China. *Id.* Furthermore, the parties' experts offer diverging opinions on the ownership and control of the website. *Id.* at 11–12 (citing Dr. Shoemake's infringement report and Dr. Hansen's non-infringement report).

Second, the parties dispute whether Defendants or TP-Link USA imports the Accused Products into the United States. Defendants contend the invoices establish that TP-Link Corporation, Ltd. sells the Accused Products to TP-Link USA in China FOB and FCA Hong Kong. Motion, Dkt. No. 195 at 7 (asserting "'FOB' refers to 'free on board,' which means the buyer owns the product after purchase and during shipment, and 'FCA' refers 'free carrier allowance,' which means the party responsible for the delivery of those goods to a destination specified by the buyer (here 'Hong Kong')"). In contrast, Atlas Global argues that the Defendants import the Accused Products to California, as shown by the California address listed in the "Ship To" field on the invoice. Response, Dkt. No. 205 at 13–14.

In sum, there are genuine disputes of material fact regarding whether Defendants offer Accused Products for sale in the United States through the TP-Link U.S. website, and whether Defendants import Accused Products into the United States.

### B. There are Genuine Disputes of Material Fact as to Pre-suit Indirect Infringement of the Asserted Patents

Defendants argue that there is no evidence in the record that Defendants had pre-suit knowledge of (1) the Asserted Patents, or (2) Atlas Global's allegations that Defendants infringed of any claim of the Asserted Patents. Motion, Dkt. No. 195 at 4. Defendants contend that Atlas Global's June 8, 2021 letters do not identify any Asserted Patents by number or application number, and the letters also fail to identify any particular claim or basis for infringement of any Asserted Patent. Reply, Dkt. No. 215 at 9. According to Defendants, Atlas Global also fails to identify evidence or even allege Defendants were willfully blind to the claim of infringement. Motion, Dkt. No. 195 at 12 n.5.

The Court disagrees. As an initial matter, the recent corporate disclosure statement, demonstrating an ownership connection between Defendants and TP-Link USA, significantly undermines any argument that the parties have an arm's length relationship. A jury could easily draw the reasonable inference that notice to TP-Link USA qualifies as notice to the Defendants—a similar inference to the one the Court has drawn throughout this litigation as to the relationship between TP-Link USA and Defendants.

The parties first dispute whether the June 8, 2021 letters provided notice of the Asserted Patents or that Defendants' infringed any claim of the Asserted Patents. Defendants contend the letters do not identify any specific patents or indicate any claims or basis for infringement. Atlas Global responds that the letters notify the recipients about "Standard Essential Patents (SEP) in Wi-Fi 6" under the IEEE 802.11ax standard, that Atlas Global acquired from Newracom. Letters,

7

Dkt. No. 195-8 at 2–4. Atlas Global also provides evidence through its infringement expert, Dr. Shoemake, that Defendants' Accused Products necessarily infringe the Asserted Patents by practicing the Wi-Fi 6 802.11ax standard. Dr. Shoemake Infringement Report, Dkt. No. 205-10 at ¶ 186; *see also Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) (holding, on appeal from a summary judgment decision, that a district court may rely on an industry standard in analyzing infringement).

A party need not show that it identified specific patent numbers or make specific accusations of infringement in pre-suit materials to establish a claim of pre-suit indirect infringement, particularly when there is evidence that the Asserted Patents necessarily cover products that comply with the standard. *See generally Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 162338, at *7–8 (E.D. Tex. Sept. 8, 2022), *report and recommendation adopted*, No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 175052 (E.D. Tex. Sept. 27, 2022). A jury could reasonably find that Defendants had actual knowledge of the Asserted Patents and the infringement, or were willfully blind of the patents and their infringement in that Defendants' subjectively believed Atlas Global owned an SEP portfolio on the 802.11ax standard and took actions to avoid learning of the patents contained within that portfolio or their infringement. *Enplas* 909 F.3d at 408.

Second, the parties disagree about whether Atlas Global's interrogatory responses asserted Defendants were willfully blind to the claim of infringement. The interrogatory responses identify the June 8, 2021 date, use the term "willfully blinded," and include language mirroring Supreme Court's two-element the test for willful blindness in the context of induced infringement. Atlas Global's Interrogatory Responses, Dkt. No. 195-11 at 4–5; *see also Global-Tech*, 563 U.S. at 768, 131 S. Ct. 2060 ("(1) the defendant must subjectively believe that there is

8

a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.").

Thus, genuine disputes of material fact exist with respect the pre-suit indirect infringement. The Court need not address indirect infringement occurring before June 8, 2021 as Atlas Global concedes that it does not seek to argue indirect infringement before that date. *See* Response, Dkt. No. 215 at 8; *see also* Sur-reply, Dkt. No. 229 at 7 n.1 ("Atlas does not contend that TP-Link indirectly infringes prior to the June 8, 2021 date of these notice letters.").

## IV. CONCLUSION

It is **RECOMMENDED** that the motion for partial summary judgment (Dkt. Nos. 195) be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report by **no later than August 15, 2023,** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 4th day of August, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE