IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ATLAS GLOBAL TECHNOLOGIES LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  2:21-CV-00430-JRG-RSP |
| TP-LINK TECHNOLOGIES CO., LTD., | § | |
| TP-LINK CORPORATION LIMITED, | § | |
| TP-LINK INTERNATIONAL LTD., | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM ORDER

Before the Court is Defendants'[1] Motion to Exclude Portions of Plaintiff's Damages

Opinions. **Dkt. No. 201**.[2] Plaintiff Atlas Global filed its Response (Dkt. No. 208), Defendants filed

their Reply (Dkt. No. 216), and Atlas Global filed its Sur-reply (Dkt. No. 230). For the following

reasons, the Court **DENIES** the motion.

### I.      BACKGROUND

Atlas Global alleges that Defendants infringe U.S. Patent Nos. 9,532,187 ("the '187

Patent"), 9,763,259 (the "'259 Patent"), 9,825,738 (the "'738 Patent"), 9,912,513 (the "'513

Patent"), 9,917,679 (the "'679 Patent") (collectively, the "Asserted Patents")).[3] According to Atlas

Global, the Asserted Patents cover various aspects of Wi-Fi 6, the current and most advanced

version of Wi-Fi based on the Institute of Electrical and Electronics Engineers (IEEE) 802.11ax

---

[1] TP-Link Technologies Co., Ltd. and TP-Link Corporation, Ltd., f/k/a TP-Link International, Ltd.'s (collectively, "Defendants").

[2] Citations to docket and page number correspond to those assigned through ECF.

[3] Atlas Global's initial complaint, filed November 22, 2021, also asserted U.S. Patent Nos. 9,531,520 (the "'520 Patent"), 10,020,919 (the "'919 Patent"), and 10,756,851 (the "'851 Patent"), which have since been dropped from the case. *See* Complaint, Dkt. No. 1 at ¶ 1; *see also* Joint Pretrial Order, Dkt. No. 241 at 5.

standard. *See* Dkt. No. 88 at 6–7 ("The Asserted Patents enable numerous features of Wi-Fi 6, including OFDMA and MU-MIMO" (*e.g.*, the '679), "multi-user triggering frames and/or acknowledgement frames" (*e.g.*, the '738, '513), "channel sounding, estimation, and feedback in multi-user communication" (*e.g.*, the '259), "and interleaving in multi-user systems" (*e.g.*, the '187)).

Atlas Global's damages expert, Roy Weinstein, calculates two different royalty rates for his reasonable royalty analysis of the Asserted Patents: (1) $0.92 per unit; and (2) $0.85 per unit. Weinstein Report, Dkt. No. 201-1 at ¶¶ 171 (tables showing calculations). As far as royalty base, Mr. Weinstein calculates the reasonable royalty in two ways: (1) using Defendants' unit count data; and (2) using independent third-party International Data Corporation's ("IDC"). *Id.*

Defendants now move for summary judgment to exclude Mr. Weinstein's damages opinions as allegedly (1) failing to properly apportion the patented features from the unpatented features and (2) relying on improper hearsay unit counts data from the IDC. *Id.* at 4–5. The Court has already ruled that "the sales figures in the IDC reports relied upon by Plaintiff's expert shall be deemed established and may not be attacked by Defendants," rendering moot the issue regarding Mr. Weinstein's reliance on IDC data. Order, Dkt. No. 261.

Consequently, the sole remaining issue is whether Mr. Weinstein's reasonable royalty rates include a proper apportionment analysis.

## II.    LAW

### A.  *Daubert* Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580 (1993). However, "[t]he inquiry envisioned by Rule 702 is ... a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"). While the party offering the expert bears the burden of showing that the testimony is reliable, it "need not prove to the judge that the expert's testimony is correct ...." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

### B.  Apportionment for Standard Essential Patents

35 U.S.C. § 284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer...." Under § 284, damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). That "the patent holder should only be compensated for the approximate incremental benefit derived from his invention" is "particularly true for SEPs [ (standard essential patents) ]." (*Id.* at 1232). As *Ericsson* explains:

> When dealing with SEPs, there are two special apportionment issues that
> arise. First, the *patented feature must be apportioned from all of the unpatented*

3

*features reflected in the standard*. Second, the *patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology*. These steps are necessary to ensure that the royalty award is based on the incremental value that the patented *invention* adds to the product, not any value added by the standardization of that technology.

*Id.* (emphasis added).

"[U]nder this apportionment principle, 'there may be more than one reliable method for estimating a reasonable royalty.'" *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)), *cert. denied*, 136 S. Ct. 2530, 195 L.Ed. 2d 859 (2016). For example, "a party may ... estimate the value of the benefit provided by the infringed features by ... comparing the accused product to non-infringing alternatives." *Apple Inc.*, 757 F.3d at 1315.

"This adaptability is necessary because different cases present different facts." *Commonwealth Sci. & Indus.*, 809 F.3d at 1301–02. "And as damages models are fact-dependent, '[a] distinct but integral part of [the admissibility] inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case.'" *Id.* (citing *Summit 6*, 802 F.3d at 1296).

## III.    ANALYSIS

Defendants contend each of Mr. Weinstein's proffered royalty rates—$0.92 per unit, and the alternative $0.85 per unit—lack a proper apportionment analysis. Motion, Dkt. No. 201 at 4.

First, Defendants argue that Mr. Weinstein's $0.92 per unit royalty rate includes only seven asserted patents (now five), whereas Atlas Global has offered that same rate to license its entire standard essential patent portfolio of at least 133 U.S. patents outside of the litigation context. *Id.* Defendants identify certain testimony from Mr. Weinstein and argue that he admits

Atlas Global's SEP portfolio contains additional benefits beyond those in the Asserted Patents. *Id.* (citing Weinstein Report, Dkt. No. 201-1 at ¶¶ 25, 156, 157; Weinstein Dep. Tr. (6/9/2023), Dkt. No. 201-4 at 57:4–21). According to Defendants, Mr. Weinstein failed to properly apportion the rate to reflect the patented benefits at issue because a subset of the patents cannot be worth the same as the entire portfolio of patents. *See* Motion, Dkt. No. 201 at 4.

Here, the Court finds that Mr. Weinstein explains his methodology, apportions the royalty, and draws conclusions in a manner that satisfies the requirements of Rules 702, 703 and *Daubert*. Specifically, Mr. Weinstein opines that the parties would agree to the $0.92 undiscounted rate based on four licenses to the Asserted Patents covering Wi-Fi standards. Weinstein Report, Dkt. No. 208-2 at ¶¶ 145–160. "[W]hen a sufficiently comparable license is used as the basis for determining the appropriate royalty, further apportionment may not necessarily be required …. That is because a damages theory that is dependent on a comparable license (or a comparable negotiation) may in some cases have 'built-in apportionment.'" *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). While Defendants frame their arguments as identifying unreliable methodology, their arguments instead focus on the *correctness* of Mr. Weinstein's opinion that the $0.92 royalty rate is reasonable. "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Second, Defendants argue that Mr. Weinstein's alternative $0.85 per unit royalty rate is "not based on sound economic principles and thus fails to properly account for the non-asserted

benefits." Motion, Dkt. No. 201 at 4. Defendants first contend that Mr. Weinstein's 7.6% reduction

in rate to account for 94% of Atlas's SEPs not being asserted is economically unsound. *Id.* at 10.

Defendants also assert that Mr. Weinstein's calculations employ unreliable methodology because

he identifies eleven broad groupings of technical benefits covered by the Asserted Patents, adds

"licensing rates" from all eleven, but only divides by nine of the features. *Id.* at 11.

Again, the Court finds that Mr. Weinstein explains his methodology, apportions the

royalty, and draws conclusions in a manner that satisfies the requirements of Rules 702, 703 and

*Daubert*. Mr. Weinstein opines that two of the technical benefits—BSS coloring and use of

midamble—are not in this suit so they are removed from his calculations. *See* Weinstein Report,

Dkt. No. 201-1 at 22 (Ex. 11-1), ¶¶ 156–158. Defendants' arguments rely on

certain assumptions—such as that each patent in Atlas's portfolio has equal, independent

value—to carry weight. Defendants' arguments again target the *correctness* of Mr.

Weinstein's opinions regarding the $0.85 royalty rate. Defendants can determine whether his

opinions are credible or correct through cross-examination. *Daubert*, 509 U.S. at 596; *see also*

*Summit 6*, 802 F.3d at 1296 ("the question of whether the expert is credible or the opinion is

correct is generally a question for the fact finder, not the court.").

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion in its entirety.

**SIGNED this 8th day of August, 2023.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE